# EXHIBIT 2-A

Dockets.Justia.com

(which may be signed in counterparts) shall have the same force and effect as a unanimous vote of the directors or committee members.

Section 3.16  Compensation. Directors shall not receive compensation for their services as such, although the reasonable expenses of directors may be paid or reimbursed in accordance with the policies of the corporation. Directors shall not be disqualified to receive reasonable compensation for services rendered to or for the benefit of the corporation in any other capacity, provided that the rendering of such services and such compensation are approved by the Ethics Committee or Board policies.

Section 3.17  Director Attendance. Each director must attend a minimum of at least one half (1/2) of the Board meetings during any twelve-month period. If a director fails to meet this minimum, without prior excusal, a vacancy shall be declared and filled by the Nominating and Governance Committee unless the absent Board member seeks to demonstrate and is able to demonstrate to the satisfaction of the other members of the Board that the presence of exigent circumstances caused and excused the absences, in accordance with Section 3.7.

Section 3.18  Effectiveness of Actions. Actions taken at a meeting of the Board shall become effective immediately following the adjournment of the meeting, except as otherwise provided in the Bylaws or when a definite effective date is recited in the record of the action taken.

Section 3.19  Questions of Order and Board Meeting Leadership. Questions of order shall be decided by the Chair of the Board unless otherwise provided in advance by the Board. The Chair of the Board shall lead meetings of the Board. If the Chair is absent from any meeting of the Board, then the Chair shall designate in writing in advance one other member of the Board to preside. If the Chair is unable to make or has not made such a designation, the Board may choose another member of the Board to serve as presiding officer for that meeting.

Section 3.20  Olympic Games Participation. Any motion before the Board which would seek to prevent the corporation from participating in the Olympic Games, or which would not allow the team representing the United States to participate in the Olympic Games, or any motion having the same effect as the above, shall require that at least ¾ of the voting power of the Board vote in favor of such a motion.

Section 3.21  Submission of Specific Olympic Issues to Further Review. In the event that the Board votes, in accordance with the provisions of Section 3.20 of these Bylaws, to prevent or not allow the corporation or the team representing the United States to participate in the Olympic Games, or to take any action having that effect, the Board must submit the issue to a vote of a body composed of (a) the members of the Board, (b) the NGB Council representative of each Olympic NGB, and (c) Olympic sports athletes in the AAC, with one athlete representing each of the Olympic sports. The issue must be noticed a reasonable time before a meeting of that body, pursuant to procedures established by the Board, and for the motion to have any effect it must be approved by that body by a ¾ vote of the members of that body present, with each member of that body having one vote. If there are other issues as to which the Board decides, by a vote of a majority of the full voting power of the Board, that it should secure guidance or a broad United States Olympic consensus, it may submit those issues to the above-referenced body

for review or approval of action proposed by the Board. If the Board does decide to refer any additional issues to the above-referenced body, the procedure and vote required for approval should be specified by the Board.

Section 3.22 <u>Vote of Retention After Four Years</u>. If a director has been elected to serve a six-year term and has served four years, prior to the commencement of his or her final two years of service on the Board he or she shall be subject to a vote of retention by the Nominating and Governance Committee. The Nominating and Governance Committee shall vote as to whether the director shall be retained to serve the remaining two (2) years of the term or whether that director position shall be opened to be filled by a new director. The strong presumption shall be in favor of retention of the director and the director shall be retained unless there is a majority vote of the Nominating and Governance Committee against retention.

Section 3.23 <u>Auditors</u>. The accounts and financial reports of the corporation shall be audited by an independent firm of auditors. The independent firm of auditors shall be selected by the Board after the Board receives and considers the recommendation of the Audit Committee.

# ARTICLE IV

## OFFICERS

Section 4.1 <u>Number and Qualifications</u>. The officers of the corporation shall be a Chair of the Board ("Chair"), Vice President International and a Secretary. The Vice President International shall be appointed by the Board of Directors, from among the existing Board members. The Secretary shall be the corporation's general counsel or another appropriate employee of the corporation designated by the CEO.

Section 4.2 <u>Election and Term of Office</u>. The initial Chair shall be selected by the Nominating and Governance Committee from any of the non-IOC members of the Board to serve for a term between one year and eighteen months, as determined by the Board. Subsequent to the initial term of the initial Chair, the Chair shall be elected by the Board for a term to be set by the Board, at the next regular meeting of the Board. If the election of Chair shall not be held at such meeting, such election shall be held as soon as convenient thereafter. The Chair shall hold office until the Chair's successor shall have been duly elected and shall have qualified, or until the Chair's earlier death, resignation, disability, disqualification, termination, or removal. If a director is serving as the Chair when his or her initial term as director ends, he or she shall be eligible to be considered by the Nominating and Governance Committee as a possible candidate to serve one additional six-year term as a director. If a director is serving as the Chair of the Board when his or her second term as director ends (because his or initial term was less than four (4) years), he or she shall not be eligible to be considered by the Nominating and Governance Committee as a possible candidate to serve another term as director. The appointment of Vice President International's term shall end automatically when his/her term on the Board ends or when the Board designates a different Board member to serve as Vice President International. The corporation employee's term as Secretary shall end automatically when his or her employment by the corporation ends or when the CEO designates a different individual to serve

as Secretary. In any circumstance in which the CEO has not designated an employee to serve as Secretary, the Board may select a Board member or another individual employed by the corporation to serve as Secretary until a new Secretary is designated by the CEO.

Section 4.3    Compensation.  The Chair shall not receive compensation for services as Chair, but the Chair shall be reimbursed for reasonable expenses incurred by the Chair in the course of performing the Chair's duties, subject to the expense reimbursement policies of the corporation.

Section 4.4    Removal.  The Chair may be removed from serving as Chair by the Board for or not for cause, as specified below.  Removal from serving as Chair shall not, in and of itself, constitute removal from the Board.  Selection to serve as the Chair or as a director shall not in itself create any contract rights.

Section 4.5    Vacancies.  The Chair or the Vice President International or the Secretary may resign at any time from their positions as officers of the corporation by giving written notice to the Chair and the other members of the Board.  An officer's resignation shall take effect at the time specified in such notice, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.  A vacancy in the office of Chair, however occurring, shall be filled by the Board for the unexpired portion of the term.  A vacancy in the office of Vice President International or Secretary, however occurring, shall be filled in accordance with Section 4.2.

Section 4.6    Authority and Duties of Officers.  The officers of the corporation shall have the authority and shall exercise the powers and perform the duties specified below and as may be additionally specified by the Board or these Bylaws, except that in any event each officer shall exercise such powers and perform such duties as may be required by law.

- A. Chair of the Board.  After the initial Chair of the Board is selected by the initial Nominating and Governance Committee, all Chairs that follow shall be elected by the directors.  The Chair shall preside at all meetings of the directors, shall see that all Board commitments, resolutions, and oversight are carried into effect, and shall have and may exercise such powers and perform such other duties as may be assigned from time to time by the Board.
- B. Vice President International.  The Vice President International shall work in close cooperation with the Chief of International Relations in all international and Bid City issues.
- C. Secretary.  The Secretary shall (a) keep the minutes of the proceedings of the Board and any committees of the Board; (b) see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation; and (d) in general, perform all duties incident to the office of Secretary and such other duties as from time to time may be assigned to the Secretary by the CEO or by the Board.  Assistant secretaries appointed by the Secretary, if any, shall have the same duties and powers, subject to supervision by the Secretary.

Section 4.7    Officers shall perform their functions with due care. No person may serve simultaneously as an officer of the corporation and as an officer of an organization holding membership in the corporation.

Section 4.8

A.  Any officer may resign at any time by giving written notice to the Board. An officer's resignation is effective when the notice is received, unless the notice specifies a later effective date. Such resignation shall take effect at the time specified therein, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. An officer shall be deemed to have resigned in the event of such officer's incapacity as determined by a court of competent jurisdiction.

B.  The Chair may be removed at any time for cause by the affirmative vote of two-thirds of the total voting power of the Board (excluding the voting power of the Chair). The Chair may be removed at any time not for cause by the affirmative vote of not less than three-fourths of the voting power of the Board (excluding the voting power of the Chair).

Section 4.9    In the event of death, disability, resignation or removal of the Chair, the office shall be filled by another director who is not a member of the IOC for the remainder of the unexpired term. The director who will fill the position of Chair shall be selected by a majority vote (with voting weighted as detailed in Section 3.2 of these Bylaws) of the members of the Board who are present at a properly called and conducted meeting of the Board.

Section 4.10    All officers, directors, and employees handling funds of the corporation shall be bonded or insured in such amounts as may be determined from time to time by the CEO. The expense of furnishing such bonds shall be paid by the corporation.


# ARTICLE V

## COMMITTEES AND TASK FORCES

Section 5.1    <u>Committees.</u>    The corporation shall have the following committees: Audit, Compensation, Ethics and Nominating and Governance. By one or more resolutions adopted by a majority of the directors then in office, the Board or the CEO may designate one or more additional committees or task forces, each of which, to the extent provided in the resolution establishing such committee, shall have and may exercise all of the authority of the Board or the CEO, respectively, as is delegated to them by the Board or CEO respectively, except as prohibited by statute. The delegation of authority to any committee shall not operate to relieve the Board or any member of the board or the CEO from any responsibility imposed by law. Rules governing procedures for meetings of any committee of the Board shall be as established by the Board or, in the absence thereof, by the committee itself. Rules governing procedures for meetings of any committee established by the CEO shall be as established by the CEO.

Section 5.2    <u>Audit Committee.</u>

A. The Audit Committee shall consist of at least three and not more than five members, all of whom shall be members of the Board.

B. The Board shall appoint the members of the Audit Committee and its chair.

C. The Audit Committee shall include at least one member who is a member of the Board and was selected from among individuals nominated by the AAC.

D. The responsibilities of the Audit Committee shall include the following --

    1. to discuss with management and the independent auditor the annual audited financial statements including matters required to be reviewed under applicable legal, regulatory or other requirements;

    2. to discuss with management and the independent auditor, as appropriate, press releases and financial information provided to the public;

    3. to recommend the independent auditor to examine the corporation's accounts, controls and financial statements. The Audit Committee shall have the authority to evaluate and recommend the independent auditor for selection by the Board pursuant to Section 3.23 of these Bylaws. The Audit Committee shall also have the authority to recommend to the Board that the independent auditor be replaced. The Audit Committee shall have the sole authority to approve all audit engagement fees and terms and the Audit Committee must pre-approve any non-audit service provided to the corporation by the corporation's independent auditor.

