# EXHIBIT 2-B

Dockets.Justia.com

C. Athlete representatives shall also equal at least 20% of those NGB committees which are not Designated Committees, except that qualification as an "athlete representative" shall be determined as follows:

1. At least one-half of the individuals serving as athlete representatives shall have competed in the NGB's events or disciplines that are on the sport's program in the Olympic or Pan American Games.

2. Up to one-half of the individuals serving as athlete representatives may have competed in (i) an event or discipline not on the program of the Olympic or Pan American Games, provided that such event or discipline is recognized by the IF of the NGB or is regularly included in the international competition program of the IF, or (ii) the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program.

3. At the time of selection, all NGB athlete representatives under Section 17.7.C shall have demonstrated their qualifications as athletes by having:

   a. Within the ten (10) years preceding selection, represented the United States in the Olympic or Pan American Games, or an Operation Gold event, or a World Championship recognized by the NGB's IF for which a competitive selection process was administered by the NGB, or, in a team sport, an international championship recognized by the IF of the NGB; or the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program; or

   b. Within the twenty-four (24) months before selection, demonstrated that they are actively engaged in amateur athletic competition; or

   c. For the purposes of the standards outlined in Section 17.7.C.2.ii only, within the ten (10) years preceding selection, represented the United States in the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program.

4. Athlete representatives may not be drawn from events that categorize entrants in age-restricted classifications commonly known as "Masters," "Seniors," "Veterans" or other similarly designated age-restricted competition. This provision is not meant to exclude from eligibility athletes who compete in an event for which the IOC or IF has established an age restriction but whom otherwise meet the standard set forth in Sections 17.7.B. or 17.7.C of these Bylaws.

D. An NGB may set standards for its athlete representatives that are higher than those in Sections 17.7.B and 17.7.C provided that such standards are not in conflict with the Act or these Bylaws.

E. Athlete representatives to an NGB's board of directors, executive committee, and other such governing boards as defined in Section 17.7.A shall be directly elected by athletes who meet the standards set forth in Section 17.7.B. Athlete Representatives to all other NGB committees and task forces shall be selected by the NGB with the approval of the

athletes, or a representative group of athletes, who meet the standards set forth in Section 17.7.C.

F.  Any NGB may submit an Application for Review ("Application") to the CEO. The Application shall set forth: (1) the reasons why the NGB believes it cannot meet the requirements of Section 17.7; and (2) the NGB's proposed alternative plan for compliance with Section 17.7, which should expand on the standards set forth in Sections 17.7.B and 17.7.C only to the extent necessary to achieve the required 20% athlete representation. If the Application is not approved by the CEO, the provisions of this Section 17.7 shall apply. An NGB may appeal the decision of the CEO on the Application to a five-person panel composed of two individuals appointed by the AAC Chair, two appointed by the NGB Council Chair, and one person appointed by the USOC Chair.


## ARTICLE XVIII

## ELECTION OF MEMBERS TO ATHLETES' ADVISORY COUNCIL

Section 18.1    Each NGB shall adopt and submit to the corporation, consistent with policies established by the AAC, a procedure whereby eligible athletes as defined in Section 12.3 of these Bylaws shall elect an active athlete to represent the Olympic or Pan American sport governed by the NGB on the AAC. The PSOs and NGBs designated to govern a Paralympic sport, collectively, shall adopt and submit to the corporation, consistent with policies established by the AAC, a procedure whereby eligible athletes as defined in Section 12.3 of these Bylaws shall elect active athletes to represent the Paralympic sports on the AAC. (1) The NGB shall forward the name of the elected athlete representing that sport to the CEO of the corporation and certify the date and competition in which the athlete last competed internationally, as set forth in the AAC bylaws. (2) The PSOs and NGBs designated to govern a Paralympic Sport, collectively, shall forward the names of the elected athletes representing the Paralympic sports to the CEO of the corporation and certify the date and competition in which the athlete last competed internationally, as set forth in the AAC Bylaws. The term for members of the AAC shall commence and shall terminate as set forth in the AAC Bylaws.

Section 18.2    As set forth in its AAC Bylaws, the AAC shall elect six (6) active athletes to serve as at-large members of the AAC for the following quadrennial period.

Section 18.3    Each member of the AAC shall serve until replaced by the eligible athletes who elected them, unless removed for cause or not for cause by the AAC pursuant to fair procedures as provided for in the AAC bylaws.

Section 18.4    The AAC shall operate in accordance with bylaws adopted by the members of the AAC. The AAC shall elect its own officers and shall meet and conduct business in

accordance with its bylaws.

## ARTICLE XIX

## OLYMPIC, PAN AMERICAN, AND PARALYMPIC GAMES-RELATED MATTERS

Section 19.1    Official Delegation.

A. Chef de Mission. The Board shall appoint a Chef de Mission, who shall function as the liaison officer between the Local Organizing Committee for the Olympic, Pan American and Paralympic Games, and the members of the United States official delegation at the site of the Games. The Chef de Mission shall be the liaison officer between the United States official delegation and the Local Organizing Committee at the site of the Olympic, Pan American or Paralympic Games. The Chef de Mission shall present to the Local Organizing Committee all requests, complaints, inquiries, suggestions or information on behalf of the corporation or its officers or committees.

B. Games Administrative Board. There shall be a Games Administrative Board of the corporation which shall have final authority with respect to all matters regarding the United States official delegation at the site of the Games including, but not limited to, policy, protocol, discipline, and similar matters, except with regard to team selection issues and Code of Conduct violations, which shall be determined by the corporation's grievance procedures for the Games. The Games Administrative Board shall consist of the Chair, the CEO, the Delegation Director, the Chef de Mission and the Chair of the AAC. In the case of the absence of a member of the Games Administration Board, the CEO may designate an alternate, who shall exercise all of the privileges of the absent member.

C. The official delegation for any Olympic, Pan American or Paralympic Games shall be limited to athletes and authorized team officials. Only members of the official delegation may wear the official uniform.

D. Members of the Board or the Olympic Assembly or of NGBs or PSOs, and other United States citizens who attend the Games as international officials (other than those included in the preceding paragraph), or members of juries or delegates to congresses of international sports federations or of international sports organizations, or representatives of the press or radio or television, are not members of the official delegation and may not wear the official uniform. They may, however, be provided with a special uniform and/or appropriate insignia selected by the CEO, or his/her designee, to indicate their affiliation with the United States Team and upon acceptance of such uniform, shall be subject to the jurisdiction of the corporation for the duration of the Games.

E. The corporation shall not be under any obligation to make travel arrangements or hotel reservations, or purchase admission tickets to the Olympic, Pan American or Paralympic Games, for persons attending the Games in an official capacity but not included in the official delegation, or for relatives and friends of members of the official delegation, or for the general public. If arrangements with the Local Organizing Committee permit the corporation to render incidental assistance to persons, such as members of the Board or the Olympic Assembly or of NGBs or PSOs, who may be

attending the Games in an official capacity, or to relatives of team members, the CEO, or his/her designee, will make appropriate announcement of the general terms, conditions and limitations under which such assistance may be available to such persons.

F. The corporation shall assume responsibility for transportation, equipment, housing and living expenses of the Olympic, Pan American or Paralympic Games Team from the time the athletes depart for the team processing site until they are officially disbanded on their return to the United States.

G. No contracts or obligations for expenses of any kind shall be made by any members of the official delegation without the authorization of the CEO or his/her designee.

H. Members of the official delegation shall consider the Olympic, Pan American or Paralympic Games dress uniform issued to them as their regular attire from the date of issue continuing until their return to the United States. Certain articles of clothing designated as part of the parade uniforms shall not be worn prior to the parade at the opening ceremonies unless special permission is granted by the CEO, or his/her designee. The CEO, or his/her designee, shall be responsible for establishing policies for the acquisition, transportation, issue, and alteration of all uniforms for the corporation.

I. All members of the official delegation at the Olympic, Pan American or Paralympic Games shall travel to and from the respective Games according to organizational policy, except in those instances where permission to do otherwise shall have been granted by the CEO, or his/her designee.

J. Only the CEO, or his/her designee, may authorize the designation of a commercial tour to the Olympic, Pan American or Paralympic Games as a travel arrangement sponsored or approved by, or cooperating with, the corporation.

K. All athletes and team officials shall be housed together at the Olympic, Pan American or Paralympic Games Village or other quarters provided at the site of the Games, and shall live and eat and remain together until their return to the United States, unless special permission to do otherwise is granted in writing by the Chef de Mission, or his/her designee.

L. Team officials whose teams have completed their competition may be assigned administrative duties in the Athletes' Village by the Chef de Mission, or his/her designee.

M. All personnel attached to the Olympic, Pan American or Paralympic Games Teams shall obtain permission from the CEO, or his/her designee, before entering into any agreements to perform commercial newspaper, magazine, radio or television work on matters relative to Olympic, Pan American or Paralympic Games activities at any time. They shall refer to the CEO, or his/her designee, for clearance on any material concerning Olympic, Pan American or Paralympic Games activity that they may prepare for publication or broadcast delivery.

N. All publicity or public relations functions on behalf of the corporation or the United States Olympic, Pan American or Paralympic Teams preferably shall be performed by or under the direction of the CEO, or his/her designee.

Section 19.2    Tryouts and Team Selection.

A. No athlete shall be recommended for appointment to the United States Olympic, Pan American or Paralympic Games Team unless the athlete has won the right thereto according to the approved method of selection for the particular sport or event, and has passed the required medical examination, and has signed in unaltered form the Code of Conduct acknowledgement agreeing to the terms and conditions contained in the Code of Conduct (which shall include a dispute resolution process) of the United States Olympic, Pan American or Paralympic Games Team.

