# EXHIBIT 3

Dockets.Justia.com

| | | |
|---|---|---|
| JUSTIN GATLIN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:08-cv-241/LAC/EMT |
| UNITED STATES ANTI-DOPING AGENCY, INC.; UNITED STATES TRACK AND FIELD ASSOCIATION; UNITED STATES OLYMPIC COMMITTEE, INC.; INTERNATIONAL ASSOCIATION OF ATHLETICS FEDERATIONS, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## Declaration of James E. Scherr

I, James E. Scherr, depose and state as follows:

1.     My name is James E. Scherr. I have been an employee of the United States Olympic Committee ("USOC") since 2000. On April 29, 2005, I was named CEO of the USOC and have held that position continuously until the present day. As the CEO, I direct the day-to-day operations of the USOC.

2.     I make the following declaration from my personal knowledge, except where my statements are noted as made upon information and belief.

3.     Attached hereto as Exhibit "A" is a true and correct copy of the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §220501 et seq. (the "Act"). This document charters the USOC, and specifies requirements for the operation of the USOC and its member National Governing Bodies (NGBs) and Paralympic Sport Organizations (PSOs) for individual sports.

4.     Attached hereto as Exhibit "B" is a true and correct copy of the USOC Bylaws. This document governs the USOC's operations.

5.     The USOC is a federally chartered 501(c)(3) status non-profit corporation, created pursuant to the Act.

6.     The USOC is authorized by the U.S. Congress to serve as the National Olympic Committee ("NOC") and the National Paralympic Committee ("NPC") for the United States and must adhere to the statutory requirements set forth in the Act. The USOC is also subject to the oversight and review of the U.S. Congress.

7.     The USOC's mission is to support United States Olympic and Paralympic athletes in achieving sustained competitive excellence and preserve the Olympic Ideals, and thereby inspire all Americans.

8.     Among the USOC's powers and responsibilities are:

- to exercise exclusive jurisdiction over all matters pertaining to United States participation in the Olympic Games;
- to obtain for the United States the most competent representation possible in each event of the Olympic; and
- to provide swift resolution of conflicts and disputes involving athletes, national governing bodies, and sports organizations, and protect the opportunity of any athlete, coach, trainer, manager, administrator, or official to participate in Olympic athletic competition.

9.     The USOC is recognized by the International Olympic Committee ("IOC") as the NOC for the United States. While conserving its independence and autonomy in the administration of Olympic sports, the USOC, as an NOC, must ensure that its statutes, practice and activities conforms with the Olympic Charter.

10.    The IOC is an international, non-governmental, non-profit organization organized under the laws of Switzerland, and the creator of the Olympic Movement. The

IOC exists to serve as an umbrella organization of the Olympic Movement. Its primary responsibility is to supervise the organization of the summer and winter Olympic Games.

11.     The individual NOCs, including the USOC, work in conjunction with the IOC to promote the worldwide Olympic movement and are each responsible for organizing their country's participation in the Olympic Games.

12.     The IOC recognizes International Sports Federations (IFs) as administering one or more sports at world level. IFs administer their sports internationally. While conserving their independence and autonomy in the administration of their sports, IFs must ensure that their organizing documents, practice and activities conform with the Olympic Charter.

13.     The International Association of Athletics Federations ("IAAF") is the IF recognized by the IOC as the IF for athletics (track and field).

14.     The USOC, pursuant to the authority granted to it by the Act, authorizes sports organizations to serve as NGBs to administer and govern a particular sport within the United States. NGBs, as part of their duties, also organize athletic activities and competitions within their individual sport in the United States.

15.     IFs also recognize those NGB's (referred to internationally as national sports federations).

16.     USA Track and Field ("USATF") is the NGB recognized by the USOC for athletics (track and field). USATF has been recognized by the IAAF as the national federation for athletics (track and field) for the United States.

17.     Pursuant to the Act, the USOC works with NGBs, including USATF, to set up criteria for selection for the Olympic Games. When it is determined that an

Olympic trials is the best procedure for selection, the USOC enters into a contract with the NGB regarding the operation of the trials.

18. The IOC also requires all NOCs to abide by a strict set of anti-doping standards as implemented by the World Anti-Doping Agency ("WADA").

19. WADA is the international independent organization created to promote, coordinate, and monitor the fight against doping in sport in all its forms. It is composed and funded equally by the sports movement and governments of the world. WADA coordinated the development and implementation of the World Anti-Doping Code (Code), the document harmonizing anti-doping policies in all sports and all countries. WADA works towards a vision of the world that values and fosters doping free sport.

20. The U.S. Anti-Doping Agency ("USADA") is the national anti-doping organization for the Olympic movement in the United States. USADA is an independent agency created at the USOC's request, to provide a comprehensive, independent national anti-doping testing and adjudication program for Olympic related sports in the United States. USADA operates its testing program on behalf of the Olympic movement in the United States pursuant to a multiyear agreement with the USOC.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my present knowledge, information and belief.

Executed on: June 20, 2008

James L. Scherr

4

# CHAPTER 2205—UNITED STATES OLYMPIC COMMITTEE

## SUBCHAPTER I—CORPORATION

Sec.
220501. Definitions.
220502. Organization.
220503. Purposes.
220504. Membership.
220505. Powers.
220506. Exclusive right to name, seals, emblems, and badges.
220507. Restrictions.
220508. Headquarters, principal office, and meetings.
220509. Resolution of disputes.
220510. Service of process.
220511. Report.
220512. Complete teams.

## SUBCHAPTER II—NATIONAL GOVERNING BODIES

220521. Recognition of amateur sports organizations as national governing bodies.
220522. Eligibility requirements.
220523. Authority of national governing bodies.
220524. General duties of national governing bodies.
220525. Granting sanctions for amateur athletic competitions.
220526. Restricted amateur athletic competitions.
220527. Complaints against national governing bodies.
220528. Applications to replace an incumbent national governing body.
220529. Arbitration of corporation determinations.

## SUBCHAPTER I—CORPORATION

### §220501. Title and Definitions

(a) TITLE.—This chapter may be cited as the "Ted Stevens Olympic and Amateur Sports Act".

(b) DEFINITIONS.—For purposes of this chapter—

(1) "amateur athlete" means an athlete who meets the eligibility standards established by the national governing body or paralympic sports organization for the sport in which the athlete competes.

91

**Exhibit A**

    (2) "amateur athletic competition" means a contest, game, meet, match, tournament, regatta, or other event in which amateur athletes compete.

    (3) "amateur sports organization" means a not-for-profit corporation, association, or other group organized in the United States that sponsors or arranges an amateur athletic competition.

    (4) "corporation" means the United States Olympic Committee.

    (5) "international amateur athletic competition" means an amateur athletic competition between one or more athletes representing the United States, individually or as a team, and one or more athletes representing a foreign country.

    (6) "national governing body" means an amateur sports organization that is recognized by the corporation under section 220521 of this title.

    (7) "paralympic sports organization" means an amateur sports organization which is recognized by the corporation under section 220521 of this title.

    (8) "sanction" means a certificate of approval issued by a national governing body.

## §220502. Organization

    (a) FEDERAL CHARTER.—The corporation is a federally chartered corporation.

    (b) PERPETUAL EXISTENCE.—Except as otherwise provided, the corporation has perpetual existence.

    (c) REFERENCES TO UNITED STATES OLYMPIC ASSOCIATION.—Any reference to the United States Olympic Association is deemed to refer to the United States Olympic Committee.

## §220503. Purposes

    The purposes of the corporation are—

    (1) to establish national goals for amateur athletic activities and encourage the attainment of those goals;

    (2) to coordinate and develop amateur athletic activity in the United States, directly related to international amateur athletic competition, to foster productive working relationships among sports-related organizations;

(3) to exercise exclusive jurisdiction, directly or through constituent members or committees, over—

    (A) all matters pertaining to United States participation in the Olympic Games, the Paralympic Games, and the Pan-American Games, including representation of the United States in the games; and

    (B) the organization of the Olympic Games, the Paralympic Games, and the Pan-American Games when held in the United States;

(4) to obtain for the United States, directly or by delegation to the appropriate national governing body, the most competent amateur representation possible in each event of the Olympic Games, the Paralympic Games, and Pan-American Games;

(5) to promote and support amateur athletic activities involving the United States and foreign nations;

(6) to promote and encourage physical fitness and public participation in amateur athletic activities;

(7) to assist organizations and persons concerned with sports in the development of amateur athletic programs for amateur athletes;

(8) to provide swift resolution of conflicts and disputes involving amateur athletes, national governing bodies, and amateur sports organizations, and protect the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official to participate in amateur athletic competition;

(9) to foster the development of amateur athletic facilities for use by amateur athletes and assist in making existing amateur athletic facilities available for use by amateur athletes;

(10) to provide and coordinate technical information on physical training, equipment design, coaching, and performance analysis;

(11) to encourage and support research, development, and dissemination of information in the areas of sports medicine and sports safety;

(12) to encourage and provide assistance to amateur athletic activities for women;

(13) to encourage and provide assistance to amateur athletic programs and competition for amateur athletes with disabilities, including, where feasible, the expansion of opportunities for meaningful participation by such amateur athletes in programs of athletic competition for able-bodied amateur athletes; and

(14) to encourage and provide assistance to amateur athletes of racial and ethnic minorities for the purpose of eliciting the participation of those minorities in amateur athletic activities in which they are underrepresented.

## §220504. Membership

(a) ELIGIBILITY.—Eligibility for membership in the corporation is as provided in the constitution and bylaws of the corporation.

(b) REQUIRED PROVISIONS FOR REPRESENTATION.—In its constitution and bylaws, the corporation shall establish and maintain provisions with respect to its governance and the conduct of its affairs for reasonable representation of—

(1) amateur sports organizations recognized as national governing bodies and paralympic sports organizations in accordance with section 220521 of this title, including through provisions which establish and maintain a National Governing Bodies' Council composed of representatives of the national governing bodies and any paralympic sports organizations and selected by their boards of directors or such other governing boards to ensure effective communication between the corporation and such national governing bodies and paralympic sports organizations;

(2) amateur athletes who are actively engaged in amateur athletic competition or who have represented the United States in international amateur athletic competition within the preceding 10 years, including through provisions which—

(A) establish and maintain an Athletes' Advisory Council composed of, and elected by, such amateur athletes to ensure communication between the corporation and such amateur athletes; and

(B) ensure that the membership and voting power held by such amateur athletes is not less than 20 percent of the membership and voting power held in the board of directors of the corporation and in the committees and entities of the corporation;

(3) amateur sports organizations that conduct a national program or regular national amateur athletic competition in 2 or more sports that are included on the program of the Olympic Games, the Paralympic Games, or the Pan-American Games on a level of proficiency appropriate for the selection of amateur athletes to represent the United States in international amateur athletic competition; and

(4)     individuals not affiliated or associated with any amateur sports organization who, in the corporation's judgment, represent the interests of the American public in the activities of the corporation.

## §220505. Powers

(a) CONSTITUTION AND BYLAWS.—The corporation shall adopt a constitution and bylaws. The corporation may amend its constitution only if the corporation—

(1)     publishes, in its principal publication, a notice of the proposed amendment, including—

(A)     the substantive terms of the amendment;

(B)     the time and place of the corporation's regular meeting at which adoption of the amendment is to be decided; and

(C)     a provision informing interested persons that they may submit materials as authorized in clause (2) of this subsection; and

(2)     gives all interested persons an opportunity to submit written comments and information for at least 60 days after publication of notice of the proposed amendment and before adoption of the amendment.

