# EXHIBIT 3-A

Dockets.Justia.com

each interested party upon request and payment of costs associated with providing the transcript. The rules of evidence shall not be strictly enforced; instead, rules of evidence generally accepted in administrative proceedings shall be applicable.

C. The burden of proof shall be upon the complainant who shall also initially have the burden of going forward with the evidence. Upon completion of the presentation of the complainant's evidence, the respondent may move to dismiss for failure to satisfy the burden of proof. If such motion to dismiss is denied, the respondent shall then have the burden of going forward with evidence in opposition to the complaint and in support of its position.

D. The complainant must establish by a preponderance of the evidence that the NGB or PSO does not meet the criteria of Article X, Section 10.7.C of the Bylaws and/or Sections 220522-220525 of the Act.

Section 8.4    Finding.

A. If the hearing panel determines that such NGB or PSO is in compliance with the requirements of Article X, Section 10.5. or 10.6 of these Bylaws and Sections 220522 – 220525 of the Act, it shall so notify the USOC Board, the complainant and such NGB or PSO. The hearing panel shall provide a written decision on its findings.

B. If the hearing panel determines that such NGB or PSO is not in compliance with the requirements of Article X, Section 10.5. or 10.6 of these Bylaws and/or Sections 220522 – 220525 of the Act, it shall so notify the USOC Board, the complainant and such NGB or PSO. The hearing panel shall provide a written decision on its findings. Further, the hearing panel shall make a recommendation to the USOC Board as either to place the NGB or PSO on probation or to revoke the recognition of the NGB or PSO.

C. The USOC Board then shall –

1. place such NGB or PSO on probation for a specified period of time not to exceed one hundred eighty (180) days, which it considers necessary to enable such NGB or PSO to comply with such requirements; or

2. revoke the recognition of such NGB or PSO.

Section 8.5    Probation.

A. If a NGB or PSO is placed on probation, it shall, at the conclusion of the probationary period, submit a report to the hearing panel as to whether or not it is in compliance. The hearing panel shall then convene to consider the report.

B. If, after considering the report of the NGB or PSO, the hearing panel determines that such NGB or PSO is in compliance with the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522 – 220525 of the Act, it shall it shall so notify the USOC Board, and the NGB or PSO.

C. If, after consideration of the report of the NGB or PSO, the hearing panel determines that such NGB or PSO is not in compliance with the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and/or Sections 220522 – 220525 of the Act, it shall so notify the USOC Board and the NGB or PSO. If the hearing panel

determines that the NGB or PSO has proven by clear and convincing evidence that, through no fault of its own, it needs additional time to comply with such requirements, the hearing panel may recommend to the USOC Board that the probationary period be extended.

D. If, at the end of the probationary period allowed by the USOC, the NGB or PSO has not complied with such requirements, the USOC Board may revoke the recognition of such NGB or PSO.

Section 8.6    Arbitration.

A. There shall be no right of appeal to any other USOC body from a decision of the hearing panel or from a remedy imposed by the USOC Board. Any party that considers itself aggrieved by a decision of the hearing panel on the merits of the complaint or by a remedy imposed by the USOC Board may, within thirty (30) days after such decision or imposition of remedy, file a demand for arbitration with the American Arbitration Association (AAA).

B. A respondent shall be entitled in a demand for arbitration to raise any jurisdictional or procedural objection to the complaint raised in its original motion to dismiss, but determined against it by the panel that considered the jurisdictional or procedural challenge.

C. In the event a demand for arbitration is filed pursuant to the provisions of Section 8.6 of these Bylaws and at least eighty percent (80%) of the voting power of the Board that is present and voting at a Board meeting has voted in favor of a party to the complaint, the USOC shall, at the request of such party, undertake the defense of such party in the arbitration.

D. The arbitral award shall be binding upon the parties thereto, and unless the award is inconsistent with the terms of the Act, these Bylaws, or the rules of the IOC, upon the USOC.

Section 8.7    Application To Replace Procedure.

A. Any amateur sports organization may seek to replace an incumbent as the NGB or PSO for a particular sport by filing with the USOC a written application for such recognition with the USOC CEO. A copy of the application shall also be served on the applicable NGB or PSO. The party filing the application shall file with the USOC proof of service on the NGB or PSO.

B. If two (2) or more organizations file applications for the same sport, the applications shall be considered in a single proceeding.

C. The application shall set forth the factual allegations in numbered paragraphs, each paragraph containing a single factual allegation, and shall contain at a minimum the following -

   1. names and addresses of the parties;
   2. jurisdictional basis of the challenge;
   3. the factual basis upon which, pursuant to the criteria of Article X, Section 10.7.C of these Bylaws and Sections 220522 – 220525 of the Act, the applicant claims that it is entitled to replace the respondent; and

- 24 -

4. the relief sought.

A copy of the applicant's organic documents shall be appended to the application.

Section 8.8    Hearing Panel.

An application filed under this provision shall be heard by a USOC hearing panel. The hearing panel shall consist of five (5) persons appointed by the Chair. The hearing panel shall consist of one (1) member of the USOC Board or the Olympic Assembly (who shall chair the panel), two (2) individuals who are members of the USOC NGB Council, one (1) individual who is a member of the Multisport Organizations Council, and one (1) individual who is a member of the USOC AAC. The hearing panel shall not include any individual having a direct interest, either personally or by virtue of organizational affiliation, in the outcome of the proceeding.

Section 8.9    Mediation.

At the request of a party, the hearing panel may adjourn the proceeding to allow for mediation of the application. The hearing panel shall set a deadline for completion of the mediation. The USOC shall appoint a mediator, after consultation with the parties. The mediator shall not be a member of the hearing panel. The parties shall bear all costs associated with the mediation.

Section 8.10    Time Computation.

In computing any period of time, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is not one of the aforementioned days. The parties may modify any period of time by mutual agreement and consent of the hearing panel. The hearing panel may extend any period of time as it deems necessary.

Section 8.11    Time Limitation.

An amateur sports organization shall file an application --

A. within the one-year (1-year) period after the final day of any Olympic Games in the case of a sport for which competition is held in the Olympic Games or Paralympic Games, or in both the Olympic and Pan American Games; or
B. within the one-year (1-year) period after the final day of any Pan American Games in the case of a sport for which competition is held in the Pan American Games and not in the Olympic Games.

Section 8.12    Motion to Dismiss.

A. If the respondent contends that jurisdiction of the application is improper, that the applicant has failed to exhaust available remedies, that there is some other procedural or jurisdictional defect that would preclude a hearing on the merits, or that the

complaint fails to state a claim upon which relief can be granted, it may move to dismiss the application. Such motion to dismiss shall set forth the grounds for dismissal and shall be filed within twenty (20) days after receipt of the application.

B. The applicant shall be given the opportunity to submit papers in opposition to the respondent's motion to dismiss. The hearing panel shall determine whether or not to have argument on the motion to dismiss.

Section 8.13   Answer.

A. If there is no procedural or jurisdictional objection to the application, the respondent must file an answer within twenty (20) days after receipt of the application by the respondent.

B. If the panel finds against the respondent with respect to its motion to dismiss, the panel shall direct the respondent to file an answer to the application within twenty (20) days after receipt of the denial of the motion to dismiss by the respondent.

C. If the respondent is without sufficient knowledge or information to admit or deny a given factual allegation, the respondent may so respond.

Section 8.14   Exchange of Information.

A. At the request of any party or at the discretion of the hearing panel, the hearing panel may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.

B. At least seven (7) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

C. The hearing panel is authorized to resolve any disputes concerning the exchange of information.

Section 8.15   Hearing.

A. Provided that the application is not dismissed, the hearing panel shall hold a hearing on the application. The hearing panel shall set such timelines and other rules regarding the hearing as it deems necessary.

B. The USOC shall publish notice of the time and place of such hearing in a regular issue of its principal publication at least thirty (30) days, but not more than sixty (60) days, prior to the date of the hearing. The parties, at the direction of the hearing panel, shall send written notice, including a copy of the application, at least 30 days prior to the date of the hearing to all amateur sports organizations known to the USOC in that sport.

C. At any hearing all parties shall be given a reasonable opportunity to present oral or written evidence, to cross-examine witnesses, and to present such factual or legal claims as desired. Hearings shall be open to the public. In addition, the proceedings shall be stenographically recorded and a verbatim transcript thereof made available to each interested party upon request and payment thereof. The rules of evidence shall not be strictly enforced; instead, rules of evidence generally accepted in administrative proceedings shall be applicable.

D. The burden of proof shall be upon the applicant who shall also initially have the burden of going forward with the evidence. Upon completion of the presentation of the applicant's evidence, the respondent may move to dismiss for failure to sustain the burden of proof. If such motion to dismiss is denied, the respondent shall then have the burden of going forward with evidence in opposition to the challenge and in support of its position.

E. The applicant must establish by a preponderance of the evidence that -

1. it meets the criteria for recognition as a NGB or PSO under Article X, Section 10.5 or 10.6 of these Bylaws and Section 220522 of the Act; and

2. (i)the NGB or PSO does not meet the criteria of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522 – 220525 of the Act; or

3. (ii) the applicant more adequately meets the criteria of Article X, Section 10.5 or 10.6 of these Bylaws and Section 220522 of the Act, is capable of more adequately meeting the criteria of Sections 220523-220524 of the Act, and provides, or is capable of providing, a more effective national and international program of competition than the NGB or PSO in the sport for which it seeks recognition.

Section 8.16    Finding.

A. If the hearing panel determines that such NGB or PSO should continue as the NGB or PSO for its sport the hearing panel shall so notify the USOC Board, the applicant and such NGB or PSO. The hearing panel shall provide a written decision that shall include the findings of the hearing panel and shall explain the basis for its decision.

