| | | |
|---|---|---|
| MARY DECKER SLANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Cause No. |
| THE INTERNATIONAL AMATEUR | ) | IP-99-0502-C-D/F |
| ATHLETIC FEDERATION, and | ) | |
| THE UNITED STATES OLYMPIC | ) | |
| COMMITTEE, | ) | |
| | ) | |
| Defendants. | ) | |

## E N T R Y

This cause comes before the Court on Defendants' motions to dismiss. For the following reasons, Defendants' motions are granted.[1]

## I.  BACKGROUND

### A.  The Parties

Plaintiff Mary Decker Slaney ("Slaney") of Eugene, Oregon, is a world famous middle distance runner. She has participated in four Olympic Games, won numerous world championships, and has held national and world records in several middle distance events. Her great athletic skill has enabled her to earn a living from track and field competitions and the endorsements, appearance fees and prize money that flows from these competitions. As a precondition to competing in national and

GATLIN v. UNITED STATES ANTI-DOPING AGENCY INC                    Doc. 17 Att. 1

---

[1]    In addition, the Court grants International Amateur Athletic Federation's motion to file an oversized reply brief, and accepts the attached brief.

international track and field competitions, Slaney must submit to the national and international rules and regulations which govern the sport of track and field.

Defendant International Amateur Athletic Federation ("IAAF") is an unincorporated organization founded to coordinate and control track and field activities around the world. Its membership boasts track and field federations from over 200 nations and territories. The IAAF is based out of Monaco and has a Secretariat located in Rome, Italy. It has no offices in the United States.

Defendant United States Olympic Committee ("USOC"), located in Colorado Springs, Colorado, is the National Olympic Committee for the United States. This status entails that the USOC carry out the mission of the International Olympic Committee ("IOC") and the Olympic Movement in this country.[2] Because the IOC has promulgated a drug testing program, the USOC administers the Olympic drug testing program in the United States for all qualifying competitions for the Olympic Games.

In addition to its Olympic duties, the USOC has been designated as the coordinating body for all amateur sports in

---

[2]     Slaney defines the Olympic Movement as the IOC, International Federations, National Olympic Committees, Organizing Committees of the Olympic Games, national associations, clubs, and the persons belonging to them, particularly the athletes, and judges/referees, coaches, and other sports technicians, plus any other organization or institution recognized by the IOC.

this nation by the Ted Stevens Olympic and Amateur Sports Act ("Amateur Sports Act"), 36 U.S.C. § 220501 *et seq*.[3] One of the USOC's duties under the Amateur Sports Act is to select a National Governing Body for each amateur sport. USA Track & Field, Inc. ("USATF"), an Indiana corporation located in Indianapolis, carries the distinction of being the National Governing Body for the sport of track and field.[4] This designation carries with it two responsibilities. First, as a National Governing Body the USATF is subject to the Amateur Sports Act. Second, as a National Governing Body the USATF is a member of the IAAF and is responsible for enforcing the IAAF's rules and regulations.

B.  The Underlying Incident

On June 17, 1996 Slaney competed at the United States Olympic Trials in Atlanta, Georgia. Prior to the competition, Slaney completed an official USOC entry form in which she agreed to be subject to the drug testing program. After finishing second in the 5000 meter run, Slaney provided a urine specimen which was then divided into Sample A and Sample B. USOC representatives then collected and stored these samples until

---

[3]     The Ted Stevens Olympic and Amateur Sports Act was originally called the Amateur Sports Act and was codified at 36 U.S.C. § 371 *et seq*. The Court shall refer and cite to the earlier incarnation of the Amateur Sports Act.

[4]     USATF was formerly known as The Athletic Congress of the United States, Inc.

they could be analyzed at the IOC-accredited University of California at Los Angeles ("UCLA") laboratory. The purpose of these drug tests is to determine whether an athlete has used a prohibited substance such as testosterone to increase his or her athletic prowess.

To test for the use of testosterone, the Olympic Movement has adopted a controversial test which compares the ratio of testosterone to epitestosterone ("T/E ratio"). A T/E ratio of 6:1 or lower is considered normal, whereas a ratio higher than 6:1 is considered elevated. Here, the UCLA laboratory found that Slaney's A sample contained an elevated level of testosterone. The laboratory then notified both the USOC and the IAAF of its finding.

