GATLIN v. UNITED STATES ANTI-DOPING AGENCY INC                    Doc. 24 Att. 5

# CHAPTER 3
## ANTI-DOPING

29

Dockets.Justia.com

### Adverse Analytical Finding
A report from a laboratory or other approved testing entity that identifies in a sample the presence of a prohibited substance or its metabolites or markers or evidence of the use of a prohibited method.

### Athlete Support Personnel
Any coach, trainer, manager, authorised athlete representative, agent, team staff, official, medical or para-medical personnel or any other person working with, or treating athletes participating in, or preparing for, competition in Athletics.

### Attempt
Purposely engaging in conduct that constitutes a substantial step in a course of conduct planned to culminate in the commission of an anti-doping rule violation.

### Code
The World Anti-Doping Code.

### Competition
An event or series of events held over one or more days (e.g., the World Championships, the World Athletics Final or an individual Golden League meeting).

### Event
A single race or contest in a competition (e.g. the 100 metres or the Javelin Throw).

### In-competition Testing
In-competition testing means testing where an athlete is selected for testing in connection with a specific event.

### International-Level athlete
For the purposes of the Anti-Doping Rules (Chapter 3) and Disputes (Chapter 4), an athlete who is in the Registered Testing Pool for out-of-competition testing or who is competing in an International Competition under Rule 35.7.

### International Standard
A standard adopted by WADA in support of the Code.

### Marker

A compound, group of compounds or biological parameters that indicates the use of a prohibited substance or prohibited method.

### Metabolite

Any substance produced by a biotransformation process.

### National Anti-Doping Organisation.

The entity designated by each Country or Territory as possessing the primary authority and responsibility to adopt and implement anti-doping rules, direct the collection of doping control samples, the management of test results, and the conduct of hearings, all at the national level.

### No Fault or No Negligence

When exceptional circumstances have been determined in an athlete's case under Rule 38 to demonstrate that the athlete did not know or suspect, and could not reasonably have known or suspected even with the exercise of utmost caution, that he had used or been administered a prohibited substance or prohibited method.

### No Significant Fault or No Significant Negligence

When exceptional circumstances have been determined in an athlete's case under Rule 38 to demonstrate that the athlete's fault or negligence, when viewed in the totality of the circumstances, was not significant in relationship to the anti-doping rule violation.

### Out-of-competition testing

Out-of-competition testing means any doping control which is not in-competition.

### Possession

The actual, physical possession or the constructive possession (which shall be found only if the person has exclusive control over the prohibited substance/method or the premises in which a prohibited substance/method exists) of a prohibited substance or prohibited method; provided, however, that if the person does not have exclusive control over the prohibited substance/method or the premises in which a prohibited substance/method exists, constructive possession shall only be found if the person knew about the presence of the prohibited substance/method and intended to exercise control over it.

*Prohibited List*
The Prohibited List published by WADA identifying the prohibited substances and prohibited methods.

*Prohibited Method*
Any method so described on the Prohibited List.

*Prohibited Substance*
Any substance so described on the Prohibited List.

*Registered Testing Pool*
The pool of top-ranked athletes established by the IAAF who are subject to both in-competition and out-of-competition testing as part of the IAAF's testing programme.

*Sample/Specimen*
Any biological material collected for the purposes of doping control.

*Tampering*
The altering of any item for an improper purpose or in an improper way in relation to doping control, bringing improper influence to bear upon the doping control or disciplinary process, or interfering to alter results or to prevent normal procedures from occurring.

*Target Testing*
The selection of athletes for testing where specific athletes or groups of athletes are selected on a non-random basis for testing at a specified time.

*TUE*
Therapeutic Use Exemption.

*Trafficking*
The selling, transporting, sending, delivering or distributing of a prohibited substance or prohibited method to an athlete, athlete support personnel or other person, either directly or through one or more third parties, but excluding the selling or distributing (by medical personnel or other persons) of a prohibited substance or prohibited method for genuine and legal therapeutic purposes.

*Use*
The application, ingestion, injection or consumption by any means whatsoever of any prohibited substance or prohibited method.

*WADA*
The World Anti-Doping Agency.

1. These Anti-Doping Rules shall apply to the IAAF, its Members and Area Associations and to athletes, athlete support personnel and other persons who participate in the IAAF, its Members and Area Associations by virtue of their agreement, membership, affiliation, authorisation, accreditation or participation in their activities or competitions.

2. All Members and Area Associations shall comply with these Anti-Doping Rules and the Procedural Guidelines. These Anti-Doping Rules and the Procedural Guidelines shall be incorporated either directly, or by reference, into the rules of each Member and Area Association and each Member and Area Association shall include in its rules the procedural regulations necessary to implement the Anti-Doping Rules and the Procedural Guidelines effectively (and any changes that may be made to them). The rules of each Member and Area Association shall specifically provide that all athletes, athlete support personnel and other persons under the jurisdiction of the Member or Area Association shall be bound by these Anti-Doping Rules and the Procedural Guidelines.

3. These Anti-Doping Rules and the Procedural Guidelines shall apply to all doping controls over which the IAAF and respectively its Members and Area Associations have jurisdiction.

4. The IAAF shall focus its testing under these Anti-Doping Rules on International-Level athletes and on athletes who compete, or who are preparing to compete, in International Competitions.

5. In order to be eligible to compete or participate in, or otherwise be accredited at, an International Competition, athletes (and where applicable) athlete support personnel and other persons must have signed a prior written acknowledgment and agreement to these Anti-Doping Rules and the Procedural Guidelines, in a form to be decided by the Council. In guaranteeing the eligibility of its athletes for International Competition (see Rule 21.2 above), Members guarantee that the athletes have signed a written acknowledgement and agreement in the required form and that a copy of the signed agreement has been sent to the IAAF Office.

6. It is the responsibility of each Member to ensure that all national level testing on its athletes and the management of results from such testing complies with these Anti-Doping Rules and the Procedural Guidelines. It is recognised that, in some Countries, the Member will conduct the testing and result management process itself whilst,

in others, some or all of the Member's responsibilities may be delegated or assigned (either by the Member itself or under applicable national legislation or regulation) to a national anti-doping organisation or other third party. In respect of these Countries, reference in these Anti-Doping Rules to the Member or National Federation (or its relevant officers) shall, where applicable, be a reference to the national anti-doping organisation or other third party (or its relevant officers).

7. Notice under these Anti-Doping Rules to an athlete, athlete support personnel or other person who is under the jurisdiction of a Member may be accomplished by delivery of the notice to the Member concerned. The Member shall be responsible for making immediate contact with the person to whom the notice is applicable.

## RULE 31
## IAAF Anti-Doping Organisation

1. The IAAF shall principally act under these Anti-Doping Rules by the following person(s) or bodies:
   (a) the Council;
   (b) the Medical and Anti-Doping Commission;
   (c) the Doping Review Board; and
   (d) the IAAF Anti-Doping Administrator.

### The Council

2. The Council has a duty to the IAAF Congress to oversee and supervise the activities of the IAAF in accordance with its Objects (see Article 6.12(a) of the Constitution). One of these Objects is to promote fair play in sport, in particular, to play a leading role in the fight against doping, both within Athletics and externally in the wider sporting community, and to develop and maintain programmes of detection, deterrence and education which are aimed at the eradication of the scourge of doping within sport (see Article 3.8 of the Constitution).

3. The Council has the following powers under the Constitution in overseeing and supervising the activities of the IAAF:
   (a) to establish any Commission or sub-Commission, whether on an ad hoc or permanent basis, that it deems to be necessary for the proper functioning of the IAAF (see Article 6.11(j) of the Constitution).
   (b) to make any interim amendments to the Rules it considers to be necessary between Congresses and to fix a date on which such

amendments shall take effect. The interim amendments shall be reported to the next Congress, which shall decide whether they shall be made permanent (see Article 6.11(c) of the Constitution).

(c) to approve, reject or amend the Procedural Guidelines (see Article 6.11(i) of the Constitution); and

(d) to suspend or take other sanctions against a Member for a breach of the Rules in accordance with the provisions of Article 14.7 (see Article 6.11(b) of the Constitution).

### The Medical and Anti-Doping Commission

4. The Medical and Anti-Doping Commission is appointed as a Commission of the Council under Article 6.11(j) of the Constitution to provide the IAAF with general advice on all anti-doping and related matters, including in relation to these Anti-Doping Rules and the Procedural Guidelines.

5. The Medical and Anti-Doping Commission shall consist of up to 15 members who shall meet at least once a year, normally at the end of each calendar year, in order to review the IAAF's anti-doping activities in the preceding 12 months and to establish, for the approval of the Council, the IAAF's anti-doping programme for the year ahead. The Medical and Anti-Doping Commission shall also consult on a regular basis throughout the course of the year, as the need may arise.

6. The Medical and Anti-Doping Commission shall have responsibility for the following further specific tasks under these Anti-Doping Rules:

(a) publishing the Procedural Guidelines, and amendments to the Procedural Guidelines, as often as may be required. The Procedural Guidelines shall comprise, either directly or by reference, the following documents issued by WADA:

(i) the Prohibited List;

(ii) the International Standard for Testing;

(iii) the International Standard for Laboratories; and

(iv) the International Standard for Therapeutic Use Exemptions

together with any additions or modifications to such documents, or further procedures or guidelines, that may be deemed necessary to comply with these Anti-Doping Rules or otherwise pursue the IAAF's anti-doping programme.