    4. to discuss with management and the independent auditor, as appropriate, any audit problems or difficulties and management's response, and the corporation's risk assessment and risk management policies, including the corporation's major financial risk exposure and steps taken by management to monitor and mitigate such exposure.

    5. to review the corporation's financial reporting and accounting standards and principles, significant changes in such standards or principles or in their application and the key accounting decisions affecting the corporation's financial statements, including alternatives to, and the rationale for, the decisions made.

    6. to review and approve the internal audit staff function, including: (i) purpose, authority and organizational reporting lines; (ii) annual audit plan, budget and staffing; and (iii) concurrence in the appointment, and compensation of the Director of Internal Audit.

    7. to review, with the CEO, Chief Financial Officer, Director of Internal Audit, General Counsel, independent auditors, and/or others, as the committee deems appropriate, the corporation's internal system of audit and financial controls and the results of internal and independent audits.

    8. to be responsible for establishing procedures creating effective mechanisms for employees and others to make complaints relating to accounting practices, internal accounting controls, or audit matters, with provisions for confidential anonymous submission by employees and others. The Audit Committee shall have access to all complaints concerning the corporation's finances and their disposition, and shall provide safeguards to prevent retaliation against employees and others who make such complaints.

9. to obtain and review at least annually a formal written report from the independent auditor delineating: the auditing firm's internal quality-control procedures; any material issues raised within the preceding five years by the auditing firm's internal quality-control reviews, by peer reviews of the firm, or by any governmental or other inquiry or investigation relating to any audit conducted by the firm. The Audit Committee will also review steps taken by the auditing firm to address any findings in any of the foregoing reviews. Also, to assess auditor independence, the Audit Committee will review at least annually all relationships between the independent auditor and the corporation.

10. to prepare and publish an annual committee report in the corporation's annual report.

11. to recommend policies for the hiring of employees or former employees of the corporation's independent auditor.

12. to meet periodically, separately in executive session with each of management, the corporation's internal auditor, and the corporation's outside auditor. In addition, the Audit Committee, or a designated representative of the Committee, will meet prior to the release of the corporation's financial reports, to review such materials. The corporation's Director of Internal Audit, who is responsible for the corporation's internal audit function, will report functionally to the Audit Committee and operationally to the CEO.

13. to engage in such other functions as are assigned to the Audit Committee by the Board.

Section 5.3    Compensation Committee.

A. The Compensation Committee shall consist of at least three and not more than five members, all of whom shall be members of the Board.

B. The Board shall appoint the members of the Compensation Committee and its chair in consultation with the Nominating and Governance Committee.

C. The Compensation Committee shall include at least one member who is a member of the Board and was selected from among individuals nominated by the AAC.

D. The responsibilities of the Compensation Committee shall be as follows --

1. to assist the Board in developing and evaluating potential candidates for the CEO position, and to oversee the development of executive succession plans;

2. to review and approve on an annual basis the CEO's compensation in light of the Board's expectations, goals, and objectives. The Compensation Committee shall evaluate at least once a year the CEO's performance in light of these established goals and objectives and based upon these evaluations shall set the CEO's annual compensation, including salary, bonus, incentive, and any other compensation;

3. to review and approve on an annual basis the evaluation process and compensation structure for the corporation's senior executive management. The Compensation Committee shall also provide oversight of management's decisions concerning the performance and compensation of other corporation executives, and the corporation's policies concerning benefits, retirement plans and

contributions thereto, relocation benefits, and all other forms of benefits offered to the corporation's employees;

4. to review the corporation's incentive compensation and other compensation plans and recommend changes to such plans to the Board as necessary. The Compensation Committee shall have and shall exercise the authority of the Board with respect to the administration of such plans;

5. to conduct periodic review of the reasonableness of the compensation of the corporation's executives using relevant market benchmarks and survey data;

6. to review regularly management succession planning;

7. to maintain regular contact with the executive leadership of the corporation; and

8. to prepare and publish an executive compensation report in the corporation's annual report and other documents.

Section 5.4    Ethics Committee.

A. The Ethics Committee shall consist of five members. One member of the Ethics Committee shall be a member of the Board and shall also serve as chair of the Ethics Committee. The four (4) other members of the Ethics Committee shall not be members of the Board. The initial Ethics Committee appointed by the initial Nominating and Governance Committee shall function with four members and shall select a temporary chair from among its four members until the new Board is constituted and the new Board selects one of its members to serve as a member and chair of the Ethics Committee.

B. The Nominating and Governance Committee shall appoint the members of the Ethics Committee and its chair. All members of the Ethics Committee, other than the chair, must satisfy the standards of independence for "independent directors" as is set forth in Section 3.4 of these Bylaws. The Ethics Committee shall include at least twenty percent (20%) athletes who have competed as members of United States national teams in the Olympic, Pan American or Paralympic Games, or other major amateur international competition, within the ten (10) years preceding the date when they start serving as members of the committee (or, if they are a member of the Board, within the ten (10) years preceding when they started serving on the Board).

C. The responsibilities of the Ethics Committee shall be as follows -

1. to develop, administer and oversee compliance with the Code of Ethics;

2. to review the ethics and compliance staff functions, including: (i) purpose, authority and organizational reporting lines; (ii) annual ethics and compliance plan, budget and staffing; and (iii) the appointment and compensation of the internal ethics and compliance staff head;

3. to review, with the CEO, Chief Financial Officer, internal compliance staff head, General Counsel, or others, as the committee deems appropriate, the corporation's system of ethics and compliance;

4. to review and investigate any matters pertaining to the integrity of management, including conflicts of interest, or adherence to standards of business conduct as required in the policies of the corporation. This should include regular reviews of the ethics and compliance processes in general and the corporate ethics and compliance education, disclosure, and reporting processes in particular. In

connection with these reviews, the Ethics Committee will meet, as deemed appropriate, with the CEO, General Counsel, the ethics and compliance staff head, and others;

5. to prepare and publish an annual committee report in the corporation's annual report; and

6. to set policies for the hiring of employees or former employees of the corporation's member organizations, vendors/consultants, and Olympic family organizations.

Section 5.5    Nominating and Governance Committee.

A. The Nominating and Governance Committee shall consist of five (5) members.

B. Immediately following the fall 2003 meeting of the Board, the following five groups: the NGB Council, the AAC, the corporation's Public Sector Board of Director members seated at the start of the 2000 Quadrennium who are still members in the fall of 2003, the Independent Commission on Reform, and the corporation's Governance and Ethics Task Force, shall each appoint one individual to be a member of the initial Nominating and Governance Committee. All members of the initial Nominating and Governance Committee must meet the definition of independence as is set forth in Section 3.4 of these Bylaws. At least twenty percent (20%) of the Nominating and Governance Committee members shall be athletes who have competed as members of United States national teams in the Olympic, Pan American or Paralympic Games, or other major amateur international competition, within the ten (10) years preceding the date when they begin serving as members of the committee.

C. The responsibilities of the initial Nominating and Governance Committee shall include to select the initial eight members of the Board who are not members of the IOC, to select the initial Chair of the Board, and to select the initial members of the Ethics Committee. The initial Nominating and Governance Committee shall serve through June 30, 2006, and the members of the new (subsequent) Nominating and Governance Committee shall begin serving on July 1, 2006.

After the term of the initial Nominating and Governance Committee ends, the Board shall appoint two (2) Board members who are not members of the IOC and who are not eligible for re-selection to the Board to serve on each subsequent Nominating and Governance Committee. The three (3) remaining members of the subsequent Nominating and Governance Committee shall be selected one each by the NGB Council, the AAC, and the Multisport Organizations Council from individuals who are not on the existing Board and who meet the definition of independence as is set forth in Section 3.4 of these Bylaws. The Nominating and Governance Committee shall include at least twenty percent (20%) athletes who have competed as members of United States national teams in the Olympic, Pan American or Paralympic Games, or other major amateur international competition, within the ten (10) years preceding the date when they start serving as members of the committee (or, if they are a member of the Board, within the ten (10) years preceding when they started serving on the Board).

D. The responsibilities of the Nominating and Governance Committee shall include the following:

1. to lead the search for individuals qualified to become members of the Board and to select directors. The Nominating and Governance Committee shall select individuals to serve as directors who shall have the highest personal and professional integrity, who shall have demonstrated exceptional ability and judgment, and who shall be most effective, in conjunction with the other nominees to the Board, in collectively serving the long-term interests of the corporation;

2. to review the Board's committee structure and when requested by the Board to recommend to the Board for its approval possible candidates to serve as members of each committee. The Nominating and Governance Committee shall review and recommend committee slates annually and shall recommend additional committee members to fill vacancies, as requested by the Board;

3. to work with the CEO to develop and implement an appropriate orientation program for new directors and continuing education of existing directors;

4. to develop and recommend to the Board for its consideration a set of corporate governance guidelines. The Nominating and Governance Committee shall review the guidelines on an annual basis, or more frequently if appropriate, and recommend changes as necessary; and

5. to develop and recommend to the Board for its consideration an annual self-evaluation process of the Board and its committees. The Nominating and Governance Committee shall oversee the annual self-evaluations.

E. The Nominating and Governance Committee shall select the Board as follows: The Nominating and Governance Committee shall select four members from among those individuals identified by the Committee in cooperation with the Ethics Committee as satisfying the definition of independent director set forth in Section 3.4 of these Bylaws. The NGB Council shall nominate six (6) individuals for the two Board seats to be selected from among NGB nominees, and the Nominating and Governance Committee shall select two (2) directors from among the six (6) nominated by the NGB Council. The AAC shall nominate six (6) individuals for the two Board seats to be selected from among AAC nominees, and the Nominating and Governance Committee shall select two (2) directors from among the six (6) nominated by the AAC. After the selection of the initial directors, if a vacancy occurs or is about to occur in a position of a director selected from among individuals nominated by the NGB Council or the AAC, either because a director's term ended or because a director left the position before the term ended, that council (NGB Council or AAC) shall nominate three (3) individuals to be considered by the Nominating and Governance Committee for selection to be a director. If the term of a director selected from individuals nominated by the AAC or the NGB Council comes to an end (or is ending) before that director has served four years as a director (either because the director was selected to serve an initial two-year term or because the director is serving the end of another director's term) or if that director is the Chair of the Board when his or her initial term on the Board ends, that director shall be eligible to be selected to serve an additional six-year term, shall be considered to have been nominated again by the organization that nominated that director initially, and shall be considered in addition to the other three (3) nominees submitted by that

council. The Nominating and Governance Committee shall then decide whether one of the new nominees should be selected or whether the current director should be selected to serve a six-year term as a director.