B. Subject to the Bylaws and approval by the Board, each NGB or PSO may organize tryouts, or by agreement in writing, designate established regional or national championships as Olympic, Pan American or Paralympic Games tryouts for its particular sport or event. All agreements shall comply with the financial regulations in these Bylaws.

C. No competition shall be designated as an Olympic, Pan American or Paralympic Games tryout in a particular sport or event except by specific authority of the appropriate NGB or PSO pursuant to these Bylaws and the Board.

D. All agreements for Olympic, Pan American and Paralympic Games tryouts shall be executed in triplicate by the NGBs and PSOs and the CEO, or his/her designee.

E. Any tryouts organized directly or indirectly under authority of any NGB or PSO shall be open only to athletes who are citizens of the United States at the time of selection and eligible under the rules of the IOC, PASO, or the IPC for selection for membership on the United States Olympic, Pan American or Paralympic Games Team.

F. The entire net income of all tryouts shall be paid to the corporation, unless specific exception is made by the Board on the recommendation of the CEO. When permission is granted by a NGB or PSO to a local, regional, or national organization to conduct tryouts, the said organization shall guarantee the entire expenses thereof. No part of the expenses of the event shall be charged against the corporation or any of its funds.

G. When a NGB or PSO regional or national championship is designated as an Olympic, Pan American or Paralympic Games tryout, the agreement shall specify the method of sharing the proceeds between the organization sponsoring the event and the corporation, and shall be submitted for specific approval of the CEO to the executive officer of the NGB or PSO concerned.

H. When Olympic, Pan American or Paralympic Games tryouts are designated as NGB or PSO championship events, the traditional prizes emblematic of such championships may be awarded. The winners of first, second and third places in any preliminary, regional, semi-final, and final tryout, as well as other events conducted for the benefit of the Olympic fund, may receive appropriate certificates designed for distribution.

I. Each NGB and PSO shall receive from the CEO, or his/her designee, before the final tryouts, measurement forms for team officials and successful competitors and shall complete and return these forms as expeditiously as possible after the final tryout. All athletes and officials who are members of Olympic, Pan American and Paralympic Games Teams during all Games ceremonies, shall wear or use the official uniforms and equipment issued to them by the corporation unless special exception to the Bylaw has been granted by the CEO, or his/her designee, upon a showing by an athlete that the wearing or use of such uniform or equipment will be detrimental to the competitor's performance.

J.  A meeting of athletes and officials shall be held by a representative named by the CEO, or his/her designee, to explain to team members their relationship to the corporation, to outline the provisions made for their welfare and comfort, to make clear to them their obligation to the corporation, to sport, and to their country, to review and ensure compliance with the "Delegation Handbook", to obtain signatures of team personnel to releases and agreements, to obtain missing measurements for uniforms, and to obtain required photographs.

K.  Once the personnel of the United States Team has been selected on the basis of tryouts, no substitution shall be made except in accordance with selection procedures previously approved by the Board.

Section 19.3    Selected Competitors.

A.  Every athlete for the United States Olympic, Pan American or Paralympic Games Team shall be furnished a "Delegation Handbook" containing the basic information and regulations concerning the athlete's responsibilities as a member of the Team and shall:

1.  sign, in unaltered form, the Code of Conduct acknowledgement agreeing to the terms and conditions contained in the Code of Conduct (which shall include a dispute resolution process) of the United States Olympic, Pan American or Paralympic Games Team;

2.  sign, in unaltered form, the Olympic, Pan American or Paralympic Games Eligibility Code as required by the IOC, PASO or IPC;

3.  submit to a medical examination and sign the corporation's Medical Examination form;

4.  sign, in unaltered form, the corporation's General Release required of members of the official delegation; and

5.  sign a statement granting to the corporation and the appropriate NGB or PSO the right to use the athlete's name, picture and portrait. This statement shall give the corporation and the appropriate NGB or PSO the right to use the athlete's name, picture, and portrait in promoting the competition in which the athlete is to compete or to promote the success of the team on which the individual competed.

B.  Upon acceptance as a member of the United States Olympic, Pan American or Paralympic Games Team, the athlete shall --

1.  provide the necessary personal information for the official entry, including a certificate (with international license number if applicable) of the athlete's membership in the United States sports governing body affiliated with the IF recognized by the IOC or the IPC as governing the athlete's sport;

2.  provide photographs as required for passports, identification cards and office reports; and

3.  report to the team processing center with suitable personal gear for the trip.

Section 19.4   Conduct of Team Personnel.

A. All members of the official delegation, and all persons to whom a special uniform has been issued to indicate their affiliation with the United States team, shall be subject to the jurisdiction of the corporation and these Bylaws. They shall conduct themselves at all times and in all places as befits worthy representatives of their country, and in conformity with the traditions of the Olympic, Pan American or Paralympic Games.
B. Competitors shall be under the strict supervision of their team leaders and coaches. They shall maintain strict training while under the supervision of the corporation. They shall also conform to any special training rules set up for their respective teams.
C. Any competitor who uses an unauthorized device or unauthorized equipment, or who uses any prohibited substance or method, shall be subject to disciplinary action in accordance with the protocol applicable to the competition.
D. Any person who participates in the violation of the rule in the preceding paragraph by encouragement or consent communicated to the competitor, or by furnishing any prohibited device, equipment, substance, or method, shall be subject to disciplinary action.
E. Any member of the official delegation who violates the customs, travel or currency regulations of the country where the Olympic, Pan American or Paralympic Games are held, or who assists a stowaway in obtaining unauthorized transportation with the United States Team or in violating the regulations of the Olympic, Pan American or Paralympic Games village, shall be liable for immediate dismissal from the Team.
F. No member of the official delegation or other person subject to the jurisdiction of the corporation shall engage in newspaper, magazine, radio or television work for remuneration during the interval between selection and return of the Team, or shall appear as a guest or participant on radio or television programs for remuneration, without the permission of the CEO, or his/her designee.

Section 19.5   Team Leaders and Coaches.

A. The team leaders shall represent the teams in the various sports of the Olympic, Pan American or Paralympic Games and shall look after the interests and general welfare of the members of their team, including housing, food, transportation, uniforms, laundry and recreation. They shall also enforce the rules of discipline laid down by the corporation.
B. The team leader shall represent the team in all administrative and business affairs between the individual members and the corporation.
C. The coaches shall be primarily responsible for setting up the training program and practice schedule and for advising and coaching the team in the techniques, tactics, and strategy of their competition. No coaching shall be permitted except by coaches officially reviewed by the CEO and approved by the Board.

Section 19.6   Selection of Team Officials.

A. Each NGB or PSO shall have the authority and duty to nominate to the Board the appointment of team officials, as defined by the Local Organizing Committee, for its

particular sport or event in the categories of administrative staff and technical staff. The number of such team officials recommended for appointment shall not exceed the maximum provided in the personnel chart provided to the Board by the CEO.

B. All persons nominated for appointment as team officials shall be carefully chosen with regard for their character, tact, diplomacy, judgment, sense of responsibility, knowledge of their respective sports and other special qualifications. They shall be informed that they cannot receive payment from the corporation for their services.

C. No one shall be nominated for appointment as a team official in the indicated categories who does not agree to devote all necessary time and attention to the performance of designated duties, to travel with the team to and from the Games, and to live during the Games at the place designated by or under authority of the Board.

D. Appointment as a team official may be revoked at any time by the Board or at the Games' site by the Games Administrative Board, if it appears that the official has failed to perform assigned duties satisfactorily.

Section 19.7   Medical Care.

A. Medical care for the official delegation shall be provided exclusively by, or under the supervision of, personnel appointed by the Board as recommended by the CEO. The corporation shall accept no responsibility for the expense of medical care other than that provided or authorized by the official medical staff. Any irregularity or physical ailment or injury suffered by an athlete or team official shall be reported immediately to the team leader and the United States medical headquarters at the Olympic, Pan American or Paralympic Games.

B. The head team physician or physicians shall be responsible for the medical care of all members of the official delegation. Team physicians shall conduct daily sick call, make arrangements for hospital and surgical care as needed, and supervise and coordinate the work of trainers. The decision of the head team physician shall be final in the matter of the return of convalescent athletes to practice and competition. The head team physician shall be responsible for all public announcements of all injuries and illness.

C. The trainers shall be assigned to the various teams by the chief medical coordinator. They shall keep accurate records of all injuries for which they give first aid. They shall refer all cases of injury and illness to the head team physician. When not occupied with the care of injuries and illness, trainers shall act as administrative assistants.

Section 19.8   Relations with National Governing Bodies and Paralympic Sports Organizations.

A. Subject to the general supervision, direction and approval of the Board, each of the Olympic, Pan American or Paralympic Sports Organization members shall have the primary authority and responsibility for selecting and nominating athletes and team officials in its sport for final appointment by the Board to the United States Olympic, Pan American or Paralympic teams. The program of tryouts or other competitions for the selection of athletes, and the plan or method of selecting managers, coaches, and other team officials, and any material modifications thereof, shall be submitted to the CEO for analysis and review, and then for Board approval, before they become

effective. All business arrangements for Olympic tryouts or other Olympic events shall be approved in advance by the CEO.

B. The president of the NGB or PSO, or other persons designated in place thereof, for each sport on the program of the forthcoming Olympic, Pan American or Paralympic Games, shall serve as a liaison with the corporation on the work of the NGB or PSO in the selection and nomination of athletes and team officials, and all other activities related to the Olympic effort. This liaison shall be concerned primarily with coordinating these activities with the CEO and his/her staff.