(b)  GENERAL CORPORATE POWERS.—The corporation may—

(1)     adopt and alter a corporate seal;

(2)     establish and maintain offices to conduct the affairs of the corporation;

(3)     make contracts;

(4)     accept gifts, legacies, and devises in furtherance of its corporate purposes;

(5)     acquire, own, lease, encumber, and transfer property as necessary to carry out the purposes of the corporation;

(6)     borrow money, issue instruments of indebtedness, and secure its obligations by granting security interests in its property;

(7)     publish a magazine, newspaper, and other publications consistent with its corporate purposes;

(8)  approve and revoke membership in the corporation;

(9)  sue and be sued, except that any civil action brought in a State court against the corporation and solely relating to the corporation's responsibilities under this Act shall be removed, at the request of the corporation, to the district court of the United States in the district in which the action was brought, and such district court shall have original jurisdiction over the action without regard to the amount in controversy or citizenship of the parties involved, and except that neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter; and

(10)  do any other act necessary and proper to carry out the purposes of the corporation.

(c)  POWERS RELATED TO AMATEUR ATHLETICS AND THE OLYMPIC GAMES.—The corporation may—

(1)  serve as the coordinating body for amateur athletic activity in the United States directly related to international amateur athletic competition;

(2)  represent the United States as its national Olympic committee in relations with the International Olympic Committee and the Pan-American Sports Organization and as its national Paralympic committee in relations with the International Paralympic Committee;

(3)  organize, finance, and control the representation of the United States in the competitions and events of the Olympic Games, the Paralympic Games, and the Pan-American Games, and obtain, directly or by delegation to the appropriate national governing body, amateur representation for those games;

(4)  recognize eligible amateur sports organizations as national governing bodies for any sport that is included on the program of the Olympic Games or the Pan-American Games, or as paralympic sports organizations for any sport that is included on the program of the Paralympic Games;

(5)  facilitate, through orderly and effective administrative procedures, the resolution of conflicts or disputes that involve any of its members and any amateur athlete, coach, trainer, manager, administrator, official, national governing body, or amateur sports organization and that arise in connection with their eligibility for and participation in the Olympic Games, the Paralympic Games, the Pan-American Games, world championship competition, the Pan-American world championship competition, or other protected competition as defined in the constitution and bylaws of the corporation; and

(6)  provide financial assistance to any organization or association, except a corporation organized for profit, in furtherance of the purposes of the corporation.

§220506. Exclusive right to name, seals, emblems, and badges

(a)  EXCLUSIVE RIGHT OF CORPORATION.—Except as provided in subsection (d) of this
section, the corporation has the exclusive right to use—

   (1)  the name "United States Olympic Committee";

   (2)  the symbol of the International Olympic Committee, consisting of 5 interlocking
   rings, the symbol of the International Paralympic Committee, consisting of 3 TaiGeuks, or
   the symbol of the Pan-American Sports Organization, consisting of a torch surrounded by
   concentric rings;

   (3)  the emblem of the corporation, consisting of an escutcheon having a blue chief and
   vertically extending red and white bars on the base with 5 interlocking rings displayed on
   the chief; and

   (4)  the words "Olympic", "Olympiad", "Citius Altius Fortius", "Paralympic",
   "Paralympiad", "Pan-American", "America Espirito Sport Fraternite", or any combination
   of those words.

(b)  CONTRIBUTORS AND SUPPLIERS.—The corporation may authorize contributors and
suppliers of goods or services to use the trade name of the corporation or any trademark,
symbol, insignia, or emblem of the International Olympic Committee, International Paralympic
Committee, the Pan-American Sports Organization, or of the corporation to advertise that the
contributions, goods, or services were donated or supplied to, or approved, selected, or used by,
the corporation, the United States Olympic team, the Paralympic team, the Pan-American team,
or team members.

(c)  CIVIL ACTION FOR UNAUTHORIZED USE.—Except as provided in subsection (d) of this
section, the corporation may file a civil action against a person for the remedies provided in the
Act of July 5, 1946 (15 U.S.C. 1051 et seq.) (popularly known as the Trademark Act of 1946) if
the person, without the consent of the corporation, uses for the purpose of trade, to induce the
sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or
competition—

   (1)  the symbol described in subsection (a)(2) of this section;

   (2)  the emblem described in subsection (a)(3) of this section;

   (3)  the words described in subsection (a)(4) of this section, or any combination or
        simulation of those words tending to cause confusion or mistake, to deceive, or to
        falsely suggest a connection with the corporation or any Olympic, Paralympic, or
        Pan-American Games activity; or

(4) any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the International Olympic Committee, the International Paralympic Committee, the Pan-American Sports Organization, or the corporation.

(d) PRE-EXISTING AND GEOGRAPHIC REFERENCE RIGHTS.—

(1) A person who actually used the emblem described in subsection (a)(3) of this section, or the words or any combination of the words described in subsection (a)(4) of this section, for any lawful purpose before September 21, 1950, is not prohibited by this section from continuing the lawful use for the same purpose and for the same goods or services.

(2) A person who actually used, or whose assignor actually used, the words or any combination of the words described in subsection (a)(4) of this section, or a trademark, trade name, sign, symbol, or insignia described in subsection (c)(4) of this section, for any lawful purpose before September 21, 1950, is not prohibited by this section from continuing the lawful use for the same purpose and for the same goods or services.

(3) Use of the word "Olympic" to identify a business or goods or services is permitted by this section where—

(A) such use is not combined with any of the intellectual properties referenced in subsections (a) or (c) of this section;

(B) it is evident from the circumstances that such use of the word "Olympic" refers to the naturally occurring mountains or geographical region of the same name that were named prior to February 6, 1998, and not to the corporation or any Olympic activity; and

(C) such business, goods, or services are operated, sold, and marketed in the State of Washington west of the Cascade Mountain range and operations, sales, and marketing outside of this area are not substantial.

## §220507. Restrictions

(a) PROFIT AND STOCK.—The corporation may not engage in business for profit or issue stock.

(b) POLITICAL ACTIVITIES.—The corporation shall be nonpolitical and may not promote the candidacy of an individual seeking public office.

§220508. Headquarters, principal office, and meetings

The corporation shall maintain its principal office and national headquarters in a place in the United States decided by the corporation. The corporation may hold its annual and special meetings in the places decided by the corporation.

§220509. Resolution of disputes

(a) GENERAL.—The corporation shall establish and maintain provisions in its constitution and bylaws for the swift and equitable resolution of disputes involving any of its members and relating to the opportunity of an amateur athlete, coach, trainer, manager, administrator, or official to participate in the Olympic Games, the Paralympic Games, the Pan-American Games, world championship competition, or other protected competition as defined in the constitution and bylaws of the corporation. In any lawsuit relating to the resolution of a dispute involving the opportunity of an amateur athlete to participate in the Olympic Games, the Paralympic Games, or the Pan-American Games, a court shall not grant injunctive relief against the corporation within 21 days before the beginning of such games if the corporation, after consultation with the chair of the Athletes' Advisory Council, has provided a sworn statement in writing executed by an officer of the corporation to such court that its constitution and bylaws cannot provide for the resolution of such dispute prior to the beginning of such games.

(b) OMBUDSMAN.—

(1) The corporation shall hire and provide salary, benefits, and administrative expenses for an ombudsman for athletes, who shall—

(A) provide independent advice to athletes at no cost about the applicable provisions of this chapter and the constitution and bylaws of the corporation, national governing bodies, a paralympic sports organizations, international sports federations, the International Olympic Committee, the International Paralympic Committee, and the Pan-American Sports Organization, and with respect to the resolution of any dispute involving the opportunity of an amateur athlete to participate in the Olympic Games, the Paralympic Games, the Pan-American Games, world championship competition or other protected competition as defined in the constitution and bylaws of the corporation;

(B) assist in mediating any such disputes; and

(C) report to the Athletes' Advisory Council on a regular basis.

(2)(A) The procedure for hiring the ombudsman for athletes shall be as follows:

(i) The Athletes' Advisory Council shall provide the corporation's executive director with the name of one qualified person to serve as ombudsman for athletes.

(ii) The corporation's executive director shall immediately transmit the name of such person to the corporation's executive committee.

(iii) The corporation's executive committee shall hire or not hire such person after fully considering the advice and counsel of the Athletes' Advisory Council.

If there is a vacancy in the position of the ombudsman for athletes, the nomination and hiring procedure set forth in this paragraph shall be followed in a timely manner.

(B) The corporation may terminate the employment of an individual serving as ombudsman for athletes only if—

(i) the termination is carried out in accordance with the applicable policies and procedures of the corporation;

(ii) the termination is initially recommended to the corporation's executive committee by either the corporation's executive director or by the Athletes' Advisory Council; and

(iii) the corporation's executive committee fully considers the advice and counsel of the Athletes' Advisory Council prior to deciding whether or not to terminate the employment of such individual.

## §220510. Service of process

As a condition to the exercise of any power or privilege granted by this chapter, the corporation shall have a designated agent in the State of Colorado to receive service of process for the corporation. Notice to or service on the agent, or mailed to the business address of the agent, is notice to or service on the corporation.

## §220511. Report

(a) SUBMISSION TO PRESIDENT AND CONGRESS.[1]—The corporation shall, on or before the first day of June, 2001, and every fourth year thereafter, transmit simultaneously to the President and to each House of Congress a detailed report of its operations for the preceding 4 years, including—

---

[1]  The following additional reporting requirement is set forth in section 142.(q) of the Omnibus Appropriations Act of 1998 enacted on October 21, 1998. "SPECIAL REPORT TO CONGRESS.—Five years from the date of the enactment of this Act, the United States Olympic Committee shall submit a special report to the Congress on the effectiveness of the provisions of chapter 2205 of title 36, United States Code, as amended by this Act, together with any additional proposed changes to that chapter the United States Olympic Committee determines are appropriate."

(1)   a complete statement of its receipts and expenditures;

(2)   a comprehensive description of the activities and accomplishments of the corporation during such 4-year period;

(3)   data concerning the participation of women, disabled individuals, and racial and ethnic minorities in the amateur athletic activities and administration of the corporation and national governing bodies; and

(4)   a description of the steps taken to encourage the participation of women, disabled individuals, and racial minorities in amateur athletic activities.

(b)   AVAILABILITY TO PUBLIC.—The corporation shall make copies of the report available to interested persons at a reasonable cost.

## §220512  Complete teams

In obtaining representation for the United States in each competition and event of the Olympic Games, Paralympic Games, and Pan-American Games, the corporation, either directly or by delegation to the appropriate national governing body or paralympic sports organization, may select, but is not obligated to select (even if not selecting will result in an incomplete team for an event), athletes who have not met the eligibility standard of the national governing body and the Corporation, when the number of athletes who have met the eligibility standards of such entities is insufficient to fill the roster for an event.

# SUBCHAPTER II—NATIONAL GOVERNING BODIES

## §220521.  Recognition of amateur sports organizations as national governing bodies

(a)   GENERAL AUTHORITY.—For any sport which is included on the program of the Olympic Games, the Paralympic Games, or the Pan-American Games, the corporation is authorized to recognize as a national governing body (in the case of a sport on the program of the Olympic Games or Pan American Games) or as a paralympic sports organization (in the case of a sport on the program of the Paralympic Games for which a national governing body has not been designated under section 220522(b)) an amateur sports organization which files an application and is eligible for such recognition in accordance with the provisions of subsections (a) or (b) of section 220522.  The corporation may recognize only one national governing body for each sport for which an application is made and approved, except as provided in section 220522(b) with respect to a paralympic sports organization.