B. If the hearing panel determines that such NGB or PSO would have retained recognition except for a minor deficiency in one of the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522-220525 of the Act the hearing panel shall so notify the USOC Board, the applicant and the NGB or PSO. The hearing panel shall provide a written decision explaining its findings. The hearing panel shall also make a recommendation to the USOC Board to place the NGB or PSO on probation for a specified period of time not to exceed one hundred-eighty (180) days, pending compliance by the NGB or PSO.

C. If the hearing panel determines that the recognition of such NGB or PSO should be revoked, it shall it shall so notify the USOC Board, the applicant and such NGB or PSO. The hearing panel shall provide a written decision explaining its findings. Further, the hearing panel shall make a recommendation to the USOC Board either to –

1. declare a vacancy in the NGB or PSO for that sport; or
2. recognize the applicant as the NGB or PSO.

D. The USOC Board then shall –

1. place such NGB or PSO on probation for a specified period of time not to exceed one hundred eighty (180) days, which it considers necessary to enable such NGB or PSO to comply with such requirements; or
2. revoke the recognition of such NGB or PSO and declare a vacancy in the NGB or PSO for that sport; or
3. revoke the recognition of such NGB or PSO and recognize the applicant as the NGB or PSO for that sport.

## Section 8.17    Probation.

A. If a NGB or PSO is placed on   probation, it shall, at the conclusion of the probationary period, submit a written report to the hearing panel explaining and detailing whether or not it is in compliance. The NGB or PSO shall provide a copy of that report to the applicant.
B. If, after considering the report of the NGB or PSO, the hearing panel determines that such NGB or PSO is in compliance with the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522-220525 of the Act, the hearing panel shall so notify the USOC Board, the applicant, and the NGB or PSO.
C. If, after consideration of the report of the NGB or PSO, the hearing panel determines that such NGB or PSO is not in compliance with the requirements of Article X, Section 10.5 or 10.6 of these Bylaws and Sections 220522-220525 of the Act, the hearing panel shall so notify the USOC Board, the applicant, and the NGB or PSO.
D. If, at the end of the probationary period allowed by the USOC, the NGB or PSO has not complied with such requirements, the USOC Board shall revoke the recognition of such NGB or PSO and either –

1. recognize the applicant as the NGB or PSO; or
2. declare a vacancy in the NGB or PSO.

## Section 8.18    Arbitration.

A. There shall be no right of appeal to any other USOC body from a decision of the hearing panel or from a remedy imposed by the USOC Board.  Any party that considers itself aggrieved by a decision of the hearing panel on the merits of the hearing panel's decision concerning the application or by a remedy imposed by the USOC Board may, within thirty (30) days after such decision or imposition of remedy, file a demand for arbitration with the American Arbitration Association (AAA).
B. A respondent shall be entitled in a demand for arbitration to raise any jurisdictional or procedural objection to the application raised in its original motion to dismiss, but determined against it by the hearing panel that considered the jurisdictional or procedural challenge.
C. In the event a demand for arbitration is filed pursuant to the provisions of Section 8.18.A of these Bylaws and at least eighty percent (80%) of the voting power of the Board that is present and voting at a Board meeting has voted in favor of a party to

the complaint, the USOC shall, at the request of such party, undertake the defense of such party in the arbitration.

D. If the final arbitration award upholds the claim of an amateur sports organization to replace the incumbent as the NGB or PSO for its sport:

1. Such organization shall be deemed elected to Olympic membership, and the membership of the incumbent shall be deemed terminated without further action of the Board; and

2. The incumbent shall cease to exercise the authority of a NGB or PSO as specified in Section 220523 of the Act.

3. The Board shall, within sixty-one (61) days after such award, recommend and support in any appropriate manner the new NGB or PSO to the appropriate international sports organization for recognition by such federation or organization as the United States NGB or PSO in that sports, any provision to the contrary in Article X of these Bylaws notwithstanding. Such action shall include, without limitation, formally advising such federation of the decision of the Board and recommending acceptance of such action by the Federation as well.

E. In the event that there is a significant delay in the acceptance of the new NGB or PSO as the United States member in such federation, the Board shall take any and all interim steps that may be necessary, but which are not inconsistent with the other requirements of Article VIII of these Bylaws or Section 220529 of the Act, to protect the right of United States athletes to participate in international amateur athletic competition.

F. The arbitral award shall be binding upon the parties thereto, and unless the award is inconsistent with the terms of the Act, these Bylaws, or the rules of the IOC, upon the USOC.


## ARTICLE IX

## ATHLETES' RIGHTS

Section 9.1    No member of the corporation may deny or threaten to deny any amateur athlete the opportunity to participate in the Olympic Games, the Pan American Games, the Paralympic Games, a World Championship competition, or other such protected competition as defined in Section 1.3.P of these Bylaws nor may any member, subsequent to such competition, censure, or otherwise penalize, (1) any such athlete who participates in such competition, or (2) any organization which the athlete represents.  The corporation shall, by all reasonable means at its disposal, protect the right of an amateur athlete to participate if selected (or to attempt to qualify for selection to participate) as an athlete representing the United States in any of the aforesaid competitions.

Section 9.2    Any amateur athlete who alleges that he/she has been denied by a corporation member a right established by Section 9.1, shall immediately inform the CEO, who shall cause an investigation to be made and steps to be taken to settle the controversy without delay.  Without prejudice to any action that may be taken by the corporation, if the controversy

is not settled to the athlete's satisfaction, the athlete may submit to any regional office of the AAA ("AAA") for binding arbitration, a claim against such corporation member documenting the alleged denial as soon as is reasonably practicable, but not later than six (6) months after the date of denial. The athlete may submit the claim to the AAA simultaneously with the athlete's informing the CEO of the claim and the athlete does not have to wait for the CEO's investigation, but may pursue the claim immediately before the AAA. The AAA, however, (upon request by the athlete in question) is authorized, upon forty-eight (48) hours' notice to the parties concerned, and to the corporation, to hear and decide the matter under such procedures as the AAA deems appropriate, if the AAA determines that it is necessary to expedite such arbitration in order to resolve a matter relating to a competition which is so scheduled that compliance with regular procedures would not be likely to produce a sufficiently early decision by the Association to do justice to the affected parties. By maintaining membership in the corporation, each member agrees that any such aforesaid controversy may be submitted to binding arbitration as provided in this Section and furthermore agrees to be bound by the arbitrators' award as a result thereof.

Section 9.3    In any arbitration brought pursuant to this Article involving selection of an athlete to participate in a protected competition, the athlete submitting the controversy to the AAA must include with the initial submission a list of all persons that the athlete believes may be adversely affected by the arbitration. The member against which the arbitration has been filed must then promptly submit to the AAA a list of the persons it believes may be adversely affected by the arbitration, along with the relevant contact information for the persons identified by the member and by the athlete. The arbitrator then shall promptly determine which additional persons must receive notice of the arbitration. The athlete then shall be responsible for providing appropriate notice to these persons. Any person so notified then shall have the option to participate in the arbitration as a party, however, all persons so notified shall be bound by the results of the arbitration regardless of their decision to participate.

Section 9.4    No claim that has previously been adjudicated by the independent anti-doping organization designated by the corporation to conduct drug testing may be brought with the AAA under this Article.

Section 9.5    Notwithstanding any other provision of this Article, the final decision of a referee during a competition regarding a field of play decision (a matter set forth in the rules of the competition to be within the discretion of the referee) shall not be reviewable by an arbitrator or the subject of a demand for arbitration unless the decision is (1) outside the authority of the referee to make or (2) the product of fraud, corruption, partiality or other misconduct of the referee. For purposes of this Section, the term "referee" shall include any individual with discretion to make field of play decisions.

Section 9.6    Any amateur athlete, who alleges that he/she has been denied (whether or not by a member) an opportunity to compete in any international amateur athletic competition not protected by the terms of Section 9.1 of these Bylaws shall immediately inform the CEO, who will consult with legal counsel to determine whether the situation appears to be of sufficient seriousness and relevance to the obligation or responsibilities of the corporation to warrant action by the corporation in support of the athlete's claim.

Section 9.7    The rights granted to athletes under Sections 9.1 through 9.3 of these Bylaws shall equally apply to any coach, trainer, manager, administrator, or other official seeking to participate in the conduct of any of the international amateur athletic competitions designated, or referred to, in Section 9.1.

Section 9.8    Whenever a complaint is filed with the corporation pursuant to this Article, the CEO shall --

A. promptly notify the Chair of the AAC, the president of the NGB or PSO of the sport involved and the Athlete Ombudsman of the complaint by telephone;
B. provide the Chair of the AAC, the President of the NGB or PSO and the Athlete Ombudsman with a copy of the complaint; and
C. investigate the allegations of the complaint.

Section 9.9    With respect to the complaints filed pursuant to Sections 9.1 and 9.2, the CEO is specifically authorized, in circumstances as he/she may deem appropriate, to authorize legal action by the corporation in support of the athlete, or to finance legal action taken by the athlete (including arbitration) against the corporation member in order to protect the rights of an athlete as specified in Section 9.1. The CEO's decision whether or not to authorize or finance legal action in support of the athlete's claim shall not be construed as an opinion of the corporation with respect to the merits of the athlete's claim.

Section 9.10    With respect to complaints filed pursuant to Section 9.6, the CEO, within forty-eight (48) hours after the filing of the complaint, shall consult with the corporation's General Counsel and determine whether the situation appears to be of sufficient seriousness and relevance to the obligation or responsibilities of the corporation to warrant action by the corporation in support of the athlete's claim. If the CEO determines that action by the corporation appears to be warranted, the matter shall be referred within ninety-six (96) hours of the filing of the complaint to the Board, which shall decide the nature and extent of the action to be taken. In any event, the filing of all complaints under Section 9.3 shall be reported by the CEO to the Board. The report shall contain a brief statement of facts, the status of the investigation (if still ongoing), and any recommendations or final disposition of the matter.