According to Slaney, the USOC informed the USATF of its mandatory duty to investigate whether Slaney's specimen should be declared positive for testosterone. However, it appears that the USATF acted merely as the middle-man between Slaney and the IAAF, which actually conducted the investigation. The IAAF assigned the investigation to Dr. Christiane Ayotte, a member of the IAAF's Doping Commission as well as the Director of an IOC-accredited laboratory in Montreal, Canada. Dr. Ayotte considered the Sample A and B T/E ratios, a longitudinal study of Slaney's past test results and two additional urine specimens. In addition, Slaney provided an explanation for her elevated level

4

of testosterone on June 17: (1) her menstrual cycle; (2) her recent use of "progesterone"-based birth control pills; and (3) there was no scientific validity to the IAAF's assertion that 6:1 was the normal T/E ratio for female athletes. It should also be noted that on several different occasions the IAAF requested an endocrine study, but none was received.

On February 5, 1997 the IAAF adopted Dr. Ayotte's recommendation and found that Slaney's specimen from June 17, 1996 was positive for the prohibited substance testosterone. As a result, IAAF and USOC rules required that the USATF hold a hearing and determine whether or not Slaney had committed a doping offense. Slaney asked the USATF Custodial Board to dismiss the case against her on February 19, 1997. In addition, Slaney filed a complaint with the USOC under its constitution and by-laws in June, 1997. This complaint alleged that the USATF proceedings against her violated the Amateur Sports Act as well as the USOC Constitution and By-laws. Specifically, this complaint alleged that the use of the T/E ratio on female athletes had not been scientifically validated, the T/E ratio test discriminated against women, shifting the burden to an athlete to prove by clear and convincing evidence that she was innocent was unlawful; and the IAAF had failed to conduct a proper investigation.

However, the IAAF felt that things were moving too slowly at

the USOC and the USATF and on June 10, 1997 notified Slaney that it had suspended her from competition, effective May 30, 1997. This interim suspension took place just before the national track and field championships which were to be held in Indianapolis. In addition, the IAAF ensured that Slaney would be unable to compete at the championships by threatening to invoke its contamination rule, a rule which allows the IAAF to suspend from competition any athlete who competes in a race with a suspended athlete. This action prompted the USATF Custodial Board to suspend Slaney pending a hearing before the USATF Doping Hearing Board, effectively mooting Slaney's motion to dismiss the case against her.

Slaney received her hearing before the USATF Doping Hearing Board on September 14, 1997 in Chicago. The USATF relied primarily on Dr. Ayotte's testimony in prosecuting the alleged violation. However, the Hearing Board found this testimony unpersuasive and on September 16, 1997 it unanimously found that no doping violation had occurred. The Hearing Board issued a written opinion to this effect on October 17, 1997. Satisfied with the USATF Hearing Board's finding that the IAAF's rules regarding the use of the T/E ratio test were vague and inconsistent and that the 6:1 ratio was not scientifically proven to be consistent with the normal ratio in humans, Slaney withdrew her complaint with the USOC.

The IAAF was decidedly unsatisfied with the USATF Hearing Board's findings, however, and invoked arbitration of the USATF's decision. Slaney and the USATF opposed arbitration, but both were represented before the IAAF Arbitral Panel ("the Tribunal"). The USOC declined to intervene on Slaney's behalf and took no part in the arbitration. In late January, 1999 the Tribunal issued a pivotal interlocutory ruling. This ruling upheld the IAAF's interpretation of how to adjudicate a testosterone doping offense and found that the rules were not vague and inconsistent. Consequently, once the IAAF showed that Slaney had a T/E ratio greater than 6:1, Slaney must come forth and show by clear and convincing evidence that the elevated ratio was attributable to a pathological or physiological condition. The Tribunal then adjourned until April 24, 1999.

Believing it scientifically impossible to prove by clear and convincing evidence that her high T/E ratio was due to pathological or physiological factors, Slaney withdrew from the arbitration. The USATF followed suit. Ultimately the Tribunal ruled that Slaney had committed a doping offense.

C. Slaney's Lawsuit

Slaney filed this lawsuit shortly after withdrawing from the IAAF arbitration. Count I alleges that the USOC and the IAAF violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Her complaint also alleges

7

that the USOC committed the state law claims of breach of
contract (Count II), negligence (Count IV), breach of fiduciary
duty of good faith and fair dealing (Count VI), fraud (Count IX),
constructive fraud (Count XI) and negligent misrepresentation
(Count XIII). Further, her complaint charges the following state
law claims against the IAAF: breach of contract (Count III),
negligence (Count V), breach of fiduciary duty of good faith and
fair dealing (Count VII), fraud (Count X), constructive fraud
(Count XII), and negligent misrepresentation (Count XIV).[5]

The USOC has moved to dismiss all the claims against it
pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of
subject matter jurisdiction) and 12(b)(6) (failure to state a
claim upon which relief may be granted). The IAAF moves to
dismiss the claims against it pursuant to Fed. R. Civ. P.
12(b)(1), 12(b)(2) (lack of personal jurisdiction) and 12(b)(6).