The Procedural Guidelines, and any proposed amendment to them, unless otherwise stated in these Anti-Doping Rules, must

be approved by the Council. Upon giving its approval, the Council shall fix a date on which the Procedural Guidelines, or any proposed amendment to them, shall take effect. The IAAF Office shall notify the Members of this date and shall publish the Procedural Guidelines, and any proposed amendment to them, on the IAAF website.

(b) advising the Council on amendments to these Anti-Doping Rules as may be necessary from time to time. Any proposed amendment to be made to the Anti-Doping Rules between Congresses must be approved by the Council and notified to the Members in accordance with Article 6.11(c) of the Constitution.

(c) planning, implementing and monitoring anti-doping information and anti-doping education programmes. These programmes should provide updated and accurate information on at least the following issues:

(i) prohibited substances and prohibited methods in the Prohibited List;

(ii) health consequences of doping;

(iii) doping control procedures; and

(iv) athletes' rights and responsibilities.

(d) granting TUEs in accordance with Rule 34.5(a) below.

(e) establishing general guidelines for the selection of athletes in the Registered Testing Pool.

The Medical and Anti-Doping Commission may, in the course of exercising any of the above tasks, call upon experts to provide further specialist medical or scientific advice as may be required.

7. The Medical and Anti-Doping Commission shall report to the Council on its activities before each Council meeting. It shall communicate with the IAAF Office on all anti-doping and related matters through the IAAF Medical and Anti-Doping Department.

### The Doping Review Board

8. The Doping Review Board is appointed as a sub-Commission of the Council under Article 6.11(j) of the Constitution with at least the following specific tasks:

(a) to determine on behalf of the Council whether exceptional circumstances exist in cases which are referred to it under Rule 38.16 below;

(b) to decide whether cases should be referred to arbitration before CAS under Rule 60.23 below and whether, in such cases, to re-impose the athlete's suspension pending the CAS decision; and

(c) to decide in cases which are referred to it under Rule 43.3 below whether the results of doping controls carried out by a sporting body other than the IAAF, under rules and procedures which are different to those of the IAAF, should be recognised by the IAAF.

The Doping Review Board may, in the course of exercising any of the above tasks, refer to the Medical and Anti-Doping Commission or the Council for its opinion or guidance in relation to a particular case or to the Council on any matter of general policy that may have arisen.

9. The Doping Review Board shall consist of three persons, one of whom shall be legally qualified. The President shall have authority at any time to appoint an additional person or persons to the Doping Review Board, as may be required, on a temporary basis.

10. The Doping Review Board shall report to the Council on its activities before each Council meeting.

### *The IAAF Anti-Doping Administrator*

11. The IAAF Anti-Doping Administrator is the head of the IAAF's Medical and Anti-Doping Department. He shall have responsibility for implementing the anti-doping programme which has been established by the Medical and Anti-Doping Commission under Rule 31.5 above. He shall report to the Medical and Anti-Doping Commission in this regard at least once a year at the time of the Medical and Anti-Doping Commission's annual meeting and, more regularly, if called upon to do so.

12. The IAAF Anti-Doping Administrator shall have responsibility for the day to day administration of doping cases arising under these Anti-Doping Rules. In particular, the IAAF Anti-Doping Administrator shall be the person responsible, where applicable, for conducting the results management process in accordance with Rule 37 and for deciding upon the provisional suspension of athletes in accordance with Rule 38.

13. The IAAF Anti-Doping Administrator may at any time in the course of his work seek an advisory opinion from the Chairperson of the Medical and Anti-Doping Commission, from the Doping Review Board or from such other person as he considers to be appropriate.

## RULE 32
## Anti-Doping Rule Violations

1. Doping is strictly forbidden under these Anti-Doping Rules.

2. Doping is defined as the occurrence of one or more of the following anti-doping rule violations:

    (a) the presence of a prohibited substance or its metabolites or markers in an athlete's body tissues or fluids.

        All references to a prohibited substance in these Anti-Doping Rules and the Procedural Guidelines shall include a reference, where applicable, to its metabolites or markers.

        (i) it is each athlete's personal duty to ensure that no prohibited substance enters his body tissues or fluids. Athletes are warned that they are responsible for any prohibited substance found to be present in their bodies. It is not necessary that intent, fault, negligence or knowing use on an athlete's part be demonstrated in order to establish an anti-doping rule violation under Rule 32.2(a).

        (ii) except those prohibited substances for which a reporting threshold is specifically identified in the Prohibited List, the detected presence of any quantity of a prohibited substance in an athlete's sample shall constitute an anti-doping rule violation.

        (iii) as an exception to the general application of Rule 32.2(a), the Prohibited List may establish specific criteria for the evaluation of prohibited substances that can also be produced endogenously.

    (b) the use or attempted use of a prohibited substance or prohibited method.

        (i) the success or failure of the use of a prohibited substance or prohibited method is immaterial. It is sufficient that the prohibited substance or prohibited method is used, or attempted to be used, for an anti-doping rule violation to be committed.

        (ii) an admission of use or attempted use of a prohibited substance or a prohibited method may be made either orally in a verifiable manner or in writing. A statement shall not however be admissible where it is made more than eight years after the facts to which it relates.

    (c) the refusal or failure, without compelling justification, to submit to doping control having been requested to do so by a responsible official or otherwise seeking to evade doping control.

    (d) the evaluation of 3 missed out-of-competition tests (as defined in Rule 35.17 below) in any period of 5 years beginning with the date of the first missed test.

*Note: If an athlete has a missed test as a result of a whereabouts violation or an unsuccessful test attempt made prior to 1 November 2005, the 18-month period provided for in Rule 32.2(d) of the 2004-2005 Competition Rules remains in effect. The 5-year period applies only when all three missed tests are as a result of whereabouts violations or unsuccessful test attempts made on or after 1 November 2005.*

(e) tampering, or attempting to tamper, with any part of the doping control process or its related disciplinary procedures.

(f) the possession of a prohibited substance or prohibited method.

(i) possession by an athlete means possession at any time or place of a substance that is prohibited out-of-competition or a prohibited method unless the athlete establishes that the possession is pursuant to a TUE granted in accordance with Rule 34.5 below or some other acceptable justification.

(ii) possession by athlete support personnel means possession of a substance that is prohibited out-of-competition or a prohibited method in connection with an athlete, competition or training, unless the athlete support personnel establishes that the possession is pursuant to a TUE granted to an athlete in accordance with Rule 34.5 below or some other acceptable justification.

(g) trafficking in a prohibited substance or prohibited method.

(h) the administration, or attempted administration, of a prohibited substance or prohibited method to an athlete or assisting, encouraging, aiding, abetting, covering up or engaging in any other type of complicity involving an anti-doping rule violation or attempted violation.

(i) competing, or attempting to compete, whilst provisionally suspended or ineligible under these Anti-Doping Rules.

## RULE 33
## Standards of Proof of Doping

1. The IAAF, the Member or other prosecuting authority shall have the burden of establishing that an anti-doping rule violation has occurred under these Anti-Doping Rules.

2. The standard of proof shall be whether the IAAF, the Member or other prosecuting authority has established an anti-doping rule violation to the comfortable satisfaction of the relevant hearing body, bearing in mind the seriousness of the allegation which is

made. This standard of proof is greater than a mere balance of probability but less than proof beyond a reasonable doubt.

3. Where these Anti-Doping Rules place the burden of proof on an athlete, athlete support personnel or other person alleged to have committed an anti-doping violation to rebut a presumption or establish specified facts or circumstances, the standard of proof shall be by a balance of probability.

4. Facts related to anti-doping rule violations may be established by any reliable means. The following standards of proof shall be applicable in doping cases:

  (a) WADA-accredited laboratories are presumed to have conducted sample analysis and custodial procedures in accordance with the International Standard for Laboratories. The athlete may rebut this presumption by establishing that a departure from the International Standard for Laboratories has occurred, in which case the IAAF, the Member or other prosecuting authority shall have the burden of establishing that such departure did not undermine the validity of the adverse analytical finding.

  (b) A departure from the International Standard for Testing (or other applicable provision in the Procedural Guidelines) shall not invalidate a finding that a prohibited substance was present in a sample or that a prohibited method was used, or that any other anti-doping rule violation under these Anti-Doping Rules was committed, unless the departure was such as to undermine the validity of the finding in question. If the athlete establishes that a departure from the International Standard for Testing (or other applicable provision in the Procedural Guidelines) has occurred, then the IAAF, the Member or other prosecuting authority shall have the burden of establishing that such departure did not undermine the validity of the finding that a prohibited substance was present in a sample, or that a prohibited method was used, or the factual basis for establishing any other anti-doping rule violation was committed under these Anti-Doping Rules.

## RULE 34
## The Prohibited List

1. These Anti-Doping Rules incorporate the Prohibited List which shall be published and revised by WADA.

2. The IAAF will make the current Prohibited List available to each Member and it shall be available on the IAAF website. Each Member shall in turn ensure that the current Prohibited List is made available (either on its website or otherwise) to all athletes, athlete support personnel and any other relevant persons under its jurisdiction.

3. Unless otherwise stated in the Prohibited List and/or any revision to the Prohibited List, the Prohibited List and revisions shall go into effect under these Anti-Doping Rules three months after publication of the Prohibited List by WADA without requiring any further action by the IAAF. The IAAF may also request that WADA include additional substances or methods which have the potential for abuse in Athletics, as part of the WADA monitoring programme.