Section 5.6    General Board Committee Powers/Requirements.    Each Board committee shall have the authority to delegate any of its responsibilities to a sub-committee or to an individual member of the committee as the Board committee may deem appropriate in its discretion, subject to review and oversight by the Board. Each Board committee shall have the authority to retain such compensation consultants, outside counsel and other advisors as the Board committee may deem appropriate, consistent with the policies, budgets, and controls established by the Board. The Board committee in question shall have the authority to approve related fees and retention terms unless specifically restricted by the Board or restricted by policies established by the Board. Each Board committee shall report its actions and any recommendations and the attendance of its membership to the Board after each committee meeting and shall conduct and present to the Board an annual performance evaluation of the Board committee. Each Board committee shall review at least annually the adequacy of its charter and shall recommend any proposed changes to the Board for review and consideration.

Section 5.7    Term.    The term of committee memberships shall run until the appointment of new committee members as determined by the Board. The absence of any committee member, without adequate excuse, from two or more consecutive meetings may be construed as his/her resignation from such committee by a majority vote of the Board. Members of any corporation committee or task force may be removed for cause upon the affirmative vote of at least two-thirds of the total voting power of the Board, after the member has been provided an opportunity to be heard by the Board. Members of any corporation committee or task force may also be removed not for cause upon the affirmative vote of at least three-fourths of the total voting power of the Board. The Board shall establish fair procedures for notice of allegations and the opportunity for an individual to be heard before any individual is removed from a corporation committee or task force for cause.

Section 5.8    Other Committees/Task Forces.    The Board or the CEO may determine that additional committees or task forces are necessary to assist them in performing their respective functions and obligations and they shall appoint such committees or task forces as they deem appropriate and shall establish such procedures and guidelines and oversight of such committees as they deem necessary to ensure that those committees are accountable for their performance.

## ARTICLE VI

### THE CEO

Section 6.1    There shall be a CEO of the corporation, who shall report to the Board. Internationally, the CEO may also be referred to as the Secretary General of the corporation. The CEO shall be employed by the Board for whatever term the Board deems appropriate and may be removed at any time for or not for cause by the Board without prejudice to the CEO's contract

rights, if any, and the contract of employment between the corporation and the CEO, if any, shall provide that the CEO's employment may be terminated by the Board for cause or not for cause.

Section 6.2    The CEO shall either directly or by delegation, manage all staff functions; determine the size and compensation of, hire and terminate the professional staff in accordance with the corporation's compensation policies and guidelines established by the Compensation Committee and/or the Board; develop a strategy for achieving the mission, goals and objectives of the corporation for consistency with the policies of the Board; be responsible for resource generation and allocation; manage key international and government relationships and coordinate government relations and international activities of staff; act as the corporation's spokesperson; prepare and submit quadrennial and annual budgets to the Board; oversee the activities of all committees and task forces the CEO appoints; and perform such other functions as usually pertain to that office. The CEO shall implement the policies established by the Board and report to the Board concerning the results achieved.

Section 6.3    All official notices intended for the corporation or its Board, or any of its committees or task forces, may be addressed in care of the CEO, who will be responsible for proper attention thereto.

Section 6.4    The CEO shall devote his/her entire time and service to the affairs of the corporation and shall not engage in any other profession or employment (other than reasonable appropriate membership on boards of directors of other organizations as approved by the Ethics Committee and the corporation's Board). The CEO shall receive such salary and other benefits as shall be set forth in the CEO's contract of employment with the corporation, if any.

# ARTICLE VII

## THE OLYMPIC ASSEMBLY

Section 7.1    Once each year, in association with a regularly scheduled Board meeting, the corporation shall hold an Olympic Assembly. Representatives of all members of the corporation and the members of the AAC may choose to attend the Olympic Assembly as well as such others as the Board determines may attend. The Board shall determine the parameters for attendance at the Olympic Assembly, including but not limited to determining a limit on the number of attendees and the amount of travel expenses, if any, that the corporation will pay, associated with the attendance of individuals at the Olympic Assembly.

Section 7.2    The Board shall decide the time, place, and format of the Olympic Assembly. The Board, in conjunction with the CEO, shall provide information to the members of the Olympic Assembly on the affairs of the corporation, which shall include information on the performance of the organization, the financial performance and well being of the corporation, preparations for the Olympic, Pan American, and Paralympic Games, achievement of the corporation's mission, and actions taken, results achieved, and programs being implemented by the corporation.

Section 7.3    At the Olympic Assembly the members of the Olympic Assembly will have an opportunity to provide information and to communicate with the Board and the CEO concerning the performance, policies and other matters related to the corporation. Such input shall be advisory in nature and shall not be deemed to direct the Board or the CEO to take or not take any particular action. The Olympic Assembly shall not conduct or perform any governance functions.

Section 7.4    The Nominating and Governance Committee shall elect an individual to serve a two-year term as the Liaison from the Board to the Olympic Assembly. The Nominating and Governance Committee shall select the single Liaison from the Board to the Olympic Assembly from among six (6) nominees, two (2) submitted by the AAC, two (2) submitted by the NGB Council, and two (2) submitted by the Multisport Organizations Council. The Liaison from the Board to the Olympic Assembly shall work with the Chairs of the AAC, NGB Council, and Multisport Organizations Council and the Liaison shall chair the meetings of the Olympic Assembly. The Liaison from the Board to the Olympic Assembly shall not be a member of the Board, but shall serve as a liaison between the Board and the Olympic Assembly and between the Board and the various constituent councils and organizations of the Olympic Assembly, and shall report to the Board if and as requested by the Board on issues identified by the Board.

Section 7.5    The Board, NGB Council, AAC and Multisport Organizations Council shall each also meet in association with the Olympic Assembly in the same geographic location.

Section 7.6    The Board shall work with the CEO and the Liaison to the Olympic Assembly, along with the chairs of the three councils (NGB Council, AAC, and the Multisport Organizations Council) to design the sessions of the Olympic Assembly so as to facilitate communication between and among the Board, the CEO and senior management of the corporation, and the three councils (NGB Council, AAC, and Multisport Organizations Council) and their members, and to advance and achieve the mission of the corporation.

Section 7.7    Members of the Olympic Assembly may be removed for cause upon the affirmative vote of at least two-thirds of the total voting power of the Board, after the member has been provided an opportunity to be heard by the Board. Members of the Olympic Assembly may also be removed not for cause upon the affirmative vote of at least three-fourths of the total voting power of the Board.

## ARTICLE VIII

## COMPLAINTS AGAINST AN NGB OR PSO

Section 8.1    Complaint Procedure

A. Filing Complaint

1. Any amateur sports organization or person which belongs to, or is eligible to belong to, a NGB or PSO, or any member of the USOC Board, may seek to

compel such NGB or PSO to comply with the requirements of Section 10.5 or 10.6 of these Bylaws and Sections 220522-220525 of the Act by filing a written complaint with the corporation's CEO. A copy of the complaint shall also be served on the applicable NGB or PSO. The party filing the complaint shall file with the corporation proof of service on the NGB or PSO.

2. The complaint shall be in writing and signed under oath by the individual or the chief executive officer of the group or organization making the complaint. The complaint shall set forth the factual allegations in numbered paragraphs, each paragraph containing a single factual allegation, and shall contain, at a minimum, the following –

   a. names and addresses of the parties;
   b. jurisdictional basis of the complaint;
   c. efforts made to exhaust available remedies, or if such remedies have not been exhausted, the grounds upon which the complainant alleges that exhaustion would result in unnecessary delay;
   d. the alleged grounds of noncompliance;
   e. supporting evidence or documentation forming the basis of the complaint; and
   f. the relief sought.

B. Hearing Panel. A complaint filed under this provision shall be heard by a USOC hearing panel. The hearing panel shall consist of a panel of five (5) persons appointed by the USOC Chair. The hearing panel shall consist of one (1) member of the USOC Board or the Olympic Assembly (who shall chair the panel), two (2) individuals who are members of the USOC NGB Council, one (1) individual who is a member of the Multisport Organizations Council, and one (1) individual who is a member of the USOC Athletes' Advisory Council. The hearing panel shall not include any individual having a direct interest, either personally or by virtue of organizational affiliation, in the outcome of the proceeding.

C. Mediation. At the request of a party, the hearing panel may adjourn the proceeding to allow for mediation of the complaint. The hearing panel shall set a deadline for completion of the mediation. The USOC shall appoint a mediator, after consultation with the parties. The mediator shall not be a member of the hearing panel associated with the mediation.

D. Time Computation. In computing any period of time, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is not one of the aforementioned days. The parties may modify any period of time by mutual agreement and consent of the hearing panel. The hearing panel may extend any period of time as it deems necessary.

E. Exhaustion of Remedies.

1. The complainant or person may take such action only after having exhausted all remedies available under the organic documents of such NGB or PSO for correcting deficiencies, unless it can be shown by clear and convincing evidence that those remedies would have resulted in unnecessary delay.

2. The hearing panel shall determine whether the complainant has exhausted its remedies within the applicable NGB or PSO. If the USOC determines that such remedies have not been exhausted, it may direct that such remedies be pursued before the USOC will further consider the complaint.

F. Motion to Dismiss.

1. If the respondent contends that jurisdiction of the complaint is improper, that the complainant has failed to exhaust available remedies, that there is some other procedural or jurisdictional defect that would preclude a hearing on the merits, or that the complaint fails to state a claim upon which relief can be granted, it may move to dismiss the complaint. Such motion to dismiss shall set forth the grounds for dismissal and shall be filed within twenty (20) days after receipt of the complaint by the respondent.
2. The complainant shall be given the opportunity to submit papers in opposition to the respondent's motion to dismiss. The hearing panel shall determine whether or not to have argument on the motion to dismiss.

G. Answer.

1. If no motion to dismiss is filed, the respondent shall file an answer within twenty (20) days after receipt of the complaint by the respondent.
2. If the panel finds against the respondent with respect to its motion to dismiss, it shall direct the respondent to file an answer to the complaint within twenty (20) days after receipt of the denial of the motion to dismiss by the respondent.
3. If the respondent is without sufficient knowledge or information to admit or deny a given factual allegation, the respondent may so respond.

Section 8.2    Exchange of Information.

A. At the request of any party or at the discretion of the hearing panel, the hearing panel may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.
B. At least seven (7) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.
C. The hearing panel is authorized to resolve any disputes concerning the exchange of information.

Section 8.3    Hearing.