## ARTICLE XX

## MISCELLANEOUS

Section 20.1    Subject to approval by the Board, members and administrative officials of former U.S. Olympic Teams may organize separately or jointly in units, chapters or groups for the purpose of promoting the Olympic objectives as defined in the Act and these Bylaws and may use the word "Olympic" in names adopted for and by units, chapters, or groups. The activities of these units, chapters, or groups shall be carried on and subject to the consent and approval of the Board.

Section 20.2    Accounts, Books, Minutes, Etc.  The corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its Board and committees. All books and records of the corporation may be inspected by any director, or such director's authorized agent or attorney, for any proper purpose at any reasonable time.

Section 20.3    Fiscal Year.  The fiscal year of the corporation shall commence January 1 and end on December 31 each year.

Section 20.4    Conveyances and Encumbrances.    The assignment, conveyance or encumbrance or sale, exchange, lease or other disposition of any of the real property of the corporation or all or substantially all of the other property and assets of the corporation shall only be authorized by the Board if the purpose of such assignment, conveyance or encumbrance or sale, exchange, lease or other disposition of any of the real property of the corporation or all or substantially all of the other property and assets of the corporation complies with the purposes and restrictions on the powers of the corporation set forth in the Act and these Bylaws.

Section 20.5    Designated Contributions.  The corporation may accept any designated contribution, grant, bequest or devise consistent with its general tax-exempt purposes as set forth in the Act and these Bylaws, and a restricted gifts policy adopted by the Board of the corporation in accordance with paragraph 2.2(e) hereof. The corporation shall acquire and retain sufficient control over all donated funds (including designated contributions) to assure that such funds will be used to carry out the corporation's tax-exempt purposes.

Section 20.6    Loans to Directors and the Chair Prohibited.  No loans shall be made by the corporation to the Chair of the Board or any other director or to any USOC committee or task force members. Any Chair, director, committee or task force member, who assents to or

participates in the making of any such loan shall be liable to the corporation for the amount of such loan until it is repaid.

Section 20.7  Amendments.  These Bylaws may be altered, amended or repealed and new Bylaws may be adopted by a majority vote of the Board taken at and noticed for an appropriately called Board meeting.  Amendments shall take effect at the close of such meeting except in such cases where it may be specified in the resolution approving the amendment that the amendment will take effect during the meeting or at a later time.  Amendments may only be submitted by members of the Board or by the chair of a Board committee.  All proposed amendments must be postmarked to the CEO in writing at least ninety (90) days before a meeting of the Board.  Not later than sixty (60) days before the date of any meeting of the Board at which amendments are to be considered, a general notice of the proposed alteration shall be published on the corporation's website and sent to the chairs of the AAC, the NGB Council, and the Multisport Organizations Council, setting forth the text or substantive terms of the proposed amendments, the time and place of the Board's meeting at which such amendments are to be voted upon, and a provision informing interested persons that they may submit materials for consideration by the Board at such meeting by delivering to the CEO, not less than ten (10) days before the meeting, written data, views or arguments concerning the proposed amendments.  At the discretion of the CEO, an interested person may be invited to make any additional written or oral presentation for consideration at the meeting, and all persons who submit material under this Section shall be mailed a copy of any amendment that may be adopted at the meeting.  All proposed amendments shall be mailed by the CEO to each member of the Board.  These proposed amendments along with any data, views, or arguments previously submitted by the public shall be distributed to the Board not later than thirty (30) days before the date of the meeting.  Except for such proposed amendments that are so sent out, no other amendment shall be considered, nor shall any proposed amendment to an amendment as proposed be considered, unless the same merely goes to the form and not to the substance thereof.  Nevertheless, if more than one (1) amendment has been proposed on the same subject matter, and there are substantive differences between such amendments, the Board may, after due consideration of such proposals, adopt a compromise of substance as well as form; and, if the adoption of an amendment as proposed or amended or compromised is inconsistent or in conflict with other parts of the Bylaws, the meeting may adopt conforming amendments appropriate to the case.

Section 20.8  Severability and Headings.  The invalidity of any provision of these Bylaws shall not affect the other provisions hereof, and in such event these Bylaws shall be construed in all respects as if such invalid provision were omitted.  The descriptive headings of Articles and Sections used in these Bylaws are inserted for convenience only and are not intended to and do not have any operative effect.

Section 20.9  Irrevocable Dedication and Dissolution.  The property of the corporation is irrevocably dedicated to charitable purposes, and no part of the net income or assets of the corporation shall inure to the benefit of private persons.  Upon the dissolution or winding up of the corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of this corporation, shall be distributed to a nonprofit fund, foundation, or corporation which is organized and operated for charitable purposes and which has established its tax exempt status under Section 501(c)(3) of the Internal Revenue Code, as amended.  The use and disposition on

dissolution or winding up of real or personal property owned or used by the corporation in any and all States and Territories which are part of the United States of America shall be limited to the purposes stated in the foregoing paragraph in such a manner as to satisfy the requirements of the laws of such States for exemption of such property from property taxation in such States.

Section 20.10  <u>Saving Clause</u>.  Failure of literal or complete compliance with any provision of these Bylaws in respect of dates and times of notice, or the sending or receipt of the same, or errors in phraseology of notice of proposals, which in the judgment of the members at meetings held do not cause substantial injury to the rights of members, shall not invalidate the actions or proceedings of the members at any meeting.

Section 20.11  <u>Individual Liability</u>.   No individual officer, director or member of a committee of the corporation shall be personally liable in respect of any debt or other obligation incurred in the name of the corporation or any of its committees pursuant to authority granted directly or indirectly by the Board.

The undersigned, being an officer of the United States Olympic Committee, hereby indicates that the Board has adopted the foregoing Bylaws as the Bylaws of such corporation on June 23, 2006.

_Peter V. Ueberroth_
Peter V. Ueberroth
USOC Chair

_June 26, 2006_
Date

# United States Olympic Committee
# National Anti-Doping Policies

(Revisions effective as of August 13, 2004, unless otherwise noted)

1. **Mandatory Rules from the World Anti-Doping Code.**

   The World Anti-Doping Code requires each National Olympic Committee and National Paralympic Committee to adopt certain Articles from the World Anti-Doping Code verbatim into its own rules. The United States Olympic Committee ("USOC") hereby adopts the rules set forth in Annex A which are incorporated herein by reference.

2. **Retirement.**

   a. Any athlete enrolled in the United States Anti-Doping Agency's ("USADA") Registered Testing Pool who wishes to be removed from the program on account of retirement must promptly notify USADA and the applicable National Governing Body ("NGB") in writing in order for retirement from the Registered Testing Pool to be effective. Any athlete who has not provided advance written notice of retirement to USADA and then refuses to participate in a USADA test claiming retirement, shall be "ineligible" within the meaning of paragraph 6 of these policies for a period of 2 years following such refusal, subject to the right to a hearing set forth in paragraph 8 of these policies.

   b. Any athlete who has ever been enrolled in a No Advance Notice testing program or Registered Testing Pool of an International Federation ("IF"), the USOC or USADA who retires and then wishes to return to eligible status must enroll in the USADA Registered Testing Pool program at least 6 months in advance of regaining eligible status and, for purposes of participating on a USOC Team in the Olympic Games or Paralympic Games, 12 months before the start of those Games.

   c. USADA shall not suspend or terminate the prosecution of a doping offense as a result of an athlete's subsequent retirement.

3. **Suspension by an NGB or International Federation.**

   Athletes and athlete support personnel shall be ineligible within the meaning of paragraph 6 of these policies while serving a period of ineligibility for violating anti-doping rules imposed by a National Governing Body as the result of proceedings by USADA or by an International Federation or other signatory to the World Anti-Doping Code.

4. **Testing During Ineligibility.**

   In order to regain eligibility, within the meaning of paragraph 6 of these policies, any athlete who is declared ineligible for an anti-doping rule violation by a National Governing Body or, International Federation or other signatory to the World Anti-Doping

1

**Exhibit D**

Code must comply with all requirements of the USADA Registered Testing Pool program during the period of ineligibility and must bear the costs associated with any no advance notice tests conducted by USADA on him or her during the period of ineligibility.

If an athlete subject to a period of ineligibility retires and is removed from USADA's Registered Testing Pool, then the athlete shall be subject to the additional reinstatement obligations set forth in Article 10.10 of the World Anti-Doping Code, as set forth in Annex A.

5. **Prior Participation in USADA's Registered Testing Pool Program by Potential Members of the U.S. Olympic and Paralympic Teams.**

It shall be the policy of the USOC to subject all athletes who are candidates for membership on the U.S. Olympic, or Paralympic Teams to USADA's no- advance-notice drug testing program for a period of at least 12 months before the commencement of the Games. In some sports, potential team candidates are not generally members of the NGB for their sport and are not otherwise subject to the jurisdiction of the NGB. The terms and conditions for testing athletes who are not subject to the jurisdiction of an NGB, which may vary based upon the circumstances existing in each sport, shall be determined by the USOC Chief Executive Officer. Any such athlete who is invited to participate in the USADA Registered Testing Pool program under the terms and conditions established by the USOC Chief Executive Officer and declines such invitation shall not be eligible, subject to the right to a hearing set forth in paragraph 8 of these policies, to participate on the USOC's Team at the next Olympic or Paralympic Games and shall otherwise be ineligible within the meaning of paragraph 6 of these policies for a period of 12 months following that invitation. (Athletes who are members of an NGB shall be automatically included in the USADA Registered Testing Pool after notice to them that they have been so designated by USADA in consultation with their NGB.)