(b) PUBLIC HEARING.—Before recognizing an organization as a national governing body, the corporation shall hold at least 2 public hearings on the application. The corporation shall publish notice of the time, place, and nature of the hearings. Publication shall be made in a regular issue of the corporation's principal publication at least 30 days, but not more than 60 days, before the date of the hearings. The corporation shall send written notice, which shall include a copy of the application, at least 30 days prior to the date of any such public hearing to all amateur sports organizations known to the corporation in that sport.

(c) RECOMMENDATION TO INTERNATIONAL SPORTS FEDERATION.—Within 61 days after recognizing an organization as a national governing body, the corporation shall recommend and support in any appropriate manner the national governing body to the appropriate international sports federation as the representative of the United States for that sport.

(d) REVIEW OF RECOGNITION.—The corporation may review all matters related to the continued recognition of an organization as a national governing body and may take action it considers appropriate, including placing conditions on the continued recognition.

## §220522. Eligibility requirements

(a) GENERAL.—An amateur sports organization is eligible to be recognized, or to continue to be recognized, as a national governing body only if it—

(1) is incorporated under the laws of a State of the United States or the District of Columbia as a not-for-profit corporation having as its purpose the advancement of amateur athletic competition;

(2) has the managerial and financial capability to plan and execute its obligations;

(3) submits—

(A) an application, in the form required by the corporation, for recognition as a national governing body;

(B) a copy of its corporate charter and bylaws; and

(C) any additional information considered necessary or appropriate by the corporation;

(4)  agrees to submit to binding arbitration in any controversy involving—

    (A)  its recognition as a national governing body, as provided for in section 220529 of this title, upon demand of the corporation; and

    (B)  the opportunity of any amateur athlete, coach, trainer, manager, administrator or official to participate in amateur athletic competition, upon demand of the corporation or any aggrieved amateur athlete, coach, trainer, manager, administrator or official,

conducted in accordance with the Commercial Rules of the American Arbitration Association, as modified and provided for in the corporation's constitution and bylaws, except that if the Athletes' Advisory Council and National Governing Bodies' Council do not concur on any modifications to such Rules, and if the corporation's executive committee is not able to facilitate such concurrence, the Commercial Rules of Arbitration shall apply unless at least two-thirds of the corporation's board of directors approves modifications to such Rules;

(5)  demonstrates that it is autonomous in the governance of its sport, in that it—

    (A) independently decides and controls all matters central to governance;

    (B)  does not delegate decision-making and control of matters central to governance; and

    (C)  is free from outside restraint;

(6)  demonstrates that it is a member of no more than one international sports federation that governs a sport included on the program of the Olympic Games or the Pan-American Games;

(7)  demonstrates that its membership is open to any individual who is an amateur athlete, coach, trainer, manager, administrator, or official active in the sport for which recognition is sought, or any amateur sports organization that conducts programs in the sport for which recognition is sought, or both;

(8)  provides an equal opportunity to amateur athletes, coaches, trainers, managers, administrators, and officials to participate in amateur athletic competition, without discrimination on the basis of race, color, religion, sex, age, or national origin, and with fair notice and opportunity for a hearing to any amateur athlete, coach, trainer, manager, administrator, or official before declaring the individual ineligible to participate;

(9)  is governed by a board of directors or other governing board whose members are selected without regard to race, color, religion, national origin, or sex, except that, in sports where there are separate male and female programs, it provides for reasonable

representation of both males and females on the board of directors or other governing board;

(10) demonstrates, based on guidelines approved by the corporation, the Athletes' Advisory Council, and the National Governing Bodies' Council, that its board of directors and other such governing boards have established criteria and election procedures for and maintain among their voting members individuals who are actively engaged in amateur athletic competition in the sport for which recognition is sought or who have represented the United States in international amateur athletic competition within the preceding 10 years, that any exceptions to such guidelines by such organization have been approved by the corporation, and that the voting power held by such individuals is not less than 20 percent of the voting power held in its board of directors and other such governing boards;

(11) provides for reasonable direct representation on its board of directors or other governing board for any amateur sports organization that—

(A)  conducts a national program or regular national amateur athletic competition in the applicable sport on a level of proficiency appropriate for the selection of amateur athletes to represent the Untied States in international amateur athletic competition; and

(B)  ensures that the representation reflects the nature, scope, quality, and strength of the programs and competitions of the amateur sports organization in relation to all other programs and competitions in the sport in the United States;

(12) demonstrates that none of its officers are also officers of any other amateur sports organization recognized as a national governing body;

(13) provides procedures for the prompt and equitable resolution of grievances of its members;

(14) does not have eligibility criteria related to amateur status or to participation in the Olympic Games, the Paralympic Games, or the Pan-American Games that are more restrictive than those of the appropriate international sports federation; and

(15) demonstrates, if the organization is seeking to be recognized as a national governing body, that it is prepared to meet the obligations imposed on a national governing body under sections 220524 and 220525 of this title.

(b) RECOGNITION OF PARALYMPIC SPORTS ORGANIZATIONS.—For any sport which is included on the program of the Paralympic Games, the corporation is authorized to designate, where feasible and when such designation would serve the best interest of the sport, and with the approval of the affected national governing body, a national governing body recognized

under subsection (a) to govern such sport. Where such designation is not feasible or would not serve the best interest of the sport, the corporation is authorized to recognize another amateur sports organization as a paralympic sports organization to govern such sport, except that, notwithstanding the other requirements of this chapter, any such paralympic sports organization—

(1) shall comply only with those requirements, perform those duties, and have those powers that the corporation, in its sole discretion, determines are appropriate to meet the objects and purposes of this chapter; and

(2) may, with the approval of the corporation, govern more than one sport included on the program of the Paralympic Games.

## §220523. Authority of national governing bodies

(a) AUTHORITY.—For the sport that it governs, a national governing body may—

(1) represent the United States in the appropriate international sports federation;

(2) establish national goals and encourage the attainment of those goals;

(3) serve as the coordinating body for amateur athletic activity in the United States;

(4) exercise jurisdiction over international amateur athletic activities and sanction international amateur athletic competition held in the United States and sanction the sponsorship of international amateur athletic competition held outside the United States;

(5) conduct amateur athletic competition, including national championships, and international amateur athletic competition in the United States, and establish procedures for determining eligibility standards for participation in competition, except for amateur athletic competition specified in section 220526 of this title;

(6) recommend to the corporation individuals and teams to represent the United States in the Olympic Games, the Paralympic Games, and the Pan-American Games, and

(7) designate individuals and teams to represent the United States in international amateur athletic competition (other than the Olympic Games, the Paralympic Games, and the Pan-American Games) and certify, in accordance with applicable international rules, the amateur eligibility of those individuals and teams.

(b) REPLACEMENT OF NATIONAL GOVERNING BODY PURSUANT TO ARBITRATION.—A national governing body may not exercise any authority under subsection (a) of this section for a particular sport after another amateur sports organization has been declared (in accordance

with binding arbitration proceedings prescribed by the organic documents of the corporation) entitled to replace that national governing body as the member of the corporation for that sport.

### §220524 General duties of national governing bodies

For the sport that it governs, a national governing body shall—

(1) develop interest and participation throughout the United States and be responsible to the persons and amateur sports organizations it represents;

(2) minimize, through coordination with other amateur sports organizations, conflicts in the scheduling of all practices and competitions;

(3) keep amateur athletes informed of policy matters and reasonably reflect the views of the athletes in its policy decisions;

(4) disseminate and distribute to amateur athletes, coaches, trainers, managers, administrators, and officials in a timely manner the applicable rules and any changes to such rules of the national governing body, the corporation, the appropriate international sports federation, the International Olympic Committee, the International Paralympic Committee, and the Pan-American Sports Organization;

(5) allow an amateur athlete to compete in any international amateur athletic competition conducted by any amateur sports organization or person, unless the national governing body establishes that its denial is based on evidence that the organization or person conducting the competition does not meet the requirements stated in section 220525 of this title;

(6) provide equitable support and encouragement for participation by women where separate programs for male and female athletes are conducted on a national basis;

(7) encourage and support amateur athletic sports programs for individuals with disabilities and the participation of individuals with disabilities in amateur athletic activity, including, where feasible, the expansion of opportunities for meaningful participation by individuals with disabilities in programs of athletic competition for able-bodied individuals;

(8) provide and coordinate technical information on physical training, equipment design, coaching, and performance analysis; and

(9) encourage and support research, development, and dissemination of information in the areas of sports medicine and sports safety.

**§220525. Granting sanctions for amateur athletic competitions**

(a) PROMPT REVIEW AND DECISION.—For the sport that it governs, a national governing body promptly shall—

(1) review a request by an amateur sports organization or person for a sanction to hold an international amateur athletic competition in the United States or to sponsor United States amateur athletes to compete in international amateur athletic competition outside the United States; and

(2) grant the sanction if—

(A) the national governing body does not decide by clear and convincing evidence that holding or sponsoring an international amateur athletic competition would be detrimental to the best interest of the sport; and

(B) the requirements of subsection (b) of this section are met.

(b) REQUIREMENTS.—An amateur sports organization or person may be granted a sanction under this section only if the organization or person meets the following requirements—

(1) The organization or person must pay the national governing body any required sanctioning fee, if the fee is reasonable and nondiscriminatory.

(2) For a sanction to hold an international amateur athletic competition in the United States, the organization or person must—

(A) submit to the national governing body an audited or notarized financial report of similar events, if any, conducted by the organization or person; and

(B) demonstrate that the requirements of paragraph (4) of this subsection have been met.

(3) For a sanction to sponsor United States amateur athletes to compete in international amateur athletic competition outside the United States, the organization or person must—

(A) submit a report of the most recent trip to a foreign country, if any, that the organization or person sponsored for the purpose of having United States amateur athletes compete in international amateur athletic competition; and

(B) submit a letter from the appropriate entity that will hold the international amateur athletic competition certifying that the requirements of paragraph (4) of this subsection have been met.

(4) The requirements referred to in paragraphs (2) and (3) of this subsection are that—

(A) appropriate measures have been taken to protect the amateur status of athletes who will take part in the competition and to protect their eligibility to compete in amateur athletic competition;

(B) appropriate provision has been made for validation of any records established during the competition;

(C) due regard has been given to any international amateur athletic requirements specifically applicable to the competition;

(D) the competition will be conducted by qualified officials;

(E) proper medical supervision will be provided for athletes who will participate in the competition; and

(F) proper safety precautions have been taken to protect the personal welfare of the athletics and spectators at the competition.

## §220526. Restricted amateur athletic competitions

(a) EXCLUSIVE JURISDICTION.—An amateur sports organization that conducts amateur athletic competition shall have exclusive jurisdiction over that competition if participation is restricted to a specific class of amateur athletes, such as high school students, college students, members of the Armed Forces, or similar groups or categories.

(b) SANCTIONS FOR INTERNATIONAL COMPETITION.—An amateur sports organization under subsection (a) of this section shall obtain a sanction from the appropriate national governing body if the organization wishes to—

(1) conduct international amateur athletic competition in the United States; or

(2) sponsor international amateur athletic competition to be held outside the United States.

## §220527. Complaints against national governing bodies

(a) GENERAL.—

(1) An amateur sports organization or person that belongs to or is eligible to belong to a national governing body may seek to compel the national governing body to comply with

sections 220522, 220524, and 220525 of this title by filing a written complaint with the corporation. A copy of the complaint shall be served on the national governing body.

(2) The corporation shall establish procedures for the filing and disposition of complaints under this section.

(b) EXHAUSTION OF REMEDIES.—

(1) An organization or person may file a complaint under subsection (a) of this section only after exhausting all available remedies within the national governing body for correcting deficiencies, unless it can be shown by clear and convincing evidence that those remedies would have resulted in unnecessary delay.