Section 9.11    In determining the nature and extent of the action to be taken pursuant to Sections 9.2 or 9.6 above, the Board may authorize appropriate action, which may include supporting legal actions taken by the athlete against an amateur sports organization that is not a member when it appears that this is the most effective remedy for the protection of the athlete's rights and the athlete so requests.

Section 9.12    No action taken by or on behalf of a complainant under this Article IX shall preclude or act as a bar to the filing of a complaint pursuant to Article VIII of these Bylaws.

## ARTICLE X

# MEMBERS

Section 10.1    The Board shall have the power to elect properly qualified organizations to membership in each of the categories of membership listed in Sections 10.4 through 10.12 of these Bylaws, to transfer a member organization from one group to another, and to approve continued recognition as a member.  The Board also has the power to review all matters relating to the continued recognition of any of the organizations listed in Sections 10.4 through 10.12 of these Bylaws and may take such action as it considers appropriate, including, but not limited to, placing conditions upon the continued recognition of the organization and suspending or terminating such recognition, provided that notice of any such proposed action shall be given to the interested parties prior to the meeting at which such action is to be taken.  The Board shall specify the date upon which the rights and duties of new and transferred members shall be come effective.  If no date is specified, such rights and duties shall be become effective immediately.

Section 10.2    <u>Membership.</u>  The membership of the corporation shall be confined to —

A. organizations of the United States as hereinafter provided in this Article and hereinafter referred to as "Members"; and
B. individuals as hereinafter provided in this Article and hereinafter referred to as "Associate Members".  In addition, individuals may be otherwise associated with, and recognized by, the corporation by virtue of their current or past activities in the affairs of the corporation or in the Olympic, Pan American or Paralympic Games as provided elsewhere in these Bylaws.

Section 10.3    <u>Eligibility.</u>

A. Organizations eligible for membership shall be those which take some active part in the administration of one or more sports or competitions on the program of the Olympic, Pan American or Paralympic Games and such other organizations (patriotic, educational, or cultural) that are engaged in efforts to promote the participation in, or preparation for, amateur athletic competition.
B. Organizations which, as a part of their duties, administer participation in, or preparation for, professional sports shall not be ineligible for membership if they also administer a bona fide program of amateur athletic competition.
C. Organizations which are purely commercial or political in character are not eligible for membership.

Section 10.4    <u>Members of the Olympic Assembly.</u>   Organizations which meet the requirements for membership as Olympic, Pan American or Pan American Sports Organizations, Community-Based Multisport Organizations, Education-Based Multisport Organizations, Armed Forces Organizations, Affiliated Sport Organizations, or Other Sport Organizations shall be entitled to participate as members of the Olympic Assembly.  The list of member organizations of the corporation shall be made available upon request to any member of the corporation.

Section 10.5    <u>Olympic, Paralympic, and Pan American Sport Organizations.</u>

A. Eligibility for membership as Olympic Sport Organizations shall be limited to those amateur sports organizations which are recognized by the corporation as the NGBs for sports which have competed on the program of the Olympic Games. The term "sports which have competed on the program" means sports which have been approved to participate as medal sports at the next Olympic Games. Each Olympic Sport Organization shall be identified with a sport included on the program of the next Olympic Games. In accordance with the IOC's *Olympic Charter*, the corporation shall not recognize more than one (1) NGB in each sport. Olympic Sport Organizations shall be United States members of IFs recognized by the IOC.

B. Eligibility for membership as Pan American Sport Organizations shall be limited to those amateur sports organizations which are recognized by the corporation as the NGBs for sports which have competed on the program of the Pan American Games. Each Pan American Sport Organization shall be identified with a sport included on the program of the next Pan American Games. In accordance with the IOC's *Olympic Charter*, the corporation shall not recognize more than one (1) NGB in each sport. Pan American Sport Organizations shall be United States members of IFs recognized by the IOC. The term "sports which have competed on the program" means sports which competed as medal sports in either of the immediate past two (2) Pan American Games; and which have been:

   1. approved to participate as medal sports in the next Pan American Games,
   2. designated by the organizing committee to compete as medal sports in such Games, and
   3. confirmed by PASO to be on the schedule of the next such Games (confirmed by PASO shall be defined as reported by PASO on a year to year basis). A Pan American Sport Organization that participated in the immediate past Pan American Games is eligible to remain a Pan American Sport Organization until determined that it is not included on the program of the next Games.

C. No amateur sports organization is eligible to be recognized nor is it eligible to continue to be recognized as a NGB unless it complies with Sections 220522 through 220525 of the Act.

D. For any sport which is included on the program of the Paralympic Games, the corporation is authorized to designate, where feasible and when such designation would serve the best interest of the sport, and with the approval of the affected NGB, a NGB recognized under Article X to govern such sport.

Section 10.6 <u>Paralympic Sports Organization</u>. Where designation of a NGB is not feasible or would not serve the best interest of the sport, the corporation is authorized to recognize an amateur sports organization as a PSO. Any such PSO shall comply with the criteria for NGBs applicable to Olympic and Pan American Sport Organization members, and shall perform those duties, and have those powers that the corporation, in its sole discretion, determines are appropriate to meet the objects and purposes of the Act and these Bylaws. Notwithstanding anything to the contrary in Section 10.5 of these Bylaws, a PSO shall not be required to demonstrate that it is autonomous from the corporation. Notwithstanding anything to the contrary in Section 10.5 of these Bylaws a PSO may, with the approval of the corporation, govern more than one sport

included on the program of the Paralympic Games. A PSO shall be a member of each International Sports Organization of the sport or sports it governs.

Section 10.7 <u>Community-Based Multisport Organizations</u>. Eligible for membership as Community-Based Multisport Organizations shall be those amateur sports organizations in the United States which directly or indirectly conduct a national program or regular national amateur athletic competition in two (2) or more sports which are included on the official program of the Olympic, Pan American or Paralympic Games on a level of proficiency appropriate for the selection of amateur athletes to represent the United States in unrestricted international amateur athletic competition and are not Armed Forces or Education-Based Multisport Organizations.

Section 10.8 <u>Education-Based Multisport Organizations</u>. Eligible for membership as Education-Based Multisport Organizations shall be those sports organizations comprised of member educational institutions regularly conducting programs in sports which are included on the program of the Olympic and Pan American Games on a level of proficiency appropriate for the selection of amateur athletes to represent the United States in athletic competition and which base the eligibility of athletes upon enrollment in an educational institution sanctioned by a national accrediting body.

Section 10.9 <u>Armed Forces Organizations</u>. Eligible for membership as Armed Forces Organizations shall be the Army, Navy, Air Force, and Marines.

Section 10.10 <u>Affiliated Sport Organizations</u>. Eligible for membership as Affiliated Sport Organizations shall be those national amateur sports organizations, not eligible to be constituents of Olympic or Pan American Sport Organization members, that function as NGBs in amateur sports which are not on the program for the Olympic or Pan American Games, but which are widely practiced in this and other countries and continents, and whose international sports federations are recognized by the IOC and which comply with each of the following criteria --

A. comply substantially with the criteria for NGBs applicable to Olympic and Pan American Sport Organization members; and
B. have been incorporated as not-for-profit organizations in the United States and been granted tax-exempt status by the Internal Revenue Service; and
C. administer and support an annual national championship of athletes from several different areas/regions of the United States; and
D. have an active athlete training and competition program financially supported by self-generated funds; and
E. participated with a full contingent in two (2) of the last three (3) World Championships as sanctioned by their appropriate IF; and
F. demonstrate that its IF has achieved or is reasonably approaching all requirements defined by the IOC regarding the number of member NOCs for future inclusion, and that the sport meets all IOC requirements regarding rules and regulations for competition in the Olympic Games, and that the IF has made application to the IOC as a sport eligible for future inclusion; and/or
G. demonstrate that its IF has achieved or is reasonably approaching all requirements defined by PASO regarding the number of member NOCs for future inclusion, and that

the sport meets all PASO requirements regarding rules and regulations for competition in the Pan American Games, and that the IF has made application to the PASO as a sport eligible for future inclusion as a medal sport on the competition program of the Pan American Games.

Section 10.11 <u>Other Sport Organizations</u>.   Eligible for membership as Other Sport Organizations shall be those national sports organizations not eligible to be recognized in any of the other categories of membership that are recognized by the Board as organizations that should be included in the Olympic Assembly to advance the mission of the corporation.   One organization eligible for membership as an Other Sport Organization shall be the United States Olympic Alumni Association.

Section 10.12 <u>Associate Members</u>.   Individuals eligible for associate membership shall be those whose financial support of the efforts of the corporation meets such conditions as may be determined by the Board.   Associate membership carries with it no voting or other representational rights related to the decisions or activities of the corporation.

Section 10.13 <u>Dues</u>.   The Board shall fix the amount of annual dues, if any, for each member organization of the corporation. Such dues shall be fixed on an equitable basis and shall be due and payable on the first day of January each year. A member's failure to pay its dues by the first day of February, or by the date of a regular or special meeting of the Board in that year, whichever is earlier, shall suspend all membership privileges of the delinquent members, including participation in the Olympic Assembly, until all arrearages are paid. Membership shall be terminated automatically if the delinquent member remains in arrears for dues by the first day of February of the next succeeding year.

Section 10.14 <u>General Procedures Applicable to Membership Matters</u>.   Except as otherwise expressly provided in these Bylaws, all questions relating to membership in the USOC shall be decided by the Board, after a report by the CEO.