## II. ANALYSIS

Although the phrases personal jurisdiction and subject
matter jurisdiction fall trippingly off the tongue, issues of
jurisdiction can often prove quite troublesome. Such is the case
here. District courts generally resolve questions of subject
matter jurisdiction first. Ruhgras AG v. Marathon Oil Co., 143
L. Ed. 2d 760, 767 (1999). Seeing no reason to deviate from this
custom, the Court shall first determine whether subject matter

---

[5]     Slaney's complaint does not contain a Count VIII.

jurisdiction exists over the IAAF and the USOC.

## A.  Subject Matter Jurisdiction

### 1.  IAAF's 12(b)(1) motion[6]

Slaney admits to being subject to the rules and regulations of the IAAF at all relevant times.  As such, the IAAF contends that Slaney was subject to the IAAF's rule that all decisions of the Tribunal "shall be final and binding on all parties, and on all Members of the IAAF."  IAAF Rule 21(4).  Here, the Tribunal, located in Monaco, handed down a decision in favor of the IAAF.

Although Slaney frames her claims as RICO, breach of contract, negligence, breach of fiduciary duty, fraud, constructive fraud and negligent misrepresentation, the IAAF argues that what Slaney is really trying to do is have the Court reconsider the same issues that were decided in arbitration. This the Court cannot do, as the New York Convention ("the Convention") prohibits any courts other than those of the country where the award was made from vacating an arbitration award.  *See* 9 U.S.C. § 201.[7]

Not surprisingly, Slaney vigorously disputes the IAAF's

---

[6]     Because this is an inquiry into subject matter jurisdiction, the Court can consider matters outside the pleadings without converting the proceeding to a summary judgment motion.  Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993).

[7]     Both the United States and Monaco are signatories of the United Nations Convention On Recognition and Enforcement Of Foreign Arbitral Awards, also known as the New York Convention.

contentions and offers several grounds for this Court to reject the IAAF's arguments. Slaney first argues that her claims do not constitute an appeal from the Tribunal's decision. Slaney next disputes whether the Convention applies to this matter, as this is not a commercial dispute and there was no agreement to arbitrate the claims at issue here. If the Court finds that the Convention does apply, Slaney argues that she is entitled to defenses set out by the Convention which would necessitate the Court's refusal to recognize the award.

### a)  Application of the New York Convention

The first issue the Court must determine, then, is what the Tribunal actually decided. The April 25, 1999 Tribunal opinion begins by discussing the reasoning behind its controversial interlocutory ruling. It reiterates that the initial burden of proof is on the IAAF to show that the athlete has a T/E ratio greater than that normally found in humans. If the IAAF can do so, it has provided sufficient evidence for the sample to be deemed positive. The burden then shifts to the athlete to prove by clear and convincing evidence, defined as evidence conveying a high degree of probability and not mere assertions, that the high T/E ratio was due to pathological or physiological conditions. In reaching these conclusions, the Tribunal drew from the IAAF rules on testing for testosterone.

The Tribunal next considered whether or not Slaney committed

a doping offense by using the two step process outlined above. It determined that the IAAF had proven that Slaney's specimen should be deemed positive, noting that both samples of the specimen registered over 6:1, Slaney's longitudinal study revealed a previous T/E ratio high of 3:1 and that the scientific evidence before it did not conclusively show that a T/E ratio over 6:1 was not consistent with normal endogenous production.

The Tribunal then discussed whether Slaney could show with a high degree of probability that her elevated T/E ratio was attributable to pathological or physiological conditions. This inquiry was rather abbreviated, however, as the Tribunal noted that both Slaney and the USATF withdrew from the proceedings after the interlocutory ruling. However, using the evidence before it, evidence which did not include Slaney's medical records as she declined to produce them, the Tribunal found that Slaney had not met her burden of disproving the positive test result by clear and convincing evidence. Hence, the Tribunal set aside the USATF's Doping Hearing Board's decision and found Slaney guilty of a doping offense on June 17, 1996.

Slaney argues that the Tribunal decided only that her T/E ratio was greater than 6:1. However, as the preceding discussion indicates, the Tribunal decided much more than that. It validated the IAAF's interpretation of the rules for testing for testosterone, found that the 6:1 ratio was not invalid, and found

11

Slaney's various defenses unpersuasive in light of the acknowledged lack of medical evidence.

The question then becomes whether allowing Slaney's current action would undermine or nullify the Tribunal's decision. <u>Rudell v. Comprehensive Accounting Corp.</u>, 802 F.2d 926 (7th Cir. 1986). Based upon the discussion above and a review of Slaney's complaint, the Court finds that it would. As such, the viability of Slaney's claims against the IAAF depend upon her ability to demonstrate that the Convention does not apply or that the Convention's affirmative defenses bar recognition of the award.