4. WADA's determination of the prohibited substances and prohibited methods that will be included on the Prohibited List shall be final and shall not be subject to legal challenge by any athlete or other person.

5. Athletes with a documented medical condition requiring the use of a prohibited substance or a prohibited method must first obtain a TUE. TUEs will however be granted only in cases of clear and compelling clinical need where no competitive advantage can be gained by the athlete.

   (a) International-Level athletes must obtain a TUE from the IAAF prior to participating (regardless of whether the athlete has previously obtained a TUE at national level). Athletes seeking a TUE should make a written request to the Medical and Anti-Doping Commission. Details of the procedure for the application shall be found in the Procedural Guidelines. TUEs granted by the IAAF under this Rule shall be reported to the athlete's National Federation and to WADA.

   (b) Non-International-Level athletes must obtain a TUE from their National Federation, or from such other body as may be designated by their National Federation to grant TUEs, or which otherwise has competent authority to grant TUEs in the Country or Territory of the National Federation. National Federations shall in all cases be responsible for reporting promptly the grant of any TUEs under this Rule to the IAAF and to WADA.

1. Every athlete under these Anti-Doping Rules may be subject to in-competition testing at the competitions at which he competes and to out-of-competition testing at any time or place. Athletes shall submit to doping control whenever requested to do so by a responsible official.

2. It is a condition of Membership of the IAAF that each Member (and respectively Area Association) includes within its constitution:

    (a) a provision giving the Member (and respectively the Area Association) authority to conduct in and out-of-competition doping controls, a report of which, in the case of the Member, must be submitted to the IAAF on an annual basis (see Rule 41.4 below);

    (b) a provision giving the IAAF authority to conduct doping controls at the Member's National Championships (and respectively at the Area Association's Area Championships);

    (c) a provision giving the IAAF authority to conduct unannounced out-of-competition testing on the Member's athletes; and

    (d) a provision making it a condition of membership or affiliation to its National Federation, and a condition of participation in competitions which are sanctioned or organised by the Member, that its athletes agree to be subject to any in-competition and out-of-competition testing carried out by the Member, the IAAF and any other body with competent authority to test under these Anti-Doping Rules.

3. The IAAF and its Members may delegate testing under this Rule to any Member, other Member, WADA, governmental agency, national anti-doping organisation or other third party which they deem to be suitably qualified for the purpose.

4. In addition to testing by the IAAF and its Members (and by entities to which the IAAF and its Members may have delegated their testing responsibility under Rule 35.3 above), athletes may be subject to testing:

    (a) in-competition by any other organisation or body which has competent authority to conduct testing at the competition in which they are participating; and

    (b) out-of-competition by (i) WADA; (ii) the national anti-doping organisation of the Country or Territory in which they are present; or (iii) by, or on behalf of, the IOC in connection with the Olympic Games.

However, only a single organisation shall be responsible for initiating and directing testing during a competition. At International Competitions, the collection of samples shall be initiated and directed by the IAAF (see Rule 35.7 below) or other international sports organisation ruling body in the case of an International Competition over which the IAAF has no exclusive control (e.g. the IOC at the Olympic Games or the Commonwealth Games Federation at the Commonwealth Games). If the IAAF or such other international sports organisation ruling body decides not to conduct testing at an International Competition, the national anti-doping organisation in the Country or Territory where the International Competition is to take place may, with the approval of the IAAF and WADA, initiate and conduct such testing.

5. The IAAF and its Members shall promptly report all completed in-competition tests through the WADA clearinghouse (in the case of reporting by a Member, with a copy of such report being sent to the IAAF at the same time) in order to avoid any unnecessary duplication in testing.

6. Testing conducted by the IAAF and its Members under this Rule shall be in substantial conformity with the International Standard for Testing (and other applicable provisions in the Procedural Guidelines) in force at the time of testing.

### In-competition testing

7. The IAAF shall have responsibility for initiating and directing in-competition testing at the following International Competitions:-
   (a) World Championships;
   (b) World Athletics Series Competitions;
   (c) Golden League, Super Grand Prix, Grand Prix, Grand Prix II Meetings;
   (d) IAAF Permit Meetings; and
   (e) at such other International Competitions as the Council may determine on the recommendation of the Medical and Anti-Doping Commission.

8. The Council shall determine the anticipated number of athletes to be tested at the above International Competitions on the recommendation of the Medical and Anti-Doping Commission. Athletes to be tested shall be selected as follows:
   (a) on a final position basis and/or random basis;
   (b) at the discretion of the IAAF (acting by its relevant official or body), by any method that it shall choose, including target testing;

(c) any athlete who has broken or equalled an Area and/or World Record.

9. If the IAAF has delegated testing under Rule 35.3 above, it may appoint a representative to attend at the International Competition in question to ensure that these Anti-Doping Rules and the Procedural Guidelines are being properly applied.

10. In consultation with the relevant Member (and respectively with the relevant Area Association), the IAAF may conduct, or assist in the conduct of, doping controls at a Member's National Championships or Area Association's Area Championships.

11. In all other cases (except where doping control is carried out under the rules of another international sports organisation ruling body, for example, by the IOC at the Olympic Games), the Member conducting the controls, or in whose Country or Territory a competition is held, shall be responsible for initiating and directing in-competition testing. If the Member has delegated its testing under Rule 35.3 above, it is the Member's responsibility to ensure that such testing carried out in its Country or Territory complies with these Anti-Doping Rules and the Procedural Guidelines.

### *Out-of-competition Testing*

12. The IAAF shall focus its out-of-competition testing primarily on International-Level athletes. However, it may, at its discretion, conduct out-of-competition testing on any athlete at any time. In most cases, testing shall be carried out without notice to the athlete or his athlete support personnel or National Federation.

13. It is the duty of every Member, officer of a Member and other person under the jurisdiction of a Member to assist the IAAF (and, if appropriate, another Member, WADA or other body with competent testing authority) in the conduct of out-of-competition testing under this Rule. Any Member, officer of a Member or other person under the jurisdiction of a Member preventing, hindering, obstructing or otherwise tampering with the conduct of such testing may be liable to sanction under these Anti-Doping Rules.

14. Out-of-competition testing shall be conducted under these Anti-Doping Rules in respect of the substances and methods prohibited out-of-competition in the Prohibited List.

15. Statistics of out-of-competition testing shall be published once a year per athlete in the Registered Testing Pool and per Member Federation.

**RULE 35**

## Whereabouts information/Missed tests

16. At the request of the IAAF, athletes in the Registered Testing Pool shall be required to provide the IAAF with whereabouts information adequate for the purposes of out-of-competition testing on those athletes. Athletes shall be required to keep their whereabouts information on file on a quarterly basis and shall be required to notify the IAAF immediately that there is any change to such information to ensure that it is kept current at all times. The ultimate responsibility for providing whereabouts information rests with each athlete. An athlete's National Federation shall, however, use its best efforts to assist the IAAF in obtaining whereabouts information for the athlete, if so requested by the IAAF. Whereabouts information provided by an athlete pursuant to this Rule shall, where appropriate, be shared with WADA and any other body having competent authority to test the athlete, on the strict condition that such information be used solely for doping control purposes.

17. If an athlete fails on request to provide the IAAF with his whereabouts information, or to provide adequate whereabouts information, or is unable to be located for testing by a doping control officer at the whereabouts retained on file for that athlete, he shall be subject to an evaluation by the IAAF Anti-Doping Administrator for a missed test. If, as a result of such evaluation, the IAAF Anti-Doping Administrator concludes that the athlete has failed in his obligation to provide whereabouts information or adequate whereabouts information, the IAAF Anti-Doping Administrator shall evaluate the failure as a missed test and the athlete shall be so notified in writing. If an athlete is evaluated as having 3 missed tests in any period of 5 years beginning with the date of the first missed test, he shall have committed an anti-doping rule violation in accordance with Rule 32.2(d).

## Return to competition following retirement or other period of non-competition

18. If an athlete, who has been requested to keep his whereabouts on file, no longer wishes to be subject to out-of-competition testing on account of the fact that he has retired, or has chosen not to compete for any other reason, he shall be required to give notice to the IAAF in the prescribed form. The same athlete may not then resume competition unless he has given the IAAF 12 months notice in the prescribed form of his intention to return to competition and has made himself available for out-of-competition testing by the IAAF

in that period by providing the IAAF with whereabouts information pursuant to Rule 35.16 above. An athlete who refuses or fails to submit to doping control on account of the fact that he has retired or has chosen not to compete for any other reason, but who has not provided the IAAF with notice under this Rule, shall have committed an anti-doping rule violation in accordance with Rule 32.2(c).

## RULE 36
## Analysis of Samples

1.  All samples collected under these Anti-Doping Rules shall be analysed in accordance with the following general principles:

    **Use of Approved Laboratories**
    (a) Samples for analysis shall be sent only to WADA-accredited laboratories or as otherwise approved by WADA. In the case of IAAF tests, samples shall be sent only to WADA-accredited laboratories (or, where applicable, to haematological laboratories or mobile testing units) which are approved by the IAAF.

    **Substances subject to detection**
    (b) Samples shall be analysed to detect prohibited substances and prohibited methods on the Prohibited List and such other substances as may be directed by WADA pursuant to its monitoring programme.