A. Provided that the complaint is not dismissed, the hearing panel shall hold a hearing on the complaint. The hearing panel shall set such timelines and other rules regarding the hearing as it deems necessary.
B. At any hearing all parties shall be given a reasonable opportunity to present oral or written evidence, to cross-examine witnesses, and to present such factual or legal claims as desired. Hearings shall be open to the public. In addition, the proceedings shall be stenographically recorded and a verbatim transcript thereof made available to

each interested party upon request and payment of costs associated with providing the transcript. The rules of evidence shall not be strictly enforced; instead, rules of evidence generally accepted in administrative proceedings shall be applicable.

C. The burden of proof shall be upon the complainant who shall also initially have the burden of going forward with the evidence. Upon completion of the presentation of the complainant's evidence, the respondent may move to dismiss for failure to satisfy the burden of proof. If such motion to dismiss is denied, the respondent shall then have the burden of going forward with evidence in opposition to the complaint and in support of its position.

D. The complainant must establish by a preponderance of the evidence that the NGB or PSO does not meet the criteria of Article X, Section 10.7.C of the Bylaws and/or Sections 220522-220525 of the Act.

Section 8.4   Finding.

A. If the hearing panel determines that such NGB or PSO is in compliance with the requirements of Article X, Section 10.5. or 10.6 of these Bylaws and Sections 220522 – 220525 of the Act, it shall so notify the USOC Board, the complainant and such NGB or PSO. The hearing panel shall provide a written decision on its findings.

B. If the hearing panel determines that such NGB or PSO is not in compliance with the requirements of Article X, Section 10.5. or 10.6 of these Bylaws and/or Sections 220522 – 220525 of the Act, it shall notify the USOC Board, the complainant and such NGB or PSO. The hearing panel shall provide a written decision on its findings. Further, the hearing panel shall make a recommendation to the USOC Board as either to place the NGB or PSO on probation or to revoke the recognition of the NGB or PSO.

C. The USOC Board then shall –

   1. place such NGB or PSO on probation for a specified period of time not to exceed one hundred eighty (180) days, which it considers necessary to enable such NGB or PSO to comply with such requirements; or

   2. revoke the recognition of such NGB or PSO.

Section 8.5   Probation.

A. If a NGB or PSO is placed on probation, it shall, at the conclusion of the probationary period, submit a report to the hearing panel as to whether or not it is in compliance. The hearing panel shall then convene to consider the report.

B. If, after considering the report of the NGB or PSO, the hearing panel determines that such NGB or PSO is in compliance with the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522 – 220525 of the Act, it shall it shall so notify the USOC Board, and the NGB or PSO.

C. If, after consideration of the report of the NGB or PSO, the hearing panel determines that such NGB or PSO is not in compliance with the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and/or Sections 220522 – 220525 of the Act, it shall so notify the USOC Board and the NGB or PSO. If the hearing panel

determines that the NGB or PSO has proven by clear and convincing evidence that, through no fault of its own, it needs additional time to comply with such requirements, the hearing panel may recommend to the USOC Board that the probationary period be extended.

D. If, at the end of the probationary period allowed by the USOC, the NGB or PSO has not complied with such requirements, the USOC Board may revoke the recognition of such NGB or PSO.

Section 8.6    Arbitration.

A. There shall be no right of appeal to any other USOC body from a decision of the hearing panel or from a remedy imposed by the USOC Board. Any party that considers itself aggrieved by a decision of the hearing panel on the merits of the complaint or by a remedy imposed by the USOC Board may, within thirty (30) days after such decision or imposition of remedy, file a demand for arbitration with the American Arbitration Association (AAA).

B. A respondent shall be entitled in a demand for arbitration to raise any jurisdictional or procedural objection to the complaint raised in its original motion to dismiss, but determined against it by the panel that considered the jurisdictional or procedural challenge.

C. In the event a demand for arbitration is filed pursuant to the provisions of Section 8.6 of these Bylaws and at least eighty percent (80%) of the voting power of the Board that is present and voting at a Board meeting has voted in favor of a party to the complaint, the USOC shall, at the request of such party, undertake the defense of such party in the arbitration.

D. The arbitral award shall be binding upon the parties thereto, and unless the award is inconsistent with the terms of the Act, these Bylaws, or the rules of the IOC, upon the USOC.

Section 8.7    Application To Replace Procedure.

A. Any amateur sports organization may seek to replace an incumbent as the NGB or PSO for a particular sport by filing with the USOC a written application for such recognition with the USOC CEO. A copy of the application shall also be served on the applicable NGB or PSO. The party filing the application shall file with the USOC proof of service on the NGB or PSO.

B. If two (2) or more organizations file applications for the same sport, the applications shall be considered in a single proceeding.

C. The application shall set forth the factual allegations in numbered paragraphs, each paragraph containing a single factual allegation, and shall contain at a minimum the following -

   1. names and addresses of the parties;
   2. jurisdictional basis of the challenge;
   3. the factual basis upon which, pursuant to the criteria of Article X, Section 10.7.C of these Bylaws and Sections 220522 – 220525 of the Act, the applicant claims that it is entitled to replace the respondent; and

4. the relief sought.

A copy of the applicant's organic documents shall be appended to the application.

Section 8.8    Hearing Panel.

An application filed under this provision shall be heard by a USOC hearing panel. The hearing panel shall consist of five (5) persons appointed by the Chair. The hearing panel shall consist of one (1) member of the USOC Board or the Olympic Assembly (who shall chair the panel), two (2) individuals who are members of the USOC NGB Council, one (1) individual who is a member of the Multisport Organizations Council, and one (1) individual who is a member of the USOC AAC. The hearing panel shall not include any individual having a direct interest, either personally or by virtue of organizational affiliation, in the outcome of the proceeding.

Section 8.9    Mediation.

At the request of a party, the hearing panel may adjourn the proceeding to allow for mediation of the application. The hearing panel shall set a deadline for completion of the mediation. The USOC shall appoint a mediator, after consultation with the parties. The mediator shall not be a member of the hearing panel. The parties shall bear all costs associated with the mediation.

Section 8.10    Time Computation.

In computing any period of time, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is not one of the aforementioned days. The parties may modify any period of time by mutual agreement and consent of the hearing panel. The hearing panel may extend any period of time as it deems necessary.

Section 8.11    Time Limitation.

An amateur sports organization shall file an application --

A. within the one-year (1-year) period after the final day of any Olympic Games in the case of a sport for which competition is held in the Olympic Games or Paralympic Games, or in both the Olympic and Pan American Games; or
B. within the one-year (1-year) period after the final day of any Pan American Games in the case of a sport for which competition is held in the Pan American Games and not in the Olympic Games.

Section 8.12    Motion to Dismiss.

A. If the respondent contends that jurisdiction of the application is improper, that the applicant has failed to exhaust available remedies, that there is some other procedural or jurisdictional defect that would preclude a hearing on the merits, or that the

complaint fails to state a claim upon which relief can be granted, it may move to dismiss the application. Such motion to dismiss shall set forth the grounds for dismissal and shall be filed within twenty (20) days after receipt of the application.

B. The applicant shall be given the opportunity to submit papers in opposition to the respondent's motion to dismiss. The hearing panel shall determine whether or not to have argument on the motion to dismiss.

Section 8.13    Answer.

A. If there is no procedural or jurisdictional objection to the application, the respondent must file an answer within twenty (20) days after receipt of the application by the respondent.

B. If the panel finds against the respondent with respect to its motion to dismiss, the panel shall direct the respondent to file an answer to the application within twenty (20) days after receipt of the denial of the motion to dismiss by the respondent.

C. If the respondent is without sufficient knowledge or information to admit or deny a given factual allegation, the respondent may so respond.

Section 8.14    Exchange of Information.

A. At the request of any party or at the discretion of the hearing panel, the hearing panel may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.

B. At least seven (7) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

C. The hearing panel is authorized to resolve any disputes concerning the exchange of information.

Section 8.15    Hearing.

A. Provided that the application is not dismissed, the hearing panel shall hold a hearing on the application. The hearing panel shall set such timelines and other rules regarding the hearing as it deems necessary.

B. The USOC shall publish notice of the time and place of such hearing in a regular issue of its principal publication at least thirty (30) days, but not more than sixty (60) days, prior to the date of the hearing. The parties, at the direction of the hearing panel, shall send written notice, including a copy of the application, at least 30 days prior to the date of the hearing to all amateur sports organizations known to the USOC in that sport.

C. At any hearing all parties shall be given a reasonable opportunity to present oral or written evidence, to cross-examine witnesses, and to present such factual or legal claims as desired. Hearings shall be open to the public. In addition, the proceedings shall be stenographically recorded and a verbatim transcript thereof made available to each interested party upon request and payment thereof. The rules of evidence shall not be strictly enforced; instead, rules of evidence generally accepted in administrative proceedings shall be applicable.

D. The burden of proof shall be upon the applicant who shall also initially have the burden of going forward with the evidence. Upon completion of the presentation of the applicant's evidence, the respondent may move to dismiss for failure to sustain the burden of proof. If such motion to dismiss is denied, the respondent shall then have the burden of going forward with evidence in opposition to the challenge and in support of its position.

E. The applicant must establish by a preponderance of the evidence that –

1. it meets the criteria for recognition as a NGB or PSO under Article X, Section 10.5 or 10.6 of these Bylaws and Section 220522 of the Act; and

2. (i)the NGB or PSO does not meet the criteria of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522 – 220525 of the Act; or

3. (ii) the applicant more adequately meets the criteria of Article X, Section 10.5 or 10.6 of these Bylaws and Section 220522 of the Act, is capable of more adequately meeting the criteria of Sections 220523-220524 of the Act, and provides, or is capable of providing, a more effective national and international program of competition than the NGB or PSO in the sport for which it seeks recognition.

Section 8.16   Finding.

A. If the hearing panel determines that such NGB or PSO should continue as the NGB or PSO for its sport the hearing panel shall so notify the USOC Board, the applicant and such NGB or PSO. The hearing panel shall provide a written decision that shall include the findings of the hearing panel and shall explain the basis for its decision.

B. If the hearing panel determines that such NGB or PSO would have retained recognition except for a minor deficiency in one of the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522-220525 of the Act the hearing panel shall so notify the USOC Board, the applicant and the NGB or PSO. The hearing panel shall provide a written decision explaining its findings. The hearing panel shall also make a recommendation to the USOC Board to place the NGB or PSO on probation for a specified period of time not to exceed one hundred-eighty (180) days, pending compliance by the NGB or PSO.

C. If the hearing panel determines that the recognition of such NGB or PSO should be revoked, it shall it shall so notify the USOC Board, the applicant and such NGB or PSO. The hearing panel shall provide a written decision explaining its findings. Further, the hearing panel shall make a recommendation to the USOC Board either to –

1. declare a vacancy in the NGB or PSO for that sport; or

2. recognize the applicant as the NGB or PSO.