6. **Ineligibility and Loss of USOC and NGB Opportunities and Benefits.**

If an athlete or athlete support personnel is found to be "ineligible" on account of an anti-doping rule violation, the athlete will not be permitted to (i) participate in the Olympic, Pan American, or Paralympic Games, trials, or qualifying events; (ii) be a member of an Olympic, Pan American or Paralympic Games Team or staff; or (iii) have access to the training facilities of an Olympic Training Center or other programs and activities of the USOC including, but not limited to, grants, awards or employment. The applicable USOC policy on suspension of benefits in circumstances addressed by this rule, including on suspension of NGB benefits, is attached as Annex C and is incorporated herein by this reference.

7. **Rules of International Federations.**

The requirements and consequences set forth in this Policy shall be in addition to those obligations related to out-of-competition testing imposed by the various International

Federations and shall not relieve any athlete of the consequence of failing to comply with the anti-doping rules of his or her International Federation.

8. **Right to Hearing**.

No athlete or athlete support personnel shall be denied eligibility within the meaning of paragraph 6 of these policies without first being afforded the opportunity for a hearing pursuant to the USADA Protocol for Olympic Movement Testing ("USADA Protocol") incorporated into the contract between the USOC and USADA.

9. **Pre Games Testing**.

All athletes nominated for appointment to a U.S. Team for the Olympic, Paralympic or Pan American Games shall have been tested for doping at some time not more than 120 days prior to the opening ceremonies of such Games with such test or tests not resulting in an anti-doping rule violation. No athlete may be added to the U.S. Team by substitution or otherwise, unless he or she has been tested for doping and found negative within this 120 day period. It shall be the USOC's and USADA's obligation to ensure that the required testing occurs within the 120 day period. After appointment, athlete members of the U.S. Team may also be subject to additional testing through said Games. For purposes of this Article, if a specimen is collected at trials or other competition, the specimen analysis shall test for those substances and methods tested for in the applicable International Federation's In-Competition program; if a specimen is not collected at trials or other competition, the specimen analysis shall test for those substances and methods on the WADA List of Prohibited Substances which are prohibited both in- and out-of-competition. If an NGB submits an athlete as a replacement after the team has been selected, NGB shall notify the USADA of such replacement within 48 hours so that the USADA may conduct testing pursuant to this section if necessary. The NGB shall also arrange to make the replacement available for testing.

In the event that a specimen is confirmed to have an adverse analytical finding after the U.S. Team has been nominated by the NGB and approved by the USOC for the Olympic, Paralympic or Pan American Games, any hearing requested by the athlete for purposes of determining eligibility for the U.S. Team shall be conducted on an expedited basis pursuant to paragraph 9 of the USADA Protocol, but this sentence shall not apply until September 1, 2004. In the interest of time, the athlete may waive the Review Board process set forth in paragraph 9(a) of the USADA Protocol.

10. **Missed No Advance Notice Tests**.

a. Under the Registered Testing Pool program implemented by USADA, it is the responsibility of each athlete designated by a National Governing Body for participation in the Registered Testing Pool to provide USADA with up-to-date information on his or her whereabouts so that he or she can be located for no advance notice testing. Athletes identified for no advance notice testing are required to file Athlete Location Forms with USADA on a quarterly basis. They are also responsible for notifying USADA when they will not be available for

testing at the location specified on their Athlete Location Form. USADA has provided all athletes in the USADA Registered Testing Pool both a facsimile number and e-mail address to use in updating their Athlete Location Forms or to notify USADA that they will not be available for testing at the specified location at a particular time. The USADA procedure for determining that an athlete participating in the Registered Testing Pool program has a "missed test" is attached as Annex B.

b.  Any athlete having three missed tests within any rolling 18 month period shall be ineligible within the meaning of paragraph 6 of these policies for a period of two years from the athlete's last "missed test." No athlete shall be disciplined for having three missed tests within an 18 month period unless the athlete has been offered an opportunity for a hearing as provided in paragraph 8 of these policies. Missed tests shall not be announced publicly until the conclusion of the hearing process.

**11,    Public Disclosure of Pending Cases.**

No later than 2 business days after it has been determined in a hearing in accordance with the USADA Protocol that an anti-doping rule violation has occurred, or such hearing has been waived, or the assertion of an anti-doping rule violation has not been timely challenged, USADA shall publicly report the disposition of the anti-doping matter.

**12.    Agreement by Participants to be Bound by the USOC National Anti-Doping Policies and the USADA Protocol.**

The World Anti-Doping Code requires that each signatory establish rules and procedures to ensure that all Participants (as that term is defined in the World Anti-Doping Code) under the authority of the signatory and its member organizations are informed of and agree to be bound by anti-doping rules in force of the relevant anti-doping organizations. To implement this requirement, each NGB shall be responsible for informing Participants in its sport of these USOC National Anti-Doping Policies and the USADA Protocol which is incorporated into the agreement between the USOC and USADA. By virtue of their membership in an NGB or participation in a competition organized or sanctioned by an NGB, Participants agree to be bound by the USOC National Anti-Doping Policies and the USADA Protocol.

**13.    NGB Compliance with USOC National Anti-Doping Policies and the USADA Protocol.**

The World Anti-Doping Code imposes the obligation on the USOC to require as a condition of funding and recognition of NGBs that NGB rules be in compliance with applicable provisions of the World Anti-Doping Code. The applicable provisions of the World Anti-Doping Code have been incorporated into these USOC National Anti-Doping Policies and the USADA Protocol. NGBs shall not have any anti-doping rule which is

inconsistent with these policies or the USADA Protocol, and NGB compliance with these policies and the USADA Protocol shall be a condition of USOC funding and recognition.

**14.** __Incorporation into USOC/USADA Agreement.__

USADA's responsibility for implementing the applicable provisions of these policies shall be incorporated in the Agreement between the USOC and USADA.

**15.** __Review.__

The USOC will review implementation of these National Anti-Doping Policies on an annual basis.

**16.** __Effective Date.__

These restated USOC National Anti-Doping Policies, adopted by the USOC Board of Directors on August 12, 2004, shall go into effect on August 13, 2004. Such revisions shall not apply retroactively to matters pending before August 13, 2004. The USOC National Anti-Doping Policies, as modified through October 5, 2002, shall remain in effect until August 13, 2004.

**ARTICLES FROM THE WORLD ANTI-DOPING CODE INCORPORATED VERBATIM INTO THE USOC ANTI-DOPING POLICIES AND THE USADA PROTOCOL FOR OLYMPIC MOVEMENT TESTING**

## ARTICLE 1: DEFINITION OF DOPING

Doping is defined as the occurrence of one or more of the anti-doping rule violations set forth in Article 2.1 through Article 2.8 of the *Code*.

## ARTICLE 2: ANTI-DOPING RULE VIOLATIONS

The following constitute anti-doping rule violations:

2.1    The presence of a *Prohibited Substance* or its *Metabolites* or *Markers* in an *Athlete's* bodily *Specimen*.

    2.1.1    It is each *Athlete's* personal duty to ensure that no *Prohibited Substance* enters his or her body. *Athletes* are responsible for any *Prohibited Substance* or its *Metabolites* or *Markers* found to be present in their bodily *Specimens*. Accordingly, it is not necessary that intent, fault, negligence or knowing *Use* on the *Athlete's* part be demonstrated in order to establish an anti-doping violation under Article 2.1.

    2.1.2    Excepting those substances for which a quantitative reporting threshold is specifically identified in the *Prohibited List*, the detected presence of any quantity of a *Prohibited Substance* or its *Metabolites* or *Markers* in an *Athlete's Sample* shall constitute an anti-doping rule violation.

    2.1.3    As an exception to the general rule of Article 2.1, the *Prohibited List* may establish special criteria for the evaluation of *Prohibited Substances* that can also be produced endogenously.

2.2    *Use* or *Attempted Use* of a *Prohibited Substance* or a *Prohibited Method*.

    2.2.1    The success or failure of the *Use* of a *Prohibited Substance* or *Prohibited Method* is not material. It is sufficient that the *Prohibited Substance* or *Prohibited Method* was *Used* or *Attempted* to be *Used* for an anti-doping rule violation to be committed.

2.3    Refusing, or failing without compelling justification, to submit to *Sample* collection after notification as authorized in applicable anti-doping rules or otherwise evading *Sample* collection.

2.4    Violation of applicable requirements regarding *Athlete* availability for *Out-of-Competition Testing* including failure to provide required whereabouts information and missed tests which are declared based on reasonable rules.

2.5     *Tampering*, or *Attempting* to tamper, with any part of *Doping Control*.

2.6     *Possession* of *Prohibited Substance*s and *Methods*:

> 2.6.1   *Possession* by an *Athlete* at any time or place of a substance that is prohibited in *Out-of-Competition Testing* or a *Prohibited Method* unless the *Athlete* establishes that the *Possession* is pursuant to a therapeutic use exemption granted in accordance with Article 4.4 (Therapeutic *Use*) or other acceptable justification.

> 2.6.2   *Possession* of a substance that is prohibited in *Out-of-Competition Testing* or a *Prohibited Method* by *Athlete Support Personnel* in connection with an *Athlete*, *Competition* or training, unless the *Athlete Support Personnel* establishes that the *Possession* is pursuant to a therapeutic use exemption granted to an *Athlete* in accordance with Article 4.4 (Therapeutic *Use*) or other acceptable justification.

2.7     *Trafficking* in any *Prohibited Substance* or *Prohibited Method*.