(2) Within 30 days after a complaint is filed, the corporation shall decide whether the organization or person has exhausted all available remedies as required by paragraph (1) of this subsection. If the corporation determines that the remedies have not been exhausted, it may direct that the remedies be pursued before the corporation considers the complaint further.

(c) HEARINGS.—If the corporation decides that all available remedies have been exhausted as required by subsection (b)(1) of this section, it shall hold a hearing, within 90 days after the complaint is filed, to receive testimony to decide whether the national governing body is complying with sections 220522, 220524, and 220525 of this title.

(d) DISPOSITION OF COMPLAINT.—

(1) If the corporation decides, as a result of the hearing, that the national governing body is complying with sections 220522, 220524, and 220525 of this title, it shall so notify the complainant and the national governing body.

(2) If the corporation decides, as a result of the hearing, that the national governing body is not complying with sections 220522, 220524, and 220525 of this title, it shall—

(A) place the national governing body on probation for a specified period of time, not to exceed 180 days, which the corporation considers necessary to enable the national governing body to comply with those sections; or

(B) revoke the recognition of the national governing body.

(3) If the corporation places a national governing body on probation under paragraph (2) of this subsection, it may extend the probationary period if the national governing body has proven by clear and convincing evidence that, through no fault of its own, it needs additional time to comply with sections 220522, 220524, and 220525 of this title. If, at the

end of the period allowed by the corporation, the national governing body has not complied with those sections, the corporation shall revoke the recognition of the national governing body.

## §220528. Applications to replace an incumbent national governing body

(a)  GENERAL.—An amateur sports organization may seek to replace an incumbent as the national governing body for a particular sport by filing a written application for recognition with the corporation.

(b)  ESTABLISHMENT OF PROCEDURES.—The corporation shall establish procedures for the filing and disposition of applications under this section. If 2 or more organizations file applications for the same sport, the applications shall be considered in a single proceeding.

(c)  FILING PROCEDURES.—

(1)  An application under this section must be filed within one year after the final day of-

(A)  any Olympic Games, for a sport in which competition is held in the Olympic Games or the Paralympic Games, or in both the Olympic and Pan-American Games; or

(B)  any Pan-American Games, for a sport in which competition is held in the Pan-American Games but not in the Olympic Games.

(2 )  The application shall be filed with the corporation by certified mail, and a copy of the application shall be served on the national governing body and with any other organization that has filed an application.  The corporation shall inform the applicant that its application has been received.

(d)  HEARINGS.—Within 180 days after receipt of an application filed under this section, the corporation shall conduct a formal hearing open to the public to determine the merits of the application. The corporation shall publish notice of the time and place of the hearing in a regular issue of its principal publication at least 30 days, but not more than 60 days, before the date of the hearing.  The corporation also shall send written notice, including a copy of the application, at least 30 days prior to the date of the hearing to all amateur sports organizations known to the corporation in that sport.  In the hearing, the applicant and the national governing body shall be given a reasonable opportunity to present evidence supporting their positions.

(e)  STANDARDS FOR GRANTING APPLICATIONS.—In the hearing, the applicant must establish by a preponderance of the evidence that—

(1) it meets the criteria for recognition as a national governing body under section 220522 of this title; and

(2)(A)the national governing body does not meet the criteria of section 220522, 220524, or 220525 of this title; or

(B) the applicant more adequately meets the criteria of section 220522 of this title, is capable of more adequately meeting the criteria of sections 220524 and 220525 of this title, and provides or is capable of providing a more effective national program of competition than the national governing body in the sport for which it seeks recognition.

(f) DISPOSITIONS OF APPLICATIONS.—Within 30 days after the close of the hearing required by this section, the corporation shall—

(1) uphold the right of the national governing body to continue as the national governing body for its sport;

(2) revoke the recognition of the national governing body and declare a vacancy in the national governing body for that sport;

(3) revoke the recognition of the national governing body and recognize the applicant as the national governing body; or

(4) place the national governing body on probation for a period not exceeding 180 days, pending the compliance of the national governing body, if the national governing body would have retained recognition except for a minor deficiency in one of the requirements of section 220522, 220524, or 220525 of this title and notify such national governing body of such probation and of the actions needed to comply with such requirements.

(g) REVOCATION OF RECOGNITION AFTER PROBATION.—If the national governing body does not comply with sections 220522, 220524, and 220525 of this title within the probationary period prescribed under subsection (f)(4) of this section, the corporation shall revoke the recognition of the national governing body and either—

(1) recognize the applicant as the national governing body; or

(2) declare a vacancy in the national governing body for that sport.

### §220529. Arbitration of corporation determinations

(a) RIGHT TO REVIEW.—A party aggrieved by a determination of the corporation under section 220527 or 220528 of this title may obtain review by any regional office of the American Arbitration Association.

(b) PROCEDURE.—

(1)  A demand for arbitration must be submitted within 30 days after the determination of the corporation.

(2)  On receipt of a demand for arbitration, the Association shall serve notice on the parties to the arbitration and on the corporation, and shall immediately proceed with arbitration according to the commercial rules of the Association in effect at the time the demand is filed, except that—

(A)  the arbitration panel shall consist of at least 3 arbitrators, unless the parties to the proceeding agree to a lesser number;

(B)  the arbitration hearing shall take place at a site selected by the Association, unless the parties to the proceeding agree to the use of another site; and

(C)  the arbitration hearing shall be open to the public.

(3)  A decision by the arbitrators shall be by majority vote unless the concurrence of all arbitrators is expressly required by the contesting parties.

(4)  Each party may be represented by counsel or by any other authorized representative at the arbitration proceeding.

(5)  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators believe is necessary to an understanding and determination of the dispute. The arbitrators shall be the sole judges of the relevancy and materiality of the evidence offered. Conformity to legal rules of evidence is not necessary.

(c)  SETTLEMENT.—The arbitrators may settle a dispute arising under this chapter before making a final award, if agreed to by the parties and achieved in a manner not inconsistent with the constitution and bylaws of the corporation.

(d)  BINDING NATURE OF DECISION.—Final decision of the arbitrators is binding on the parties if the award is not inconsistent with the constitution and bylaws of the corporation.

(e)  REOPENING HEARINGS.—

(1)  At any time before a final decision is made, the hearings may be reopened by the arbitrators on their own motion or on the motion of a party.

(2)  If the reopening is based on the motion of a party, and if the reopening would result in the arbitrators' decision being delayed beyond the specific period agreed to at the

1     beginning of the arbitration proceedings, all parties to the decision must agree to reopen the
2     hearings.
3

BYLAWS

OF

THE UNITED STATES OLYMPIC COMMITTEE

**Exhibit B**

# BYLAWS OF THE

# UNITED STATES OLYMPIC COMMITTEE

## ARTICLE I

## NAME, OFFICES, AND DEFINITIONS

Section 1.1 <u>The Corporation</u>. The name of this organization, incorporated by an Act of Congress on September 21, 1950, as amended August 10, 1964, November 8, 1978, July 8, 1980 and October 21, 1998 (36 USC § 220501, *et seq.*) ("the Act"), shall be the UNITED STATES OLYMPIC COMMITTEE (the "corporation"), and the corporation shall be exempt from taxation within the meaning of Section 501(c)(3) of the Internal Revenue Code. To the extent that the Act refers to the corporation's "constitution and bylaws," such reference shall be deemed to refer to these Bylaws.

Section 1.2 <u>Business Offices</u>. The principal office of the corporation is located at One Olympic Plaza, Colorado Springs, Colorado 80909. The registered office of the corporation may be, but need not be, the same as the principal office, and the address of the registered office may be changed from time to time by the Board.

Section 1.3 <u>Definitions</u>. As used in these Bylaws the term --

A. "AAC" means the corporation's Athletes' Advisory Council;
B. "amateur athlete" means any athlete who meets the eligibility standards established by the National Governing Body or Paralympic Sports Organization for the sport in which the athlete competes;
C. "amateur athletic competition" means a contest, game, meet, match, tournament, regatta, or other event in which amateur athletes compete;
D. "amateur sports organization" means a not-for-profit corporation, club, federation, union, association, or other group organized in the United States which sponsors or arranges any amateur athletic competition;
E. "Board" means the corporation's board of directors;
F. "CEO" means the corporation's chief executive officer;
G. "corporation" means the United States Olympic Committee;
H. "IF" means the international federation for a particular sport;
I. "international amateur athletic competition" means any amateur athletic competition between any athlete or athletes representing the United States, either individually or as a part of a team, and any athlete or athletes representing any foreign country[1];

---

[1] This term is not intended to be limited to athletes or teams known as "national" teams of the United States. In the context of this definition, it is intended that any United States amateur sports organization which wishes to conduct or sponsor amateur athletic competition between the United States amateur athletes, or teams of United States amateur athletes representing such organization and athletes or teams of amateur athletes representing a foreign country or institution, must obtain a sanction from the appropriate National Governing Body or Paralympic Sports Organization.

J. "IOC" means the International Olympic Committee;

K. "IPC" means the International Paralympic Committee;

L. "NGB" means any national governing body which is an amateur sports organization recognized by the corporation in accordance with Article X of these Bylaws;

M. "NGB Council" means the corporation's National Governing Bodies Council;

N. "PASO" means the Pan American Sport Organization, a confederation of national Olympic committees from the Americas;

O. "PSO" means a paralympic sports organization which is an amateur sports organization recognized by the corporation in accordance with Article X, Section 10.6 of these Bylaws;

P. "protected competition" means any amateur athletic competition between any athlete or athletes officially designated by the appropriate NGB or PSO as representing the United States, either individually or as part of a team, and any athlete or athletes representing any foreign country where

1. the terms of such competition require that the entrants therein be teams or individuals representing the respective nations; and

2. the athlete or group of athletes representing the United States are organized and sponsored by the appropriate NGB or PSO in accordance with a defined selection or tryout procedure that is open to all and publicly announced in advance, except for domestic amateur athletic competition, which, by its terms, requires that entrants therein be expressly restricted to members of a specific class of amateur athletes such as those referred to in Section 220526(a) of the Act.

The term "protected competition" shall also include any domestic amateur athletic competition or event organized and conducted by a NGB or PSO in its selection procedure and publicly announced in advance as a competition or event directly qualifying each successful competitor therein as an athlete representing the United States in a protected competition as defined in the immediately preceding sentence of this Subsection.

Q. "sanction" means a certificate of approval issued by a NGB2; and

R. "quadrennium" means the four-year (4-year) period that begins with the first meeting of the Board after the Summer Olympic Games and extends until convening the first meeting of the Board following the next Summer Olympic Games.

---

Correlatively, a NGB or PSO must sanction such international amateur athletic competition upon satisfaction by the applicant organization of the objective and nondiscriminatory sanction criteria set forth in Section 220525 of the Act. This definition is not intended to change the prevailing practices which vary from sport to sport with respect to sanctioning of regular "border" scholastic or collegiate competition between American and Canadian or Mexican educational institutions, nor is any provision in these Bylaws intended to authorize a NGB or PSO to designate or select (as distinct merely from certifying on request the eligibility or amateur status of) the United States amateur athletes or team of United States amateur athletes to participate in an international competition other than one involving a United States national team.

[2]     This term is being used in the sense of giving effective approval or consent, not as a penalty or punishment to enforce or compel obedience.