Section 10.15 <u>Organization Applications for Membership; Public Hearings</u>. An amateur sports organization that desires to become a member of the corporation, or which desires to transfer membership from one membership group to another, shall apply in writing to the corporation through the CEO. Applications made under this Section shall be of sufficient detail to demonstrate that the applicant meets the criteria for membership in the group for which application is made. Prior to action by the Board on an application for membership transfer, the CEO shall submit a written report with recommendations to the Board showing the facts that relate to the proposed action. In the case of an application for membership as an Olympic or Pan American Sport Organization, prior to preparing his or her report to the Board, the CEO shall hold at least two (2) public hearings concerning the application for membership. The USOC shall publish on its website, not less than thirty (30) days nor more than sixty (60) days prior to the date of each hearing, a notice of the time, place, and nature of such hearing. The corporation shall send written notice, which shall include a copy of the application, at least thirty (30) days prior to the date of any such public hearing to all amateur sports organizations in that sport that are known to the corporation. At such hearing, the CEO or the CEO's designee shall afford both the applicant organization and any other interested parties an opportunity to comment on the

merits of the application, and the CEO shall summarize in the CEO's report to the Board the comments so received. If the CEO determines, the CEO may (but is not required to) follow the foregoing procedure in the case of applications for membership by other sports organizations that are members of the USOC.

Section 10.16 Notwithstanding the provisions of Section 10.14, the membership of an Olympic, Pan American or Paralympic Sports Organization may be acted upon, by action of the Board, pursuant to the terms of Article VIII of these Bylaws. Notwithstanding the provisions of Section 10.14, in the event that a change in Olympic, Pan American or Paralympic Sports Organization membership occurs pursuant to Article VIII, whether by action of the corporation or by award of AAA arbitration, the provisions of Section 8.18.C of these Bylaws shall apply.

Section 10.17 Any action by the corporation to suspend, revoke, or otherwise deal with the membership of an Olympic, Pan American or Paralympic Sports Organization pursuant to the provisions of Section 220521(d) of the Act and Section 10.1 of these Bylaws shall be taken only at the initiative of the CEO and shall be finally determined by the Board after hearing and report to the Board by the CEO.

   A. The initiative for the proposed action shall be in the form of a complaint by the CEO, and the procedures set forth in Sections 10.14 – 10.17 shall apply, except –

      1. that any procedural or jurisdictional objections by the Olympic, Pan American, or Paralympic Sports Organization member shall not be the subject of a separate hearing, and shall be raised by the Olympic, Pan American, or Paralympic Sports Organization member in its answer to the complaint, and

      2. that the hearing of the matter shall be by a hearing panel composed        of three (3) to five (5) persons selected by the CEO to hear the matter. The hearing panel shall include at least twenty percent (20%) athletes who have competed as members of United States national teams in the Olympic, Pan American or Paralympic Games, or other major amateur international athletic competition, within the ten (10) years preceding the date when they start serving as a member of the hearing panel.

   B. Upon conclusion of its hearing, the CEO or the CEO's hearing panel shall prepare a report for the Board, setting forth its conclusions on any procedural or jurisdictional matter raised by the Olympic, Pan American or Paralympic Games Organization member, and its conclusion on the merits it determines there are no procedural or jurisdictional defects. If the CEO and the CEO's hearing panel find that the complaint is well taken, its report to the Board shall also include a recommendation as to the course of action to be taken by the Board.

   C. At its next meeting following the issuance of the report, the Board shall receive the report. No further hearing shall be held by the Board on any procedural or jurisdictional matter decided by the Board or any decision by the Board on its merits. The Board shall consider only whether to accept the recommendation of the CEO as to the action to be taken, if any, against the Olympic, Pan American or Paralympic

Sports Organization member which it believes is appropriate on the basis of the CEO's report.

D. The action of the Board on the matter shall be final.


## ARTICLE XI

## CODE OF ETHICS FOR VOLUNTEERS, STAFF AND MEMBER ORGANIZATIONS

Section 11.1     Code of Ethics.  The Board shall adopt a Code of Ethics for members of the Board, committees, task forces, member organizations associated with the corporation, the CEO, all corporation employees, and others who are associated with the corporation (the "Code").  The Code shall establish minimum standards for the conduct of corporate personnel, including staff. All  member organizations shall comply with the requirements of the Code, when representing the corporation or participating in corporation activities or events.  Violations of the Code shall be handled in the manner specified in the Code.  Amendments to the Code shall require a recommendation of the Ethics Committee and the approval of two-thirds of the voting power of the directors present at a meeting of the Board.

Section 11.2     Affirmative  Obligation  to  Promote  Ethical  Conduct.   All  corporation personnel should promote ethical behavior and take steps to ensure that the corporation: (a) encourages employees, Board, committee, and task force members and others associated with the corporation to address ethical concerns, and to talk to supervisors, managers, and the Ethics Officer, when in doubt about the best course of action in a particular situation; (b) encourages everyone associated with the corporation to report, on a confidential basis, violations of laws, rules, regulations or the Code to the Ethics Officer or the Ethics Committee; and (c) informs corporation personnel that the corporation will not allow retaliation for reports made in good faith concerning ethical behavior or the violation of laws, rules, regulations, or the Code.

Section 11.3     Written Standards.  The corporation shall develop, maintain, and distribute written standards of conduct, as well as written policies, procedures and protocols, that promote the corporation's commitment to compliance with such standards and address specific areas of potential infractions..

Section 11.4     Compliance Officer.  The corporation shall designate an ethics officer at the executive level who shall report functionally to the Ethics Committee and operationally to the CEO and shall be charged with the responsibility for developing, operating, and monitoring the corporation's ethics program, subject to oversight by the Ethics Committee.

Section 11.5     Education and Training.  The corporation shall develop and maintain regular and effective education and training programs for all affected corporation employees, officers, directors, committee and task force members, and volunteers, and others associated with the corporation.

Section 11.6     Effective Communication.  The corporation shall ensure that an effective line of communication exists between the ethics officer and all corporation employees, officers,

directors, committee members, and volunteers, and others associated with the corporation, including maintaining a process, such as a hotline or other reporting system, to receive complaints and the adoption of procedures to protect the anonymity of complainants and to protect complainants from retaliation based on their reporting of ethics or compliance issues.

Section 11.7    Monitoring.   The corporation shall use audits and other risk evaluation techniques to monitor compliance and identify problem areas affecting the corporation and its employees, officers, directors, committee and task force members, and volunteers, and others associated with the corporation.

Section 11.8    Investigation.   The corporation shall develop and maintain policies and procedures with respect to the investigation of identified systemic problems, which include direction regarding the prompt and proper response to detected offenses, such as the initiation of appropriate corrective action and preventive matters.

Section 11.9    Reporting Systems.   The corporation shall develop and maintain a system to respond to allegations of illegal, unethical, or improper activities and enforcement of appropriate disciplinary action against the corporation's employees, officers, directors, committee and task force members, volunteers, and others associated with the corporation who have violated internal compliance policies, applicable statutes, regulations, or other corporation requirements.

Section 11.10   Member Organizations and Bid Cities.   The corporation shall require its member organizations and any bid city organizations to implement procedures that comply with the requirements of Sections 11.3 through 11.9.


## ARTICLE XII

## ATHLETES' ADVISORY COUNCIL AND ATHLETE REPRESENTATION

Section 12.1    There shall be an AAC composed of, and elected by, amateur athletes to ensure communication between the corporation and currently active athletes, and to serve as a source of opinion and advice to the Board with regard to both current and contemplated policies of the corporation.  The AAC shall consist of at least one (1) athlete from each NGB elected by athletes having competed at the appropriate level in the sport governed by that NGB, two (2) athletes elected by athletes having competed at the appropriate level in the sports governed by either PSOs or NGBs designated to govern a Paralympic sport and six (6) athletes elected by the AAC to serve at-large on the AAC.  The AAC shall meet regularly and in accordance with the budget approved by the Board.  The AAC shall operate in accordance with bylaws adopted by the members of the AAC.

Section 12.2    Election to membership in the AAC shall be made in accordance with provisions of the AAC Bylaws.  Elected athletes shall serve until their successors are elected unless removed for cause or not for cause pursuant to the Bylaws of the AAC.

Section 12.3    Athlete representatives shall equal 100% of the AAC, at least 20% of the voting power of the Board of the corporation and at least 20% of the membership and voting power of all corporation committees, task forces and other such groups operating under the authority of the Board or CEO. For purposes of this Section, athlete representatives must have represented the United States in the Olympic, Pan American or Paralympic Games, World Championships, or an event designated as an Operation Gold event within the ten (10) years preceding election.

Section 12.4    Athlete representatives to the AAC (1) representing Olympic and Pan American sports, must be directly elected by athletes from their NGB who meet the standard set forth in Section 12.3 at the time of election, (2) representing Paralympic sports, must be directly elected by athletes from either PSOs or NGBs designated to govern a Paralympic sport who meet the standard set forth in Section 12.3, and (3) who are at-large members of the AAC must be directly elected by athletes serving on the AAC. Athlete representatives to the Board shall be recommended to the Nominating and Governance Committee by members of the AAC from among the athletes who meet the standard set forth in Section 12.3 at the time they would take office, and the Nominating and Governance Committee may also consider other athletes who meet the definition of independence set forth in Section 3.2 of these Bylaws to serve as independent directors on the Board, as provided in these Bylaws. Athlete representatives on corporation committees, task forces and other such groups shall be appointed with the approval of the AAC from among the athletes who meet the standard set forth in Section 12.3.

Section 12.5    Each NGB shall adopt and submit to the corporation, consistent with policies established by the AAC, a procedure whereby eligible athletes as defined in Section 18.7(B) shall elect an active athlete to represent the Olympic or Pan American sport governed by the NGB on the AAC. The PSOs and NGBs designated to govern a Paralympic sport, collectively, shall adopt and submit to the corporation, consistent with policies established by the AAC, a procedure whereby eligible athletes as defined in Section 12.3 above shall elect eligible athletes to represent the Paralympic sports on the AAC. The term for members of the AAC shall commence and shall terminate as provided in the bylaws of the Athletes' Advisory committee.