<u>i) The nature of the dispute</u>

Both the IAAF and Slaney agree that the Convention only applies to commercial arbitrations. Slaney argues that her dispute with the IAAF is not commercial in nature and therefore falls outside the Convention. However, the Court finds the IAAF's argument to the contrary more persuasive.

The Amateur Sports Act provides that all amateur sports organizations and athletes must agree to submit to binding arbitration conducted in accordance with the commercial rules of the American Arbitration Association. 36 U.S.C. §§ 391(b)(3) & 395(c)(1). Given Congress' decree that all domestic disputes regarding an amateur athlete's eligibility be treated as commercial disputes, the Court sees no reason to treat international disputes any differently. Slaney's arguments that

her relationship with the IAAF is in no sense commercial miss the point.  Congress has chosen to treat these types of relationships as commercial in the domestic arena, and Slaney has offered no reason why international disputes should be handled any differently.  As such, the Court finds that the relationship between Slaney and the IAAF is commercial in nature.

### ii) Agreement in writing

In addition to requiring a commercial dispute, the Convention also requires that there be an agreement in writing to arbitrate any differences between the parties.  9 U.S.C. § 201 note, Art. II, ¶ 1.  An agreement in writing "shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams."  Id., Art. II, ¶ 2.  These elements are not met, according to Slaney, because she has never signed any arbitral clause with the IAAF, the agreement is not reflected in any letters, telegrams, or facsimiles, nor do the IAAF rules contemplate arbitration of the claims raised in this action.

Slaney candidly admits that she is subject to the rules and regulations of the IAAF through her membership in the USATF.  However, she seeks to escape the IAAF's arbitration requirement by alleging that the IAAF did not contemplate the types of claims Slaney has lodged in this action.  This would place Slaney's claims outside the arbitral subject matter, and allow her to

proceed with her action. Unfortunately, the Court finds that the arbitration clause does cover Slaney's current claims. IAAF Rules 21(1) and (2) both use the phrase "all disputes," indicating that all disputes between member organizations or athletes and member organizations, regardless of their origin, shall be submitted to arbitration. *See* Affidavit of Mark E. Gay, Exh. 1. The rules make no exception for allegations of fraud, breach of contract, breach of fiduciary duty, etc., nor do the rules provide a separate procedure for challenging the validity of a testing method.

IAAF Rule 21(3) does provide for additional review of member organization decisions relating to doping offences in certain circumstances, a rule which the IAAF invoked in this case to review the USATF's decision to exonerate Slaney.[8] However, this rule merely expands the Tribunal's ability to review member decisions regarding doping offenses. The rules requiring all disputes to be arbitrated remain unchanged. Therefore, the Court finds that all disputes, including the claims raised by Slaney in this action, had to be submitted to arbitration under IAAF rules. As Slaney is admittedly bound by these written IAAF rules, there can be little doubt that the Convention's agreement in writing

---

[8] Rule 21(3)(ii) provides for the Tribunal to review doping related disputes "Where a Member has held a hearing under Rule 59, and the IAAF believes that in the conduct or conclusions of such hearing the Member has misdirected itself, or otherwise reached an erroneous conclusion."

14

requirement is satisfied.

### iii)  Mutual duty to arbitrate

Slaney's next argument, that the IAAF rules give the IAAF exclusive authority to submit a dispute to arbitration, is also misplaced.  The IAAF's requirement that all disputes be submitted to arbitration is not undermined by rules giving the IAAF Arbitration Panel discretionary review over certain claims.  *See* IAAF Rule 21(5).  This is because Rule 21(2) states that disputes between member organizations and athletes should be decided through arbitration with the member organization, not the IAAF.  Consequently, each member organization like the USATF must arbitrate disputes between athletes and itself, and generally must arbitrate disputes between athletes and the IAAF unless the IAAF Council votes for the IAAF Arbitration Panel to arbitrate the dispute in the first instance.  IAAF Rule 21(2).  The mandate to arbitrate all disputes still remains, but is generally carried out by the IAAF's member organizations with the caveat the Tribunal may review the member organization's decision in limited circumstances.  As both Slaney and the IAAF (through the USATF) must submit all disputes to arbitration, the arbitration requirement is not illusory.  Further, as the rules contain a mutual obligation, they do not constitute a contract of adhesion.