    **Research on samples**
    (c) No sample may be used for any purpose other than the detection of prohibited substances (or classes of prohibited substances) or prohibited methods on the Prohibited List, or as otherwise directed by WADA pursuant to its monitoring programme, without the athlete's written consent.

    **International Standard for Laboratories**
    (d) Laboratories shall analyse samples and report results in conformity with the International Standard for Laboratories.

2.  All samples provided by athletes in doping controls conducted under the responsibility of the IAAF shall immediately become the property of the IAAF.

3.  If, at any stage, any question or issue arises concerning the analysis or interpretation of the results of a sample, the person responsible

for the analysis at the laboratory (or haematological laboratory or mobile testing unit) may consult the IAAF Anti-Doping Administrator for guidance.

4. If, at any stage, any question or issue arises in relation to a sample, the laboratory (or mobile testing unit) may conduct any further or other tests necessary to clarify the question or issue so raised and such tests may be relied upon by the IAAF when deciding whether a sample has given rise to an adverse analytical finding.

5. Where an analysis indicates the presence of a prohibited substance or the use of a prohibited substance or prohibited method, the WADA-accredited laboratory shall immediately confirm the adverse analytical finding in writing, either to the IAAF, in the case of an IAAF test, or to the relevant Member in the case of a national test (with a copy to the IAAF). In the case of a national test, the Member shall inform the IAAF of the adverse analytical finding and the name of the athlete promptly on receipt of the information from the WADA-accredited laboratory and, in all circumstances, within two weeks of such receipt.

## RULE 37
### Results Management

1. Following notification of an adverse analytical finding or other anti-doping rule violation under these Anti-Doping Rules, the matter shall be subject to the results management process set out below.

2. In the case of an International-Level athlete, the results management process shall be conducted by the IAAF Anti-Doping Administrator and, in all other cases, it shall be conducted by the relevant person or body of the athlete's National Federation. The relevant person or body of the athlete's National Federation shall keep the IAAF Anti-Doping Administrator updated on the process at all times. Requests for assistance or information in conducting the results management process may be made to the IAAF Anti-Doping Administrator at any time.
For the purposes of this Rule and of Rule 38 below, references hereafter to the IAAF Anti-Doping Administrator shall, where applicable, be references to the relevant person or body of the Member and references to an athlete shall, where applicable, be references to any athlete support personnel or other person.

3. On notification of an adverse analytical finding, the IAAF Anti-Doping Administrator shall conduct a review to determine whether:

    (a) an applicable TUE has been granted to the athlete for the prohibited substance; or

    (b) there is any apparent departure (or departures) from the International Standard for Testing (or other applicable provision in the Procedural Guidelines) or the International Standard for Laboratories such as to undermine the validity of the finding.

4.    If the initial review under Rule 37.3 above does not reveal an applicable TUE or departure or departures from the International Standard for Testing (or other applicable provision in the Procedural Guidelines) or the International Standard for Laboratories such as to undermine the validity of the finding, the IAAF Anti-Doping Administrator shall promptly notify the athlete of:

    (a) the adverse analytical finding;

    (b) the anti-doping violation rule that has been breached or, in a case falling under Rule 37.5 below, a description of the additional investigation to be conducted to determine whether an anti-doping rule violation has occurred;

    (c) the time limit within which the athlete is to provide the IAAF, either directly or through his National Federation, with an explanation for the adverse analytical finding;

    (d) the athlete's right to request promptly for the analysis of the "B" sample and, failing such request, that the "B" sample shall be deemed to be waived. The athlete shall be advised at the same time that, if the "B" sample analysis is requested, all related laboratory costs shall be met by the athlete, unless the "B" sample fails to confirm the "A", in which case the costs shall be met by the organization responsible for initiating the test;

    (e) the date upon which the "B" sample analysis, if requested by the athlete, has been fixed, such date normally to be no later than 2 weeks after the date of notification of the adverse analytical finding to the athlete. If the laboratory concerned cannot subsequently accommodate the "B" sample analysis on the date fixed, the analysis shall take place at the earliest available date for the laboratory thereafter. No other reason shall be accepted for changing the date of the "B" sample analysis;

    (f) the right of the athlete and/or his representative to attend the "B" sample opening procedure and analysis, if such analysis is requested; and

(g) the athlete's right to request copies of the "A" and "B" sample laboratory documentation package which shall include the information required by the International Standard for Laboratories.

5. Following notification to an athlete under Rule 37.4(b) above, the IAAF Anti-Doping Administrator shall conduct any follow-up investigation that may be required. Upon the completion of such follow-up investigation, the IAAF Anti-Doping Administrator shall promptly notify the athlete of the results of the follow-up investigation and whether it is asserted that an anti-doping rule violation has been committed. If this is the case, the athlete concerned shall then be afforded an opportunity, either directly or through his National Federation, within a time limit set by the IAAF Anti-Doping Administrator, to provide an explanation in response to the anti-doping rule violation asserted.

6. An athlete may accept an "A" sample analytical result by waiving his right to the "B" sample analysis. The IAAF may however request the analysis of a "B" sample at any time if it believes that such analysis will be relevant to consideration of the athlete's case.

7. The athlete and/or his representative shall be allowed to be present at the "B" sample analysis and to attend throughout the analysis being carried out. A representative of the athlete's National Federation may also be present and attend throughout, as may a representative of the IAAF. An athlete shall remain provisionally suspended (see Rule 38.2 below) despite the fact that he has requested analysis of the "B" sample.

8. Once the analysis of the "B" sample has been concluded, a full laboratory report shall be sent to the IAAF Anti-Doping Administrator together, in due course, with a copy of all relevant data required by the International Standard for Laboratories. A copy of this report and all relevant data shall be forwarded to the athlete if so requested.

9. On receipt of the "B" sample laboratory report, the IAAF Anti-Doping Administrator shall conduct any follow-up investigation that may be required by the Prohibited List. Upon completion of the follow-up investigation, the IAAF Anti-Doping Administrator shall promptly notify the athlete regarding the results of the follow-up investigation and whether or not the IAAF asserts, or continues to assert, that an anti-doping rule has been violated.

10. Persons connected with doping control shall take all reasonable steps to maintain confidentiality in a case until the "B" sample

analysis has been concluded (or until any follow-up investigation to the "B" sample analysis as may be required by the Prohibited List under Rule 37.9 has been concluded), or until the "B" sample analysis is waived by the athlete. The identity of athletes whose samples have resulted in an adverse analytical finding or who are alleged to have committed anti-doping rule violations may be publicly disclosed in normal circumstances no earlier than the imposition of a provisional suspension in accordance with Rule 38.2 or Rule 38.3 below.

11. In the case of any anti-doping rule violation where there is no adverse analytical finding, the IAAF Anti-Doping Administrator shall conduct any investigation based on the facts of the case that he deems to be necessary and, on completing such an investigation, shall promptly notify the athlete concerned whether it is asserted that an anti-doping rule violation has been committed. If this is the case, the athlete shall be afforded an opportunity, either directly or through his National Federation, within a time limit set by the IAAF Anti-Doping Administrator, to provide an explanation in response to the anti-doping rule violation asserted.

12. The results management process from a test conducted by the IOC or by any other international sports organisation body conducting testing at an International Competition over which the IAAF has no exclusive control (e.g. the Commonwealth Games or the Pan American Games) shall be managed, as far as determining an athlete's sanction beyond disqualification from the International Competition in question, by the IAAF in accordance with these Anti-Doping Rules.

## RULE 38
### Disciplinary Procedures

1. Where it is asserted that an anti-doping rule violation has been committed under these Anti-Doping Rules, disciplinary procedures shall take place in the following three stages:
    (a) provisional suspension;
    (b) hearing;
    (c) sanction or exoneration.

*Provisional Suspension*

2. If no explanation, or no adequate explanation, for the asserted anti-doping rule violation is received from the athlete or his National Federation within the time limit set by the IAAF Anti-Doping

Administrator in Rule 37.4(c) or 37.11 above, the athlete shall be suspended, suspension at this time being provisional pending resolution of the athlete's case by his National Federation. In the case of an International-Level athlete, the athlete shall be suspended by the IAAF Anti-Doping Administrator. In all other cases, the National Federation of the athlete shall impose the relevant suspension by written notification to the athlete. Alternatively, the athlete may accept a voluntary suspension provided that this is confirmed in writing to his National Federation.

3. In any case where the Member imposes a provisional suspension or an athlete accepts a voluntary suspension, the Member shall confirm this fact to the IAAF immediately and the athlete shall thereafter be subject to the disciplinary procedures set out below. A voluntary suspension shall be effective only from the date of receipt of the athlete's written confirmation of such by the IAAF. If, contrary to the above paragraph, the Member fails, in the opinion of the IAAF Anti-Doping Administrator, to impose a provisional suspension as required, the IAAF Anti-Doping Administrator shall himself impose such a provisional suspension. Once the provisional suspension is imposed by the IAAF Anti-Doping Administrator, it shall notify the suspension to the Member which must then commence the disciplinary procedures set out below.

4. A decision to impose a provisional suspension on an athlete shall not be subject to an appeal. An athlete who has been provisionally suspended, or who has accepted a voluntary suspension shall, however, be entitled to a full expedited hearing before his Member in accordance with Rule 38.7 below.