D. The USOC Board then shall –

    1. place such NGB or PSO on probation for a specified period of time not to exceed one hundred eighty (180) days, which it considers necessary to enable such NGB or PSO to comply with such requirements; or

    2. revoke the recognition of such NGB or PSO and declare a vacancy in the NGB or PSO for that sport; or

    3. revoke the recognition of such NGB or PSO and recognize the applicant as the NGB or PSO for that sport.

Section 8.17   <u>Probation</u>.

A. If a NGB or PSO is placed on probation, it shall, at the conclusion of the probationary period, submit a written report to the hearing panel explaining and detailing whether or not it is in compliance. The NGB or PSO shall provide a copy of that report to the applicant.

B. If, after considering the report of the NGB or PSO, the hearing panel determines that such NGB or PSO is in compliance with the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522-220525 of the Act, the hearing panel shall so notify the USOC Board, the applicant, and the NGB or PSO.

C. If, after consideration of the report of the NGB or PSO, the hearing panel determines that such NGB or PSO is not in compliance with the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522-220525 of the Act, the hearing panel shall so notify the USOC Board, the applicant, and the NGB or PSO.

D. If, at the end of the probationary period allowed by the USOC, the NGB or PSO has not complied with such requirements, the USOC Board shall revoke the recognition of such NGB or PSO and either –

    1. recognize the applicant as the NGB or PSO; or

    2. declare a vacancy in the NGB or PSO.

Section 8.18   <u>Arbitration</u>.

A. There shall be no right of appeal to any other USOC body from a decision of the hearing panel or from a remedy imposed by the USOC Board. Any party that considers itself aggrieved by a decision of the hearing panel on the merits of the hearing panel's decision concerning the application or by a remedy imposed by the USOC Board may, within thirty (30) days after such decision or imposition of remedy, file a demand for arbitration with the American Arbitration Association (AAA).

B. A respondent shall be entitled in a demand for arbitration to raise any jurisdictional or procedural objection to the application raised in its original motion to dismiss, but determined against it by the hearing panel that considered the jurisdictional or procedural challenge.

C. In the event a demand for arbitration is filed pursuant to the provisions of Section 8.18.A of these Bylaws and at least eighty percent (80%) of the voting power of the Board that is present and voting at a Board meeting has voted in favor of a party to

the complaint, the USOC shall, at the request of such party, undertake the defense of such party in the arbitration.

D. If the final arbitration award upholds the claim of an amateur sports organization to replace the incumbent as the NGB or PSO for its sport:

    1. Such organization shall be deemed elected to Olympic membership, and the membership of the incumbent shall be deemed terminated without further action of the Board; and

    2. The incumbent shall cease to exercise the authority of a NGB or PSO as specified in Section 220523 of the Act.

    3. The Board shall, within sixty-one (61) days after such award, recommend and support in any appropriate manner the new NGB or PSO to the appropriate international sports organization for recognition by such federation or organization as the United States NGB or PSO in that sports, any provision to the contrary in Article X of these Bylaws notwithstanding. Such action shall include, without limitation, formally advising such federation of the decision of the Board and recommending acceptance of such action by the Federation as well.

E. In the event that there is a significant delay in the acceptance of the new NGB or PSO as the United States member in such federation, the Board shall take any and all interim steps that may be necessary, but which are not inconsistent with the other requirements of Article VIII of these Bylaws or Section 220529 of the Act, to protect the right of United States athletes to participate in international amateur athletic competition.

F. The arbitral award shall be binding upon the parties thereto, and unless the award is inconsistent with the terms of the Act, these Bylaws, or the rules of the IOC, upon the USOC.

## ARTICLE IX

## ATHLETES' RIGHTS

Section 9.1    No member of the corporation may deny or threaten to deny any amateur athlete the opportunity to participate in the Olympic Games, the Pan American Games, the Paralympic Games, a World Championship competition, or other such protected competition as defined in Section 1.3.P of these Bylaws nor may any member, subsequent to such competition, censure, or otherwise penalize, (1) any such athlete who participates in such competition, or (2) any organization which the athlete represents. The corporation shall, by all reasonable means at its disposal, protect the right of an amateur athlete to participate if selected (or to attempt to qualify for selection to participate) as an athlete representing the United States in any of the aforesaid competitions.

Section 9.2    Any amateur athlete who alleges that he/she has been denied by a corporation member a right established by Section 9.1, shall immediately inform the CEO, who shall cause an investigation to be made and steps to be taken to settle the controversy without delay. Without prejudice to any action that may be taken by the corporation, if the controversy

is not settled to the athlete's satisfaction, the athlete may submit to any regional office of the AAA ("AAA") for binding arbitration, a claim against such corporation member documenting the alleged denial as soon as is reasonably practicable, but not later than six (6) months after the date of denial. The athlete may submit the claim to the AAA simultaneously with the athlete's informing the CEO of the claim and the athlete does not have to wait for the CEO's investigation, but may pursue the claim immediately before the AAA. The AAA, however, (upon request by the athlete in question) is authorized, upon forty-eight (48) hours' notice to the parties concerned, and to the corporation, to hear and decide the matter under such procedures as the AAA deems appropriate, if the AAA determines that it is necessary to expedite such arbitration in order to resolve a matter relating to a competition which is so scheduled that compliance with regular procedures would not be likely to produce a sufficiently early decision by the Association to do justice to the affected parties. By maintaining membership in the corporation, each member agrees that any such aforesaid controversy may be submitted to binding arbitration as provided in this Section and furthermore agrees to be bound by the arbitrators' award as a result thereof.

Section 9.3    In any arbitration brought pursuant to this Article involving selection of an athlete to participate in a protected competition, the athlete submitting the controversy to the AAA must include with the initial submission a list of all persons that the athlete believes may be adversely affected by the arbitration. The member against which the arbitration has been filed must then promptly submit to the AAA a list of the persons it believes may be adversely affected by the arbitration, along with the relevant contact information for the persons identified by the member and by the athlete. The arbitrator then shall promptly determine which additional persons must receive notice of the arbitration. The athlete then shall be responsible for providing appropriate notice to these persons. Any person so notified then shall have the option to participate in the arbitration as a party, however, all persons so notified shall be bound by the results of the arbitration regardless of their decision to participate.

Section 9.4    No claim that has previously been adjudicated by the independent anti-doping organization designated by the corporation to conduct drug testing may be brought with the AAA under this Article.

Section 9.5    Notwithstanding any other provision of this Article, the final decision of a referee during a competition regarding a field of play decision (a matter set forth in the rules of the competition to be within the discretion of the referee) shall not be reviewable by an arbitrator or the subject of a demand for arbitration unless the decision is (1) outside the authority of the referee to make or (2) the product of fraud, corruption, partiality or other misconduct of the referee. For purposes of this Section, the term "referee" shall include any individual with discretion to make field of play decisions.

Section 9.6    Any amateur athlete, who alleges that he/she has been denied (whether or not by a member) an opportunity to compete in any international amateur athletic competition not protected by the terms of Section 9.1 of these Bylaws shall immediately inform the CEO, who will consult with legal counsel to determine whether the situation appears to be of sufficient seriousness and relevance to the obligation or responsibilities of the corporation to warrant action by the corporation in support of the athlete's claim.

Section 9.7     The rights granted to athletes under Sections 9.1 through 9.3 of these Bylaws shall equally apply to any coach, trainer, manager, administrator, or other official seeking to participate in the conduct of any of the international amateur athletic competitions designated, or referred to, in Section 9.1.

Section 9.8     Whenever a complaint is filed with the corporation pursuant to this Article, the CEO shall --

A. promptly notify the Chair of the AAC, the president of the NGB or PSO of the sport involved and the Athlete Ombudsman of the complaint by telephone;
B. provide the Chair of the AAC, the President of the NGB or PSO and the Athlete Ombudsman with a copy of the complaint; and
C. investigate the allegations of the complaint.

Section 9.9     With respect to the complaints filed pursuant to Sections 9.1 and 9.2, the CEO is specifically authorized, in circumstances as he/she may deem appropriate, to authorize legal action by the corporation in support of the athlete, or to finance legal action taken by the athlete (including arbitration) against the corporation member in order to protect the rights of an athlete as specified in Section 9.1. The CEO's decision whether or not to authorize or finance legal action in support of the athlete's claim shall not be construed as an opinion of the corporation with respect to the merits of the athlete's claim.

Section 9.10     With respect to complaints filed pursuant to Section 9.6, the CEO, within forty-eight (48) hours after the filing of the complaint, shall consult with the corporation's General Counsel and determine whether the situation appears to be of sufficient seriousness and relevance to the obligation or responsibilities of the corporation to warrant action by the corporation in support of the athlete's claim. If the CEO determines that action by the corporation appears to be warranted, the matter shall be referred within ninety-six (96) hours of the filing of the complaint to the Board, which shall decide the nature and extent of the action to be taken. In any event, the filing of all complaints under Section 9.3 shall be reported by the CEO to the Board. The report shall contain a brief statement of facts, the status of the investigation (if still ongoing), and any recommendations or final disposition of the matter.

Section 9.11     In determining the nature and extent of the action to be taken pursuant to Sections 9.2 or 9.6 above, the Board may authorize appropriate action, which may include supporting legal actions taken by the athlete against an amateur sports organization that is not a member when it appears that this is the most effective remedy for the protection of the athlete's rights and the athlete so requests.

Section 9.12     No action taken by or on behalf of a complainant under this Article IX shall preclude or act as a bar to the filing of a complaint pursuant to Article VIII of these Bylaws.

## ARTICLE X

## MEMBERS

Section 10.1    The Board shall have the power to elect properly qualified organizations to membership in each of the categories of membership listed in Sections 10.4 through 10.12 of these Bylaws, to transfer a member organization from one group to another, and to approve continued recognition as a member. The Board also has the power to review all matters relating to the continued recognition of any of the organizations listed in Sections 10.4 through 10.12 of these Bylaws and may take such action as it considers appropriate, including, but not limited to, placing conditions upon the continued recognition of the organization and suspending or terminating such recognition, provided that notice of any such proposed action shall be given to the interested parties prior to the meeting at which such action is to be taken. The Board shall specify the date upon which the rights and duties of new and transferred members shall be come effective. If no date is specified, such rights and duties shall be become effective immediately.

Section 10.2    Membership.  The membership of the corporation shall be confined to --

A. organizations of the United States as hereinafter provided in this Article and hereinafter referred to as "Members"; and

B. individuals as hereinafter provided in this Article and hereinafter referred to as "Associate Members".  In addition, individuals may be otherwise associated with, and recognized by, the corporation by virtue of their current or past activities in the affairs of the corporation or in the Olympic, Pan American or Paralympic Games as provided elsewhere in these Bylaws.