2.8     Administration or *Attempted* administration of a *Prohibited Substance* or *Prohibited Method* to any *Athlete*, or assisting, encouraging, aiding, abetting, covering up or any other type of complicity involving an anti-doping rule violation or any *Attempted* violation.

## ARTICLE 3: PROOF OF DOPING

3.1     Burdens and Standards of Proof.

The *Anti-Doping Organization* shall have the burden of establishing that an anti-doping rule violation has occurred. The standard of proof shall be whether the *Anti-Doping Organization* has established an anti-doping rule violation to the comfortable satisfaction of the hearing body bearing in mind the seriousness of the allegation which is made. This standard of proof in all cases is greater than a mere balance of probability but less than proof beyond a reasonable doubt. Where the *Code* places the burden of proof upon the *Athlete* or other *Person* alleged to have committed an anti-doping rule violation to rebut a presumption or establish specified facts or circumstances, the standard of proof shall be by a balance of probability.

3.2     Methods of Establishing Facts and Presumptions.

Facts related to anti-doping rule violations may be established by any reliable means, including admissions.  The following rules of proof shall be applicable in doping cases:

> 3.2.1   *WADA*-accredited laboratories are presumed to have conducted *Sample* analysis and custodial procedures in accordance with the *International*

*Standard* for laboratory analysis. The *Athlete* may rebut this presumption by establishing that a departure from the *International Standard* occurred.

If the *Athlete* rebuts the preceding presumption by showing that a departure from the *International Standard* occurred, then the *Anti-Doping Organization* shall have the burden to establish that such departure did not cause the *Adverse Analytical Finding*.

3.2.2 Departures from the *International Standard* for *Testing* which did not cause an *Adverse Analytical Finding* or other anti-doping rule violation shall not invalidate such results. If the *Athlete* establishes that departures from the *International Standard* occurred during *Testing* then the *Anti-Doping Organization* shall have the burden to establish that such departures did not cause the *Adverse Analytical Finding* or the factual basis for the anti-doping rule violation.

## ARTICLE 9: AUTOMATIC *DISQUALIFICATION* OF INDIVIDUAL RESULTS

An anti-doping rule violation in connection with an *In-Competition* test automatically leads to *Disqualification* of the individual result obtained in that *Competition* with all resulting consequences, including forfeiture of any medals, points and prizes.

## ARTICLE 10: SANCTIONS ON INDIVIDUALS

10.1 *Disqualification* of Results in *Event* During which an Anti-Doping Rule Violation Occurs

An anti-doping rule violation occurring during or in connection with an *Event* may, upon the decision of the ruling body of the *Event*, lead to *Disqualification* of all of the *Athletes* individual results obtained in that *Event* with all consequences, including forfeiture of all medals, points and prizes, except as provided in Article 10.1.1.

10.1.1 If the *Athlete* establishes that he or she bears *No Fault* or *Negligence* for the violation, the *Athlete's* individual results in the other *Competitions* shall not be *Disqualified* unless the *Athlete's* results in *Competitions* other than the *Competition* in which the anti-doping rule violation occurred were likely to have been affected by the *Athlete's* anti-doping rule violation.

10.2 Imposition of *Ineligibility* for *Prohibited Substances* and *Prohibited Methods*

Except for the specified substances identified in Article 10.3, the period of *Ineligibility* imposed for a violation of Articles 2.1 (presence of *Prohibited Substance* or its *Metabolites* or *Markers*), 2.2 (*Use* or *Attempted Use* of *Prohibited Substance* or *Prohibited Method*) and 2.6 (Possession of *Prohibited Substances* and *Methods*) shall be:

• First violation: Two (2) years' *Ineligibility*.

• Second violation: Lifetime *Ineligibility*.

However, the *Athlete* or other *Person* shall have the opportunity in each case, before a period of *Ineligibility* is imposed, to establish the basis for eliminating or reducing this sanction as provided in Article 10.5.

10.3     Specified Substances

The *Prohibited List* may identify specified substances which are particularly susceptible to unintentional anti-doping rules violations because of their general availability in medicinal products or which are less likely to be successfully abused as doping agents. Where an *Athlete* can establish that the *Use* of such a specified substance was not intended to enhance sport performance, the period of *Ineligibility* found in Article 10.2 shall be replaced with the following:

• *First violation*: At a minimum, a warning and reprimand and no period of *Ineligibility* from future *Events*, and at a maximum, one (1) year's *Ineligibility*.

• *Second violation*: Two (2) years' *Ineligibility*.

• *Third violation*: Lifetime *Ineligibility*.

However, the *Athlete* or other *Person* shall have the opportunity in each case, before a period of *Ineligibility* is imposed, to establish the basis for eliminating or reducing (in the case of a second or third violation) this sanction as provided in Article 10.5.

10.4     *Ineligibility* for Other Anti-Doping Rule Violations

The period of *Ineligibility* for other anti-doping rule violations shall be:

10.4.1   For violations of Article 2.3 (refusing or failing to submit to *Sample* collection) or Article 2.5 (*Tampering* with *Doping Control*), the *Ineligibility* periods set forth in Article 10.2 shall apply.

10.4.2   For violations of Articles 2.7 (*Trafficking*) or 2.8 (administration of *Prohibited Substance* or *Prohibited Method*), the period of *Ineligibility* imposed shall be a minimum of four (4) years up to lifetime *Ineligibility*. An anti-doping rule violation involving a *Minor* shall be considered a particularly serious violation, and, if committed by *Athlete Support Personnel* for violations other than specified substances referenced in Article 10.3, shall result in lifetime *Ineligibility* for such *Athlete Support Personnel*. In addition, violations of such Articles which also violate non-sporting laws and regulations, may be reported to the competent administrative, professional or judicial authorities.

10.4.3 For violations of Article 2.4 (whereabouts violation or missed test), the period of *Ineligibility* shall be at a minimum 3 months and at a maximum 2 years in accordance with the rules established by the *Anti-Doping Organization* whose test was missed or whereabouts requirement was violated. The period of *Ineligibility* for subsequent violations of Article 2.4 shall be as established in the rules of the *Anti-Doping Organization* whose test was missed or whereabouts requirement was violated.

10.5  Elimination or Reduction of Period of *Ineligibility* Based on Exceptional Circumstances.

10.5.1 *No Fault* or *Negligence*

If the *Athlete* establishes in an individual case involving an anti-doping rule violation under Article 2.1 (presence of *Prohibited Substance* or its *Metabolites* or *Markers*) or *Use* of a *Prohibited Substance* or *Prohibited Method* under Article 2.2 that he or she bears *No Fault* or *Negligence* for the violation, the otherwise applicable period of *Ineligibility* shall be eliminated. When a *Prohibited Substance* or its *Markers* or *Metabolites* is detected in an Athlete's *Specimen* in violation of Article 2.1 (presence of *Prohibited Substance*), the *Athlete* must also establish how the *Prohibited Substance* entered his or her system in order to have the period of *Ineligibility* eliminated. In the *Event* this Article is applied and the period of *Ineligibility* otherwise applicable is eliminated, the anti-doping rule violation shall not be considered a violation for the limited purpose of determining the period of *Ineligibility* for multiple violations under Articles 10.2, 10.3 and 10.6.

10.5.2 *No Significant Fault* or *Negligence*

This Article 10.5.2 applies only to anti-doping rule violations involving Article 2.1 (presence of *Prohibited Substance* or its *Metabolites* or *Markers*), *Use* of a *Prohibited Substance* or *Prohibited Method* under Article 2.2, failing to submit to *Sample* collection under Article 2.3, or administration of a *Prohibited Substance* or *Prohibited Method* under Article 2.8. If an *Athlete* establishes in an individual case involving such violations that he or she bears *No Significant Fault* or *Negligence,* then the period of *Ineligibility* may be reduced, but the reduced period of *Ineligibility* may not be less than one-half of the minimum period of *Ineligibility* otherwise applicable. If the otherwise applicable period of *Ineligibility* is a lifetime, the reduced period under this section may be no less than 8 years. When a *Prohibited Substance* or its *Markers* or *Metabolites* is detected in an *Athlete's Specimen* in violation of Article 2.1 (presence of *Prohibited Substance*), the *Athlete* must also establish how the *Prohibited Substance* entered his or her system in order to have the period of *Ineligibility* reduced.

10.5.3 *Athlete's* Substantial Assistance in Discovering or Establishing Anti-Doping Rule Violations by *Athlete Support Personnel* and Others.

An *Anti-Doping Organization* may also reduce the period of *Ineligibility* in an individual case where the *Athlete* has provided substantial assistance to the *Anti-Doping Organization* which results in the *Anti-Doping Organization* discovering or establishing an anti-doping rule violation by another *Person* involving *Possession* under Article 2.6.2 (*Possession by Athlete Support Personnel*), Article 2.7 (*Trafficking*), or Article 2.8 (administration to an *Athlete*). The reduced period of *Ineligibility* may not, however, be less than one-half of the minimum period of *Ineligibility* otherwise applicable. If the otherwise applicable period of *Ineligibility* is a lifetime, the reduced period under this section may be no less than 8 years.

10.6 Rules for Certain Potential Multiple Violations

10.6.1 For purposes of imposing sanctions under Articles 10.2, 10.3 and 10.4, a second anti-doping rule violation may be considered for purposes of imposing sanctions only if the *Anti-Doping Organization* can establish that the *Athlete* or other *Person* committed the second anti-doping rule violation after the *Athlete* or other *Person* received notice, or after the *Anti-Doping Organization* made a reasonable *Attempt* to give notice, of the first anti-doping rule violation; if the *Anti-Doping Organization* cannot establish this, the violations shall be considered as one single first violation, and the sanction imposed shall be based on the violation that carries the more severe sanction.