Section 1.4    Jurisdiction. The corporation shall enforce and comply with all rules and regulations of the IOC, PASO, and the IPC. Pursuant to the authority granted by the IOC, PASO, and the IPC, the corporation shall have exclusive jurisdiction to enter competitors who will represent the United States in the Olympic Games, the Pan American Games and the Paralympic Games, and to enforce in connection therewith the definition of an eligible athlete adopted by the IOC, PASO, and the IPC.

## ARTICLE II

## THE MISSION

Section 2.1    Mission Statement. The mission of the corporation shall be:

To support United States Olympic and Paralympic athletes in achieving sustained competitive excellence and preserve the Olympic ideals, and thereby inspire all Americans.

Section 2.2    Purposes. The purposes of the corporation are set forth in Section 220503 of the Act and shall be reviewed and prioritized by the corporation's Board on an ongoing basis as it oversees the business of the corporation to advance and achieve the corporation's mission. The Board shall consult with and consider the views and recommendations of the corporation's CEO as it prioritizes the purposes and sets all other policies of the corporation.

## ARTICLE III

## THE BOARD

Section 3.1    General Powers. The business and affairs of the corporation shall be overseen by the Board, except as otherwise provided in the Act or these Bylaws. The Board shall have ultimate authority over the business, policies, affairs, and activities of the corporation, including, but not limited to, the authority to elect the Chair of the Board and to remove the Chair or any other member of the Board or any Committee or any member of the Olympic Assembly for cause or not for cause; to hire and fire the CEO; to enact, amend, or repeal provisions of these Bylaws; to admit new members, to reclassify and to terminate the membership of members, as provided by these Bylaws; to receive and review the reports of the CEO and committees and task forces; to approve the selection of independent auditors; to maintain a culture of ethical behavior and compliance throughout the corporation; to achieve as much transparency in the operations of the corporation as is reasonably achievable and to keep the Olympic Assembly and the stakeholders in the Olympic movement in the United States informed about the business and operations of the corporation; and to take such other action as is customary for a board of directors of a corporation. Further, the Board shall evaluate and set the compensation for the CEO; set the strategic plan, budget and corporate performance measures; create policy direction for the CEO and staff on significant issues facing the corporation; monitor the financial reporting process and the legal and regulatory compliance program; be responsible

for communicating with relevant members; set policy on capital structure, financial strategies, borrowing commitments and long range financial planning; monitor the corporation's assets to ensure that they are being properly protected; and ensure that the Board is properly structured and is capable of acting in case of an unforeseen corporate crisis. The Board may seek assistance in these tasks from the committees it appoints, but the Board shall remain ultimately responsible for ensuring these tasks are carried out appropriately.

Section 3.2 <u>Composition and Voting</u>. The composition of the Board shall be as follows: four independent members ("independent directors") selected by the Nominating and Governance Committee, two members selected by the Nominating and Governance Committee from among individuals nominated by the National Governing Bodies' Council ("NGB Council"), two members selected by the Nominating and Governance Committee from among individuals nominated by the Athletes' Advisory Council ("AAC"), and the United States members of the IOC who shall be *ex officio* directors on the Board, *i.e.* they assume their positions as directors on the corporation's Board by virtue of, and for the same term as, their IOC membership. The IOC members for the United States shall each have one vote, and the other directors shall each have a vote equal to the number of United States members of the IOC who are at that time serving on the corporation's Board. The IOC members for the United States and all the other members of the Board shall be entitled to vote on all issues presented to the Board as to which they do not have a conflict of interest. The CEO shall be entitled to attend Board meetings and shall be free to speak but not vote on all matters other than those concerning the CEO's employment. The Board shall hold at least two executive sessions during regularly scheduled Board meetings each year during which the CEO shall not be present and at which the members of the Board shall discuss issues including, but not limited to, the performance of the corporation and the CEO. Board members should not participate in discussions or voting concerning issues with respect to which they have a conflict of interest.

Section 3.3 <u>AAC and NGB Council Nominated Directors</u>. The members of the Board selected by the Nominating and Governance Committee from individuals nominated by the AAC and the NGB Council, along with the United States members of the IOC, shall represent the Olympic sports in the United States and the NGBs for those sports, and shall collectively constitute a majority of the membership and voting power of the Board. The directors nominated by the AAC and the NGB Council, upon their taking office, must at that time resign from affiliation with or participation in the AAC, the NGB Council, and any governance or committee position with any NGB or other organization that is a member of the corporation, as applicable.

Section 3.4 <u>Independence</u>.

A. A director will not be considered an "independent director" for purposes of Section 3.2 if, at any time during the two years preceding commencement of or during his or her term or position as a director:

    1. the director was employed by or held any paid position or any volunteer governance position with the corporation, a corporation-member sports governing body, the IOC, an Organizing Committee for the Olympic Games ("OCOG"), Pan American Sports Organization ("PASO"), Paralympic Sports Organization

("PSO"), the Association of National Olympic Committees ("ANOC"), or any Olympic family entity;

2. an immediate family member of the director was employed by or held any paid position or any volunteer governance position with the corporation, a corporation-member sports governing body, the IOC, an OCOG, PASO, a PSO, ANOC, or any Olympic family entity;

3. the director was affiliated with or employed by the corporation's outside auditor or outside counsel;

4. an immediate family member of the director was affiliated with or employed by the corporation's outside auditor or outside counsel as a partner, principal or manager; or

5. the director was a member of the AAC or the NGB Council.

B. A director will not be considered independent if at any time during the two years preceding commencement of or during his or her term or position as a director the director receives any compensation from the corporation, directly or indirectly. For purposes of this rule, compensation does not include reimbursement of out of pocket expenses incurred for the benefit of the corporation or receipt of any benefits, subsidies or payments generally available to athletes or elite athletes to support their training.

C. A director will not be considered independent if at any time during the two years preceding commencement of or during his or her term or position as a director the director is an officer, member of senior management, controlling shareholder, or partner of a corporation or partnership or other business entity that does business with the corporation.

D. A director will not be considered independent if at any time during the two years preceding commencement of or during his or her term or position as a director the director or the director's spouse is an officer, employee, director, or trustee of a nonprofit organization to which the corporation or the U.S. Olympic Foundation makes payments in any year in excess of 5 percent of the organization's consolidated gross annual revenues, or $100,000, whichever is less. The Ethics Committee also will administer standards concerning any charitable contributions to organizations otherwise associated with a director or any spouse or other family member of the director. The corporation shall be guided by the interests of the corporation and its stakeholders in determining whether and the extent to which it makes charitable contributions.

E. The definitions of independence set out in this Article for "independent directors" shall also be used to determine whether an individual is independent for other purposes, as set forth in these Bylaws. For example, when a member of the Ethics Committee or the Nominating and Governance Committee is required to be independent, these definitions of independence shall be applied.

F. When the guidelines in this Section 3.4 do not address a particular relationship, the determination of whether the relationship is material, and whether a director is independent, will be made by the Nominating and Governance Committee if it concerns a person nominated or under consideration for selection to be a member of the Board or to be a member of the Ethics Committee or the Nominating and

Governance Committee. If the issue concerns an individual who is already serving as a member of the Board, the Ethics Committee, or the Nominating and Governance Committee, the determination shall be made by members of the Board who occupy the independent director seats on the Board (with the Board member whose independence is at issue not voting if the issue concerns a current member of the Board), after receiving the recommendation of the Nominating and Governance Committee.

G. The Nominating and Governance Committee may determine that, in its judgment, a director who does not meet these guidelines strictly nonetheless, under all the facts and circumstances, does not have a relationship with the corporation or any organization, entity, or individual associated with the corporation that would interfere with the perception or reality of the director's independent judgment, and that such a person may nevertheless be independent or an independent director under these Bylaws.

H. The Nominating and Governance Committee shall review at least annually the independence of "independent directors" and others who are required by these Bylaws to be independent.

Section 3.5    Term.    The term limit for a member of the Board is six consecutive years, consisting of an initial term of four (4) years and a subsequent term of two (2) years that is subject to a vote of retention by the Nominating and Governance Committee as provided in Section 3.22, below. The members of the Board shall have staggered terms as follows: As soon as possible following the fall 2003 meeting of the Board, the Nominating and Governance Committee shall select the initial eight non-IOC members of the Board. As designated by the Nominating and Governance Committee, three (3) of these members (one (1) independent director, one (1) director selected from the individuals nominated by the NGB Council, and one (1) director selected from the individuals nominated by the AAC) shall have terms that expire in September of 2006, two of these members (two (2) independent directors) shall have terms that expire in September or October of 2008, and three (3) of these members (one (1) independent director, one (1) director selected from the individuals nominated by the NGB Council, and one (1) director selected from the individuals nominated by the AAC) shall have terms that expire in September of 2010. Thereafter, the term of each new member of the Board shall be for a full six-year term (unless a new member is filling the unexpired term of a director) consisting of a four-year term and a two-year term, with the two-year term subject to a vote of retention by the Nominating and Governance Committee. Notwithstanding the above, any board member who serves for less than four years may serve for a subsequent six-year term if selected again by the Nominating and Governance Committee, and a director who is the Chair at the conclusion of his or her first term as a member of the Board shall be eligible to serve for a subsequent six-year term if selected again by the Nominating and Governance Committee, as specified in Section 4.2 of these Bylaws.. Each director shall hold office until such director's successor shall have been elected and qualified, or until such director's earlier death, disability, resignation, disqualification or removal. The first two-year term for Board members shall run from whenever a new Board is selected and qualified in early 2004 to the first business day after September 1, 2006. The Board members' staggered terms should end (and new Board members' terms of office should begin) on the first business day after September 1 every even-numbered year (2006, 2008, 2010, etc.) or the first business

day more than thirty days after the conclusion of the Olympic and Paralympic Games every even-numbered year, whichever is later.

Section 3.6    Qualifications.  Directors must be citizens of the United States and at least eighteen years old.

Section 3.7    Resignations/Vacancies/Removal.  A director's position on the Board may be declared vacant upon the resignation, removal, incapacity, disability, or death of a director. Any director may resign at any time by giving written notice to the Secretary of the corporation. Such resignation shall take effect at the time specified therein, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.  Directors shall be removed by the Board if they fail to attend in person more than one half of the regular meetings of the Board during any twelve-month period, unless they are able to demonstrate to the other members of the Board that the presence of exigent circumstances caused and excused the absences.  In such circumstances, the absent director can be removed by a vote of the majority of the voting power of the Board (not including the voting power of the absent director).  Directors may also be removed for cause at any duly noticed meeting of the Board, and after being provided an opportunity for the Board member to be heard by the Board, upon the affirmative vote of at least two-thirds of the total voting power of the Board (excluding the voting power of the director in question).  Directors may also be removed not for cause at any duly noticed meeting of the Board upon the affirmative vote of at least three-fourths of the total voting power of the Board (excluding the voting power of the director in question).  Any vacancy occurring in the Board shall be filled as set forth for the election of that member of the Board.  A director elected to fill a vacancy shall be elected for the unexpired term of such director's predecessor in office.  No director shall be subject to removal based upon how they vote as a director, unless such voting is determined to be part of a violation of the Code of Ethics.

Section 3.8    Regular Meetings.  Regular meetings of the Board shall be held in person at the time and place determined by the Board.  The Board shall hold a minimum of four regular meetings per calendar year, but it may hold additional regular meetings.  At least one regular meeting of the Board shall be held in association with the Olympic Assembly.

Section 3.9    Special Meetings.  Special meetings of the Board may be called by or at the request of the Chair or at the request of directors holding a majority of the overall voting power of the Board.  The Chair may fix any appropriate place as the place for holding any special meeting of the Board, but special meetings may also be held in accordance with Section 3.10.