# ARTICLE XIII

## NATIONAL GOVERNING BODIES COUNCIL

Section 13.1    There shall be a NGB Council whose members shall be representatives of the NGBs and PSOs selected by their boards of directors or such other governing boards to ensure effective communication between the corporation and such NGBs and PSOs.

Section 13.2    Each member of the NGB Council shall serve until replaced by the NGB or PSO that appointed them, unless removed for cause or not for cause by the NGB Council pursuant to fair procedures as provided for in the NGB Council bylaws.

Section 13.3    The NGB Council shall operate in accordance with bylaws adopted by the members of the NGB Council. The NGB Council shall elect its own officers and shall meet and

conduct business as necessary and in accordance with its bylaws and the budget approved by the Board.

## ARTICLE XIV

## MULTISPORT ORGANIZATIONS COUNCIL

Section 14.1    There shall be a Multisport Organizations Council whose members shall be one representative of each of the Multisport Organizations (Community-Based Multisport Organizations, Education-Based Multisport Organizations, Armed Forces Organizations, and Affiliated Sport Organizations) selected by their boards of directors or such other governing boards to ensure effective communication between the corporation and such Multisport Organizations.

Section 14.2    Each member of the Multisport Organizations Council shall serve until replaced by the Multisport Organization that appointed them, unless removed for cause or not for cause by the Multisport Organizations Council pursuant to fair procedures as provided for in the Multisport Organizations Council bylaws.

Section 14.3    The Multisport Organizations Council shall operate in accordance with bylaws adopted by the members of the Multisport Organizations Council.   The Multisport Organizations Council shall elect its own officers and shall meet and conduct business in accordance with its bylaws.

## ARTICLE XV

## INDEMNIFICATION

Section 15.1    The corporation shall indemnify each of its present or former directors, officers, employees or official representatives, or any person who is or was serving another corporation or other entity in any capacity at the request of the corporation, against all expenses actually and reasonably incurred by such person (including, but not limited to, judgments, costs and counsel fees) in connection with the defense of any pending or threatened litigation to which such person is, or is threatened to be made, a party because such person is or was serving in such capacity. This right of indemnification shall also apply to expenses of litigation which is compromised or settled, including amounts paid in settlement, if the corporation shall approve such settlement as provided in Section 15.2 of these Bylaws.   Such person shall be entitled to be indemnified if he/she acted in good faith and in a manner he/she reasonably believed to be in, and not opposed to, the best interests of the corporation.   The termination of any litigation by judgment, order, settlements, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner reasonably believed to be in, and not opposed to, the best interests of the corporation.

Section 15.2    Any amount payable as indemnification under this Article shall be determined and paid by the corporation pursuant to a determination by a majority vote of a quorum

of the Board, consisting of members of the Board who have not incurred expenses in connection with the litigation for which indemnification is sought, that such person seeking indemnification has met the standards of conduct set forth in this Article. If such a quorum is not obtainable, or even if obtainable, a quorum of disinterested directors so directs, such determination shall be made either –

A. by the Board upon the opinion in writing of independent legal counsel that indemnification is proper in the circumstances because the applicable standard of conduct set forth in this Article has been met; or

B. by a majority vote of the members of the Board upon a finding that the person seeking indemnification has met the applicable standard of conduct set forth in this Article.

Section 15.3    Any expenses incurred by such person in connection with the defense of any litigation may be made by the corporation in advance of a final disposition of such litigation upon receipt of an undertaking by such person to repay such amount if it is determined under Section 2 hereof that such person is not entitled to be indemnified under this Article.

Section 15.4    The right of indemnification under this Article shall be in addition to, and not exclusive of, all other rights to which such person may be entitled.

Section 15.5    The Board may, at its discretion, authorize the purchase of insurance on behalf of any persons indemnifiable under this Article. Such insurance may include provisions for indemnification of such persons for expenses of a kind not subject to indemnification under this Article. Any repeal or modification of this Article XV shall be prospective only and shall not adversely affect any right or protection of a director, officer, employee, fiduciary and agent of the corporation under this Article XV, as in effect immediately prior to such repeal or modification, with respect to any liability that would have accrued, but for this Article XV, prior to such repeal or modification.

## ARTICLE XVI

## ORGANIZATION OF OLYMPIC, PAN AMERICAN AND PARALYMPIC GAMES IN THE UNITED STATES

Section 16.1    The organization of Olympic, Pan American and Paralympic Games is governed by the rules of the IOC, PASO and the IPC. Selection of the host cities for the Olympic Games shall be made in accordance with IOC rules. Selection of the host cities for the Pan American Games shall be made in accordance with special provisions in PASO rules. Selection of the host cities for the Paralympic Games shall be made in accordance with IPC rules.

Section 16.2    Any United States city interested in bidding for the privilege of organizing the Olympic, Pan American or Paralympic Games in the United States shall follow the procedures established by the Board.

# ARTICLE XVII

## NATIONAL GOVERNING BODIES

Section 17.1    The NGBs and PSOs which are responsible for the technical rules for each sport on the program of the Olympic, Pan American and Paralympic Games shall have the following authority and responsibility --

    A. establish an operating procedure within the NGBs or PSOs to insure continuity of international, Olympic, Pan American and Paralympic Games programs for the quadrennial period;

    B. establish a written procedure, subject to the approval of the Board, to fairly select athletes, coaches, and team leaders for the Olympic, Pan American and Paralympic Games Teams, that after having been approved by the Board, shall be disseminated as early as possible to the athletes, coaches, and team leaders pursuant to procedures promulgated by the CEO;

    C. select site(s) and date(s) to qualify for the Olympic, Pan American and Paralympic Games Teams;

    D. nominate for appointment by the Board of the USOC those coaches, team leaders and other team officials for the Olympic, Pan American and Paralympic Games Teams;

    E. recommend a plan for training Olympic, Pan American and Paralympic Games Team members;

    F. establish a program for the development of its sport;

    G. formulate and present budgets for development, team preparation, team selection, and sports liaison expenses;

    H. recommend a program for the use of the corporation's Training Centers;

    I. screen and recommend athletes for participation in the corporation's Job Opportunities Program;

    J. recommend athletes for consideration of awards under the corporation's Medical Scholarship Program;

    K. nominate in writing persons for appointment to standing committees of the corporation;

    L. prepare the requirements of its sport for submission to the CEO in each of the following areas to service the Olympic, Pan American and Paralympic Teams --

        1. apparel, supplies and equipment;

        2. food and housing;

        3. medical and training services;

        4. tickets; and

        5. transportation;

    M. participate in the IF activities of its sport and carry out those responsibilities required by the respective international federations;

    N. disseminate to its member athletes information relating to its sport;

    O. present to the corporation the organizational structure within the NGB designated to carry out its Olympic, Pan American and Paralympic Games responsibilities;

P. authorize or approve all programs prior to submission by its liaison representatives to the corporation for review and approval; and

Q. adopt and submit to the corporation the procedure whereby it will elect its representative(s) to the Olympic Assembly.

Section 17.2

A. Each NGB or PSO, subject to the policy directives and procedures prescribed by the Board and subject to review by the CEO, shall have the authority and duty to devise and determine the method of selecting athletes and team officials (coaches, team leaders, etc.) who will be recommended to the Board for appointment to the team that will represent the United States in the particular sport or event of the Olympic, Pan American or Paralympic Games.

B. Each NGB or PSO, no less than 18 months prior to each Olympic, Pan American or Paralympic Games, shall submit to the CEO for review and report to the Board, a written proposal concerning the participation of the United States in the particular sport or event of the forthcoming Olympic, Pan American or Paralympic Games. This proposal shall include the number of athletes and team officials to be nominated for appointment to the United States delegation for such Games; the procedures to be followed for preparing and conditioning candidates for the team; the program of tryouts and the method of selecting the athletes to be recommended for appointment to the team; the special requirements of the particular sport or event with respect to sports equipment and supplies, services of physicians and trainers and such special personnel as authorized by the corporation; and any other matters that may be relevant for effective planning of the United States' participation in the particular sport or event of the NGB or PSO. Each NGB or PSO shall be given timely notice with respect to the recommendations for approval, modifications or rejection of specific items in its proposal to be made by the CEO to the Board. If a NGB or PSO is unwilling to accept an adverse recommendation of the CEO, it may appeal in writing to the Board, whose decision by a majority of the voting power of the members present shall be final.

C. Each NGB or PSO shall put into effect the plan approved by the Board for participation of the United States in its particular sport or event in the forthcoming Olympic, Pan American or Paralympic Games. The NGB or PSO, as early as practicable in accordance with the plan, shall announce the method of selecting the athletes to be recommended for appointment to the team, establish the times and places of tryouts thereof, and perform whatever other duties may be indicated under the plan as approved by the Board.

D. Each NGB or PSO, subject to the Bylaws, shall make appropriate contractual or other arrangements for holding such local or regional, preliminary or semifinal tryouts as may be necessary under the plan approved by the Board. Arrangements for final tryouts shall in all cases be cleared specifically with the CEO.

E. Each NGB or PSO, at least twelve (12) months prior to the date of the final tryouts, shall submit for review by the CEO its list of eligible persons (one (1) nominee and one (1) alternate), together with a resume for each authorized position from which it is proposed to select team officials in its particular sport or event to be recommended for appointment by the Board. The CEO, after such investigation and further

consultation with each NGB or PSO as he or she deems appropriate, may recommend approval or rejection of any and all names on such list. In the event a name is recommended for rejection, the NGB or PSO may submit a new nomination, or it may appeal to the Board, whose decision by a majority of the voting power of the members present shall be final.