### iv)  Duty to arbitrate under domestic rules

Slaney also claims that the USATF has never adopted the

15

IAAF's requirement that all disputes between athletes and the IAAF be submitted to arbitration. However, Slaney has failed to provide the Court with the USATF by-laws, rules or regulations to support her statement. In addition, the USATF provides an indirect route to arbitration, as once an aggrieved athlete exhausts her administrative remedies with the USATF over matters such as eligibility, she may petition the USOC to address the matter. Should the athlete or USATF disagree with the USOC's determination, the Amateur Sports Act requires the matter to be submitted to arbitration. 36 U.S.C. § 395(c)(1). Therefore, any disputes not settled by the long administrative review process do end up in arbitration, thereby satisfying IAAF Rule 21(2).

### v) Parties to the arbitration

As a final threshold matter, the Court must disagree with Slaney's assertion that she was not a party to the IAAF arbitration. To say her participation was merely voluntary and unnecessary is mistaken, a fact which is underscored by the Tribunal's candid acknowledgment that Slaney's testimony and medical evidence was highly relevant and would have had some weight with the Tribunal. As such, the Court finds that Slaney was an indispensable party to the IAAF arbitration.

### b) Application of Convention defenses

The Convention provides various defenses which allow courts to refuse recognition and enforcement of foreign arbitral awards.

See 9 U.S.C. § 201 note, Art. V. Slaney claims that three defenses apply in this case: (1) she was prevented from presenting her case to the Tribunal (Art. V(1)(b)); (2) the arbitration was not in accordance with the IAAF's own rules (Art. V(1)(d)); and (3) the arbitration was contrary to United States public policy (Art. V(2)(b)). Consequently, Slaney urges this Court to refuse recognition of the Tribunal's decision and allow Slaney to present her claims.[9]

### i) Opportunity to present her case

Slaney states that her principal attack against the IAAF's position is that an elevated T/E ratio, by itself, is insufficient to prove beyond a reasonable doubt that a female athlete has committed a doping offense. However, the Tribunal, by adopting the IAAF's position that the IAAF rules required it only to prove that the T/E ratio as above 6:1, prevented her from making this argument. This, Slaney alleges, rendered her unable to present her case to the Tribunal.

The Court must respectfully disagree with Slaney's position. The Tribunal heard and rejected her interpretation of the IAAF rules. In addition, the Tribunal, after considering scientific evidence, determined that a T/E ratio higher than 6:1 could be

---

[9] The IAAF argues that this is merely an indirect attempt by Slaney to have a domestic court set aside a foreign arbitral award, precisely the result the Convention hoped to prevent. Because the Court finds the argued defenses inapplicable, it is unnecessary to address the IAAF's argument.

considered unnaturally elevated. These decisions, although adverse to Slaney's position, did not deprive her of an opportunity to be heard. Further, Slaney was afforded the opportunity to present her testimony and attempt to show that her elevated ratio was due to pathological or physiological conditions. Therefore, the Court must conclude that Slaney had an opportunity to present her case.

### ii) Arbitration in accordance with IAAF rules

The Tribunal determined that the IAAF could carry its burden of proving, beyond a reasonable doubt, that Slaney had taken testosterone by showing that her T/E ratio was greater than 6:1. This determination was based on a reading of the IAAF rules regarding testosterone testing. The Court cannot now say that the Tribunal breached the IAAF's rules on testosterone testing when it explicitly determined what the rules meant and applied this interpretation to Slaney's case. This defense fails as well.

### iii) Offense to public policy

The public policy defense is narrowly construed, <u>Fotochrome, Inc. v. Copal Co.</u>, 517 F.2d 512, 516 (2d Cir. 1975), and applies only where enforcement of the Convention would violate the "most basic notions of morality and justice," <u>Id.</u>, or "explicit public policy that is well defined and dominant and is ascertained by reference to the laws and legal precedents and not from general

consideration of supposed public interests." <u>Industrial Risk</u>
<u>Insurers v. M.A.N. Gutehoffnungshütte GmbH</u>, 141 F.3d 1434, 1445
(11th Cir. 1998)(citations omitted). Slaney argues the IAAF
arbitration was fundamentally unfair in that: (1) neither the
IAAF arbitration process nor its arbitrators are independent; (2)
the IAAF arbitrators are not neutral; and (3) the IAAF arbitral
decisions are arbitrary. In addition, Slaney claims that the
mandatory presumption of guilt, refusal to give the athlete
notice of what prohibited substance is thought to be present, and
shifting the burden of proof to the athlete to prove her
innocence are fundamentally inconsistent with the United States'
most basic notions of justice.

The Court feels that the IAAF arbitration process, though
flawed, is not offensive to our most basic notions of morality
and justice. This finding is underscored by Slaney's failure to
cite any law or precedent in support of her invocation of the
public policy defense. As a result, the Court finds that the
narrow public policy defense does not apply here.