### Hearing

5. Every athlete shall have the right to request a hearing before the relevant tribunal of his National Federation before any sanction is determined in accordance with these Anti-Doping Rules. When an athlete has obtained affiliation status abroad under Rule 4.3 above, he shall have the right to request a hearing either before the relevant tribunal of his original National Federation or before the relevant tribunal of the Member whose affiliation has been obtained.

6. When an athlete is notified that his explanation has been rejected and that he is to be provisionally suspended in accordance with Rule 38.2 above, he shall also be told of his right to request a hearing. If the athlete fails to confirm in writing to his National Federation or other relevant body within 14 days of such notice that he wishes to have a hearing, he will be deemed to have waived his right to a

hearing and to have accepted that he committed the anti-doping rule violation in question. This fact shall be confirmed in writing to the IAAF by the Member within 5 working days.

7. If a hearing is requested by an athlete, it shall be convened without delay and the hearing held within 2 months of the date of notification of the athlete's request to the Member. Members shall keep the IAAF fully informed as to the status of all cases pending hearing and of all hearing dates as soon as they are fixed. The IAAF shall have the right to attend all hearings as an observer. However, the IAAF's attendance at a hearing, or any other involvement in a case, shall not affect its right to appeal the Member's decision to CAS pursuant to Rule 60.23 below.

8. The athlete's hearing shall take place before the relevant hearing body constituted or otherwise authorised by the Member. The relevant hearing body shall be fair and impartial and the conduct of the hearing shall respect the following principles: the right of the athlete to be present at the hearing and to present evidence, including the right to call and question witnesses, the right to be represented by legal counsel and an interpreter (at the athlete's expense) and a timely and reasoned decision in writing.

9. At the hearing of the athlete's case, the relevant tribunal shall consider first whether or not an anti-doping rule violation has been committed. The Member or other prosecuting authority shall have the burden of proving the anti-doping rule violation to the comfortable satisfaction of the tribunal (see Rule 33.2 above).

10. If the relevant tribunal of the Member considers that an anti-doping rule violation has not been committed, this decision shall be notified to the IAAF Anti-Doping Administrator in writing within 5 working days of the decision being made (together with a copy of the written reasons for such decision). The case shall then be reviewed by the Doping Review Board which shall decide whether or not it should be referred to arbitration before CAS pursuant to Rule 60.23 below. If the Doping Review Board does so decide, it may at the same time re-impose, where appropriate, the athlete's provisional suspension pending resolution of the appeal by CAS.

11. If the relevant tribunal of the Member considers that an anti-doping rule violation has been committed, prior to the imposition of any period of ineligibility, the athlete shall have the opportunity to establish that there are exceptional circumstances in his case justifying a reduction of the sanction otherwise applicable under Rule 40.1 below.

*Exceptional Circumstances*

12. All decisions taken under these Anti-Doping Rules regarding exceptional circumstances must be harmonised so that the same legal conditions can be guaranteed for all athletes, regardless of their nationality, domicile, level or experience. Consequently, in considering the question of exceptional circumstances, the following principles shall be applied:

    (i) it is each athlete's personal duty to ensure that no prohibited substance enters his body tissues or fluids. Athletes are warned that they shall be held responsible for any prohibited substance found to be present in their bodies (see Rule 32.2(a)(i) above).

    (ii) exceptional circumstances will exist only in cases where the circumstances are truly exceptional and not in the vast majority of cases.

    (iii) taking into consideration the athlete's personal duty in Rule 38.12(i) above, the following will not be regarded as cases which are truly exceptional: an allegation that the prohibited substance or prohibited method was given to an athlete by another person without his knowledge, an allegation that the prohibited substance was taken by mistake, an allegation that the prohibited substance was due to the taking of contaminated food supplements or an allegation that medication was prescribed by athlete support personnel in ignorance of the fact that it contained a prohibited substance.

    (iv) exceptional circumstances may however exist where an athlete has provided substantial evidence or assistance to the IAAF, his National Federation or other relevant body which has resulted in the IAAF, his National Federation or other relevant body discovering or establishing an anti-doping rule violation by another person involving possession (under Rule 32.2(f)), trafficking (under Rule 32.2(g)) or administration to an athlete (under Rule 32.2(h)).

13. The determination of exceptional circumstances in cases involving International-Level athletes shall be made by the Doping Review Board (see Rule 38.17 below).

14. If an athlete seeks to establish that there are exceptional circumstances in his case, the relevant tribunal shall consider, based on the evidence presented, and with strict regard to the principles set out in Rule 38.12 above, whether, in its view, the circumstances in the athlete's case may be exceptional.

15. If, having examined the evidence presented, the relevant tribunal considers that there are no exceptional circumstances in the athlete's

case, it shall impose the sanction prescribed in Rule 40... Member shall notify the IAAF and the athlete in writ. relevant tribunal's decision, within 5 working days of the o. being made.

16. If, having examined the evidence presented, the relevant tribuna. considers that there are circumstances in the athlete's case which may be exceptional, if the case involves an International-Level athlete, it shall:

    (a) refer the matter to the Doping Review Board (via the General Secretary), together with all material and/or evidence which, in its view, demonstrates the exceptional nature of the circumstances; and

    (b) invite the athlete and/or his National Federation to support the referral of the relevant tribunal or to make independent submissions in support of such referral; and

    (c) adjourn the hearing of the athlete's case pending the Doping Review Board's determination on exceptional circumstances.

    The athlete's provisional suspension shall remain in place pending the receipt of the Doping Review Board's determination on exceptional circumstances.

17. Upon receipt of a reference from the relevant tribunal, the Doping Review Board shall examine the question of exceptional circumstances only, on the basis of the written materials which have been submitted to it. The Doping Review Board shall have the power:

    (a) to exchange views on the matter by e-mail, telephone, facsimile or in person;

    (b) to call for further evidence or documents;

    (c) to call for any further explanation from the athlete;

    (d) if necessary, to request the attendance of the athlete before it.

    Based on a review of the written materials submitted to it, including any further evidence or documents, or further explanation provided by the athlete, the Doping Review Board, having strict regard to the principles set out in Rule 38.12 above, shall make a determination on whether there are exceptional circumstances in the case and, if so, into which category they fall, i.e., whether the exceptional circumstances demonstrate no fault or no negligence on the athlete's part (see Rule 40.2 below) or no significant fault or no significant negligence on the athlete's part (see Rule 40.3 below) or substantial evidence or assistance by the athlete resulting in discovering or establishing an anti-doping rule violation by another person (see

Rule 40.4 below). This determination shall be conveyed to the Member in writing by the General Secretary.

18. If the Doping Review Board's determination is that there are no exceptional circumstances in the case, the determination shall be binding on the relevant tribunal, which shall impose the sanction prescribed in Rule 40.1 below. The Member shall notify the IAAF and the athlete in writing of the relevant tribunal's decision, which shall incorporate the Doping Review Board's determination, within 5 working days of the decision being made.

19. If the Doping Review Board's determination is that there are exceptional circumstances in the case, the relevant tribunal shall decide the athlete's sanction in accordance with Rule 40.2, 40.3 or 40.4 below, consistent with the Doping Review Board's categorisation of the exceptional circumstances in Rule 38.17 above. The Member shall notify the IAAF and the athlete of the relevant tribunal's decision in writing, within 5 working days of the decision being made.

20. The athlete shall have the right to seek a review of the Doping Review Board's determination on exceptional circumstances to CAS, either as part of an appeal against the decision of the Member in accordance with Rule 60.10(a) below or pursuant to Rule 60.10(b) below. In all cases, the standard of review of the Doping Review Board's determination on the question of exceptional circumstances shall be as set out in Rule 60.27 below.

21. In cases which do not involve International-Level athletes, the relevant tribunal shall consider, having strict regard to the principles set out in Rule 38.12 above, whether there are exceptional circumstances in the athlete's case and decide upon the athlete's sanction accordingly. The Member shall notify the IAAF and the athlete of the relevant tribunal's decision in writing, within 5 working days of the decision being made. If the relevant tribunal concludes that there are exceptional circumstances in an athlete's case, it shall set out the full factual basis for such conclusion as part of its written decision.

## RULE 39
## Disqualification of Results

1. Where an anti-doping rule violation occurs in connection with an in-competition test, the athlete shall be automatically disqualified from the event in question and from all subsequent events of the competition, with all resulting consequences for the athlete,

including the forfeiture of all titles, awards, medals, points and prize and appearance money.

2. Where the athlete who commits an anti-doping rule violation under Rule 39.1 is a member of a relay team, the relay team shall be automatically disqualified from the event in question, with all resulting consequences for the relay team, including the forfeiture of all titles, awards, medals, points and prize and appearance money. If the athlete who has committed an anti-doping rule violation competes for a relay team in a subsequent event in the competition, the relay team shall be disqualified from the subsequent event, with all the same resulting consequences for the relay team, including the forfeiture of all titles, awards, medals, points and prize and appearance money.

3. Where the athlete who commits an anti-doping rule violation under Rule 39.1 is a member of a team other than a relay team, in an event where a team ranking is based on the addition of individual results, the team shall not be automatically disqualified from the event in question but the result of the athlete committing the violation will be subtracted from the team result and replaced with the result of the next applicable team member. If by subtracting the athlete's result from the team's result, the number of athletes counting for the team is less than the required number, the team shall be eliminated from the ranking. This same principle shall apply to the calculation of a team result if the athlete who has committed an anti-doping rule violation competes for a team in a subsequent event in the competition.