Section 10.3    Eligibility.

A. Organizations eligible for membership shall be those which take some active part in the administration of one or more sports or competitions on the program of the Olympic, Pan American or Paralympic Games and such other organizations (patriotic, educational, or cultural) that are engaged in efforts to promote the participation in, or preparation for, amateur athletic competition.

B. Organizations which, as a part of their duties, administer participation in, or preparation for, professional sports shall not be ineligible for membership if they also administer a bona fide program of amateur athletic competition.

C. Organizations which are purely commercial or political in character are not eligible for membership.

Section 10.4    Members of the Olympic Assembly.    Organizations which meet the requirements for membership as Olympic, Pan American or Pan American Sports Organizations, Community-Based Multisport Organizations, Education-Based Multisport Organizations, Armed Forces Organizations, Affiliated Sport Organizations, or Other Sport Organizations shall be entitled to participate as members of the Olympic Assembly.  The list of member organizations of the corporation shall be made available upon request to any member of the corporation.

Section 10.5    Olympic, Paralympic, and Pan American Sport Organizations.

A. Eligibility for membership as Olympic Sport Organizations shall be limited to those amateur sports organizations which are recognized by the corporation as the NGBs for sports which have competed on the program of the Olympic Games. The term "sports which have competed on the program" means sports which have been approved to participate as medal sports at the next Olympic Games. Each Olympic Sport Organization shall be identified with a sport included on the program of the next Olympic Games. In accordance with the IOC's *Olympic Charter*, the corporation shall not recognize more than one (1) NGB in each sport. Olympic Sport Organizations shall be United States members of IFs recognized by the IOC.

B. Eligibility for membership as Pan American Sport Organizations shall be limited to those amateur sports organizations which are recognized by the corporation as the NGBs for sports which have competed on the program of the Pan American Games. Each Pan American Sport Organization shall be identified with a sport included on the program of the next Pan American Games. In accordance with the IOC's *Olympic Charter*, the corporation shall not recognize more than one (1) NGB in each sport. Pan American Sport Organizations shall be United States members of IFs recognized by the IOC. The term "sports which have competed on the program" means sports which competed as medal sports in either of the immediate past two (2) Pan American Games; and which have been:

   1. approved to participate as medal sports in the next Pan American Games,
   2. designated by the organizing committee to compete as medal sports in such Games, and
   3. confirmed by PASO to be on the schedule of the next such Games (confirmed by PASO shall be defined as reported by PASO on a year to year basis). A Pan American Sport Organization that participated in the immediate past Pan American Games is eligible to remain a Pan American Sport Organization until determined that it is not included on the program of the next Games.

C. No amateur sports organization is eligible to be recognized nor is it eligible to continue to be recognized as a NGB unless it complies with Sections 220522 through 220525 of the Act.

D. For any sport which is included on the program of the Paralympic Games, the corporation is authorized to designate, where feasible and when such designation would serve the best interest of the sport, and with the approval of the affected NGB, a NGB recognized under Article X to govern such sport.

Section 10.6   Paralympic Sports Organization.   Where designation of a NGB is not feasible or would not serve the best interest of the sport, the corporation is authorized to recognize an amateur sports organization as a PSO. Any such PSO shall comply with the criteria for NGBs applicable to Olympic and Pan American Sport Organization members, and shall perform those duties, and have those powers that the corporation, in its sole discretion, determines are appropriate to meet the objects and purposes of the Act and these Bylaws. Notwithstanding anything to the contrary in Section 10.5 of these Bylaws, a PSO shall not be required to demonstrate that it is autonomous from the corporation. Notwithstanding anything to the contrary in Section 10.5 of these Bylaws a PSO may, with the approval of the corporation, govern more than one sport

included on the program of the Paralympic Games. A PSO shall be a member of each International Sports Organization of the sport or sports it governs.

Section 10.7   Community-Based Multisport Organizations.   Eligible for membership as Community-Based Multisport Organizations shall be those amateur sports organizations in the United States which directly or indirectly conduct a national program or regular national amateur athletic competition in two (2) or more sports which are included on the official program of the Olympic, Pan American or Paralympic Games on a level of proficiency appropriate for the selection of amateur athletes to represent the United States in unrestricted international amateur athletic competition and are not Armed Forces or Education-Based Multisport Organizations.

Section 10.8   Education-Based Multisport Organizations.   Eligible for membership as Education-Based Multisport Organizations shall be those sports organizations comprised of member educational institutions regularly conducting programs in sports which are included on the program of the Olympic and Pan American Games on a level of proficiency appropriate for the selection of amateur athletes to represent the United States in athletic competition and which base the eligibility of athletes upon enrollment in an educational institution sanctioned by a national accrediting body.

Section 10.9   Armed Forces Organizations.   Eligible for membership as Armed Forces Organizations shall be the Army, Navy, Air Force, and Marines.

Section 10.10   Affiliated Sport Organizations.   Eligible for membership as Affiliated Sport Organizations shall be those national amateur sports organizations, not eligible to be constituents of Olympic or Pan American Sport Organization members, that function as NGBs in amateur sports which are not on the program for the Olympic or Pan American Games, but which are widely practiced in this and other countries and continents, and whose international sports federations are recognized by the IOC and which comply with each of the following criteria --

    A. comply substantially with the criteria for NGBs applicable to Olympic and Pan American Sport Organization members; and

    B. have been incorporated as not-for-profit organizations in the United States and been granted tax-exempt status by the Internal Revenue Service; and

    C. administer and support an annual national championship of athletes from several different areas/regions of the United States; and

    D. have an active athlete training and competition program financially supported by self-generated funds; and

    E. participated with a full contingent in two (2) of the last three (3) World Championships as sanctioned by their appropriate IF; and

    F. demonstrate that its IF has achieved or is reasonably approaching all requirements defined by the IOC regarding the number of member NOCs for future inclusion, and that the sport meets all IOC requirements regarding rules and regulations for competition in the Olympic Games, and that the IF has made application to the IOC as a sport eligible for future inclusion; and/or

    G. demonstrate that its IF has achieved or is reasonably approaching all requirements defined by PASO regarding the number of member NOCs for future inclusion, and that

the sport meets all PASO requirements regarding rules and regulations for competition in the Pan American Games, and that the IF has made application to the PASO as a sport eligible for future inclusion as a medal sport on the competition program of the Pan American Games.

Section 10.11 <u>Other Sport Organizations</u>. Eligible for membership as Other Sport Organizations shall be those national sports organizations not eligible to be recognized in any of the other categories of membership that are recognized by the Board as organizations that should be included in the Olympic Assembly to advance the mission of the corporation. One organization eligible for membership as an Other Sport Organization shall be the United States Olympic Alumni Association.

Section 10.12 <u>Associate Members</u>. Individuals eligible for associate membership shall be those whose financial support of the efforts of the corporation meets such conditions as may be determined by the Board. Associate membership carries with it no voting or other representational rights related to the decisions or activities of the corporation.

Section 10.13 <u>Dues</u>. The Board shall fix the amount of annual dues, if any, for each member organization of the corporation. Such dues shall be fixed on an equitable basis and shall be due and payable on the first day of January each year. A member's failure to pay its dues by the first day of February, or by the date of a regular or special meeting of the Board in that year, whichever is earlier, shall suspend all membership privileges of the delinquent members, including participation in the Olympic Assembly, until all arrearages are paid. Membership shall be terminated automatically if the delinquent member remains in arrears for dues by the first day of February of the next succeeding year.

Section 10.14 <u>General Procedures Applicable to Membership Matters</u>. Except as otherwise expressly provided in these Bylaws, all questions relating to membership in the USOC shall be decided by the Board, after a report by the CEO.

Section 10.15 <u>Organization Applications for Membership; Public Hearings</u>. An amateur sports organization that desires to become a member of the corporation, or which desires to transfer membership from one membership group to another, shall apply in writing to the corporation through the CEO. Applications made under this Section shall be of sufficient detail to demonstrate that the applicant meets the criteria for membership in the group for which application is made. Prior to action by the Board on an application for membership transfer, the CEO shall submit a written report with recommendations to the Board showing the facts that relate to the proposed action. In the case of an application for membership as an Olympic or Pan American Sport Organization, prior to preparing his or her report to the Board, the CEO shall hold at least two (2) public hearings concerning the application for membership. The USOC shall publish on its website, not less than thirty (30) days nor more than sixty (60) days prior to the date of each hearing, a notice of the time, place, and nature of such hearing. The corporation shall send written notice, which shall include a copy of the application, at least thirty (30) days prior to the date of any such public hearing to all amateur sports organizations in that sport that are known to the corporation. At such hearing, the CEO or the CEO's designee shall afford both the applicant organization and any other interested parties an opportunity to comment on the

merits of the application, and the CEO shall summarize in the CEO's report to the Board the comments so received. If the CEO determines, the CEO may (but is not required to) follow the foregoing procedure in the case of applications for membership by other sports organizations that are members of the USOC.

Section 10.16 Notwithstanding the provisions of Section 10.14, the membership of an Olympic, Pan American or Paralympic Sports Organization may be acted upon, by action of the Board, pursuant to the terms of Article VIII of these Bylaws. Notwithstanding the provisions of Section 10.14, in the event that a change in Olympic, Pan American or Paralympic Sports Organization membership occurs pursuant to Article VIII, whether by action of the corporation or by award of AAA arbitration, the provisions of Section 8.18.C of these Bylaws shall apply.

Section 10.17 Any action by the corporation to suspend, revoke, or otherwise deal with the membership of an Olympic, Pan American or Paralympic Sports Organization pursuant to the provisions of Section 220521(d) of the Act and Section 10.1 of these Bylaws shall be taken only at the initiative of the CEO and shall be finally determined by the Board after hearing and report to the Board by the CEO.

A. The initiative for the proposed action shall be in the form of a complaint by the CEO, and the procedures set forth in Sections 10.14 – 10.17 shall apply, except –

1. that any procedural or jurisdictional objections by the Olympic, Pan American, or Paralympic Sports Organization member shall not be the subject of a separate hearing, and shall be raised by the Olympic, Pan American, or Paralympic Sports Organization member in its answer to the complaint, and

2. that the hearing of the matter shall be by a hearing panel composed of three (3) to five (5) persons selected by the CEO to hear the matter. The hearing panel shall include at least twenty percent (20%) athletes who have competed as members of United States national teams in the Olympic, Pan American or Paralympic Games, or other major amateur international athletic competition, within the ten (10) years preceding the date when they start serving as a member of the hearing panel.