10.6.2 Where an *Athlete*, based on the same *Doping Control*, is found to have committed an anti-doping rule violation involving both a specified substance under Article 10.3 and another *Prohibited Substance* or *Prohibited Method*, the *Athlete* shall be considered to have committed a single anti-doping rule violation, but the sanction imposed shall be based on the *Prohibited Substance* or *Prohibited Method* that carries the most severe sanction.

10.6.3 Where an *Athlete* is found to have committed two separate anti-doping rule violations, one involving a specified substance governed by the sanctions set forth in Article 10.3 (Specified Substances) and the other involving a *Prohibited Substance* or *Prohibited Method* governed by the sanctions set forth in Article 10.2 or a violation governed by the sanctions in Article 10.4.1, the period of *Ineligibility* imposed for the second offense shall be at a minimum two years' *Ineligibility* and at a maximum three years' *Ineligibility*. Any *Athlete* found to have committed a third anti-doping rule violation involving any combination of specified substances under Article 10.3 and any other anti-doping rule violation under 10.2 or 10.4.1 shall receive a sanction of lifetime *Ineligibility*.

10.7   *Disqualification* of Results in *Competitions* Subsequent to *Sample* Collection

In addition to the automatic *Disqualification* of the results in the *Competition* which produced the positive *Sample* under Article 9 (Automatic *Disqualification* of Individual Results), all other competitive results obtained from the date a positive *Sample* was collected (whether *In-Competition* or *Out-of-Competition*), or other doping violation occurred, through the commencement of any *Provisional Suspension* or *Ineligibility* period, shall, unless fairness requires otherwise, be *Disqualified* with all of the resulting consequences including forfeiture of any medals, points and prizes.

10.8   Commencement of *Ineligibility* Period

The period of *Ineligibility* shall start on the date of the hearing decision providing for *Ineligibility* or, if the hearing is waived, on the date *Ineligibility* is accepted or otherwise imposed. Any period of *Provisional Suspension* (whether imposed or voluntarily accepted) shall be credited against the total period of *Ineligibility* to be served. Where required by fairness, such as delays in the hearing process or other aspects of *Doping Control* not attributable to the *Athlete*, the body imposing the sanction may start the period of *Ineligibility* at an earlier date commencing as early as the date of *Sample* collection.

10.9   Status During *Ineligibility*

No *Person* who has been declared *Ineligible* may, during the period of *Ineligibility*, participate in any capacity in a *Competition* or activity (other than authorized anti-doping education or rehabilitation programs) authorized or organized by any *Signatory* or *Signatory's* member organization. In addition, for any anti-doping rule violation not involving specified substances described in Article 10.3, some or all sport-related financial support or other sport-related benefits received by such *Person* will be withheld by Signatories, Signatories' member organizations and governments. A *Person* subject to a period of *Ineligibility* longer than four years may, after completing four years of the period of *Ineligibility*, participate in local sport *Events* in a sport other than the sport in which the *Person* committed the anti-doping rule violation, but only so long as the local sport event is not at a level that could otherwise qualify such *Person* directly or indirectly to compete in (or accumulate points toward) a national championship or *International Event*.

10.10   Reinstatement *Testing*

As a condition to regaining eligibility at the end of a specified period of *Ineligibility*, an *Athlete* must, during any period of *Provisional Suspension* or *Ineligibility*, make him or herself available for *Out-of-Competition Testing* by any *Anti-Doping Organization* having testing jurisdiction, and must, if requested, provide current and accurate whereabouts information. If an *Athlete* subject to a period of *Ineligibility* retires from sport and is removed from *Out-of-Competition*

*Testing* pools and later seeks reinstatement, the *Athlete* shall not be eligible for reinstatement until the *Athlete* has notified relevant *Anti-Doping Organizations* and has been subject to *Out-of-Competition Testing* for a period of time equal to the period of *Ineligibility* remaining as of the date the *Athlete* had retired.

## ARTICLE 11 *CONSEQUENCES* TO TEAMS

Where more than one team member in a *Team Sport* has been notified of a possible anti-doping rule violation under Article 7 in connection with an *Event*, the *Team* shall be subject to *Target Testing* for the *Event*. If more than one team member in a *Team Sport* is found to have committed an anti-doping rule violation during the *Event*, the team may be subject to *Disqualification* or other disciplinary action. In sports which are not *Team Sports* but where awards are given to teams, *Disqualification* or other disciplinary action against the team when one or more team members have committed an anti-doping rule violation shall be as provided in the applicable rules of the International Federation.

## ARTICLE 13 APPEALS

### 3.1 Decisions Subject to Appeal

Decisions made under the *Code* or rules adopted pursuant to the *Code* may be appealed as set forth below in Articles 13.2 through 13.4. Such decisions shall remain in effect while under appeal unless the appellate body orders otherwise. Before an appeal is commenced, any post-decision review provided in the *Anti-Doping Organization*'s rules must be exhausted, provided that such review respects the principles set forth in Article 13.2.2 below.

### 13.2 Appeals from Decisions Regarding Anti-Doping Rule Violations. *Consequences*, and *Provisional Suspensions*

A decision that an anti-doping rule violation was committed, a decision imposing *Consequences* for an anti-doping rule violation, a decision that no anti-doping rule violation was committed, a decision that an *Anti-Doping Organization* lacks jurisdiction to rule on an alleged anti-doping rule violation or its *Consequences*, and a decision to impose a *Provisional Suspension* as a result of a *Provisional Hearing* or in violation of Article 7.5 may be appealed exclusively as provided in this Article 13.2.

#### 13.2.1 Appeals Involving *International-Level Athletes*

In cases arising from competition in an *International Event* or in cases involving *International-Level Athletes*, the decision may be appealed exclusively to the Court of Arbitration for Sport ("CAS") in accordance with the provisions applicable before such court.

#### 13.2.3 *Persons* Entitled to Appeal

In cases under Article 13.2.1, the following parties shall have the right to appeal to CAS: (a) the *Athlete* or other *Person* who is the subject of the decision being appealed; (b) the other party to the case in which the decision was rendered; (c) the relevant International Federation and any other *Anti-Doping Organization* under whose rules a sanction could have been imposed; (d) the International Olympic Committee or International Paralympic Committee, as applicable, where the decision may have an effect in relation to the Olympic Games or Paralympic Games, including decisions affecting eligibility for the Olympic Games or Paralympic Games; and (e) *WADA*. In cases under Article 13.2.2, the parties having the right to appeal to the national-level reviewing body shall be as provided in the *National Anti-Doping Organization*'s rules but, at a minimum, shall include: (a) the *Athlete* or other *Person* who is the subject of the decision being appealed; (b) the other party to the case in which the decision was rendered; (c) the relevant International Federation; and (d) *WADA*. For cases under Article 13.2.2, *WADA* and the International Federation shall also have the right to appeal to CAS with respect to the decision of the national-level reviewing body.

Notwithstanding any other provision herein, the only *Person* that may appeal from a *Provisional Suspension* is the *Athlete* or other *Person* upon whom the *Provisional Suspension* is imposed.

13.3     Appeals from Decisions Granting or Denying a Therapeutic *Use* Exemption

Decisions by *WADA* reversing the grant or denial of a therapeutic use exemption may be appealed exclusively to CAS by the *Athlete* or the *Anti-Doping Organization* whose decision was reversed. Decisions by *Anti-Doping Organizations* other than *WADA* denying therapeutic use exemptions, which are not reversed by *WADA*, may be appealed by *International-Level Athletes* to CAS and by other *Athletes* to the national level reviewing body described in Article 13.2.2. If the national level reviewing body reverses the decision to deny a therapeutic use exemption, that decision may be appealed to CAS by *WADA*.

13.4     Appeals from Decisions Imposing *Consequences* under Part Three of the *Code*

With respect to *consequences* imposed under Part Three (Roles and Responsibilities) of the *Code*, the entity upon which *consequences* are imposed under Part Three of the *Code* shall have the right to appeal exclusively to CAS in accordance with the provisions applicable before such court.

13.5     Appeals from Decisions Suspending or Revoking Laboratory Accreditation

Decisions by *WADA* to suspend or revoke a laboratory's *WADA* accreditation may be appealed only by that laboratory with the appeal being exclusively to CAS.

# ARTICLE 17 STATUTE OF LIMITATIONS

No action may be commenced against an *Athlete* or other *Person* for a violation of an anti-doping rule contained in the *Code* unless such action is commenced with eight years from the date the violation occurred.

# DEFINITIONS

*Adverse Analytical Finding*: A report from a laboratory or other approved *Testing* entity that identifies in a *Specimen* the presence of a *Prohibited Substance* or its *Metabolites* or *Markers* (including elevated quantities of endogenous substances) or evidence of the *Use* of a *Prohibited Method*.

*Anti-Doping Organization*: A *Signatory* that is responsible for adopting rules for initiating, implementing or enforcing any part of the *Doping Control* process. This includes, for example, the International Olympic Committee, the International Paralympic Committee, other *Major Event Organizations* that conduct *Testing* at their *Events*, *WADA*, International Federations, and *National Anti-Doping Organizations*.

*Athlete*: For purposes of *Doping Control*, any *Person* who participates in sport at the international level (as defined by each International Federation) or national level (as defined by each *National Anti-Doping Organization*) and any additional *Person* who participates in sport at a lower level if designated by the *Person's National Anti-Doping Organization*. For purposes of anti-doping information and education, any *Person* who participates in sport under the authority of any *Signatory*, government, or other sports organization accepting the *Code*.