Section 3.10    Meetings by Telephone and Transacting Business by Other Means. Members of the Board or any committee thereof may participate in a meeting of the Board or committee by means of conference telephone or similar communications equipment by which all persons participating in the meeting can hear each other at the same time.  Such participation shall constitute presence in person at the meeting for purposes of a quorum and voting, but not for purposes of the attendance requirement in Section 3.7 of these Bylaws.  The Board shall have the power to transact its business by mail, electronic-mail, telephone, or facsimile, if in the judgment of the Chair the urgency of the case requires such action; but if directors holding one-

third (1/3) of the voting power of the Board indicate their unwillingness to decide such a matter in such manner, the Chair must call a meeting of the Board to determine the question at issue.

Section 3.11   Agenda.  The agenda for a meeting of the Board shall be set by the Chair of the Board, after consultation with the CEO.  Any Board member and the Chairs of the NGB Council, AAC, and the Multisport Organizations Council may request that items be placed on the Board's agenda.

Section 3.12   Notice.  Notice of each meeting of the Board, stating the place, day and hour of the meeting, along with the agenda and any supporting materials, shall be given to each director at the director's business address (or such other address provided by the director for such purpose) at least five (5) days prior thereto by the mailing of written notice by first class, certified or registered mail, or at least two (2) days prior thereto by personal delivery of written notice or by telephonic, facsimile or electronically transmitted notice (and the method of notice need not be the same as to each director).  If mailed, such notice shall be deemed to be given when deposited in the United States mail, with postage thereon prepaid.  If transmitted by facsimile or electronic transmission, such notice shall be deemed to be given when the transmission is received.  Any director may waive notice of any meeting before, at or after such meeting.  The attendance of a director at a meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any meeting of the Board need be specified in the notice or waiver of notice of such meeting unless otherwise required by statute.

Section 3.13   Presumption of Assent.  A director of the corporation who is present at a meeting of the Board at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless such director's dissent shall be entered in the minutes of the meeting or unless the director shall file a written dissent to such action with the person acting as the Secretary of the Board before the adjournment thereof or shall forward such dissent by registered mail to the Secretary of the board immediately after the adjournment of the meeting. Such right to dissent shall not apply to a director who voted in favor of such action.

Section 3.14   Quorum and Proxies.

A.  A simple majority of the total voting power of the Board shall constitute a quorum for the transaction of business at any meeting of the Board, and the vote of a majority of a quorum shall be the act of the Board.
B.  If less than a quorum is present at a meeting, a majority of the directors present may adjourn the meeting from time to time without further notice other than an announcement at the meeting, until a quorum shall be present.
C.  No director may vote or act by proxy at any meeting of directors.

Section 3.15   Action Without a Meeting.  Any action required or permitted to be taken at a meeting of the directors or any committee thereof may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the directors or committee members entitled to vote with respect to the subject matter thereof.  Such consent

- 8 -

(which may be signed in counterparts) shall have the same force and effect as a unanimous vote of the directors or committee members.

Section 3.16  Compensation. Directors shall not receive compensation for their services as such, although the reasonable expenses of directors may be paid or reimbursed in accordance with the policies of the corporation. Directors shall not be disqualified to receive reasonable compensation for services rendered to or for the benefit of the corporation in any other capacity, provided that the rendering of such services and such compensation are approved by the Ethics Committee or Board policies.

Section 3.17  Director Attendance. Each director must attend a minimum of at least one half (1/2) of the Board meetings during any twelve-month period. If a director fails to meet this minimum, without prior excusal, a vacancy shall be declared and filled by the Nominating and Governance Committee unless the absent Board member seeks to demonstrate and is able to demonstrate to the satisfaction of the other members of the Board that the presence of exigent circumstances caused and excused the absences, in accordance with Section 3.7.

Section 3.18  Effectiveness of Actions. Actions taken at a meeting of the Board shall become effective immediately following the adjournment of the meeting, except as otherwise provided in the Bylaws or when a definite effective date is recited in the record of the action taken.

Section 3.19  Questions of Order and Board Meeting Leadership. Questions of order shall be decided by the Chair of the Board unless otherwise provided in advance by the Board. The Chair of the Board shall lead meetings of the Board. If the Chair is absent from any meeting of the Board, then the Chair shall designate in writing in advance one other member of the Board to preside. If the Chair is unable to make or has not made such a designation, the Board may choose another member of the Board to serve as presiding officer for that meeting.

Section 3.20  Olympic Games Participation. Any motion before the Board which would seek to prevent the corporation from participating in the Olympic Games, or which would not allow the team representing the United States to participate in the Olympic Games, or any motion having the same effect as the above, shall require that at least ¾ of the voting power of the Board vote in favor of such a motion.

Section 3.21  Submission of Specific Olympic Issues to Further Review. In the event that the Board votes, in accordance with the provisions of Section 3.20 of these Bylaws, to prevent or not allow the corporation or the team representing the United States to participate in the Olympic Games, or to take any action having that effect, the Board must submit the issue to a vote of a body composed of (a) the members of the Board, (b) the NGB Council representative of each Olympic NGB, and (c) Olympic sports athletes in the AAC, with one athlete representing each of the Olympic sports. The issue must be noticed a reasonable time before a meeting of that body, pursuant to procedures established by the Board, and for the motion to have any effect it must be approved by that body by a ¾ vote of the members of that body present, with each member of that body having one vote. If there are other issues as to which the Board decides, by a vote of a majority of the full voting power of the Board, that it should secure guidance or a broad United States Olympic consensus, it may submit those issues to the above-referenced body

for review or approval of action proposed by the Board. If the Board does decide to refer any additional issues to the above-referenced body, the procedure and vote required for approval should be specified by the Board.

Section 3.22   Vote of Retention After Four Years.  If a director has been elected to serve a six-year term and has served four years, prior to the commencement of his or her final two years of service on the Board he or she shall be subject to a vote of retention by the Nominating and Governance Committee. The Nominating and Governance Committee shall vote as to whether the director shall be retained to serve the remaining two (2) years of the term or whether that director position shall be opened to be filled by a new director. The strong presumption shall be in favor of retention of the director and the director shall be retained unless there  is a majority vote of the Nominating and Governance Committee against retention.

Section 3.23   Auditors.  The accounts and financial reports of the corporation shall be audited by an independent firm of auditors. The independent firm of auditors shall be selected by the Board after the Board receives and considers the recommendation of the Audit Committee.

## ARTICLE IV

## OFFICERS

Section 4.1   Number and Qualifications.  The officers of the corporation shall be a Chair of the Board ("Chair"), Vice President International and a Secretary. The Vice President International shall be appointed by the Board of Directors, from among the existing Board members. The Secretary shall be the corporation's general counsel or another appropriate employee of the corporation designated by the CEO.

Section 4.2   Election and Term of Office.  The initial Chair shall be selected by the Nominating and Governance Committee from any of the non-IOC members of the Board to serve for a term between one year and eighteen months, as determined by the Board. Subsequent to the initial term of the initial Chair, the Chair shall be elected by the Board for a term to be set by the Board, at the next regular meeting of the Board. If the election of Chair shall not be held at such meeting, such election shall be held as soon as convenient thereafter. The Chair shall hold office until the Chair's successor shall have been duly elected and shall have qualified, or until the Chair's earlier death, resignation, disability, disqualification, termination, or removal. If a director is serving as the Chair when his or her initial term as director ends, he or she shall be eligible to be considered by the Nominating and Governance Committee as a possible candidate to serve one additional six-year term as a director. If a director is serving as the Chair of the Board when his or her second term as director ends (because his or initial term was less than four (4) years), he or she shall not be eligible to be considered by the Nominating and Governance Committee as a possible candidate to serve another term as director. The appointment of Vice President International's term shall end automatically when his/her term on the Board ends or when the Board designates a different Board member to serve as Vice President International. The corporation employee's term as Secretary shall end automatically when his or her employment by the corporation ends or when the CEO designates a different individual to serve

as Secretary. In any circumstance in which the CEO has not designated an employee to serve as Secretary, the Board may select a Board member or another individual employed by the corporation to serve as Secretary until a new Secretary is designated by the CEO.

Section 4.3  Compensation.  The Chair shall not receive compensation for services as Chair, but the Chair shall be reimbursed for reasonable expenses incurred by the Chair in the course of performing the Chair's duties, subject to the expense reimbursement policies of the corporation.

Section 4.4  Removal.  The Chair may be removed from serving as Chair by the Board for or not for cause, as specified below.  Removal from serving as Chair shall not, in and of itself, constitute removal from the Board.  Selection to serve as the Chair or as a director shall not in itself create any contract rights.

Section 4.5  Vacancies.  The Chair or the Vice President International or the Secretary may resign at any time from their positions as officers of the corporation by giving written notice to the Chair and the other members of the Board. An officer's resignation shall take effect at the time specified in such notice, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. A vacancy in the office of Chair, however occurring, shall be filled by the Board for the unexpired portion of the term. A vacancy in the office of Vice President International or Secretary, however occurring, shall be filled in accordance with Section 4.2.

Section 4.6  Authority and Duties of Officers.  The officers of the corporation shall have the authority and shall exercise the powers and perform the duties specified below and as may be additionally specified by the Board or these Bylaws, except that in any event each officer shall exercise such powers and perform such duties as may be required by law.

  A. Chair of the Board.  After the initial Chair of the Board is selected by the initial Nominating and Governance Committee, all Chairs that follow shall be elected by the directors.  The Chair shall preside at all meetings of the directors, shall see that all Board commitments, resolutions, and oversight are carried into effect, and shall have and may exercise such powers and perform such other duties as may be assigned from time to time by the Board.
  B. Vice President International.  The Vice President International shall work in close cooperation with the Chief of International Relations in all international and Bid City issues.
  C. Secretary.  The Secretary shall (a) keep the minutes of the proceedings of the Board and any committees of the Board; (b) see that all notices are duly given in accordance with the provisions of these Bylaws or as required by law; (c) be custodian of the corporate records and of the seal of the corporation; and (d) in general, perform all duties incident to the office of Secretary and such other duties as from time to time may be assigned to the Secretary by the CEO or by the Board.  Assistant secretaries appointed by the Secretary, if any, shall have the same duties and powers, subject to supervision by the Secretary.

Section 4.7    Officers shall perform their functions with due care.  No person may serve simultaneously as an officer of the corporation and as an officer of an organization holding membership in the corporation.

Section 4.8

A. Any officer may resign at any time by giving written notice to the Board.  An officer's resignation is effective when the notice is received, unless the notice specifies a later effective date.  Such resignation shall take effect at the time specified therein, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.  An officer shall be deemed to have resigned in the event of such officer's incapacity as determined by a court of competent jurisdiction.

B. The Chair may be removed at any time for cause by the affirmative vote of two-thirds of the total voting power of the Board (excluding the voting power of the Chair).  The Chair may be removed at any time not for cause by the affirmative vote of not less than three-fourths of the voting power of the Board (excluding the voting power of the Chair).

Section 4.9    In the event of death, disability, resignation or removal of the Chair, the office shall be filled by another director who is not a member of the IOC for the remainder of the unexpired term.  The director who will fill the position of Chair shall be selected by a majority vote (with voting weighted as detailed in Section 3.2 of these Bylaws) of the members of the Board who are present at a properly called and conducted meeting of the Board.

Section 4.10    All officers, directors, and employees handling funds of the corporation shall be bonded or insured in such amounts as may be determined from time to time by the CEO.  The expense of furnishing such bonds shall be paid by the corporation.