F. Each NGB or PSO shall cooperate in every way possible with the Board and the CEO in preventing the unauthorized use of the names and trademarks of the corporation, or the word "Olympic" and its derivatives, as well as symbolic equivalents thereof, or the United States Olympic Emblem as described in the Act.

G. As a condition of membership in the corporation and recognition as a NGB or PSO, each NGB or PSO shall comply with the procedures pertaining to drug testing and adjudication of related doping offenses of the independent anti-doping organization designated by the corporation to conduct drug testing. No exceptions to such procedures shall be allowed unless granted by the Board, or its designee, after a hearing at which the NGB or PSO is allowed to present the reasons for such exception.

Section 17.3   Members of NGBs or PSOs or other organizations cooperating with the corporation in raising of funds from any source, shall turn over such funds to the corporation's CEO as promptly as possible. Funds collected over a continuous period of time shall be forwarded to the CEO at least once a month, and in the sixty (60) days prior to the Olympic, Pan American or Paralympic Games at least once a week, with a detailed report indicating sources, amounts, and purposes.

Section 17.4   The CEO shall approve suitable contract forms for the administration of the various Olympic, Pan American or Paralympic Games tryouts and other authorized benefits. Each contract for a tryout shall be made in triplicate and shall specify the types of expenses that may be legitimately charged, the desirable administrative procedures, the minimum guarantee, adequate accounting, and careful fixing of local financial responsibility. Whenever possible, guarantees shall be by security bonds. One (1) copy of each contract shall be filed with the CEO; one (1) copy shall be retained by the NGB or PSO; and one (1) copy shall be retained by the organization sponsoring the tryouts. The NGBs or PSOs shall submit to the CEO, a detailed and certified statement of receipts and disbursements.

Section 17.5   No NGB or PSO shall incur any financial obligation on behalf of the corporation without first obtaining approval from the corporation's Board.

Section 17.6   All funds raised by any NGB or PSO where the word "Olympic" or a derivative thereof is used in any connection shall belong to the corporation and shall be accounted for accordingly.

Section 17.7

A. Athlete representatives shall equal at least 20% of all NGB boards of directors, executive boards, and other governing boards, as well as those committees that are "Designated Committees" within the meaning of these Bylaws. For purposes of these Bylaws, the phrase "Designated Committees" means nominating and budget

committees, panels empowered to resolve grievances and committees which prepare, approve or implement programs in the following areas:

1. expenditures of funds allocated to NGBs by the corporation; and
2. selection of international, Olympic and Pan American Games Team members including athletes, coaches, administrators and sports staff.

If approved by the corporation, NGBs may use proportional or weighted voting to achieve the necessary level of athlete representation in extraordinarily large legislative bodies such as "Houses of Delegates" or "Boards of Governors."

B. Athlete representatives on those NGB boards or committees described in Section 17.7 of these Bylaws above shall meet the following standards:

1. At least one-half of the individuals serving as athlete representatives shall have competed in the NGB's events or disciplines that are on the sport's program in the Olympic or Pan American Games.
2. Up to one-half of the individuals serving as athlete representatives may have competed in (i) an event or discipline not on the program of the Olympic or Pan American Games, provided that such event or discipline is recognized by the IF of the NGB or is regularly included in the international competition program of the IF, or (ii) the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program.
3. At the time of election, all NGB athlete representatives shall have demonstrated their qualifications as athletes by having:

   a. Within the ten (10) years preceding election, represented the United States in the Olympic or Pan American Games, or an Operation Gold event, or a World Championship recognized by the NGB's IF for which a competitive selection process was administered by the NGB, or, in a team sport, an international championship recognized by the IF of the NGB; or
   b. Within the twenty-four (24) months before election, demonstrated that they are actively engaged in amateur athletic competition by finishing in the top half of the NGB's national championships or team selection competition for the events outlined in subparagraphs (1) or (2) or in a team sport, have been a member of the NGB's national team; or
   c. For the purposes of the standards outlined in Section 17.7.B.2.ii only, within the ten (10) years preceding election, represented the United States in the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program.
   d. Athlete representatives may not be drawn from events that categorize entrants in age-restricted classifications commonly known as "Juniors," "Masters," "Seniors," "Veterans" or other similarly designated age-restricted competition. This provision is not meant to exclude from eligibility athletes who compete in an event for which the IOC or an IF has established an age restriction but whom otherwise meet the standard set forth in Section 17.7.B.

C. Athlete representatives shall also equal at least 20% of those NGB committees which are not Designated Committees, except that qualification as an "athlete representative" shall be determined as follows:

1. At least one-half of the individuals serving as athlete representatives shall have competed in the NGB's events or disciplines that are on the sport's program in the Olympic or Pan American Games.

2. Up to one-half of the individuals serving as athlete representatives may have competed in (i) an event or discipline not on the program of the Olympic or Pan American Games, provided that such event or discipline is recognized by the IF of the NGB or is regularly included in the international competition program of the IF, or (ii) the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program.

3. At the time of selection, all NGB athlete representatives under Section 17.7.C shall have demonstrated their qualifications as athletes by having:

   a. Within the ten (10) years preceding selection, represented the United States in the Olympic or Pan American Games, or an Operation Gold event, or a World Championship recognized by the NGB's IF for which a competitive selection process was administered by the NGB, or, in a team sport, an international championship recognized by the IF of the NGB; or the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program; or

   b. Within the twenty-four (24) months before selection, demonstrated that they are actively engaged in amateur athletic competition; or

   c. For the purposes of the standards outlined in Section 17.7.C.2.ii only, within the ten (10) years preceding selection, represented the United States in the Paralympic Games, or an IPC-recognized World Championship in events on the Paralympic Games program.

4. Athlete representatives may not be drawn from events that categorize entrants in age-restricted classifications commonly known as "Masters," "Seniors," "Veterans" or other similarly designated age-restricted competition. This provision is not meant to exclude from eligibility athletes who compete in an event for which the IOC or IF has established an age restriction but whom otherwise meet the standard set forth in Sections 17.7.B. or 17.7.C of these Bylaws.

D. An NGB may set standards for its athlete representatives that are higher than those in Sections 17.7.B and 17.7.C provided that such standards are not in conflict with the Act or these Bylaws.

E. Athlete representatives to an NGB's board of directors, executive committee, and other such governing boards as defined in Section 17.7.A shall be directly elected by athletes who meet the standards set forth in Section 17.7.B. Athlete Representatives to all other NGB committees and task forces shall be selected by the NGB with the approval of the

athletes, or a representative group of athletes, who meet the standards set forth in Section 17.7.C.

F. Any NGB may submit an Application for Review ("Application") to the CEO. The Application shall set forth: (1) the reasons why the NGB believes it cannot meet the requirements of Section 17.7; and (2) the NGB's proposed alternative plan for compliance with Section 17.7, which should expand on the standards set forth in Sections 17.7.B and 17.7.C only to the extent necessary to achieve the required 20% athlete representation. If the Application is not approved by the CEO, the provisions of this Section 17.7 shall apply. An NGB may appeal the decision of the CEO on the Application to a five-person panel composed of two individuals appointed by the AAC Chair, two appointed by the NGB Council Chair, and one person appointed by the USOC Chair.

## ARTICLE XVIII

## ELECTION OF MEMBERS TO ATHLETES' ADVISORY COUNCIL

Section 18.1    Each NGB shall adopt and submit to the corporation, consistent with policies established by the AAC, a procedure whereby eligible athletes as defined in Section 12.3 of these Bylaws shall elect an active athlete to represent the Olympic or Pan American sport governed by the NGB on the AAC. The PSOs and NGBs designated to govern a Paralympic sport, collectively, shall adopt and submit to the corporation, consistent with policies established by the AAC, a procedure whereby eligible athletes as defined in Section 12.3 of these Bylaws shall elect active athletes to represent the Paralympic sports on the AAC. (1) The NGB shall forward the name of the elected athlete representing that sport to the CEO of the corporation and certify the date and competition in which the athlete last competed internationally, as set forth in the AAC bylaws. (2) The PSOs and NGBs designated to govern a Paralympic Sport, collectively, shall forward the names of the elected athletes representing the Paralympic sports to the CEO of the corporation and certify the date and competition in which the athlete last competed internationally, as set forth in the AAC Bylaws. The term for members of the AAC shall commence and shall terminate as set forth in the AAC Bylaws.

Section 18.2    As set forth in its AAC Bylaws, the AAC shall elect six (6) active athletes to serve as at-large members of the AAC for the following quadrennial period.

Section 18.3    Each member of the AAC shall serve until replaced by the eligible athletes who elected them, unless removed for cause or not for cause by the AAC pursuant to fair procedures as provided for in the AAC bylaws.

Section 18.4    The AAC shall operate in accordance with bylaws adopted by the members of the AAC. The AAC shall elect its own officers and shall meet and conduct business in

accordance with its bylaws.

**ARTICLE XIX**

**OLYMPIC, PAN AMERICAN, AND PARALYMPIC GAMES-RELATED MATTERS**

Section 19.1    Official Delegation.

A. <u>Chef de Mission</u>. The Board shall appoint a Chef de Mission, who shall function as the liaison officer between the Local Organizing Committee for the Olympic, Pan American and Paralympic Games, and the members of the United States official delegation at the site of the Games. The Chef de Mission shall be the liaison officer between the United States official delegation and the Local Organizing Committee at the site of the Olympic, Pan American or Paralympic Games. The Chef de Mission shall present to the Local Organizing Committee all requests, complaints, inquiries, suggestions or information on behalf of the corporation or its officers or committees.