### c. Summary

The IAAF makes it difficult for an athlete to exonerate
herself from a doping charge. Further, even a successful defense
of such a charge often cannot repair the damage caused to an
athlete's reputation, a valuable commodity in today's
endorsement-laden sports world. However, our review of the case

19

indicates that whatever problems the Court may have with the IAAF's conduct and procedures in this case, the Tribunal's decision is valid and must be enforced.

It becomes irrelevant, then, that the Court feels personal jurisdiction would be proper in this case. This Court lacks subject matter jurisdiction over Slaney's claims against the IAAF, and dismisses all claims against it.

### 2. USOC's 12(b)(1) motion to dismiss

#### a) State law claims

The USOC argues that Slaney's failure to exhaust her administrative remedies deprives this Court of subject matter jurisdiction. This Court does lack subject matter jurisdiction, but not for the reason advanced by the USOC.[10]

Much like the Convention proved an insurmountable obstacle for Slaney's claims against the IAAF, the Amateur Sports Act presents a wall too high to hurdle for Slaney's claims against the USOC. The Amateur Sports Act gives the USOC the exclusive right to determine disputes over eligibility. 36 U.S.C. § 375(5). Slaney argues that her claims are not about eligibility, but relate to the fraudulent and deceitful administration and

---

[10] The USOC's moving brief mentions lack of subject matter jurisdiction as grounds for dismissing the claims against it. Oddly enough, only its reply brief argues the merits of this defense. Regardless of where USOC presents its arguments, the issue of subject matter jurisdiction is not waivable and must be considered.

prosecution of the USOC's controversial T/E ratio test. However, the USOC uses this test to determine eligibility for international competition, a decision which lies within its exclusive jurisdiction. As such, despite Slaney's arguments to the contrary, this case is essentially about how the USOC determines eligibility for female athletes.

As the Seventh Circuit has clearly stated, the Amateur Sports Act does not offer a private cause of action. <u>Michels v. United States Olympic Comm.</u>, 741 F.2d 155, 157 (7th Cir. 1984). Judge Posner, concurring in the decision, opined that "there can be few less suitable bodies than the federal courts for determining the eligibility, or the procedures for determining the eligibility, of athletes to participate in the Olympic Games." <u>Id.</u> at 159. This principle has been adopted by most other courts, both state and federal, which have addressed eligibility disputes. <u>Behagen v. Amateur Basketball Ass'n of the U.S.</u>, 884 F.2d 524 (10th Cir. 1989); <u>Martinez v. United States Olympic Comm.</u>, 802 F.2d 1275 (10th Cir. 1986); <u>Oldfield v. The Athletic Congress of the U.S.A.</u>, 779 F.2d 505 (9th Cir. 1985) <u>Barnes v. International Amateur Athletic Fed'n</u>, 862 F. Supp. 1537 (S.D. W. Va. 1993); <u>Walton-Floyd v. United States Olympic Comm.</u>, 965 S.W.2d 35 (Tex. App. 1998); <u>Cantrell v. United States Soccer Fed'n</u>, 924 P.2d 789 (Okla. Ct. App. 1996); <u>Dolan v. United States Equestrian Team, Inc.</u>, 608 A.2d 434 (N.J. Super. Ct. App. Div.

1992).

The two cases cited by Slaney to defeat this line of jurisprudence are inapplicable.  Slaney points out that a federal court allowed an athlete to bring breach of contract claims against an organization in _Harding v. United States Figure Skating Ass'n_, 851 F. Supp. 1476 (D. Or. 1994); therefore, her breach of contract claims should stand.  It is true that the _Harding_ court allowed intervention into an athletic association's disciplinary proceedings, but the court cautioned that such action was only warranted when "the association has clearly breached its own rules, that breach will imminently result in _serious_ and irreparable harm to the plaintiff, and the plaintiff has exhausted all internal remedies."  _Id._ at 1479.  These factors are not present here as there is no imminent danger -- Slaney's suspension has already expired.

Two additional factors militate against adopting the rule of law expressed in _Harding_.  First, the district court warned that a reviewing court should not intervene in the merits of the underlying dispute.  _Id._  Here, the underlying dispute is the validity of the T/E ratio test used in testing for testosterone.  Any action by the Court would require consideration of whether this test is valid or is actually a fraudulent attempt by the USOC to cover up its inability to accurately test for testosterone.  Hence, we would be doing precisely what the

<u>Harding</u> court deemed inappropriate. Second, the issue decided in <u>Harding</u> dealt not with eligibility but whether a hearing set for the athlete was indeed reasonably convenient for all parties. Slaney asks this Court to pass judgment on far more and invalidate a test used to determine compliance with anti-doping rules followed worldwide. Consequently, the Court finds <u>Harding</u> inapplicable to the case at bar.