4. In addition to the above, where an athlete has been declared ineligible under Rule 40 below, all competitive results obtained from the date the positive sample was provided (whether in-competition or out-of-competition) or other anti-doping rule violation occurred through to the commencement of the period of provisional suspension or ineligibility shall, unless fairness requires otherwise, be annulled, with all resulting consequences for the athlete (and, where applicable, any team in which the athlete has competed), including the forfeiture of all titles, awards, medals, points and prize and appearance money.

5. Where an athlete commits an anti-doping rule violation under Rule 32.2(b)(ii), all competitive results obtained subsequent to the admitted violation (both individual and, where applicable, as part of a team) shall be annulled, with all resulting consequences for the athlete (and, where applicable, the team in which the athlete

57                         RULE 39

competed), including the forfeiture of all titles, awards, medals, points and prize and appearance money and this from the date the athlete admitted the anti-doping rule violation.

## RULE 40
## Sanctions against Individuals

1. If any person commits an anti-doping rule violation under these Anti-Doping Rules, he shall be subject to the following sanctions:
   (a) for a violation under Rules 32.2(a), (b) or (f) (prohibited substances and prohibited methods), except where the prohibited substance is a specified substance in a case under Rule 40.5 below, or Rule 32.2(i) (competing whilst suspended or ineligible):
      (i) first violation: for a minimum period of two years' ineligibility.
      (ii) second violation: ineligibility for life
   (b) for a violation under Rule 32.2(c) (refusal or failure to submit to doping control) or Rule 32.2(e) (tampering with doping control):
      (i) first violation: for a minimum period of two years' ineligibility.
      (ii) second violation: ineligibility for life.
   (c) for a violation under Rule 32.2(d) (3 missed tests):
      (i) first violation: for a period of one year's ineligibility.
      (ii) second and subsequent violations: for a period of two years' ineligibility.
   (d) for a violation under Rules 32.2(g) (trafficking) or (h) (administration of a prohibited substance or prohibited method):
   (i) ineligibility for life.
      In addition, violations under Rule 40.1(d) which also violate non-sporting laws and regulations may be reported to the competent administrative, professional or judicial authorities.

*Elimination, reduction or replacement of ineligibility period*
2. If, in a case involving an anti-doping rule violation under:
   (a) Rule 32.2(a) (presence of a prohibited substance); or
   (b) Rule 32.2(b) (use of a prohibited substance or prohibited method);
   the relevant tribunal of the Member decides (where applicable, having referred the matter to the Doping Review Board for its

determination under Rule 38.16 above) that there are exceptional circumstances in the case such that the athlete or other person bears no fault or negligence for the violation, the otherwise applicable period of ineligibility under Rule 40.1(a) shall be eliminated. When a prohibited substance is detected in an athlete's sample in violation of Rule 32.2(a) (presence of a prohibited substance), the athlete must establish how the prohibited substance entered his system in order to have his period of ineligibility eliminated.

In the event that this Rule is applied and the period of ineligibility otherwise applicable under Rule 40.1(a) is eliminated, the anti-doping rule violation shall not be considered a violation for the limited purpose of determining the period of ineligibility for multiple violations under Rules 40.1(a)-(c) above and Rules 40.5 and 40.6-8 below.

3. If, in a case involving an anti-doping rule violation under:
   (a) Rule 32.2(a) (presence of a prohibited substance);
   (b) Rule 32.2(b) (use of a prohibited substance or prohibited method);
   (c) Rule 32.2(c) (refusal or failure to submit to doping control);
   (d) Rule 32.2(h) (administration of a prohibited substance or prohibited method); or
   (e) Rule 32.2(i) (competing whilst suspended or ineligible)
   the relevant tribunal of the Member decides (where applicable, having referred the matter to the Doping Review Board for its determination under Rule 38.16 above) that there are exceptional circumstances such that the athlete or other person bears no significant fault or no significant negligence for the violation, the period of ineligibility may be reduced but the reduced period may not be less than half the minimum period of ineligibility otherwise applicable. If the otherwise applicable period is a lifetime, the reduced period under this Rule may be no less than 8 years. When a prohibited substance is detected in an athlete's sample in violation of Rule 32.2(a) (presence of a prohibited substance), the athlete must establish how the prohibited substance entered his system in order to have his period of ineligibility reduced.

4. The relevant tribunal of the Member may also decide (where applicable, having referred the matter to the Doping Review Board for its determination under Rule 38.16 above) to reduce the period of ineligibility in an individual case on account of exceptional circumstances because the athlete or other person has provided substantial evidence or assistance to the IAAF, his National

Federation or other relevant body which has resulted in the IAAF, National Federation or other relevant body discovering or establishing an anti-doping rule violation by another person involving possession (under Rule 32.2(f)), trafficking (under Rule 32.2(g)) or administration to an athlete (under Rule 32.2(h)). The reduced period may not, however, be less than half the minimum period of ineligibility otherwise applicable. If the otherwise applicable period is a lifetime, the reduced period under this Rule may be no less than 8 years.

### Specified Substances

5. The Prohibited List may identify a limited number of specified substances which are particularly susceptible to unintentional anti-doping rule violations because of their general availability in medicinal products or which are less likely to be successfully abused as doping agents. Where the athlete can establish that the use of such a specified substance was not intended to enhance performance, the period of ineligibility otherwise applicable in Rule 40.1(a) shall be replaced by:

   (i)  first violation: minimum - a public warning (and disqualification from the event and subsequent events in which he competed in the competition - see Rule 39 above) and no ineligibility from future competitions; maximum - one year's ineligibility.

   (ii)  second violation: for a period of two years' ineligibility.

   (iii) third violation: ineligibility for life.

### Rules for multiple violations

6. For the purposes of imposing sanctions under Rules 40.1(a)-(c) above and Rule 40.5, a second or further anti-doping rule violation may only be considered if the IAAF, the Member or other prosecuting authority can establish that the athlete or other person subject to these Anti-Doping Rules committed the second or further anti-doping rule violation after he received notice, or after the Member made a reasonable attempt to give notice, of the first or previous violation. If the IAAF, Member or other prosecuting authority cannot establish this fact, the relevant anti-doping rule violations shall be considered as a single violation and the sanction imposed shall be based on the violation that carries with it the more severe sanction.

7. Where, arising from the same test, an athlete is found to have committed an anti-doping rule violation involving both a specified substance and another prohibited substance or prohibited method,

the athlete shall be considered to have committed a single anti-doping rule violation but the sanction imposed shall be based on the violation that carries with it the more severe sanction.

8. Where an athlete is found to have committed two separate anti-doping rule violations (which have not arisen from the same test), one involving a specified substance governed by the sanctions in Rule 40.5 and the other involving a prohibited substance or prohibited method governed by the sanctions in Rule 40.1(a) or other violation governed by the sanctions in Rules 40.1(a) or (b), regardless of the order in which the two violations are committed, the period of ineligibility imposed for the second violation shall be a minimum of 2 years and a maximum of 3 years. An athlete found to have committed a third violation involving any combination of a violation for a specified substance under Rule 40.5 and any of the violations under Rules 40.1(a)-(c) shall receive a sanction of ineligibility for life.

### Commencement of ineligibility period

9. In any case where a period of ineligibility is to be imposed under this Rule, the period of ineligibility shall start on the date of the hearing decision providing for ineligibility or, if the hearing is waived, on the date the ineligibility is accepted or otherwise imposed. When an athlete has served a period of provisional suspension prior to being declared ineligible (whether imposed or voluntarily accepted), such a period shall be credited against the total period of ineligibility to be served.

### Status during ineligibility

10. No athlete, athlete support personnel or other person who has been declared ineligible may, during the period of ineligibility, participate in any capacity in any competition or activity (other than in authorised anti-doping education or rehabilitation programmes) which are authorised or organised by the IAAF or any Member. In addition, for any anti-doping rule violation not involving specified substances, some or all sports-related financial support or other sport-related benefits received by such person will be withheld by the IAAF and its Members.

### Requirements for return to competition following ineligibility

11. Where an athlete has been declared ineligible, he shall not be entitled to any payment to which he would have been entitled by virtue of his appearance and/or performance either at the

competition at which the sample was provided or at any competition after the provision of the sample prior to him being provisionally suspended (or accepting a voluntary provisional suspension) pursuant to Rule 38.2 above. In the event that the athlete, contrary to this Rule, has received any payment, he shall not be entitled to return to competition at the end of his period of ineligibility until such time as any and all payments have been repaid to the relevant person or entity.

12. Where an International-Level athlete has been declared ineligible under Rule 40.1 for a period other than life, as a condition to regaining eligibility at the end of the specified period, he must, at any time during his period of ineligibility, make himself available for out-of-competition testing by the IAAF, his National Federation and any other organisation having competent testing authority under these Anti-Doping Rules, and he must provide whereabouts information to the IAAF for this purpose in accordance with Rule 35.16. Where an athlete has been rendered ineligible for one year or more, a minimum of three out-of-competition tests must be conducted at the athlete's cost, with at least three months between each test. The IAAF shall be responsible for the conduct of the necessary tests, in accordance with the Rules and the Procedural Guidelines, but tests by any competent testing body may be relied upon to satisfy this requirement, provided the samples collected have been analysed by a WADA-accredited laboratory. In addition, immediately prior to the end of the ineligibility period, an athlete must undergo testing for the full range of prohibited substances and methods. Where an athlete competing in Running events, Race Walking events or Combined events has been found guilty of an anti-doping rule violation under the Rules, at least his last two reinstatement tests shall be analysed for rh-EPO and its related substances. The results of all such tests, together with copies of the relevant doping control forms, must be sent to the IAAF prior to the athlete returning to competition.