B. Upon conclusion of its hearing, the CEO or the CEO's hearing panel shall prepare a report for the Board, setting forth its conclusions on any procedural or jurisdictional matter raised by the Olympic, Pan American or Paralympic Games Organization member, and its conclusion on the merits it determines there are no procedural or jurisdictional defects. If the CEO and the CEO's hearing panel find that the complaint is well taken, its report to the Board shall also include a recommendation as to the course of action to be taken by the Board.

C. At its next meeting following the issuance of the report, the Board shall receive the report. No further hearing shall be held by the Board on any procedural or jurisdictional matter decided by the Board or any decision by the Board on its merits. The Board shall consider only whether to accept the recommendation of the CEO as to the action to be taken, if any, against the Olympic, Pan American or Paralympic

Sports Organization member which it believes is appropriate on the basis of the CEO's report.

D. The action of the Board on the matter shall be final.

# ARTICLE XI

## CODE OF ETHICS FOR VOLUNTEERS, STAFF AND MEMBER ORGANIZATIONS

**Section 11.1** Code of Ethics. The Board shall adopt a Code of Ethics for members of the Board, committees, task forces, member organizations associated with the corporation, the CEO, all corporation employees, and others who are associated with the corporation (the "Code"). The Code shall establish minimum standards for the conduct of corporate personnel, including staff. All member organizations shall comply with the requirements of the Code, when representing the corporation or participating in corporation activities or events. Violations of the Code shall be handled in the manner specified in the Code. Amendments to the Code shall require a recommendation of the Ethics Committee and the approval of two-thirds of the voting power of the directors present at a meeting of the Board.

**Section 11.2** Affirmative Obligation to Promote Ethical Conduct. All corporation personnel should promote ethical behavior and take steps to ensure that the corporation: (a) encourages employees, Board, committee, and task force members and others associated with the corporation to address ethical concerns, and to talk to supervisors, managers, and the Ethics Officer, when in doubt about the best course of action in a particular situation; (b) encourages everyone associated with the corporation to report, on a confidential basis, violations of laws, rules, regulations or the Code to the Ethics Officer or the Ethics Committee; and (c) informs corporation personnel that the corporation will not allow retaliation for reports made in good faith concerning ethical behavior or the violation of laws, rules, regulations, or the Code.

**Section 11.3** Written Standards. The corporation shall develop, maintain, and distribute written standards of conduct, as well as written policies, procedures and protocols, that promote the corporation's commitment to compliance with such standards and address specific areas of potential infractions..

**Section 11.4** Compliance Officer. The corporation shall designate an ethics officer at the executive level who shall report functionally to the Ethics Committee and operationally to the CEO and shall be charged with the responsibility for developing, operating, and monitoring the corporation's ethics program, subject to oversight by the Ethics Committee.

**Section 11.5** Education and Training. The corporation shall develop and maintain regular and effective education and training programs for all affected corporation employees, officers, directors, committee and task force members, and volunteers, and others associated with the corporation.

**Section 11.6** Effective Communication. The corporation shall ensure that an effective line of communication exists between the ethics officer and all corporation employees, officers,

directors, committee members, and volunteers, and others associated with the corporation, including maintaining a process, such as a hotline or other reporting system, to receive complaints and the adoption of procedures to protect the anonymity of complainants and to protect complainants from retaliation based on their reporting of ethics or compliance issues.

Section 11.7  Monitoring.  The corporation shall use audits and other risk evaluation techniques to monitor compliance and identify problem areas affecting the corporation and its employees, officers, directors, committee and task force members, and volunteers, and others associated with the corporation.

Section 11.8  Investigation.  The corporation shall develop and maintain policies and procedures with respect to the investigation of identified systemic problems, which include direction regarding the prompt and proper response to detected offenses, such as the initiation of appropriate corrective action and preventive matters.

Section 11.9  Reporting Systems.  The corporation shall develop and maintain a system to respond to allegations of illegal, unethical, or improper activities and enforcement of appropriate disciplinary action against the corporation's employees, officers, directors, committee and task force members, volunteers, and others associated with the corporation who have violated internal compliance policies, applicable statutes, regulations, or other corporation requirements.

Section 11.10  Member Organizations and Bid Cities.  The corporation shall require its member organizations and any bid city organizations to implement procedures that comply with the requirements of Sections 11.3 through 11.9.

# ARTICLE XII

## ATHLETES' ADVISORY COUNCIL AND ATHLETE REPRESENTATION

Section 12.1  There shall be an AAC composed of, and elected by, amateur athletes to ensure communication between the corporation and currently active athletes, and to serve as a source of opinion and advice to the Board with regard to both current and contemplated policies of the corporation.  The AAC shall consist of at least one (1) athlete from each NGB elected by athletes having competed at the appropriate level in the sport governed by that NGB, two (2) athletes elected by athletes having competed at the appropriate level in the sports governed by either PSOs or NGBs designated to govern a Paralympic sport and six (6) athletes elected by the AAC to serve at-large on the AAC.  The AAC shall meet regularly and in accordance with the budget approved by the Board.  The AAC shall operate in accordance with bylaws adopted by the members of the AAC.

Section 12.2  Election to membership in the AAC shall be made in accordance with provisions of the AAC Bylaws.  Elected athletes shall serve until their successors are elected unless removed for cause or not for cause pursuant to the Bylaws of the AAC.

Section 12.3    Athlete representatives shall equal 100% of the AAC, at least 20% of the voting power of the Board of the corporation and at least 20% of the membership and voting power of all corporation committees, task forces and other such groups operating under the authority of the Board or CEO.    For purposes of this Section, athlete representatives must have represented the United States in the Olympic, Pan American or Paralympic Games, World Championships, or an event designated as an Operation Gold event within the ten (10) years preceding election.

Section 12.4    Athlete representatives to the AAC (1) representing Olympic and Pan American sports, must be directly elected by athletes from their NGB who meet the standard set forth in Section 12.3 at the time of election, (2) representing Paralympic sports, must be directly elected by athletes from either PSOs or NGBs designated to govern a Paralympic sport who meet the standard set forth in Section 12.3, and (3) who are at-large members of the AAC must be directly elected by athletes serving on the AAC. Athlete representatives to the Board shall be recommended to the Nominating and Governance Committee by members of the AAC from among the athletes who meet the standard set forth in Section 12.3 at the time they would take office, and the Nominating and Governance Committee may also consider other athletes who meet the definition of independence set forth in Section 3.2 of these Bylaws to serve as independent directors on the Board, as provided in these Bylaws.    Athlete representatives on corporation committees, task forces and other such groups shall be appointed with the approval of the AAC from among the athletes who meet the standard set forth in Section 12.3.

Section 12.5    Each NGB shall adopt and submit to the corporation, consistent with policies established by the AAC, a procedure whereby eligible athletes as defined in Section 18.7(B) shall elect an active athlete to represent the Olympic or Pan American sport governed by the NGB on the AAC. The PSOs and NGBs designated to govern a Paralympic sport, collectively, shall adopt and submit to the corporation, consistent with policies established by the AAC, a procedure whereby eligible athletes as defined in Section 12.3 above shall elect eligible athletes to represent the Paralympic sports on the AAC.    The term for members of the AAC shall commence and shall terminate as provided in the bylaws of the Athletes' Advisory committee.

## ARTICLE XIII

## NATIONAL GOVERNING BODIES COUNCIL

Section 13.1    There shall be a NGB Council whose members shall be representatives of the NGBs and PSOs selected by their boards of directors or such other governing boards to ensure effective communication between the corporation and such NGBs and PSOs.

Section 13.2    Each member of the NGB Council shall serve until replaced by the NGB or PSO that appointed them, unless removed for cause or not for cause by the NGB Council pursuant to fair procedures as provided for in the NGB Council bylaws.

Section 13.3    The NGB Council shall operate in accordance with bylaws adopted by the members of the NGB Council.  The NGB Council shall elect its own officers and shall meet and

conduct business as necessary and in accordance with its bylaws and the budget approved by the Board.

## ARTICLE XIV

## MULTISPORT ORGANIZATIONS COUNCIL

Section 14.1   There shall be a Multisport Organizations Council whose members shall be one representative of each of the Multisport Organizations (Community-Based Multisport Organizations, Education-Based Multisport Organizations, Armed Forces Organizations, and Affiliated Sport Organizations) selected by their boards of directors or such other governing boards to ensure effective communication between the corporation and such Multisport Organizations.

Section 14.2   Each member of the Multisport Organizations Council shall serve until replaced by the Multisport Organization that appointed them, unless removed for cause or not for cause by the Multisport Organizations Council pursuant to fair procedures as provided for in the Multisport Organizations Council bylaws.

Section 14.3   The Multisport Organizations Council shall operate in accordance with bylaws adopted by the members of the Multisport Organizations Council.   The Multisport Organizations Council shall elect its own officers and shall meet and conduct business in accordance with its bylaws.

## ARTICLE XV

## INDEMNIFICATION

Section 15.1   The corporation shall indemnify each of its present or former directors, officers, employees or official representatives, or any person who is or was serving another corporation or other entity in any capacity at the request of the corporation, against all expenses actually and reasonably incurred by such person (including, but not limited to, judgments, costs and counsel fees) in connection with the defense of any pending or threatened litigation to which such person is, or is threatened to be made, a party because such person is or was serving in such capacity. This right of indemnification shall also apply to expenses of litigation which is compromised or settled, including amounts paid in settlement, if the corporation shall approve such settlement as provided in Section 15.2 of these Bylaws.   Such person shall be entitled to be indemnified if he/she acted in good faith and in a manner he/she reasonably believed to be in, and not opposed to, the best interests of the corporation.   The termination of any litigation by judgment, order, settlements, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner reasonably believed to be in, and not opposed to, the best interests of the corporation.

Section 15.2   Any amount payable as indemnification under this Article shall be determined and paid by the corporation pursuant to a determination by a majority vote of a quorum

of the Board, consisting of members of the Board who have not incurred expenses in connection with the litigation for which indemnification is sought, that such person seeking indemnification has met the standards of conduct set forth in this Article. If such a quorum is not obtainable, or even if obtainable, a quorum of disinterested directors so directs, such determination shall be made either –

A. by the Board upon the opinion in writing of independent legal counsel that indemnification is proper in the circumstances because the applicable standard of conduct set forth in this Article has been met; or
B. by a majority vote of the members of the Board upon a finding that the person seeking indemnification has met the applicable standard of conduct set forth in this Article.