*Athlete Support Personnel*: Any coach, trainer, manager, agent, team staff, official, medical or para-medical *Person*nel working with or treating *Athletes* participating in or preparing for sports competition.

*Attempt*: Purposely engaging in conduct that constitutes a substantial step in a course of conduct planned to culminate in the commission of an anti-doping rule violation. Provided, however, there shall be no anti-doping rule violation based solely on an *Attempt* to commit a violation if the *Person* renunciates the attempt prior to it being discovered by a third party not involved in the *Attempt*.

*Code*:   The World Anti-Doping *Code*.

*Competition*: A single race, match, game or singular athletic contest. For example, the finals of the Olympic 100-meter dash. For stage races and other athletic contests where prizes are awarded on a daily or other interim basis the distinction between a *Competition* and an *Event* will be as provided in the rules of the applicable International Federation.

*Consequences* of Anti-Doping Rules Violations: An *Athlete*s or other *Person's* violation of an anti-doping rule may result in one or more of the following: (a) *Disqualification* means the *Athlete*s results in a particular *Competition* or *Event* are invalidated, with all resulting consequences including forfeiture of any medals, points and prizes; (b) *Ineligibility* means the *Athlete* or other *Person* is barred for a specified period of time from participating in any

15

*Competition* or other activity or funding as provided in Article 10.9; and (c) ***Provisional Suspension*** means the *Athlete* or other *Person* is barred temporarily from participating in any *Competition* prior to the final decision at a hearing conducted under Article 8 (Right to a Fair Hearing).

***Disqualification***: See *Consequences* of *Anti-Doping Rules Violations* above.

***Doping Control***: The process including test distribution planning, *Sample* collection and handling, laboratory analysis, results management, hearings and appeals.

***Event***: A series of individual *Competitions* conducted together under one ruling body (e.g., the Olympic Games, FINA World Championships, or Pan American Games).

***In-Competition***: For purposes of differentiating between *In-Competition* and *Out-of-Competition Testing*, unless provided otherwise in the rules of an International Federation or other relevant *Anti-Doping Organization*, an *In-Competition* test is a test where an *Athlete* is selected for testing in connection with a specific *Competition*.

***Independent Observer Program***: A team of observers, under the supervision of *WADA*, who observe the *Doping Control* process at certain *Events* and report on observations. If *WADA* is testing *In-Competition* at an *Event*, the observers shall be supervised by an independent organization.

***Ineligibility***: See *Consequences* of *Anti-Doping Rules Violations* above.

***International Event***: An *Event* where the International Olympic Committee, the International Paralympic Committee, an International Federation, a *Major Event Organization*, or another international sport organization is the ruling body for the *Event* or appoints the technical officials for the *Event*.

***International-Level Athlete***: *Athletes* designated by one or more International Federations as being within the *Registered Testing Pool* for an International Federation.

***International Standard***: A standard adopted by *WADA* in support of the *Code*. Compliance with an *International Standard* (as opposed to another alternative standard, practice or procedure) shall be sufficient to conclude that the procedures addressed by the *International Standard* were performed properly.

***Major Event Organizations***: This term refers to the continental associations of *National Olympic Committees* and other international multi-sport organizations that function as the ruling body for any continental, regional or other *International Event*.

***Marker***: A compound, group of compounds or biological parameters that indicates the *Use* of a *Prohibited Substance* or *Prohibited Method*.

***Metabolite***: Any substance produced by a biotransformation process.

***Minor***: A natural *Person* who has not reached the age of majority as established by the applicable laws of his or her country of residence.

***National Anti-Doping Organization***: The entity(ies) designated by each country as possessing the primary authority and responsibility to adopt and implement anti-doping rules, direct the collection of *Samples*, the management of test results, and the conduct of hearings, all at the national level. If this designation has not been made by the competent public authority(ies), the entity shall be the country's *National Olympic Committee* or its designee. [In the United States, this entity is USADA.]

***National Event***: A sport *Event* involving international or national-level *Athletes* that is not an *International Event*.

***National Olympic Committee***: The organization recognized by the International Olympic Committee. The term *National Olympic Committee* shall also include the National Sport Confederation in those countries where the National Sport Confederation assumes typical *National Olympic Committee* responsibilities in the anti-doping area. [In the United States, this entity is the United States Olympic Committee.]

***No Advance*** **Notice**: A *Doping Control* which takes place with no advance warning to the *Athlete* and where the *Athlete* is continuously chaperoned from the moment of notification through *Sample* provision.

***No Fault or Negligence***: The *Athlete's* establishing that he or she did not know or suspect, and could not reasonably have known or suspected even with the exercise of utmost caution, that he or she had *Used* or been administered the *Prohibited Substance* or *Prohibited Method*.

***No Significant Fault or Negligence***: The *Athletes* establishing that his or her fault or negligence, when viewed in the totality of the circumstances and taking into account the criteria for *No Fault* or *Negligence*, was not significant in relationship to the anti-doping rule violation.

***Out-of-Competition***: Any *Doping Control* which is not *In-Competition*.

***Participant***: Any *Athlete* or *Athlete Support Personnel*.

***Person***: A natural *Person* or an organization or other entity.

***Possession***: The actual, physical possession. or the constructive *Possession* (which shall be found only if the *Person* has exclusive control over the *Prohibited Substance/Method* or the premises in which a *Prohibited Substance/Method* exists); provided, however, that if the *Person* does not have exclusive control over the *Prohibited Substance/Method* or the premises in which a *Prohibited Substance/Method* exists, constructive possession shall only be found if the *Person* knew about the presence of the *Prohibited Substance/Method* and intended to exercise control over it. Provided, however, there shall be no anti-doping rule violation based solely on *possession* if, prior to receiving notification of any kind that the *Person* has committed an anti-doping rule violation, the *Person* has taken concrete action demonstrating that the *Person* no longer intends to have *Possession* and has renounced the *Person*'s previous *Possession*.

**Prohibited List**: The List identifying the *Prohibited Substances* and *Prohibited Methods*.

**Prohibited Method**: Any method so described on the *Prohibited List*.

**Prohibited Substance**: Any substance so described on the *Prohibited List*.

**Provisional Hearing**: For purposes of Article 7.5, an expedited abbreviated hearing occurring prior to a hearing under Article 8 (Right to a Fair Hearing) that provides the *Athlete* with notice and an opportunity to be heard in either written or oral form.

**Provisional Suspension**: See *Consequences* above.

**Publicly Disclose or Publicly Report**: To disseminate or distribute information to the general public or *Persons* beyond those *Persons* entitled to earlier notification in accordance with Article 14.

**Registered Testing Pool**: The pool of top level *Athletes* established separately by each International Federation and *National Anti-Doping Organization* who are subject to both *In-Competition* and *Out-of-Competition Testing* as part of that International Federation's or Organization's test distribution plan.

**Sample Specimen**: Any biological material collected for the purposes of *Doping Control*.

**Signatories**: Those entities signing the *Code* and agreeing to comply with the *Code*, including the International Olympic Committee, International Federations, International Paralympic Committee, *National Olympic Committees*, National Paralympic Committees, *Major Event Organizations*, *National Anti-Doping Organizations*, and *WADA*.

**Tampering**: Altering for an improper purpose or in an improper way; bringing improper influence to bear; interfering improperly to alter results or prevent normal procedures from occurring.

**Target Testing**: Selection of *Athletes* for *Testing* where specific *Athletes* or groups of *Athletes* are selected on a non-random basis for *Testing* at a specified time.

**Team Sport**: A sport in which the substitution of players is permitted during a *Competition*.

**Testing**: The parts of the *Doping Control* process involving test distribution planning, *Sample* collection, *Sample* handling, and *Sample* transport to the laboratory.

**Trafficking**: To sell, give, administer, transport, send, deliver or distribute a *Prohibited Substance* or *Prohibited Method* to an *Athlete* either directly or through one or more third parties, but excluding the sale or distribution (by medical personnel or by *Persons* other than an *Athlete's Support Personnel*) of a *Prohibited Substance* for genuine and legal therapeutic purposes.

**Use**: The application, ingestion. injection or consumption by any means whatsoever of any *Prohibited Substance* or *Prohibited Method*.

***WADA:*** The World Anti-Doping Agency.

## ANNEX B TO USOC NATIONAL ANTI-DOPING POLICIES

## USADA PROCEDURE REGARDING MISSED TESTS

**A.**    **Athlete is not at the location(s) listed by the athlete on the USADA Athlete Location Form.**

**Step 1.**    The DCO is obligated to make a reasonable effort to locate the athlete for testing. Before reporting to USADA that an athlete is unavailable for testing the DCO is specifically required to visit within a 24 hour period all locations on the Athlete Location Form and any applicable Athlete Change of Plan Form provided by the athlete. If the DCO cannot locate the athlete, the DCO is required to fill out an Unavailable Athlete Form establishing that reasonable attempts were made to locate the athlete.

**Step 2.**    USADA CEO reviews the DCO's Unavailable Athlete Forms and the Athlete Location Form and any Athlete Change of Plan Form on file with USADA. If there appears to be a reasonable basis for calling this a missed test, then within 30 days after receipt of the Unavailable Athlete Forms the CEO will send notice by letter to the athlete, with a copy to the NGB, inviting the athlete to provide a written explanation why this should not be counted as a "missed test".