## ARTICLE V

## COMMITTEES AND TASK FORCES

Section 5.1    <u>Committees</u>.    The corporation shall have the following committees: Audit, Compensation, Ethics and Nominating and Governance.  By one or more resolutions adopted by a majority of the directors then in office, the Board or the CEO may designate one or more additional committees or task forces, each of which, to the extent provided in the resolution establishing such committee, shall have and may exercise all of the authority of the Board or the CEO, respectively, as is delegated to them by the Board or CEO respectively, except as prohibited by statute.  The delegation of authority to any committee shall not operate to relieve the Board or any member of the board or the CEO from any responsibility imposed by law. Rules governing procedures for meetings of any committee of the Board shall be as established by the Board or, in the absence thereof, by the committee itself.  Rules governing procedures for meetings of any committee established by the CEO shall be as established by the CEO.

Section 5.2    <u>Audit Committee.</u>

A. The Audit Committee shall consist of at least three and not more than five members, all of whom shall be members of the Board.

B. The Board shall appoint the members of the Audit Committee and its chair.

C. The Audit Committee shall include at least one member who is a member of the Board and was selected from among individuals nominated by the AAC.

D. The responsibilities of the Audit Committee shall include the following --

1. to discuss with management and the independent auditor the annual audited financial statements including matters required to be reviewed under applicable legal, regulatory or other requirements;

2. to discuss with management and the independent auditor, as appropriate, press releases and financial information provided to the public;

3. to recommend the independent auditor to examine the corporation's accounts, controls and financial statements. The Audit Committee shall have the authority to evaluate and recommend the independent auditor for selection by the Board pursuant to Section 3.23 of these Bylaws. The Audit Committee shall also have the authority to recommend to the Board that the independent auditor be replaced. The Audit Committee shall have the sole authority to approve all audit engagement fees and terms and the Audit Committee must pre-approve any non-audit service provided to the corporation by the corporation's independent auditor.

4. to discuss with management and the independent auditor, as appropriate, any audit problems or difficulties and management's response, and the corporation's risk assessment and risk management policies, including the corporation's major financial risk exposure and steps taken by management to monitor and mitigate such exposure.

5. to review the corporation's financial reporting and accounting standards and principles, significant changes in such standards or principles or in their application and the key accounting decisions affecting the corporation's financial statements, including alternatives to, and the rationale for, the decisions made.

6. to review and approve the internal audit staff function, including: (i) purpose, authority and organizational reporting lines; (ii) annual audit plan, budget and staffing; and (iii) concurrence in the appointment, and compensation of the Director of Internal Audit.

7. to review, with the CEO, Chief Financial Officer, Director of Internal Audit, General Counsel, independent auditors, and/or others, as the committee deems appropriate, the corporation's internal system of audit and financial controls and the results of internal and independent audits.

8. to be responsible for establishing procedures creating effective mechanisms for employees and others to make complaints relating to accounting practices, internal accounting controls, or audit matters, with provisions for confidential anonymous submission by employees and others. The Audit Committee shall have access to all complaints concerning the corporation's finances and their disposition, and shall provide safeguards to prevent retaliation against employees and others who make such complaints.

9. to obtain and review at least annually a formal written report from the independent auditor delineating: the auditing firm's internal quality-control procedures; any material issues raised within the preceding five years by the auditing firm's internal quality-control reviews, by peer reviews of the firm, or by any governmental or other inquiry or investigation relating to any audit conducted by the firm. The Audit Committee will also review steps taken by the auditing firm to address any findings in any of the foregoing reviews. Also, to assess auditor independence, the Audit Committee will review at least annually all relationships between the independent auditor and the corporation.

10. to prepare and publish an annual committee report in the corporation's annual report.

11. to recommend policies for the hiring of employees or former employees of the corporation's independent auditor.

12. to meet periodically, separately in executive session with each of management, the corporation's internal auditor, and the corporation's outside auditor. In addition, the Audit Committee, or a designated representative of the Committee, will meet prior to the release of the corporation's financial reports, to review such materials. The corporation's Director of Internal Audit, who is responsible for the corporation's internal audit function, will report functionally to the Audit Committee and operationally to the CEO.

13. to engage in such other functions as are assigned to the Audit Committee by the Board.

Section 5.3    Compensation Committee.

A. The Compensation Committee shall consist of at least three and not more than five members, all of whom shall be members of the Board.

B. The Board shall appoint the members of the Compensation Committee and its chair in consultation with the Nominating and Governance Committee.

C. The Compensation Committee shall include at least one member who is a member of the Board and was selected from among individuals nominated by the AAC.

D. The responsibilities of the Compensation Committee shall be as follows --

1. to assist the Board in developing and evaluating potential candidates for the CEO position, and to oversee the development of executive succession plans;

2. to review and approve on an annual basis the CEO's compensation in light of the Board's expectations, goals, and objectives. The Compensation Committee shall evaluate at least once a year the CEO's performance in light of these established goals and objectives and based upon these evaluations shall set the CEO's annual compensation, including salary, bonus, incentive, and any other compensation;

3. to review and approve on an annual basis the evaluation process and compensation structure for the corporation's senior executive management. The Compensation Committee shall also provide oversight of management's decisions concerning the performance and compensation of other corporation executives, and the corporation's policies concerning benefits, retirement plans and

contributions thereto, relocation benefits, and all other forms of benefits offered to the corporation's employees;

4. to review the corporation's incentive compensation and other compensation plans and recommend changes to such plans to the Board as necessary. The Compensation Committee shall have and shall exercise the authority of the Board with respect to the administration of such plans;

5. to conduct periodic review of the reasonableness of the compensation of the corporation's executives using relevant market benchmarks and survey data;

6. to review regularly management succession planning;

7. to maintain regular contact with the executive leadership of the corporation; and

8. to prepare and publish an executive compensation report in the corporation's annual report and other documents.

Section 5.4     Ethics Committee.

A. The Ethics Committee shall consist of five members. One member of the Ethics Committee shall be a member of the Board and shall also serve as chair of the Ethics Committee. The four (4) other members of the Ethics Committee shall not be members of the Board. The initial Ethics Committee appointed by the initial Nominating and Governance Committee shall function with four members and shall select a temporary chair from among its four members until the new Board is constituted and the new Board selects one of its members to serve as a member and chair of the Ethics Committee.

B. The Nominating and Governance Committee shall appoint the members of the Ethics Committee and its chair. All members of the Ethics Committee, other than the chair, must satisfy the standards of independence for "independent directors" as is set forth in Section 3.4 of these Bylaws. The Ethics Committee shall include at least twenty percent (20%) athletes who have competed as members of United States national teams in the Olympic, Pan American or Paralympic Games, or other major amateur international competition, within the ten (10) years preceding the date when they start serving as members of the committee (or, if they are a member of the Board, within the ten (10) years preceding when they started serving on the Board).

C. The responsibilities of the Ethics Committee shall be as follows -

1. to develop, administer and oversee compliance with the Code of Ethics;

2. to review the ethics and compliance staff functions, including: (i) purpose, authority and organizational reporting lines; (ii) annual ethics and compliance plan, budget and staffing; and (iii) the appointment and compensation of the internal ethics and compliance staff head;

3. to review, with the CEO, Chief Financial Officer, internal compliance staff head, General Counsel, or others, as the committee deems appropriate, the corporation's system of ethics and compliance;

4. to review and investigate any matters pertaining to the integrity of management, including conflicts of interest, or adherence to standards of business conduct as required in the policies of the corporation. This should include regular reviews of the ethics and compliance processes in general and the corporate ethics and compliance education, disclosure, and reporting processes in particular. In

connection with these reviews, the Ethics Committee will meet, as deemed appropriate, with the CEO, General Counsel, the ethics and compliance staff head, and others;

5. to prepare and publish an annual committee report in the corporation's annual report; and

6. to set policies for the hiring of employees or former employees of the corporation's member organizations, vendors/consultants, and Olympic family organizations.

Section 5.5    Nominating and Governance Committee.

A. The Nominating and Governance Committee shall consist of five (5) members.

B. Immediately following the fall 2003 meeting of the Board, the following five groups: the NGB Council, the AAC, the corporation's Public Sector Board of Director members seated at the start of the 2000 Quadrennium who are still members in the fall of 2003, the Independent Commission on Reform, and the corporation's Governance and Ethics Task Force, shall each appoint one individual to be a member of the initial Nominating and Governance Committee. All members of the initial Nominating and Governance Committee must meet the definition of independence as is set forth in Section 3.4 of these Bylaws. At least twenty percent (20%) of the Nominating and Governance Committee members shall be athletes who have competed as members of United States national teams in the Olympic, Pan American or Paralympic Games, or other major amateur international competition, within the ten (10) years preceding the date when they begin serving as members of the committee.

C. The responsibilities of the initial Nominating and Governance Committee shall include to select the initial eight members of the Board who are not members of the IOC, to select the initial Chair of the Board, and to select the initial members of the Ethics Committee. The initial Nominating and Governance Committee shall serve through June 30, 2006, and the members of the new (subsequent) Nominating and Governance Committee shall begin serving on July 1, 2006.

After the term of the initial Nominating and Governance Committee ends, the Board shall appoint two (2) Board members who are not members of the IOC and who are not eligible for re-selection to the Board to serve on each subsequent Nominating and Governance Committee. The three (3) remaining members of the subsequent Nominating and Governance Committee shall be selected one each by the NGB Council, the AAC, and the Multisport Organizations Council from individuals who are not on the existing Board and who meet the definition of independence as is set forth in Section 3.4 of these Bylaws. The Nominating and Governance Committee shall include at least twenty percent (20%) athletes who have competed as members of United States national teams in the Olympic, Pan American or Paralympic Games, or other major amateur international competition, within the ten (10) years preceding the date when they start serving as members of the committee (or, if they are a member of the Board, within the ten (10) years preceding when they started serving on the Board).

D. The responsibilities of the Nominating and Governance Committee shall include the following:

1. to lead the search for individuals qualified to become members of the Board and to select directors. The Nominating and Governance Committee shall select individuals to serve as directors who shall have the highest personal and professional integrity, who shall have demonstrated exceptional ability and judgment, and who shall be most effective, in conjunction with the other nominees to the Board, in collectively serving the long-term interests of the corporation;

2. to review the Board's committee structure and when requested by the Board to recommend to the Board for its approval possible candidates to serve as members of each committee. The Nominating and Governance Committee shall review and recommend committee slates annually and shall recommend additional committee members to fill vacancies, as requested by the Board;

3. to work with the CEO to develop and implement an appropriate orientation program for new directors and continuing education of existing directors;

4. to develop and recommend to the Board for its consideration a set of corporate governance guidelines. The Nominating and Governance Committee shall review the guidelines on an annual basis, or more frequently if appropriate, and recommend changes as necessary; and

5. to develop and recommend to the Board for its consideration an annual self-evaluation process of the Board and its committees. The Nominating and Governance Committee shall oversee the annual self-evaluations.

E. The Nominating and Governance Committee shall select the Board as follows: The Nominating and Governance Committee shall select four members from among those individuals identified by the Committee in cooperation with the Ethics Committee as satisfying the definition of independent director set forth in Section 3.4 of these Bylaws. The NGB Council shall nominate six (6) individuals for the two Board seats to be selected from among NGB nominees, and the Nominating and Governance Committee shall select two (2) directors from among the six (6) nominated by the NGB Council. The AAC shall nominate six (6) individuals for the two Board seats to be selected from among AAC nominees, and the Nominating and Governance Committee shall select two (2) directors from among the six (6) nominated by the AAC. After the selection of the initial directors, if a vacancy occurs or is about to occur in a position of a director selected from among individuals nominated by the NGB Council or the AAC, either because a director's term ended or because a director left the position before the term ended, that council (NGB Council or AAC) shall nominate three (3) individuals to be considered by the Nominating and Governance Committee for selection to be a director. If the term of a director selected from individuals nominated by the AAC or the NGB Council comes to an end (or is ending) before that director has served four years as a director (either because the director was selected to serve an initial two-year term or because the director is serving the end of another director's term) or if that director is the Chair of the Board when his or her initial term on the Board ends, that director shall be eligible to be selected to serve an additional six-year term, shall be considered to have been nominated again by the organization that nominated that director initially, and shall be considered in addition to the other three (3) nominees submitted by that

council. The Nominating and Governance Committee shall then decide whether one of the new nominees should be selected or whether the current director should be selected to serve a six-year term as a director.