B. <u>Games Administrative Board</u>. There shall be a Games Administrative Board of the corporation which shall have final authority with respect to all matters regarding the United States official delegation at the site of the Games including, but not limited to, policy, protocol, discipline, and similar matters, except with regard to team selection issues and Code of Conduct violations, which shall be determined by the corporation's grievance procedures for the Games. The Games Administrative Board shall consist of the Chair, the CEO, the Delegation Director, the Chef de Mission and the Chair of the AAC. In the case of the absence of a member of the Games Administration Board, the CEO may designate an alternate, who shall exercise all of the privileges of the absent member.

C. The official delegation for any Olympic, Pan American or Paralympic Games shall be limited to athletes and authorized team officials. Only members of the official delegation may wear the official uniform.

D. Members of the Board or the Olympic Assembly or of NGBs or PSOs, and other United States citizens who attend the Games as international officials (other than those included in the preceding paragraph), or members of juries or delegates to congresses of international sports federations or of international sports organizations, or representatives of the press or radio or television, are not members of the official delegation and may not wear the official uniform. They may, however, be provided with a special uniform and/or appropriate insignia selected by the CEO, or his/her designee, to indicate their affiliation with the United States Team and upon acceptance of such uniform, shall be subject to the jurisdiction of the corporation for the duration of the Games.

E. The corporation shall not be under any obligation to make travel arrangements or hotel reservations, or purchase admission tickets to the Olympic, Pan American or Paralympic Games, for persons attending the Games in an official capacity but not included in the official delegation, or for relatives and friends of members of the official delegation, or for the general public. If arrangements with the Local Organizing Committee permit the corporation to render incidental assistance to persons, such as members of the Board or the Olympic Assembly or of NGBs or PSOs, who may be

attending the Games in an official capacity, or to relatives of team members, the CEO, or his/her designee, will make appropriate announcement of the general terms, conditions and limitations under which such assistance may be available to such persons.

F. The corporation shall assume responsibility for transportation, equipment, housing and living expenses of the Olympic, Pan American or Paralympic Games Team from the time the athletes depart for the team processing site until they are officially disbanded on their return to the United States.

G. No contracts or obligations for expenses of any kind shall be made by any members of the official delegation without the authorization of the CEO or his/her designee.

H. Members of the official delegation shall consider the Olympic, Pan American or Paralympic Games dress uniform issued to them as their regular attire from the date of issue continuing until their return to the United States. Certain articles of clothing designated as part of the parade uniforms shall not be worn prior to the parade at the opening ceremonies unless special permission is granted by the CEO, or his/her designee. The CEO, or his/her designee, shall be responsible for establishing policies for the acquisition, transportation, issue, and alteration of all uniforms for the corporation.

I. All members of the official delegation at the Olympic, Pan American or Paralympic Games shall travel to and from the respective Games according to organizational policy, except in those instances where permission to do otherwise shall have been granted by the CEO, or his/her designee.

J. Only the CEO, or his/her designee, may authorize the designation of a commercial tour to the Olympic, Pan American or Paralympic Games as a travel arrangement sponsored or approved by, or cooperating with, the corporation.

K. All athletes and team officials shall be housed together at the Olympic, Pan American or Paralympic Games Village or other quarters provided at the site of the Games, and shall live and eat and remain together until their return to the United States, unless special permission to do otherwise is granted in writing by the Chef de Mission, or his/her designee.

L. Team officials whose teams have completed their competition may be assigned administrative duties in the Athletes' Village by the Chef de Mission, or his/her designee.

M. All personnel attached to the Olympic, Pan American or Paralympic Games Teams shall obtain permission from the CEO, or his/her designee, before entering into any agreements to perform commercial newspaper, magazine, radio or television work on matters relative to Olympic, Pan American or Paralympic Games activities at any time. They shall refer to the CEO, or his/her designee, for clearance on any material concerning Olympic, Pan American or Paralympic Games activity that they may prepare for publication or broadcast delivery.

N. All publicity or public relations functions on behalf of the corporation or the United States Olympic, Pan American or Paralympic Teams preferably shall be performed by or under the direction of the CEO, or his/her designee.

Section 19.2    Tryouts and Team Selection.

A.  No athlete shall be recommended for appointment to the United States Olympic, Pan American or Paralympic Games Team unless the athlete has won the right thereto according to the approved method of selection for the particular sport or event, and has passed the required medical examination, and has signed in unaltered form the Code of Conduct acknowledgement agreeing to the terms and conditions contained in the Code of Conduct (which shall include a dispute resolution process) of the United States Olympic, Pan American or Paralympic Games Team.

B.  Subject to the Bylaws and approval by the Board, each NGB or PSO may organize tryouts, or by agreement in writing, designate established regional or national championships as Olympic, Pan American or Paralympic Games tryouts for its particular sport or event. All agreements shall comply with the financial regulations in these Bylaws.

C.  No competition shall be designated as an Olympic, Pan American or Paralympic Games tryout in a particular sport or event except by specific authority of the appropriate NGB or PSO pursuant to these Bylaws and the Board.

D.  All agreements for Olympic, Pan American and Paralympic Games tryouts shall be executed in triplicate by the NGBs and PSOs and the CEO, or his/her designee.

E.  Any tryouts organized directly or indirectly under authority of any NGB or PSO shall be open only to athletes who are citizens of the United States at the time of selection and eligible under the rules of the IOC, PASO, or the IPC for selection for membership on the United States Olympic, Pan American or Paralympic Games Team.

F.  The entire net income of all tryouts shall be paid to the corporation, unless specific exception is made by the Board on the recommendation of the CEO. When permission is granted by a NGB or PSO to a local, regional, or national organization to conduct tryouts, the said organization shall guarantee the entire expenses thereof. No part of the expenses of the event shall be charged against the corporation or any of its funds.

G.  When a NGB or PSO regional or national championship is designated as an Olympic, Pan American or Paralympic Games tryout, the agreement shall specify the method of sharing the proceeds between the organization sponsoring the event and the corporation, and shall be submitted for specific approval of the CEO to the executive officer of the NGB or PSO concerned.

H.  When Olympic, Pan American or Paralympic Games tryouts are designated as NGB or PSO championship events, the traditional prizes emblematic of such championships may be awarded. The winners of first, second and third places in any preliminary, regional, semi-final, and final tryout, as well as other events conducted for the benefit of the Olympic fund, may receive appropriate certificates designed for distribution.

I.  Each NGB and PSO shall receive from the CEO, or his/her designee, before the final tryouts, measurement forms for team officials and successful competitors and shall complete and return these forms as expeditiously as possible after the final tryout. All athletes and officials who are members of Olympic, Pan American and Paralympic Games Teams during all Games ceremonies, shall wear or use the official uniforms and equipment issued to them by the corporation unless special exception to the Bylaw has been granted by the CEO, or his/her designee, upon a showing by an athlete that the wearing or use of such uniform or equipment will be detrimental to the competitor's performance.

J. A meeting of athletes and officials shall be held by a representative named by the CEO, or his/her designee, to explain to team members their relationship to the corporation, to outline the provisions made for their welfare and comfort, to make clear to them their obligation to the corporation, to sport, and to their country, to review and ensure compliance with the "Delegation Handbook", to obtain signatures of team personnel to releases and agreements, to obtain missing measurements for uniforms, and to obtain required photographs.

K. Once the personnel of the United States Team has been selected on the basis of tryouts, no substitution shall be made except in accordance with selection procedures previously approved by the Board.

Section 19.3    <u>Selected Competitors</u>.

A. Every athlete for the United States Olympic, Pan American or Paralympic Games Team shall be furnished a "Delegation Handbook" containing the basic information and regulations concerning the athlete's responsibilities as a member of the Team and shall:

1. sign, in unaltered form, the Code of Conduct acknowledgement agreeing to the terms and conditions contained in the Code of Conduct (which shall include a dispute resolution process) of the United States Olympic, Pan American or Paralympic Games Team;

2. sign, in unaltered form, the Olympic, Pan American or Paralympic Games Eligibility Code as required by the IOC, PASO or IPC;

3. submit to a medical examination and sign the corporation's Medical Examination form;

4. sign, in unaltered form, the corporation's General Release required of members of the official delegation; and

5. sign a statement granting to the corporation and the appropriate NGB or PSO the right to use the athlete's name, picture and portrait. This statement shall give the corporation and the appropriate NGB or PSO the right to use the athlete's name, picture, and portrait in promoting the competition in which the athlete is to compete or to promote the success of the team on which the individual competed.

B. Upon acceptance as a member of the United States Olympic, Pan American or Paralympic Games Team, the athlete shall --

1. provide the necessary personal information for the official entry, including a certificate (with international license number if applicable) of the athlete's membership in the United States sports governing body affiliated with the IF recognized by the IOC or the IPC as governing the athlete's sport;

2. provide photographs as required for passports, identification cards and office reports; and

3. report to the team processing center with suitable personal gear for the trip.

Section 19.4    Conduct of Team Personnel.

A. All members of the official delegation, and all persons to whom a special uniform has been issued to indicate their affiliation with the United States team, shall be subject to the jurisdiction of the corporation and these Bylaws. They shall conduct themselves at all times and in all places as befits worthy representatives of their country, and in conformity with the traditions of the Olympic, Pan American or Paralympic Games.

B. Competitors shall be under the strict supervision of their team leaders and coaches. They shall maintain strict training while under the supervision of the corporation. They shall also conform to any special training rules set up for their respective teams.

C. Any competitor who uses an unauthorized device or unauthorized equipment, or who uses any prohibited substance or method, shall be subject to disciplinary action in accordance with the protocol applicable to the competition.

D. Any person who participates in the violation of the rule in the preceding paragraph by encouragement or consent communicated to the competitor, or by furnishing any prohibited device, equipment, substance, or method, shall be subject to disciplinary action.

E. Any member of the official delegation who violates the customs, travel or currency regulations of the country where the Olympic, Pan American or Paralympic Games are held, or who assists a stowaway in obtaining unauthorized transportation with the United States Team or in violating the regulations of the Olympic, Pan American or Paralympic Games village, shall be liable for immediate dismissal from the Team.