Slaney's reliance on <u>Foschi v. United States Swimming, Inc.</u>, 916 F. Supp. 232 (E.D.N.Y. 1996) also fails to advance her cause. <u>Foschi</u> merely confirmed that the Amateur Sports Act does not completely preempt state law claims. <u>Id.</u> at 241. The issue here, however, is not complete preemption but whether the Amateur Sport Act's grant of exclusive jurisdiction to determine eligibility for competition preempts Slaney's state law claims against the USOC. Considering the large amount of case law which says it does, the Court finds that Slaney's claims are preempted as they would stand as an obstacle to the accomplishment of Congress' objective in passing the Amateur Sports Act. *See* <u>Brown v. Kerr-McGee Chem. Corp.</u>, 767 F.2d 1234, 1240 (7th Cir. 1985)(citing <u>Silkwood v. Kerr-McGee Corp.</u>, 464 U.S. 238, 78 L. Ed. 2d 443 (1984)).

Finally, there is the question of what the USOC could have done to aid Slaney. Had the USOC or the USATF taken some adverse action against Slaney she could have petitioned the USOC to take

action, action which may have ultimately led to binding arbitration. The problem here is that neither the USATF nor the USOC caused Slaney any harm. It was the actions of the autonomous IAAF that suspended Slaney and ultimately found her guilty of the doping offense, and as Judge Posner noted in _Michels_, an international federation "can thumb its collective nose at the U.S. Olympic Committee." _Id.,_ 741 F.2d at 159 (Posner, J. concurring). Slaney's real dispute is with the IAAF, not the USOC, as the USOC was powerless to act on her behalf.

### b) Federal claim

The Tribunal's decision effectively removed subject matter jurisdiction over Slaney's claims against the IAAF. However, no such bar exists for Slaney's RICO claim against the USOC. As such, this Court has federal question jurisdiction over Slaney's RICO claim pursuant to 18 U.S.C. § 1964(c).

### B. USOC's 12(b)(6) Motion to Dismiss

A RICO claim consist of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. 18 U.S.C. § 1962(c); _Sedima, S.P.R.L. v. Imrex Co.,_ 473 U.S. 479, 496, 87 L. Ed. 2d 346, 358-59 (1985); _Goren v. New Vision Int'l, Inc.,_ 156 F.3d 721, 727 (7th Cir. 1998). If, taking all the allegations contained in Slaney's complaint as true and drawing all reasonable inferences in her favor, Slaney can prove any set of facts to support her RICO claim which would entitle her to

relief, the USOC's motion must be denied. <u>Conley v. Gibson</u>, 355
U.S. 41, 45-46, 2 L. Ed. 2d 80, 84 (1957); <u>Fredrick v. Simmons
Airlines, Inc.</u>, 144 F.3d 500, 502 (7th Cir. 1998).

Congress authored the RICO statute with broad language,
partly to prevent ingenious lawyers from drilling loopholes
through it. <u>Fitzgerald v. Chrysler Corp.</u>, 116 F.3d 225, 226 (7th
Cir. 1997). However, these broad strokes have attracted the eye
of many an attorney, causing allegations of RICO violations to
appear in situations "absurdly remote" from those envisioned by
Congress when it enacted the RICO statute. <u>Id.</u> To combat this
trend the Seventh Circuit has adopted a family resemblance test
which compares a claim with the prototypical RICO case to see if
there is at least some resemblance between the two. <u>Id.</u> at 227.

The paradigmatic RICO case is:

> one in which a person bent on criminal activity seizes
> control of a previously legitimate firm and uses the
> firm's resources, contacts, facilities, and appearance
> of legitimacy to perpetrate more, and less easily
> discovered, criminal acts than he could do in his own
> person, that is, without channeling his criminal
> activities through the enterprise that he has taken
> over.

<u>Id.</u> (citations omitted). The case here is vastly different.
According to the complaint, the USOC (the person) is the domestic
representative or agent of the IOC and is responsible for
carrying out the mission of the IOC and the Olympic Movement (the
enterprise). Complaint, ¶ 8. The USOC is subject to the IOC's
drug testing program. <u>Id.</u>, at ¶ 14. Further, the USOC is a

member of the Olympic Movement. _Id._ at ¶ 16. Finally, the Olympic Movement is subject to the supreme authority of the IOC. _Id._ As this hierarchical relationship demonstrates, the USOC has little if any control over the enterprise. Instead, the IOC has supreme authority over the enterprise and to a large extent controls the USOC because the USOC must follow IOC rules and regulations. This is clearly not the type of situation RICO was intended to cover. As Slaney's claim is far afield of the prototypical RICO claim, the Court dismisses her RICO claim based on 18 U.S.C. § 1962(c).