13. If the results of any testing carried out pursuant to Rule 40.12 above should give rise to an adverse analytical finding or other anti-doping rule violation under these Anti-Doping Rules, this will constitute a separate anti-doping rule violation and the athlete will be subject to disciplinary proceedings and further sanction, as appropriate.

14. Once the period of an athlete's ineligibility has expired, provided that he has complied with Rules 40.11 and 40.12 above, he shall

become automatically re-eligible and no application by the athlete or his National Federation to the IAAF shall be necessary.

## RULE 41
### Member Reporting Obligations

1. Every Member shall report to the IAAF promptly the names of athletes who have signed a written acknowledgement and agreement to these Anti-Doping Rules and the Procedural Guidelines in order to be eligible to compete in International Competitions (see Rule 30.5 above). A copy of the signed agreement shall in each case be forwarded by the Member to the IAAF Office.

2. Every Member shall report to the IAAF and WADA promptly any TUEs that are granted in accordance with Rule 34.5(b) above.

3. Every Member shall report to the IAAF promptly, and in all circumstances, within 14 days of notice to it, any adverse analytical finding obtained in the course of doping controls carried out by that Member or in that Member's Country or Territory, together with the name of the athlete concerned.

4. Every Member shall report, as part of its annual report to the IAAF to be submitted within the first three months of each year (see Article 4.9 of the Constitution), all doping controls conducted by that Member or conducted in that Member's Country or Territory in the previous year (other than by the IAAF). This report shall be sorted by athlete, identifying when the athlete was tested, the entity conducting the test and whether the test was in or out-of-competition. The IAAF may choose periodically to publish such data as is received from its Members under this Rule.

5. The IAAF shall report to WADA every second year on the IAAF's compliance with the Code, including the compliance of its Members. The IAAF shall be required to explain any reasons for non-compliance.

## RULE 42
### Sanctions against Members

1. The Council shall have authority to take sanctions against any Member which is in breach of its obligations under these Anti-Doping Rules, in accordance with Article 14.7 of the Constitution.

2. The following examples will be considered to be a breach of a Member's obligations under these Anti-Doping Rules:

(a) a failure to guarantee an athlete's eligibility to compete in International Competitions by requiring the athlete sign a prior written acknowledgement and agreement to these Anti-Doping Rules and the Procedural Guidelines and forwarding a copy of the signed agreement to the IAAF Office (see Rule 30.5 above).

(b) a failure to hold a hearing for an athlete within two months of being requested to do so (see Rule 38.7 above);

(c) a failure to make diligent efforts to assist the IAAF in the collection of whereabouts information should the IAAF make such a request for assistance (see Rule 35.16 above);

(d) a failure to report to the IAAF and WADA the grant of any TUE under Rule 34.5(b) (see Rule 41.2 above);

(e) a failure to report to the IAAF an adverse analytical finding obtained in the course of a doping control carried out by that Member, or in that Member's Country or Territory, within 14 days of notice of such a finding to the Member, together with the name of the athlete concerned (see Rule 41.3 above);

(f) a failure to report to the IAAF as part of its annual report to be submitted within the first three months of the year, a list of all doping controls conducted by that Member or in that Member's Country or Territory in the previous year (see Rule 41.4 above).

3. If a Member is deemed to be in breach of its obligations under these Anti-Doping Rules, the Council shall have authority to act in one or more of the following ways:

(a) to suspend the Member until the next meeting of the Congress or for any shorter period;

(b) to caution or censure the Member;

(c) to issue fines;

(d) to withhold grants or subsidies from the Member;

(e) to exclude the Member's athletes from any one or more International Competition;

(f) to remove or deny accreditation to the officers or other representatives of the Member; and

(g) to issue any other sanction as it may deem to be appropriate.

4. In any case where the Council has issued a sanction against a Member for a breach of its obligations under these Anti-Doping Rules, such a decision shall be reported to the next Congress.

1. Where doping controls have been carried out by the IAAF, a Member or an Area Association in accordance with these Anti-Doping Rules and the Procedural Guidelines, every Member shall recognise the results of such doping controls. Furthermore, where decisions have been taken by the IAAF or a Member regarding a breach of these Anti-Doping Rules, every Member shall recognise such decisions and shall take all necessary action to render such decisions effective.

2. The Council may, on behalf of all Members, recognise the results of doping controls carried out by a sporting body other than the IAAF, whether national, regional, continental or international, or by a member of that sporting body, or by any government or governmental agency, under rules and procedures different from those of the IAAF, if it is satisfied the testing was properly carried out and the rules of the body conducting the testing afford sufficient protection to athletes.

3. The Council may delegate its responsibility for the recognition of the results of doping controls under Rule 43.2 above to the Doping Review Board or to such other person or body as it may deem to be appropriate.

4. If the Council (or its appointee under Rule 43.3) decides that the result of a doping control carried out by a sporting body other than the IAAF, or by a government or governmental agency, is to be recognised, then the athlete shall be deemed to have breached the relevant Rule and will be subject to the same disciplinary procedures and sanctions as for a corresponding violation of these Anti-Doping Rules. All Members shall take all necessary action to ensure that any decision regarding an anti-doping rule violation in such a case is effective.

# RULE 44
## Statute of Limitations

No disciplinary action may be commenced under these Anti-Doping Rules against an athlete or any other person for a violation of an anti-doping rule contained in these Anti-Doping Rules unless such action is commenced within eight years of the date on which the anti-doping rule violation occurred.

1. Anti-Doping rules are, by their nature, competition rules governing the conditions under which the sport of Athletics is to be held. They are not intended to be subjected to or limited by the requirements and legal standards applicable to criminal proceedings or employment matters. The policies and standards set out in the Code as a basis for the fight against doping in sport, and as accepted by the IAAF in these Anti-Doping Rules, represent a broad consensus of those with an interest in fair sport and should be respected by all courts and adjudicating bodies.

2. The various headings and sub-headings used in these Anti-Doping Rules are for convenience only and shall not be deemed to be part of the substance of these Anti-Doping Rules or to affect in any way the language of the provisions to which they refer.

3. The Definitions in Chapter 3 shall be considered an integral part of these Anti-Doping Rules.

# CHAPTER 4
## DISPUTES

RULE 60
Disputes

*General*

1. Unless otherwise stated in a specific Rule or Regulation (for example, in relation to disputes arising on the field of competition), all disputes arising under these Rules shall be resolved in accordance with the provisions set out below.

*Disputes involving athletes, athlete support personnel and other persons*

2. Each Member shall incorporate a provision in its constitution that, unless otherwise stated in a specific Rule or Regulation, all disputes involving athletes, athlete support personnel or other persons under its jurisdiction, however arising, whether doping or non-doping related, shall be submitted to a hearing before the relevant hearing body constituted or otherwise authorised by the Member. Such a hearing shall respect the following principles: a timely hearing before a fair and impartial hearing body, the right of the individual to be informed of the charge against him, the right to present evidence, including the right to call and question witnesses, the right to be represented by legal counsel and an interpreter (at the individual's expense) and a timely and reasoned decision in writing. Where such disputes arise in a non-disciplinary context, the relevant hearing body shall be constituted as an arbitration panel.

3. In the event of a breach of the anti-doping rule violations in Chapter 3 above, the Member shall apply the disciplinary procedures set out in Rule 38. The Member shall inform the IAAF in writing of the decision taken within 5 working days of the decision being made (and shall send the IAAF a copy of the written reasons for the decision in English or French).

4. In the event of an alleged breach of Rule 22 above relating to Ineligibility for International and Domestic Competitions (other than in a case of breach of Rule 22.1(e)), the Member shall apply the disciplinary procedures set out below:

   (a) The allegation shall be reduced to writing and forwarded to the Member to which the athlete, athlete support personnel or other

person is affiliated, which shall proceed in a timely manner to hold an investigation into the facts of the case.

(b) If, following such investigation, the Member believes that there is evidence to support the allegation of ineligibility, the Member shall immediately notify the athlete or other person concerned of the charge to be brought and of his right to a hearing before any decision on ineligibility is made. If the athlete or other person fails to confirm in writing to the Member or other relevant body within 14 days of such notice that he wishes to have a hearing, he will be deemed to have waived his right to a hearing and to have accepted that he committed a breach of the relevant provision of Rule 22.

(c) If the athlete or other person confirms that he wishes to have a hearing, all relevant evidence shall be given to the person whose eligibility is challenged and a hearing respecting the principles set out in Rule 60.2 above shall be held within a period of no more than 2 months following notification of the charge in Rule 60.4(b) above. The Member shall inform the IAAF as soon as a hearing date is set and the IAAF shall have the right to attend the hearing as an observer. The IAAF's attendance at the hearing in such capacity, or any other involvement in the case, shall not affect its right to appeal the decision to CAS in accordance with Rule 60.24 below.