Section 15.3    Any expenses incurred by such person in connection with the defense of any litigation may be made by the corporation in advance of a final disposition of such litigation upon receipt of an undertaking by such person to repay such amount if it is determined under Section 2 hereof that such person is not entitled to be indemnified under this Article.

Section 15.4    The right of indemnification under this Article shall be in addition to, and not exclusive of, all other rights to which such person may be entitled.

Section 15.5    The Board may, at its discretion, authorize the purchase of insurance on behalf of any persons indemnifiable under this Article. Such insurance may include provisions for indemnification of such persons for expenses of a kind not subject to indemnification under this Article. Any repeal or modification of this Article XV shall be prospective only and shall not adversely affect any right or protection of a director, officer, employee, fiduciary and agent of the corporation under this Article XV, as in effect immediately prior to such repeal or modification, with respect to any liability that would have accrued, but for this Article XV, prior to such repeal or modification.


## ARTICLE XVI

## ORGANIZATION OF OLYMPIC, PAN AMERICAN AND PARALYMPIC GAMES IN THE UNITED STATES

Section 16.1    The organization of Olympic, Pan American and Paralympic Games is governed by the rules of the IOC, PASO and the IPC. Selection of the host cities for the Olympic Games shall be made in accordance with IOC rules. Selection of the host cities for the Pan American Games shall be made in accordance with special provisions in PASO rules. Selection of the host cities for the Paralympic Games shall be made in accordance with IPC rules.

Section 16.2    Any United States city interested in bidding for the privilege of organizing the Olympic, Pan American or Paralympic Games in the United States shall follow the procedures established by the Board.

# ARTICLE XVII

## NATIONAL GOVERNING BODIES

Section 17.1    The NGBs and PSOs which are responsible for the technical rules for each sport on the program of the Olympic, Pan American and Paralympic Games shall have the following authority and responsibility –

- A. establish an operating procedure within the NGBs or PSOs to insure continuity of international, Olympic, Pan American and Paralympic Games programs for the quadrennial period;
- B. establish a written procedure, subject to the approval of the Board, to fairly select athletes, coaches, and team leaders for the Olympic, Pan American and Paralympic Games Teams, that after having been approved by the Board, shall be disseminated as early as possible to the athletes, coaches, and team leaders pursuant to procedures promulgated by the CEO;
- C. select site(s) and date(s) to qualify for the Olympic, Pan American and Paralympic Games Teams;
- D. nominate for appointment by the Board of the USOC those coaches, team leaders and other team officials for the Olympic, Pan American and Paralympic Games Teams;
- E. recommend a plan for training Olympic, Pan American and Paralympic Games Team members;
- F. establish a program for the development of its sport;
- G. formulate and present budgets for development, team preparation, team selection, and sports liaison expenses;
- H. recommend a program for the use of the corporation's Training Centers;
- I. screen and recommend athletes for participation in the corporation's Job Opportunities Program;
- J. recommend athletes for consideration of awards under the corporation's Medical Scholarship Program;
- K. nominate in writing persons for appointment to standing committees of the corporation;
- L. prepare the requirements of its sport for submission to the CEO in each of the following areas to service the Olympic, Pan American and Paralympic Teams --

    1. apparel, supplies and equipment;
    2. food and housing;
    3. medical and training services;
    4. tickets; and
    5. transportation;

- M. participate in the IF activities of its sport and carry out those responsibilities required by the respective international federations;
- N. disseminate to its member athletes information relating to its sport;
- O. present to the corporation the organizational structure within the NGB designated to carry out its Olympic, Pan American and Paralympic Games responsibilities;

P. authorize or approve all programs prior to submission by its liaison representatives to the corporation for review and approval; and

Q. adopt and submit to the corporation the procedure whereby it will elect its representative(s) to the Olympic Assembly.

Section 17.2

A. Each NGB or PSO, subject to the policy directives and procedures prescribed by the Board and subject to review by the CEO, shall have the authority and duty to devise and determine the method of selecting athletes and team officials (coaches, team leaders, etc.) who will be recommended to the Board for appointment to the team that will represent the United States in the particular sport or event of the Olympic, Pan American or Paralympic Games.

B. Each NGB or PSO, no less than 18 months prior to each Olympic, Pan American or Paralympic Games, shall submit to the CEO for review and report to the Board, a written proposal concerning the participation of the United States in the particular sport or event of the forthcoming Olympic, Pan American or Paralympic Games. This proposal shall include the number of athletes and team officials to be nominated for appointment to the United States delegation for such Games; the procedures to be followed for preparing and conditioning candidates for the team; the program of tryouts and the method of selecting the athletes to be recommended for appointment to the team; the special requirements of the particular sport or event with respect to sports equipment and supplies, services of physicians and trainers and such special personnel as authorized by the corporation; and any other matters that may be relevant for effective planning of the United States' participation in the particular sport or event of the NGB or PSO. Each NGB or PSO shall be given timely notice with respect to the recommendations for approval, modifications or rejection of specific items in its proposal to be made by the CEO to the Board. If a NGB or PSO is unwilling to accept an adverse recommendation of the CEO, it may appeal in writing to the Board, whose decision by a majority of the voting power of the members present shall be final.

C. Each NGB or PSO shall put into effect the plan approved by the Board for participation of the United States in its particular sport or event in the forthcoming Olympic, Pan American or Paralympic Games. The NGB or PSO, as early as practicable in accordance with the plan, shall announce the method of selecting the athletes to be recommended for appointment to the team, establish the times and places of tryouts thereof, and perform whatever other duties may be indicated under the plan as approved by the Board.

D. Each NGB or PSO, subject to the Bylaws, shall make appropriate contractual or other arrangements for holding such local or regional, preliminary or semifinal tryouts as may be necessary under the plan approved by the Board. Arrangements for final tryouts shall in all cases be cleared specifically with the CEO.

E. Each NGB or PSO, at least twelve (12) months prior to the date of the final tryouts, shall submit for review by the CEO its list of eligible persons (one (1) nominee and one (1) alternate), together with a resume for each authorized position from which it is proposed to select team officials in its particular sport or event to be recommended for appointment by the Board. The CEO, after such investigation and further

consultation with each NGB or PSO as he or she deems appropriate, may recommend approval or rejection of any and all names on such list. In the event a name is recommended for rejection, the NGB or PSO may submit a new nomination, or it may appeal to the Board, whose decision by a majority of the voting power of the members present shall be final.

F. Each NGB or PSO shall cooperate in every way possible with the Board and the CEO in preventing the unauthorized use of the names and trademarks of the corporation, or the word "Olympic" and its derivatives, as well as symbolic equivalents thereof, or the United States Olympic Emblem as described in the Act.

G. As a condition of membership in the corporation and recognition as a NGB or PSO, each NGB or PSO shall comply with the procedures pertaining to drug testing and adjudication of related doping offenses of the independent anti-doping organization designated by the corporation to conduct drug testing. No exceptions to such procedures shall be allowed unless granted by the Board, or its designee, after a hearing at which the NGB or PSO is allowed to present the reasons for such exception.

Section 17.3   Members of NGBs or PSOs or other organizations cooperating with the corporation in raising of funds from any source, shall turn over such funds to the corporation's CEO as promptly as possible. Funds collected over a continuous period of time shall be forwarded to the CEO at least once a month, and in the sixty (60) days prior to the Olympic, Pan American or Paralympic Games at least once a week, with a detailed report indicating sources, amounts, and purposes.

Section 17.4   The CEO shall approve suitable contract forms for the administration of the various Olympic, Pan American or Paralympic Games tryouts and other authorized benefits. Each contract for a tryout shall be made in triplicate and shall specify the types of expenses that may be legitimately charged, the desirable administrative procedures, the minimum guarantee, adequate accounting, and careful fixing of local financial responsibility. Whenever possible, guarantees shall be by security bonds. One (1) copy of each contract shall be filed with the CEO; one (1) copy shall be retained by the NGB or PSO; and one (1) copy shall be retained by the organization sponsoring the tryouts. The NGBs or PSOs shall submit to the CEO, a detailed and certified statement of receipts and disbursements.

Section 17.5   No NGB or PSO shall incur any financial obligation on behalf of the corporation without first obtaining approval from the corporation's Board.

Section 17.6   All funds raised by any NGB or PSO where the word "Olympic" or a derivative thereof is used in any connection shall belong to the corporation and shall be accounted for accordingly.

Section 17.7

A. Athlete representatives shall equal at least 20% of all NGB boards of directors, executive boards, and other governing boards, as well as those committees that are "Designated Committees" within the meaning of these Bylaws. For purposes of these Bylaws, the phrase "Designated Committees" means nominating and budget

committees, panels empowered to resolve grievances and committees which prepare, approve or implement programs in the following areas:

1. expenditures of funds allocated to NGBs by the corporation; and
2. selection of international, Olympic and Pan American Games Team members including athletes, coaches, administrators and sports staff.

If approved by the corporation, NGBs may use proportional or weighted voting to achieve the necessary level of athlete representation in extraordinarily large legislative bodies such as "Houses of Delegates" or "Boards of Governors."

B. Athlete representatives on those NGB boards or committees described in Section 17.7 of these Bylaws above shall meet the following standards:

1. At least one-half of the individuals serving as athlete representatives shall have competed in the NGB's events or disciplines that are on the sport's program in the Olympic or Pan American Games.
2. Up to one-half of the individuals serving as athlete representatives may have competed in (i) an event or discipline not on the program of the Olympic or Pan American Games, provided that such event or discipline is recognized by the IF of the NGB or is regularly included in the international competition program of the IF, or (ii) the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program.
3. At the time of election, all NGB athlete representatives shall have demonstrated their qualifications as athletes by having:

   a. Within the ten (10) years preceding election, represented the United States in the Olympic or Pan American Games, or an Operation Gold event, or a World Championship recognized by the NGB's IF for which a competitive selection process was administered by the NGB, or, in a team sport, an international championship recognized by the IF of the NGB; or
   b. Within the twenty-four (24) months before election, demonstrated that they are actively engaged in amateur athletic competition by finishing in the top half of the NGB's national championships or team selection competition for the events outlined in subparagraphs (1) or (2) or in a team sport, have been a member of the NGB's national team; or
   c. For the purposes of the standards outlined in Section 17.7.B.2.ii only, within the ten (10) years preceding election, represented the United States in the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program.
   d. Athlete representatives may not be drawn from events that categorize entrants in age-restricted classifications commonly known as "Juniors," "Masters," "Seniors," "Veterans" or other similarly designated age-restricted competition. This provision is not meant to exclude from eligibility athletes who compete in an event for which the IOC or an IF has established an age restriction but whom otherwise meet the standard set forth in Section 17.7.B.