**Step 3.**    Based on the athlete's written response, and further investigation if necessary, the CEO shall evaluate whether to treat the attempt to test as a "missed test." In this evaluation the burden shall be on the DCO to establish that the DCO's attempts to locate the athlete for testing were reasonable. The burden shall be on the athlete to establish in his or her written response that he or she was reasonably prevented from notifying USADA that he or she would not be available for testing at the locations set forth on the Athlete Location Form or any applicable Athlete Change of Plan Form.

**Step 4.**    The athlete shall be notified by letter of the CEO's decision. The NGB shall receive a copy of the decision. The CEO's determination of a missed test is not final and shall be subject to the review and appeal process set forth below. If the athlete wishes to contest a missed test decision at a subsequent hearing, then the athlete must file a written objection with USADA within 30 days of notice of USADA's decision. The athlete will also have the right to challenge any finding of any "missed test" objected to within 30 days of notice of the USADA CEO's decision in a hearing brought to impose discipline as a result of three missed tests. The hearing shall be conducted pursuant to the USADA Adjudication Protocol which shall be a part of the Contract between USADA and the USOC ("the USADA Adjudication Protocol"). In addition, within 30 days of notice of the USADA's CEO's decision, the athlete may also request an administrative review of the CEO's determination of a missed test. This administrative review shall be conducted by a three member panel composed of members of the USADA Board of Directors or their designees. Such review shall be based on written submittals

only and shall not be considered a hearing. The decision of the panel shall not be binding in any subsequent hearing initiated by the athlete to contest the determination that the athlete has three missed tests. An athlete shall not be held responsible for subsequent missed tests which occur before the athlete receives notice under Step 2 above of a prior missed test.

**B.**     **Athlete is selected for testing from the NGB's Out of Competition ("OOC") pool but the athlete has not filed an Athlete Location Form for the quarter in which the draw takes place (the "current quarter").**

**Step 1.**     USADA confirms that the athlete is in the NGB OOC pool and that the athlete was notified in writing of the requirement to submit a quarterly Athlete Location Form to USADA.

**Step 2.**     USADA confirms that the athlete is past the specified deadline for submitting an Athlete Location Form for the current quarter and has had a reasonable time to do so.

**Step 3.**     Athlete is notified by letter and invited to provide an explanation to USADA why no Athlete Location Form was filed for the current quarter.

**Step 4.**     USADA's CEO determines whether to declare a missed test because the athlete's name was drawn for OOC testing and the athlete failed to file an Athlete Location Form for the current quarter.

**Step 5.**     The athlete shall be notified by letter of the CEO's decision. The NGB shall receive a copy of the decision. The CEO's determination of a missed test is not final and shall be subject to the review and appeal process set forth below. If the athlete wishes to contest a missed test decision at a subsequent hearing, then the athlete must file a written objection with USADA within 30 days of notice of USADA's decision. The athlete will also have the right to challenge any finding of any "missed test" within 30 days of notice of the USADA CEO's decision objected to in a hearing brought to impose discipline as a result of three missed tests. The hearing shall be conducted pursuant to the USADA Adjudication Protocol which shall be a part of the Contract between USADA and the USOC ("the USADA Adjudication Protocol"). In addition, within 30 days of notice of the USADA CEO's decision, the athlete may also request an administrative review of the CEO's determination of a missed test. This administrative review shall be conducted by a three member panel composed of members of the USADA Board of Directors or their designees. Such review shall be based on written submittals only and shall not be considered a hearing. The decision of the panel shall not be binding in any subsequent hearing initiated by the athlete to contest the determination that the athlete has three missed tests. An athlete shall not be held responsible for subsequent missed tests which occur before the athlete receives notice under Step 3 above of a prior missed test.

**C.**     **Notice.**

For all purposes of this USADA Procedure Regarding Missed Tests, where USADA is required to send notice to the athlete, USADA will send the notice by overnight courier to the

athlete's most recent address on file with USADA. If USADA is not able to obtain delivery at such address, then USADA shall contact the NGB and send notice by overnight courier to the athlete's most recent address on file with the NGB if that is a different address than the most recent address on file with USADA. If the athlete's most recent address on file with USADA and the NGB is the same, or if USADA is unable to obtain delivery at the athlete's most recent address on file with the NGB, then notice to the athlete shall be effective upon the courier's last attempt to deliver.

## ANNEX C TO USOC NATIONAL ANTI-DOPING POLICIES

## SUSPENSION OF BENEFITS

### a) Suspension of USOC Benefits After Adjudication, Admission, or Acceptance

The below chart summarizes the disposition of athlete access to USOC benefits after adjudication, admission, or acceptance of having committed a doping offense. Should an individual other than an athlete be found to have committed a doping offense, by adjudication, admission, or acceptance, that individual shall be treated in a manner consistent with the dispositions set forth in the below chart.

| USOC Benefit | Disposition |
|---|---|
| 1. Direct Athlete Support that is not based on a single competitive result | For all violations resulting in a period of suspension, loss of benefit for period of suspension. After the conclusion of the suspension, the athlete will have to re-qualify for athlete support programs (e.g., attain appropriate rank, etc.) |
| 2. Op Gold and single competitive result-based athlete support | If an athlete loses a competitive result as a result of an anti-doping rule violation from in-competition testing, the athlete will lose the Direct Athlete Support based solely on that event (and the result at that event). |
| 3. Tuition Grants | For all violations, loss of benefit for period of suspension. If punishment is loss of result only, there will be no loss of benefit. Athletes cannot be considered for a tuition grant during any period of suspension. |
| 4. Olympic Training Center and Olympic Training Sites Access (camps, etc.) | For all first time violations of section 10.3 of the World Anti-Doping Code, no loss of benefit. For all other violations, loss of benefit for period of suspension. |
| 5. Olympic Training Center Residence | For all first time violations of section 10.3 of the World Anti-Doping Code, no loss of benefit. For all other violations, loss of benefit for period of suspension.<br><br>Recreational drugs not included in the prohibited list, and other conduct issues, and resulting penalties, will be handled through the OTC Code of Conduct. |

| USOC Benefit | Disposition |
|---|---|
| 6. Other USOC Services<br>    Alumni Relations<br>    Athlete Marketing (including access<br>    to sponsor programs and OJOP)<br>    Athlete Service Centers<br>    Career Consultation<br>    Media Services<br>    Peak Performers Workshops<br>    Personal Development Programs<br>    Resource Library Access<br>    Sports Medicine<br>    Sports Science and Coaching<br>    SUMMITs<br>    TeamUSA.net Website | For all first time violations of section 10.3 of the World Anti-Doping Code no loss of benefit. For all other violations, loss of benefit for period of suspension.<br><br>Participation in the OJOP program and sponsor programs will also be dependent on employer or sponsor views. |
| 7. USOC Events<br>    Olympic, Pan American, Paralympic<br>    Games teams, trials, and qualifying<br>    events<br>    Titan Games and similar events | For all violations, loss of benefit or eligibility for benefit for period of suspension. This issue may be controlled by IF or IOC or other rules, which may cause a different result. |
| 8. Elite Athlete Health Insurance | For all first time violations of section 10.3 of the World Anti-Doping Code, no loss of benefit. For all other violations, loss of benefit for period of suspension. |

If a doping offense results in no period of suspension (i.e., only loss of result), then the athlete will lose the result-dependent USOC benefits set forth in the second category of the chart above but no other benefits will be lost.

All USOC benefits are contingent on participation in the anti-doping testing program. Should the case arise where cash benefits of athlete support and tuition grants are paid before an athlete is suspended and the athlete is later determined to have committed a doping offense during the period in which the athlete received benefits, the athlete will have a repayment obligation to the USOC equal to the amount of the benefit received.

To the extent the USOC creates a benefit not listed in the above chart, the USOC will endeavor to classify the new benefit in accordance with similar benefits in the above chart and will publish an addendum to this Annex or restate the entire Annex reflecting that change.

**b) Suspension of USOC Benefits Prior to Adjudication, Admission, or Acceptance**

After an A sample is declared positive or when an anti-doping case is proceeding:

1. Cash benefits of athlete support that are based on single results (such as Operation Gold or other NGB-specific programs) should be suspended if they have not already been paid when an "A" positive is reported to the USOC for the event that forms the basis of the award. Should the case arise where such result-dependent benefits of athlete grants are paid before suspension and the athlete is determined to have committed an anti-doping rule violation, the athlete will have a repayment obligation to the USOC equal to the amount of the benefit received. The USOC, seeking AAC and other appropriate input, and USADA will together develop: 1) a timeline, and 2) a reporting mechanism for processing and reporting results-dependent event testing. The timeline developed will be recommended for adoption as a National Anti-Doping Policy of the USOC and published as such. Such timeline will allow for test results to be processed and reported, but shall not unreasonably delay payment to athletes.

2. Athlete support payments will be temporarily held by the USOC if there is any outstanding information due to the USOC and USADA until that information is provided.[1]

3. For all other USOC-provided benefits or circumstances not falling within the above two categories, no benefits impact would occur until after an admission by an athlete or the conclusion of an adjudication or acceptance of a penalty adverse to an athlete, in which case the benefits would be addressed in accordance with the above chart.

4. Under no circumstances, except those described specifically above will the USOC withhold athlete support benefits or monies, unless otherwise required by law or superior regulation.

### c) Access to NGB Benefits and Services

Under the World Anti-Doping Code, NGBs, as members of a Code signatory (the USOC), must engage in the same or similar suspensions of benefits and access as the USOC. NGBs are to adopt policies similar to those adopted by the USOC within this policy, subject to USOC approval.

---

[1]   The information referred to in this paragraph is limited to USOC paperwork required to provide the athlete support benefit, athlete location information required by USADA, and similar information that might be requested in the future to allow administration of these programs.