Section 5.6     General Board Committee Powers/Requirements.  Each Board committee shall have the authority to delegate any of its responsibilities to a sub-committee or to an individual member of the committee as the Board committee may deem appropriate in its discretion, subject to review and oversight by the Board. Each Board committee shall have the authority to retain such compensation consultants, outside counsel and other advisors as the Board committee may deem appropriate, consistent with the policies, budgets, and controls established by the Board. The Board committee in question shall have the authority to approve related fees and retention terms unless specifically restricted by the Board or restricted by policies established by the Board. Each Board committee shall report its actions and any recommendations and the attendance of its membership to the Board after each committee meeting and shall conduct and present to the Board an annual performance evaluation of the Board committee. Each Board committee shall review at least annually the adequacy of its charter and shall recommend any proposed changes to the Board for review and consideration.

Section 5.7     Term.  The term of committee memberships shall run until the appointment of new committee members as determined by the Board. The absence of any committee member, without adequate excuse, from two or more consecutive meetings may be construed as his/her resignation from such committee by a majority vote of the Board. Members of any corporation committee or task force may be removed for cause upon the affirmative vote of at least two-thirds of the total voting power of the Board, after the member has been provided an opportunity to be heard by the Board. Members of any corporation committee or task force may also be removed not for cause upon the affirmative vote of at least three-fourths of the total voting power of the Board. The Board shall establish fair procedures for notice of allegations and the opportunity for an individual to be heard before any individual is removed from a corporation committee or task force for cause.

Section 5.8     Other Committees/Task Forces.  The Board or the CEO may determine that additional committees or task forces are necessary to assist them in performing their respective functions and obligations and they shall appoint such committees or task forces as they deem appropriate and shall establish such procedures and guidelines and oversight of such committees as they deem necessary to ensure that those committees are accountable for their performance.

# ARTICLE VI

## THE CEO

Section 6.1     There shall be a CEO of the corporation, who shall report to the Board. Internationally, the CEO may also be referred to as the Secretary General of the corporation. The CEO shall be employed by the Board for whatever term the Board deems appropriate and may be removed at any time for or not for cause by the Board without prejudice to the CEO's contract

rights, if any, and the contract of employment between the corporation and the CEO, if any, shall provide that the CEO's employment may be terminated by the Board for cause or not for cause.

Section 6.2    The CEO shall either directly or by delegation, manage all staff functions; determine the size and compensation of, hire and terminate the professional staff in accordance with the corporation's compensation policies and guidelines established by the Compensation Committee and/or the Board; develop a strategy for achieving the mission, goals and objectives of the corporation for consistency with the policies of the Board; be responsible for resource generation and allocation; manage key international and government relationships and coordinate government relations and international activities of staff; act as the corporation's spokesperson; prepare and submit quadrennial and annual budgets to the Board; oversee the activities of all committees and task forces the CEO appoints; and perform such other functions as usually pertain to that office. The CEO shall implement the policies established by the Board and report to the Board concerning the results achieved.

Section 6.3    All official notices intended for the corporation or its Board, or any of its committees or task forces, may be addressed in care of the CEO, who will be responsible for proper attention thereto.

Section 6.4    The CEO shall devote his/her entire time and service to the affairs of the corporation and shall not engage in any other profession or employment (other than reasonable appropriate membership on boards of directors of other organizations as approved by the Ethics Committee and the corporation's Board). The CEO shall receive such salary and other benefits as shall be set forth in the CEO's contract of employment with the corporation, if any.


# ARTICLE VII

# THE OLYMPIC ASSEMBLY

Section 7.1    Once each year, in association with a regularly scheduled Board meeting, the corporation shall hold an Olympic Assembly. Representatives of all members of the corporation and the members of the AAC may choose to attend the Olympic Assembly as well as such others as the Board determines may attend. The Board shall determine the parameters for attendance at the Olympic Assembly, including but not limited to determining a limit on the number of attendees and the amount of travel expenses, if any, that the corporation will pay, associated with the attendance of individuals at the Olympic Assembly.

Section 7.2    The Board shall decide the time, place, and format of the Olympic Assembly. The Board, in conjunction with the CEO, shall provide information to the members of the Olympic Assembly on the affairs of corporation, which shall include information on the performance of the organization, the financial performance and well being of the corporation, preparations for the Olympic, Pan American, and Paralympic Games, achievement of the corporation's mission, and actions taken, results achieved, and programs being implemented by the corporation.

Section 7.3    At the Olympic Assembly the members of the Olympic Assembly will have an opportunity to provide information and to communicate with the Board and the CEO concerning the performance, policies and other matters related to the corporation. Such input shall be advisory in nature and shall not be deemed to direct the Board or the CEO to take or not take any particular action. The Olympic Assembly shall not conduct or perform any governance functions.

Section 7.4    The Nominating and Governance Committee shall elect an individual to serve a two-year term as the Liaison from the Board to the Olympic Assembly. The Nominating and Governance Committee shall select the single Liaison from the Board to the Olympic Assembly from among six (6) nominees, two (2) submitted by the AAC, two (2) submitted by the NGB Council, and two (2) submitted by the Multisport Organizations Council. The Liaison from the Board to the Olympic Assembly shall work with the Chairs of the AAC, NGB Council, and Multisport Organizations Council and the Liaison shall chair the meetings of the Olympic Assembly. The Liaison from the Board to the Olympic Assembly shall not be a member of the Board, but shall serve as a liaison between the Board and the Olympic Assembly and between the Board and the various constituent councils and organizations of the Olympic Assembly, and shall report to the Board if and as requested by the Board on issues identified by the Board.

Section 7.5    The Board, NGB Council, AAC and Multisport Organizations Council shall each also meet in association with the Olympic Assembly in the same geographic location.

Section 7.6    The Board shall work with the CEO and the Liaison to the Olympic Assembly, along with the chairs of the three councils (NGB Council, AAC, and the Multisport Organizations Council) to design the sessions of the Olympic Assembly so as to facilitate communication between and among the Board, the CEO and senior management of the corporation, and the three councils (NGB Council, AAC, and Multisport Organizations Council) and their members, and to advance and achieve the mission of the corporation.

Section 7.7    Members of the Olympic Assembly may be removed for cause upon the affirmative vote of at least two-thirds of the total voting power of the Board, after the member has been provided an opportunity to be heard by the Board. Members of the Olympic Assembly may also be removed not for cause upon the affirmative vote of at least three-fourths of the total voting power of the Board.

## ARTICLE VIII

## COMPLAINTS AGAINST AN NGB OR PSO

Section 8.1    Complaint Procedure

A. Filing Complaint

1. Any amateur sports organization or person which belongs to, or is eligible to belong to, a NGB or PSO, or any member of the USOC Board, may seek to

compel such NGB or PSO to comply with the requirements of Section 10.5 or 10.6 of these Bylaws and Sections 220522-220525 of the Act by filing a written complaint with the corporation's CEO. A copy of the complaint shall also be served on the applicable NGB or PSO. The party filing the complaint shall file with the corporation proof of service on the NGB or PSO.

2. The complaint shall be in writing and signed under oath by the individual or the chief executive officer of the group or organization making the complaint. The complaint shall set forth the factual allegations in numbered paragraphs, each paragraph containing a single factual allegation, and shall contain, at a minimum, the following –

   a. names and addresses of the parties;
   b. jurisdictional basis of the complaint;
   c. efforts made to exhaust available remedies, or if such remedies have not been exhausted, the grounds upon which the complainant alleges that exhaustion would result in unnecessary delay;
   d. the alleged grounds of noncompliance;
   e. supporting evidence or documentation forming the basis of the complaint; and
   f. the relief sought.

B. <u>Hearing Panel</u>. A complaint filed under this provision shall be heard by a USOC hearing panel. The hearing panel shall consist of a panel of five (5) persons appointed by the USOC Chair. The hearing panel shall consist of one (1) member of the USOC Board or the Olympic Assembly (who shall chair the panel), two (2) individuals who are members of the USOC NGB Council, one (1) individual who is a member of the Multisport Organizations Council, and one (1) individual who is a member of the USOC Athletes' Advisory Council. The hearing panel shall not include any individual having a direct interest, either personally or by virtue of organizational affiliation, in the outcome of the proceeding.

C. <u>Mediation</u>. At the request of a party, the hearing panel may adjourn the proceeding to allow for mediation of the complaint. The hearing panel shall set a deadline for completion of the mediation. The USOC shall appoint a mediator, after consultation with the parties. The mediator shall not be a member of the hearing panel associated with the mediation.

D. <u>Time Computation</u>. In computing any period of time, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is not one of the aforementioned days. The parties may modify any period of time by mutual agreement and consent of the hearing panel. The hearing panel may extend any period of time as it deems necessary.

E. <u>Exhaustion of Remedies</u>.

1. The complainant or person may take such action only after having exhausted all remedies available under the organic documents of such NGB or PSO for correcting deficiencies, unless it can be shown by clear and convincing evidence that those remedies would have resulted in unnecessary delay.

2. The hearing panel shall determine whether the complainant has exhausted its remedies within the applicable NGB or PSO. If the USOC determines that such remedies have not been exhausted, it may direct that such remedies be pursued before the USOC will further consider the complaint.

F. Motion to Dismiss.

1. If the respondent contends that jurisdiction of the complaint is improper, that the complainant has failed to exhaust available remedies, that there is some other procedural or jurisdictional defect that would preclude a hearing on the merits, or that the complaint fails to state a claim upon which relief can be granted, it may move to dismiss the complaint. Such motion to dismiss shall set forth the grounds for dismissal and shall be filed within twenty (20) days after receipt of the complaint by the respondent.
2. The complainant shall be given the opportunity to submit papers in opposition to the respondent's motion to dismiss. The hearing panel shall determine whether or not to have argument on the motion to dismiss.

G. Answer.

1. If no motion to dismiss is filed, the respondent shall file an answer within twenty (20) days after receipt of the complaint by the respondent.
2. If the panel finds against the respondent with respect to its motion to dismiss, it shall direct the respondent to file an answer to the complaint within twenty (20) days after receipt of the denial of the motion to dismiss by the respondent.
3. If the respondent is without sufficient knowledge or information to admit or deny a given factual allegation, the respondent may so respond.

Section 8.2    Exchange of Information.

A. At the request of any party or at the discretion of the hearing panel, the hearing panel may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.
B. At least seven (7) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.
C. The hearing panel is authorized to resolve any disputes concerning the exchange of information.

Section 8.3    Hearing.

A. Provided that the complaint is not dismissed, the hearing panel shall hold a hearing on the complaint. The hearing panel shall set such timelines and other rules regarding the hearing as it deems necessary.
B. At any hearing all parties shall be given a reasonable opportunity to present oral or written evidence, to cross-examine witnesses, and to present such factual or legal claims as desired. Hearings shall be open to the public. In addition, the proceedings shall be stenographically recorded and a verbatim transcript thereof made available to