F. No member of the official delegation or other person subject to the jurisdiction of the corporation shall engage in newspaper, magazine, radio or television work for remuneration during the interval between selection and return of the Team, or shall appear as a guest or participant on radio or television programs for remuneration, without the permission of the CEO, or his/her designee.

Section 19.5    Team Leaders and Coaches.

A. The team leaders shall represent the teams in the various sports of the Olympic, Pan American or Paralympic Games and shall look after the interests and general welfare of the members of their team, including housing, food, transportation, uniforms, laundry and recreation. They shall also enforce the rules of discipline laid down by the corporation.

B. The team leader shall represent the team in all administrative and business affairs between the individual members and the corporation.

C. The coaches shall be primarily responsible for setting up the training program and practice schedule and for advising and coaching the team in the techniques, tactics, and strategy of their competition. No coaching shall be permitted except by coaches officially reviewed by the CEO and approved by the Board.

Section 19.6    Selection of Team Officials.

A. Each NGB or PSO shall have the authority and duty to nominate to the Board the appointment of team officials, as defined by the Local Organizing Committee, for its

particular sport or event in the categories of administrative staff and technical staff. The number of such team officials recommended for appointment shall not exceed the maximum provided in the personnel chart provided to the Board by the CEO.

B. All persons nominated for appointment as team officials shall be carefully chosen with regard for their character, tact, diplomacy, judgment, sense of responsibility, knowledge of their respective sports and other special qualifications. They shall be informed that they cannot receive payment from the corporation for their services.

C. No one shall be nominated for appointment as a team official in the indicated categories who does not agree to devote all necessary time and attention to the performance of designated duties, to travel with the team to and from the Games, and to live during the Games at the place designated by or under authority of the Board.

D. Appointment as a team official may be revoked at any time by the Board or at the Games' site by the Games Administrative Board, if it appears that the official has failed to perform assigned duties satisfactorily.

Section 19.7    Medical Care.

A. Medical care for the official delegation shall be provided exclusively by, or under the supervision of, personnel appointed by the Board as recommended by the CEO. The corporation shall accept no responsibility for the expense of medical care other than that provided or authorized by the official medical staff. Any irregularity or physical ailment or injury suffered by an athlete or team official shall be reported immediately to the team leader and the United States medical headquarters at the Olympic, Pan American or Paralympic Games.

B. The head team physician or physicians shall be responsible for the medical care of all members of the official delegation. Team physicians shall conduct daily sick call, make arrangements for hospital and surgical care as needed, and supervise and coordinate the work of trainers. The decision of the head team physician shall be final in the matter of the return of convalescent athletes to practice and competition. The head team physician shall be responsible for all public announcements of all injuries and illness.

C. The trainers shall be assigned to the various teams by the chief medical coordinator. They shall keep accurate records of all injuries for which they give first aid. They shall refer all cases of injury and illness to the head team physician. When not occupied with the care of injuries and illness, trainers shall act as administrative assistants.

Section 19.8    Relations with National Governing Bodies and Paralympic Sports Organizations.

A. Subject to the general supervision, direction and approval of the Board, each of the Olympic, Pan American or Paralympic Sports Organization members shall have the primary authority and responsibility for selecting and nominating athletes and team officials in its sport for final appointment by the Board to the United States Olympic, Pan American or Paralympic teams. The program of tryouts or other competitions for the selection of athletes, and the plan or method of selecting managers, coaches, and other team officials, and any material modifications thereof, shall be submitted to the CEO for analysis and review, and then for Board approval, before they become

effective. All business arrangements for Olympic tryouts or other Olympic events shall be approved in advance by the CEO.

B. The president of the NGB or PSO, or other persons designated in place thereof, for each sport on the program of the forthcoming Olympic, Pan American or Paralympic Games, shall serve as a liaison with the corporation on the work of the NGB or PSO in the selection and nomination of athletes and team officials, and all other activities related to the Olympic effort. This liaison shall be concerned primarily with coordinating these activities with the CEO and his/her staff.

# ARTICLE XX

## MISCELLANEOUS

Section 20.1    Subject to approval by the Board, members and administrative officials of former U.S. Olympic Teams may organize separately or jointly in units, chapters or groups for the purpose of promoting the Olympic objectives as defined in the Act and these Bylaws and may use the word "Olympic" in names adopted for and by units, chapters, or groups. The activities of these units, chapters, or groups shall be carried on and subject to the consent and approval of the Board.

Section 20.2    Accounts, Books, Minutes, Etc. The corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its Board and committees. All books and records of the corporation may be inspected by any director, or such director's authorized agent or attorney, for any proper purpose at any reasonable time.

Section 20.3    Fiscal Year. The fiscal year of the corporation shall commence January 1 and end on December 31 each year.

Section 20.4    Conveyances and Encumbrances. The assignment, conveyance or encumbrance or sale, exchange, lease or other disposition of any of the real property of the corporation or all or substantially all of the other property and assets of the corporation shall only be authorized by the Board if the purpose of such assignment, conveyance or encumbrance or sale, exchange, lease or other disposition of any of the real property of the corporation or all or substantially all of the other property and assets of the corporation complies with the purposes and restrictions on the powers of the corporation set forth in the Act and these Bylaws.

Section 20.5    Designated Contributions. The corporation may accept any designated contribution, grant, bequest or devise consistent with its general tax-exempt purposes as set forth in the Act and these Bylaws, and a restricted gifts policy adopted by the Board of the corporation in accordance with paragraph 2.2(e) hereof. The corporation shall acquire and retain sufficient control over all donated funds (including designated contributions) to assure that such funds will be used to carry out the corporation's tax-exempt purposes.

Section 20.6    Loans to Directors and the Chair Prohibited. No loans shall be made by the corporation to the Chair of the Board or any other director or to any USOC committee or task force members. Any Chair, director, committee or task force member, who assents to or

participates in the making of any such loan shall be liable to the corporation for the amount of such loan until it is repaid.

Section 20.7  Amendments.  These Bylaws may be altered, amended or repealed and new Bylaws may be adopted by a majority vote of the Board taken at and noticed for an appropriately called Board meeting.  Amendments shall take effect at the close of such meeting except in such cases where it may be specified in the resolution approving the amendment that the amendment will take effect during the meeting or at a later time.  Amendments may only be submitted by members of the Board or by the chair of a Board committee.  All proposed amendments must be postmarked to the CEO in writing at least ninety (90) days before a meeting of the Board.  Not later than sixty (60) days before the date of any meeting of the Board at which amendments are to be considered, a general notice of the proposed alteration shall be published on the corporation's website and sent to the chairs of the AAC, the NGB Council, and the Multisport Organizations Council, setting forth the text or substantive terms of the proposed amendments, the time and place of the Board's meeting at which such amendments are to be voted upon, and a provision informing interested persons that they may submit materials for consideration by the Board at such meeting by delivering to the CEO, not less than ten (10) days before the meeting, written data, views or arguments concerning the proposed amendments.  At the discretion of the CEO, an interested person may be invited to make any additional written or oral presentation for consideration at the meeting, and all persons who submit material under this Section shall be mailed a copy of any amendment that may be adopted at the meeting.  All proposed amendments shall be mailed by the CEO to each member of the Board.  These proposed amendments along with any data, views, or arguments previously submitted by the public shall be distributed to the Board not later than thirty (30) days before the date of the meeting.  Except for such proposed amendments that are so sent out, no other amendment shall be considered, nor shall any proposed amendment to an amendment as proposed be considered, unless the same merely goes to the form and not to the substance thereof.  Nevertheless, if more than one (1) amendment has been proposed on the same subject matter, and there are substantive differences between such amendments, the Board may, after due consideration of such proposals, adopt a compromise of substance as well as form; and, if the adoption of an amendment as proposed or amended or compromised is inconsistent or in conflict with other parts of the Bylaws, the meeting may adopt conforming amendments appropriate to the case.

Section 20.8  Severability and Headings.  The invalidity of any provision of these Bylaws shall not affect the other provisions hereof, and in such event these Bylaws shall be construed in all respects as if such invalid provision were omitted.  The descriptive headings of Articles and Sections used in these Bylaws are inserted for convenience only and are not intended to and do not have any operative effect.

Section 20.9  Irrevocable Dedication and Dissolution.  The property of the corporation is irrevocably dedicated to charitable purposes, and no part of the net income or assets of the corporation shall inure to the benefit of private persons.  Upon the dissolution or winding up of the corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of this corporation, shall be distributed to a nonprofit fund, foundation, or corporation which is organized and operated for charitable purposes and which has established its tax exempt status under Section 501(c)(3) of the Internal Revenue Code, as amended.  The use and disposition on

dissolution or winding up of real or personal property owned or used by the corporation in any and all States and Territories which are part of the United States of America shall be limited to the purposes stated in the foregoing paragraph in such a manner as to satisfy the requirements of the laws of such States for exemption of such property from property taxation in such States.

Section 20.10 _Saving Clause_. Failure of literal or complete compliance with any provision of these Bylaws in respect of dates and times of notice, or the sending or receipt of the same, or errors in phraseology of notice of proposals, which in the judgment of the members at meetings held do not cause substantial injury to the rights of members, shall not invalidate the actions or proceedings of the members at any meeting.

Section 20.11 _Individual Liability_. No individual officer, director or member of a committee of the corporation shall be personally liable in respect of any debt or other obligation incurred in the name of the corporation or any of its committees pursuant to authority granted directly or indirectly by the Board.

The undersigned, being an officer of the United States Olympic Committee, hereby indicates that the Board has adopted the foregoing Bylaws as the Bylaws of such corporation on June 23, 2006.

_Peter V. Ueberroth_
Peter V. Ueberroth
USOC Chair

_June 25, 2006_
Date