Although not mentioned by either party, the Court must also inquire whether Slaney's complaint sufficiently alleges a claim under the RICO conspiracy provision, codified at 18 U.S.C. § 1962(d). Slaney's claim failed under § 1962(c) in large part because the USOC had no control or management over the Olympic Movement. Section 1962(d), on the other hand, does not require the defendant to operate or manage the enterprise. _Goren_, 156 F.3d at 731 (citing _Reves v. Ernst & Young_, 507 U.S. 170, 122 L. Ed. 2d 525 (1993)). The conspiracy provision offers a different test, centering not on control but on agreements to participates in RICO violations. As such, Slaney may state a viable claim under § 1962(d) if she alleges: (1) that the USOC agreed to maintain an interest in or control of the Olympic Movement or to participate in the affairs of the Olympic Movement through a

26

pattern of racketeering activity and (2) that the USOC further agreed that someone would commit at least two predicate acts to accomplish those goals. Id. at 732 (citations omitted).

Unfortunately for Slaney, her complaint fails to allege that the USOC agreed to violate RICO. Throughout the proceedings the USOC consistently maintained that the USATF had to follow the USOC's rules and periodically requested reports from the USATF and the IAAF after it began to investigate the matter. It was not until Slaney filed her complaint with the USOC that it became aware that the IAAF had not conducted the required investigation. Complaint, ¶ 68. After this point, Slaney complains that the USOC did not intervene on her behalf, either at the USATF hearings or at the IAAF arbitration. The USOC declined, not because of any alleged agreement but on the premise that there was nothing it could do to stop the IAAF's conduct. Id. at ¶ 99. None of these allegations indicate an agreement to commit any RICO violations.

The closest Slaney comes to alleging any type of agreement is when she claims the USOC ordered the UCLA laboratory not to provide Slaney with any more analyses information. Id. at ¶ 69. However, there is no allegation that this decision to block Slaney's information requests was motivated by an agreement to participate in the fraudulent affairs of the Olympic Movement or an agreement to commit two specific predicate acts.

Consequently, the Court finds that Slaney's complaint fails to allege a violation of 18 U.S.C. § 1962(d).

### III. CONCLUSION

The Court sympathizes with Slaney's plight and realizes dismissal of this action basically closes the last avenue Slaney had to challenge the IAAF's decision. However, as this Entry and many of the cases cited herein indicate, this avenue was bound to lead to a dead end. Slaney's claims against the IAAF are barred by the Convention, for to entertain her arguments would severely undermine the Tribunal's determination. Her claims against the USOC fare no better, as her state law claims are preempted by the Amateur Sports Act, and the Amateur Sports Act allows no private cause of action. Further, Slaney's federal claim against the USOC does not come close to fitting the family of claims Congress intended the RICO statute to cover. As such, Slaney's allegations under 18 U.S.C. § 1962(c) must fail. Slaney's complaint also fails to adequately allege a violation of the RICO conspiracy provision, and hence does not state a claim under 18 U.S.C. § 1962(d).

In conclusion, the Court dismisses all Slaney's claims against the IAAF pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The state law claims against the USOC are also dismissed pursuant to Rule 12(b)(1). Finally, Slaney's RICO claim against the USOC is dismissed under Rule 12(b)(6) for

failure to state a claim upon which relief may be granted.

Dated this 5th day of November, 1999.

_____
S. Hugh Dillin
United States District Judge

Copies to:

Robert M. Baker III
Melina Maniatis Kennedy
JOHNSON, SMITH, PENCE, WRIGHT & HEATH
One Indiana Square, Suite 1800
Indianapolis, IN 46204

James E. Coleman, Jr.
Doriane Lambelet Coleman
3809 Chippenham Road
Durham, NC 27707

William C. Barnard
Mary T. Doherty
SOMMER & BARNARD
4000 Bank One Tower
111 Monument Circle
Indianapolis, IN 46204-5140

Eugene D. Gulland
Kimberly Vasconi
COVINGTON & BURLING
1201 Pennsylvania Avenue Northwest
P. O. Box 7566
Washington, DC 20044

Richard R. Young
Brent R. Rychener
HOLME, ROBERTS & OWEN, LLP
90 South Cascade Avenue Suite 1300
Colorado Springs, CO 80903

R. D. Zink
HENDERSON, DAILY, WITHROW & DeVOE
2600 One Indiana Square
Indianapolis, IN 46204-2071