(d) If the relevant hearing body of the Member, after hearing the evidence, decides that the athlete or other person concerned is in breach of Rule 22, it shall declare the person ineligible from international and domestic competitions for a period set out in Guidelines produced by the Council (or the Member shall do so if the athlete or other person has waived his right to a hearing). In the absence of such Guidelines, the relevant hearing body shall determine the appropriate period of the person's ineligibility.

(e) The Member shall inform the IAAF in writing of the decision taken within 5 working days of the decision being made (and shall send the IAAF a copy of the written reasons for the decision).

5. Where a Member delegates the conduct of a hearing to any body, committee or tribunal (whether within or outside the Member), or where for any other reason, any national body, committee or tribunal outside of the Member is responsible for affording an athlete, athlete support personnel or other person his hearing under

these Rules, the decision of that body, committee or tribunal shall be deemed, for the purposes of Rule 60.10 below, to be the decision of the Member and the word "Member" in such Rule shall be so construed.

### Disputes between a Member and the IAAF

6.  Each Member shall incorporate a provision in its constitution that, unless otherwise stated in a specific Rule or Regulation, all disputes arising between a Member and the IAAF shall be referred to the Council. The Council shall determine a procedure for the adjudication of the dispute depending on the circumstances of the case in question.

7.  In the event that the IAAF seeks to suspend a Member for a breach of the Rules, the Member must have been sent prior notice in writing of the grounds for the suspension and must have been given a reasonable opportunity to be heard on the matter in accordance with the procedures set out in Article 14.10 of the Constitution.

### Disputes between Members

8.  Each Member shall incorporate a provision in its constitution that all disputes with another Member shall be referred to the Council. The Council shall determine a procedure for the adjudication of the dispute depending on the circumstances of the case in question.

### Appeals

9.  All decisions subject to appeal under these Rules, whether doping or non-doping related, may be appealed to CAS in accordance with the provisions set out below. All such decisions shall remain in effect while under appeal, unless determined otherwise (see Rules 60.23-24 below).

10. The following are examples of decisions that may be subject to appeal under these Rules:

    (a) Where a Member has taken a decision that an athlete, athlete support personnel or other person has committed an anti-doping rule violation.

    (b) Where an athlete accepts a Member's decision that he has committed an anti-doping rule violation but seeks a review of the Doping Review Board's determination under Rule 38.18 that there are no exceptional circumstances in the case justifying a reduction of the period of ineligibility to be served.

(c) Where a Member has taken a decision that an athlete, athlete support personnel or other person has not committed an anti-doping rule violation.

(d) Where testing has indicated the presence of a prohibited substance or the use of a prohibited method and, contrary to Rule 38.7, the Member has refused or failed to provide the athlete with a hearing within the relevant time period.

(e) Where the IAAF has taken a decision to deny an International-Level athlete a TUE under Rule 34.5(a).

(f) Where the IAAF has issued a sanction against a Member for a breach of the Rules.

(g) Where a Member has taken a decision that an athlete, athlete support personnel or other person has not committed a breach of Rule 22.

11. In cases involving International-Level athletes (or their athlete support personnel), or involving the sanction of a Member by the Council for a breach of the Rules, whether doping or non-doping related, the decision of the relevant body of the Member or the IAAF (as appropriate) may be appealed exclusively to CAS in accordance with the provisions set out in Rules 60.25 - 60.30 below.

12. In cases which do not involve International-Level athletes (or their athlete support personnel), whether doping or non-doping related, the decision of the relevant body of the Member may (unless Rule 60.17 below applies) be appealed to a national review body in accordance with the rules of the Member. Each Member shall have in place an appeal procedure at national level that respects the following principles: a timely hearing before a fair, impartial and independent hearing body, the right to be represented by legal counsel and interpreter (at the appellant's expense) and a timely and reasoned decision in writing. The decision of the national review body may be appealed to CAS in accordance with Rule 60.16 below.

*Parties entitled to appeal decisions*

13. In any case involving International-Level athletes (or their athlete support personnel), the following parties shall have the right to appeal a decision to CAS:

(a) the athlete or other person who is the subject of the decision being appealed;

(b) the other party to the case in which the decision was rendered;

(c) the IAAF;

(d) the IOC (where the decision may have an effect on eligibility in relation to the Olympic Games); and

(e) WADA (in doping-related matters only).

14. In any case involving a decision by the Council to sanction a Member for a breach of the Rules, the Member affected shall have the sole right to appeal a decision to CAS.

15. In any case which does not involve International-Level athletes (or their athlete support personnel), the parties having the right to appeal a decision to the national level review body shall be as provided for in the rules of the Member, but shall include at a minimum:

(a) the athlete or other person the subject of the decision being appealed;

(b) the other party to the case in which the decision was rendered;

(c) the Member.

The IAAF and WADA (in doping-related cases only) shall have the right to attend any hearing before the national-level review body as an observer. The IAAF's attendance at a hearing in such capacity shall not affect its right to appeal the decision of the national level review body to CAS in accordance with Rule 60.16 below.

16. The following parties shall have the right to appeal the decision of the national level review body to CAS:

(a) the IAAF; and

(b) WADA (in doping-related cases only).

No decision may be appealed to CAS until the appeal procedure at national level has been exhausted in accordance with the rules of the Member.

17. If, however, in cases not involving International-Level athletes (or their athlete support personnel), the rules of a Member provide for the right of the IAAF and WADA (in doping-related cases only) to appeal a decision direct to CAS rather than to the national level review body as in Rule 60.15 above, provided the CAS appeal is conducted in accordance with the provisions of Rule 60 below, the CAS decision shall be final and binding upon the athlete, the Member, the IAAF and WADA and no further appeal to CAS shall thereafter be made.

## Respondents to the CAS Appeal

18. Unless otherwise stated below, as a general rule, the respondent to a CAS appeal under these Rules shall be the party which has taken the decision which is the subject of the appeal.

19. In all references to CAS under Rules 60.10(a),(d) or (g), the relevant Member shall be respondent. If however, in an appeal under Rule 60.10(a), the appellant seeks a review of a determination made by the Doping Review Board on exceptional circumstances under Rule 38.17, the respondents to the appeal shall be the relevant Member and the IAAF and they shall jointly appoint an arbitrator. If there is any disagreement as to who the appointed arbitrator should be, the IAAF's choice of arbitrator shall prevail.

20. In all references to CAS under Rules 60.10(b), (e) or (f), the respondent shall be the IAAF.

21. In all references to CAS under Rule 60.10(c), the respondents shall be the relevant Member and the athlete.

22. In any case where the IAAF or the relevant Member is not a party to the appeal before CAS, it may nevertheless choose to participate at the CAS hearing if it considers it appropriate to do so.

## IAAF appeal of decisions to CAS

23. The decision by the IAAF as to whether a doping-related case should be appealed to CAS shall be taken by the Doping Review Board. The Doping Review Board shall, where applicable, determine at the same time whether the athlete concerned shall be re-suspended pending the CAS decision.

24. The decision by the IAAF as to whether a non-doping-related case should be appealed to CAS shall be taken by the Council. The Council shall, where applicable, determine at the same time whether the athlete concerned shall be suspended pending the CAS decision.

## The CAS Appeal

25. Unless the Council determines otherwise, the appellant shall have 30 days from the date of communication of the written reasons of the decision to be appealed (in English or French where the IAAF is the prospective appellant) in which to file his statement of appeal with CAS. Within 15 days of the deadline for filing the statement of appeal, the appellant shall file his appeal brief with CAS and, within thirty days of receipt of the appeal brief, the respondent shall file his answer with CAS.

26. All appeals before CAS (save as set out in Rule 60.27 below) shall take the form of a re-hearing de novo of the issues raised by the

case and the CAS Panel shall be able to substitute its decision for the decision of the relevant tribunal of the Member or the IAAF where it considers the decision of the relevant tribunal of the Member or the IAAF to be erroneous or procedurally unsound.

27. Where the appeal to CAS in a doping-related case is made pursuant to Rule 60.10(b), or is pursuant to Rule 60.10(a) and the athlete seeks as part of the appeal a review of the Doping Review Board's determination on exceptional circumstances, the hearing before CAS on the question of exceptional circumstances shall be limited to a review of the materials before the Doping Review Board and to its determination. The CAS Panel will only interfere with the determination of the Doping Review Board if it is satisfied:

   (a) that no factual basis existed for the Doping Review Board's determination; or

   (b) the determination reached was significantly inconsistent with the previous body of cases considered by the Doping Review Board, which inconsistency cannot be justified by the facts of the case; or

   (c) that the determination reached by the Doping Review Board was a determination that no reasonable review body could reach.

28. In all CAS appeals involving the IAAF, CAS and the CAS Panel shall be bound by the IAAF Constitution, Rules and Regulations (including the Procedural Guidelines). In the case of any conflict between the CAS rules currently in force and the IAAF Constitution, Rules and Regulations, the IAAF Constitution, Rules and Regulations shall take precedence.

29. In all CAS appeals involving the IAAF, the governing law shall be Monegasque law and the arbitrations shall be conducted in English, unless the parties agree otherwise.

30. The CAS Panel may in appropriate cases award a party its costs, or a contribution to its costs, incurred in the CAS appeal.

31. The decision of CAS shall be final and binding on all parties, and on all Members, and no right of appeal will lie from the CAS decision. The CAS decision shall have immediate effect and all Members shall take all necessary action to ensure that it is effective. The fact of the referral to CAS and the CAS decision shall be set out in the next notice to be sent by the General Secretary to all Members.