BEFORE THE AMERICAN ARBITRATION ASSOCIATION

**North American Court of Arbitration for Sport Panel**

United States Anti-Doping Agency, )
                                  )
                  Claimant, )
                                  )
      v.                          )
                                  )    AAA No. 30 190 00170 07
Justin Gatlin, )
                                  )
                Respondent. )
                                  )

## UNITED STATES ANTI-DOPING AGENCY'S BRIEF ON JUSTIN GATLIN'S FIRST DOPING OFFENSE

The United States Anti-Doping Agency ("USADA"), by counsel, respectfully submits its Brief on issues related to the Respondent Justin Gatlin's first doping offense.

### I. INTRODUCTION

In *USADA v. Gatlin* (AAA 30 190 00546 01) an American Arbitration Association ("AAA") panel found that Respondent had violated the IAAF anti-doping rules by testing positive for the stimulant amphetamine through a urine sample provided in competition on June 16, 2001. The prior panel found that amphetamine was a constituent of the medication Adderall taken by Respondent for treatment of his ADD. Subsequently, the fact of Respondent's first doping offense was confirmed by the IAAF, which acted to reduce the period of his ineligibility by granting him early reinstatement.

The instant case involves the Respondent's second doping offense. On April 22, 2006, Respondent provided an in competition urine sample which tested positive for synthetic testosterone.

The IAAF Anti-Doping Rules ("IAAF ADR") provide that with the exception of "specified substances" the standard period of ineligibility for a second anti-doping rule

GATLIN v. UNITED STATES ANTI-DOPING AGENCY INC    Doc. 29 Att. 3

violation involving a prohibited substance is "ineligibility for life." IAAF ADR 40.1(a). Neither amphetamine, nor testosterone is a "specified substance." Accordingly, the presumptive period of ineligibility for Respondent's second anti-doping rule violation is ineligibility for life. However, the IAAF Anti-Doping Rules also provide that in cases of exceptional circumstances "[i]f the otherwise applicable period [of ineligibility] is a lifetime, the reduced period under this Rule may be no less than 8 years." IAAF ADR 40.3.

On August 16, 2006, the Respondent and USADA entered into a stipulation which controls in these proceedings. In that stipulation the parties agreed that Respondent had committed "a doping offense in violation of the WADA Code and IAAF Rules" as a result of the presence of "testosterone or its precursors in both the A and B bottles of USADA specimen number 496040[.]" Stipulation, ¶ 8. The parties also agreed that the Respondent's "period of ineligibility will be a maximum of eight (8) years[.]" Stipulation, ¶ 9. Although the parties agreed that on appeal that the IAAF, WADA or any other entity could seek a period of ineligibility greater than eight (8) years, the stipulation provides that in such case Respondent would have the right to assert any defenses including "science-related arguments" that were otherwise bargained away in the stipulation. Stipulation, ¶ 15.

While admitting that he had committed a second doping offense, in the stipulation Respondent reserved the right to argue for a reduction of his period of ineligibility pursuant to the concept of "exceptional circumstances." Stipulation, ¶ 10. In the stipulation USADA "expressly acknowledge[d] and agree[d] that the maximum penalty of eight years agreed to by the parties <u>does</u> take into account the facts and circumstances

2

surrounding Mr. Gatlin's [prior] positive test as reflected in *USADA v. Gatlin* (AAA 30 190 00546 01), but <u>does not</u> take into account any assistance that Mr. Gatlin may provide to USADA, the IAAF, WADA or any other entity, including the United States government, engaged in the investigation of anti-doping rule violations by athletes, coaches or others[.]" Stipulation, ¶ 13 (emphasis added).

At a hearing held in Atlanta, Georgia on July 30-31, 2007, and concluded by telephone on August 1, 2007, the Panel heard the parties' evidence concerning all remaining issues in the case. Following the hearing, the Panel requested that the parties simultaneously submit briefs directed at the following three issues:

1. Whether it is appropriate for the Panel to evaluate the fault level of the first offence;

2. Any arguments regarding fault in the first case, including, but not limited to, whether fault was found, and whether the ADA is or should be applicable thereto; and

3. Other arguments which the parties may consider to be appropriate to the issues.

USADA submits this brief in response to the Panel's request.

## II. SUMMARY OF USADA'S ARGUMENT

In the parties' stipulation USADA has already accounted for the nature of Respondent's first doping offense by agreeing that the maximum sanction to be faced by Respondent in this proceeding will be a period of eight years ineligibility rather than the lifetime ban provided for in IAAF ADR 40.1(a). Therefore, the nature of the first offense cannot be considered by this Panel to further reduce Respondent's period of ineligibility as to do so would constitute a double reduction based upon the same circumstances.

In the event that the Panel were to disregard the parties' agreement that Respondent should only be subject to a eight year period of ineligibility and were to consider the nature of the Respondent's first offense to determine whether it involved exceptional circumstances (i.e., no fault or negligence or no significant fault or negligence) then the Panel must first determine whether exceptional circumstances "may" exist pursuant to IAAF ADR 38.14. If this Panel were to determine that exceptional circumstances may exist in relation to the first offense then it is this Panel's duty pursuant to IAAF ADR 38.16 to refer the matter to the IAAF Doping Review Board for consideration of the circumstances of the first offense. It is then the responsibility of the IAAF Doping Review Board to "make a determination on whether there are exceptional circumstances in the case and, if so, into which category they fall, i.e., whether the exceptional circumstances demonstrate no fault or no negligence on the athlete's part . . . or no significant fault or no significant negligence[.]" IAAF ADR 38.17.

Under no circumstances is it appropriate under the applicable IAAF Anti-Doping Rules for this Panel to evaluate the fault level of the first offense.

### III. WHETHER IT IS APPROPRIATE FOR THE PANEL TO EVALUATE THE FAULT LEVEL OF THE FIRST OFFENSE?

1. Under the circumstances of this case the fault level of the first offense should <u>not</u> be taken into account by the Panel because the fault level was previously taken into account by the parties in their stipulation, whereby USADA agreed that Respondent would face only a maximum eight year period of ineligibility rather than a lifetime ban. Respondent's 2001 amphetamine offense is a first offense and did not

4

involve a "specified substance."[1] Pursuant to § 10.2 of the Code a second violation where both violations involve "hard substances" (i.e., a substance such as an amphetamine or steroid) generally results in lifetime ineligibility. However, where one of the offenses involves "no significant fault or negligence" and the applicable period of ineligibility is a lifetime offense then the period of ineligibility is 8 years. § 10.5.2.

As explained above, USADA stipulated that Respondent's "period of ineligibility will be a maximum of eight (8) years[.]" Stipulation ¶ 9. The Stipulation provides that "USADA expressly acknowledges and agrees that *the maximum penalty of eight years agreed to by the parties does take into account the facts and circumstances surrounding Mr. Gatlin's positive test as reflected in USADA v. Gatlin (AAA 30 190 00546 01)*, but does not take into account any assistance that Mr. Gatlin may provide to USADA, the IAAF, WADA or any other entity, including the United States government, engaged in the investigation of anti-doping rule violations by athletes, coaches, or others." Stipulation ¶ 13 (emphasis added).

Thus, Respondent has already by agreement received the benefit of USADA's acknowledgment that the prior offense involved no significant fault or negligence. If the Panel were to take into account (for a second time) the fault level of the Respondent in considering the first offense it would reshape the parties' bargain and allow Respondent to avoid a material aspect of his agreement with USADA. Panel consideration of the fault level of first offense would thereby in essence result in double counting for the Respondent because the fault level of the first offense was already considered by

---

[1] That is, a substance identified by WADA as to which lesser sanctions apply. Neither amphetamines nor steroids have ever been considered specified substances.

5

USADA in agreeing that Respondent would only face at maximum an eight year period of ineligibility and not a lifetime ban in this proceeding.

2. Pursuant to IAAF Rule 40.1(a) the base sanction for a second anti-doping rule violation, where neither violation involved a "specified substance," is "ineligibility for life." Under the IAAF's ADR the presumptive sanction of ineligibility for life can only be avoided if "exceptional circumstances" exist in relation to one or both offenses. Further, as set forth in the IAAF ADR "exceptional circumstances" means that either there is "no fault or no negligence on the athlete's part" or "no significant fault or no significant negligence" on the part of the athlete. IAAF ADR 38.17.

The consideration of exceptional circumstances is not the duty of this Panel under the IAAF ADR. Rather, this Panel's inquiry is limited to "whether, in its view, the circumstances in the athlete's case may be exceptional." IAAF ADR 38.14. If exceptional circumstances may exist then the question of exceptional circumstances is to be referred to the IAAF Doping Review Board to "make a determination on whether there are exceptional circumstances in the case and, if so, into which category they fall, i.e., whether the exceptional circumstances demonstrate no fault or no negligence on the athlete's part ... or no significant fault or no significant negligence[.]" IAAF ADR 38.17. Thus, the IAAF ADRs do not give his Panel the discretion to evaluate the fault level of the first offense.

3. Further, as a general matter even if the IAAF ADRs permitted the Panel to consider the fault level of the first offense (which they do not) there exist strong reasons of fairness and uniformity which should preclude this Panel from retrying (as opposed to simply considering the question on the basis of the written decision of the prior panel)

any issue regarding the degree of fault found by the earlier panel. By "retrying" USADA is referring to any effort to explain, supplement or go behind the written decision of the first panel. To do so, would constitute an improper collateral attack on the determination of the first panel. Such a collateral attack is inappropriate for several reasons, including:

    a.    Permitting a party in arbitration proceedings to attempt through the introduction of new evidence to supplement a prior arbitration decision or to retry an issue that was, or could have been, decided in a prior arbitration proceeding will unnecessarily complicate and multiply proceedings, contrary to the nature and intent of arbitration which is to provide a streamlined dispute resolution procees;

    b.    Attempting to supplement the record of a prior proceeding or to "investigate" the basis for a prior proceeding is inherently unreliable as memories fade, documents are lost, live witness testimony that was not transcribed cannot be reliably reproduced and the circumstances of the first case can never be precisely recreated;

    c.    The parties to a prior concluded arbitration proceeding have a right to expect that the prior decision is final and should not have to be concerned that it is subject to change or retrying in a second proceeding; and

    d.    In this case the prospect of going outside the written decision of the first panel presents the additional complication that a member of the panel hearing the second arbitration was also a member of the first panel. Consequently, the danger exists that a single arbitrator's view of the decision of the first panel could be given undue weight because he was a witness to the prior proceeding.

For each of the foregoing reasons, USADA submits that the Panel should not take any additional evidence concerning what was or may have been presented to the first

arbitration panel but should apply the parties' stipulation or alternatively refer the matter to the IAAF Doping Review Board. Under no circumstances should the Panel engage in its own unauthorized inquiry into the circumstances of the first offense.[2]

## IV. ARGUMENTS REGARDING FAULT IN THE FIRST CASE

While the AAA panel's written decision in the first case contains language from which a degree of fault may be inferred, such as that Respondent made a "mistake ... in not raising his medical condition for a review with the appropriate authorities before the race, instead of after it,"[3] the IAAF Anti-Doping Rules from that 2001 time frame reflect that the question of Respondent's fault was not squarely at issue before the first panel. Rather, the IAAF Anti-Doping Rules provided for a minimum penalty (in the case of amphetamines two years) for the use of prohibited substances. In order for fault to be considered and the sanction to be reduced the IAAF rules provided that the athlete could apply to the IAAF Council for consideration of "exceptional circumstances" and to seek "re-instatement before the IAAF's period of ineligibility has expired." IAAF Anti-Doping Rule (2001) 60.8.[4] Thus, Respondent's degree of fault could not be, and was not, squarely considered by the AAA panel hearing his first case but, rather, was considered by the IAAF Council when Respondent applied for reinstatement.

---

[2] Likewise, the Americans with Disabilities Act ("ADA") is entirely irrelevant to any issue to be decided by this Panel. There is no argument that Respondent had a disability for which it was appropriate to take *testosterone*. Thus, there is no ADA issue pertaining to the instant offense.

As for the first offense involving the use of an amphetamine, the first panel's decision does not suggest that Respondent's sanction in any respect ran counter to the ADA. Certainly, if any viable ADA claim existed the time for raising it was in 2001 in defense of the first offense. It would be completely inappropriate for this Panel, acting some 6 years later, to attempt to resurrect ADA issues such as whether the ADA applied to Respondent and to any party to the first offense, whether Respondent was a "qualified person with a disability," whether his disability was "reasonably accommodated" and whether any accommodation proposed by Respondent would "fundamentally alter" the nature of the game.

[3] AAA Panel Decision May 1, 2002, p. 10.

[4] USADA understands that Respondent is submitting the 2001 IAAF Anti-Doping Rules to the Panel.

8

Thus, it would be inappropriate for this Panel to attempt to inquire into the degree of fault at issue in the first case. The determination of the degree of fault in the first case was considered, if at all, by the IAAF Council on Respondent's application for reinstatement. Moreover, as explained above, any further inquiry into the degree of fault attributable to the Respondent in relation to his first offense is reserved by the IAAF's current rules exclusively to the IAAF Doping Review Board.

In any case, it is apparent that under the rules in place in 2001 some degree of fault must be assigned to Respondent for his failure to abide by the IAAF rules in place regarding medical exemptions. First, under the IAAF Anti-Doping Rules in force in 2001 the use of an amphetamine in competition was clearly considered a serious offense. In 2001 the sanction for the use of an amphetamine in competition was a "minimum" two year period of ineligibility. IAAF Rule (2001) 60.2(a)(i). In contrast, the penalty for the use of other stimulants was only a public warning. IAAF Rule (2001) 60.2(b)(i).

Moreover, the IAAF rules in 2001 provided a procedure for application for exemption to use prohibited substances. IAAF Rule (2001) 55.5 provided that:

> An athlete may request the Anti-doping Commission to grant prior exemption allowing him to take a substance normally prohibited under IAAF Rules. Such an exemption will only be granted in cases of clear and compelling clinical need. Details of the procedure for such an application are to be found in the "Procedural Guidelines for Doping Control."

Thus, a defined process existed whereby Respondent could have sought prior approval to use his ADD medication. It is apparent that Respondent was at least negligent and perhaps even significantly negligent for failing to follow the defined medical exemption process. Under the IAAF's current rules any degree of negligence for Respondent's first anti-doping rule violation would make him subject to a lifetime period

9

of ineligibility for his second anti-doping rule violation. IAAF ADR 40.1(a)(ii). Accordingly, there is no merit to the contention that Respondent bore no fault for his first anti-doping rule violation.

## V. THE PUERTA CASE REFLECTS THAT THE BASE SANCTION OF EIGHT YEARS SET FORTH IN THE PARTIES' STIPULATION IS FAIR, APPROPRIATE AND CONSISTENT WITH THE CODE.[5]

In his pre-hearing briefing Respondent placed significant weight on the relatively recent decision of a CAS Panel in *Purerta v. ITF*, CAS 2006/A/1025. The reasoning of the *Puerta* panel begins with the principle that CAS panels are required to strictly adhere to the express terms of the World Anti-Doping Code whenever possible. The *Purerta* panel expressly affirmed that it made "no apology for repeating that in its view the [Code] provides a proportionate and just result in all but the very rare case." *Puerta*, ¶ 11.7.34.

The *Puerta* panel strongly counseled against taking liberties with the Code, finding that it did not have the authority to exercise any discretion to vary the penalties found in the Code where no "lacuna" (i.e., situation which the drafters did not contemplate) in the Code's provisions was found. Indeed, in language that directly undermines many of the arguments put forth by Respondent in this case the *Puerta* panel said:

> The Panel does not consider that to fill the gap or lacuna that it believes to exist in the [Code] requires it, or any tribunal, to exercise a general discretion. Although *the [Code]* does provide for tribunals to exercise a discretion in certain, limited, circumstances, such as whether to eliminate or reduce a sanction on the basis of No Fault or Negligence or No Significant Fault or Negligence or whether to grant a TUE (Article 13.3) or whether to treat two offences as one offence (Article 10.6), it *does not*

---

[5] As explained herein, this base sanction is not intended to account for any further potential reduction based on substantial assistance.

10

> *bestow upon tribunals a general discretion. Indeed, the existence of such a general discretion would be inimical to the [Code], which seeks to achieve consistency and certainty.* The Panel does not believe that such a discretion exists, and would not welcome its existence.

*Puerta*, ¶ 11.7.25 (emphasis added). Thus, the *Puerta* case undercuts arguments for the exercise of sweeping discretion and the invalidation of express provisions of the Code. As explained herein, the Code specifically covers how Respondent's prior doping offense should be treated. Therefore, the *Puerta* case does not justify a departure from the Code provisions indicating that the base level for Respondent's second offense should be a period of eight (8) years ineligibility.

In the *Puerta* case the athlete had previously tested positive for clenbuterol, an asthma medication which he had taken for an asthma attack but without obtaining a prescription, and his period of ineligibility for that prior offense had been reduced to nine (9) months under rules in force prior to the adoption of the Code. *Puerta*, ¶¶ 2.8, 2.9, 11.6.4. Clenbuterol, a beta-2 agonist, is a "specified substance" under the current Code meaning that it is particularly susceptible to an unintentional anti-doping rule violation and the penalty for a first offense can be as little as a public warning and disqualification of results from the competition in which the athlete tested positive. Thus, Mr. Puerta's first offense is classified as less serious under the Code than a first time use of amphetamine as in Mr. Gatlin's case.

In the case of Mr. Puerta's second offense he was able to very precisely prove how he had ingested a trace amount of etilefrine, a stimulant on the WADA Prohibited List. The stimulant was contained in his wife's medication and Mr. Puerta established that after he had left the cafeteria during a competition his wife had used a glass to dissolve her medication, drank the contents of the glass and left the cafeteria. Mr.

11

Puerta's brother remained at the table and a few minutes later Mr. Puerta returned to the table, sat back down and ended up putting water in the glass and drinking it. As a result, a trace amount of the stimulant showed up in Mr. Puerta's urine sample. The panel found that Mr. Puerta was negligent but concluded that he did not have significant fault or negligence. Thus, the *Puerta* panel was confronted with a situation where:

(1) the first offense was for a "specified substance;"

(2) the first offense involved no significant fault or negligence,

(3) the athlete proved how the second substance was ingested, and

(4) the second offense also involved no significant fault or negligence.

In contrast, in Mr. Gatlin's case neither offense involved a specified substance; rather, both offenses involved hard doping substances identified in the prohibited list. Moreover, in Mr. Gatlin's case he was unable to prove how the testosterone was ingested, therefore, he is unable to demonstrate that his second offense involved no significant fault or negligence.

The *Puerta* panel noted that the factual scenario before it was not precisely covered by section 10.5.2 of the Code which provides that the lifetime ban for a second offense under the Code can be reduced to 8 years when *one* of the offenses involves no significant fault or negligence. According to the *Puerta* panel Section 10.5.2 does not provide for the proper penalty when *both* of the offenses involve no significant fault or negligence and where neither offense involved a steroid. This was the "lacuna" or gap found by the *Puerta* panel and the panel ultimately concluded that a two year period of ineligibility was appropriate.

12

A significant difference between *Puerta* and the instant case is the fact that in *Puerta* the athlete was able to precisely identify the source of the positive test result. Where as here, the athlete is *unable* to identify the source of the second prohibited substance there is no gap in the Code language to be filled and an 8 year period of ineligibility is appropriate.

Moreover, the fact that the second substance involved in Respondent's case was testosterone—a steroid—*and* that neither the testosterone involved in his second offense nor the amphetamine involved in his second offense is a "specified substance" is significant. The fact that the substance at issue in the second case was not a hard doping substance such as a steroid was so important to the *Puerta* panel that the panel observed that a gap would not exist at all if the second offense had been for a steroid. The *Puerta* panel said "the Panel would suggest that [the lacuna] *would not be found to exist*, if, in respect to one of the breaches, an athlete had been found to have committed a serious drug offence, for example, by the use of anabolic steroids, EPO, THG, HGH or the like, or by the use of a prohibited method." *Puerta*, ¶ 11.7.26. In other words, if the second offense had involved as steroid, as in Respondent's case, the Panel would have found no gap and would have imposed the 8 year period of ineligibility found in 10.5.2. Thus, the reasoning of the *Puerta* case fully supports the 8 year period of ineligibility requested by USADA in this case.

Moreover, in the *Puerta* case the Respondent's first offense involved a "specified substance." Specified substances are treated far more leniently under the Code and unlike other prohibited substances can justify a sanction of as little as a public warning. The fact that the athlete's first offense involved a specified substance is an additional

13

factor warranting leniency under the terms of the Code that was present in the *Puerta* case but is not present in the instant case involving Respondent.

In Respondent's case there simply is no "lacuna." The Code clearly specifies that the appropriate sanction is an 8 year period of ineligibility. "[I]n all but the very rarest of cases the sanction stipulated by the [Code] is just and proportionate." *Puerta*, ¶ 11.7.27. This is not a rare case. Respondent did not prove circumstances that would permit a reduction of the 8 year sanction stipulated by the Code.[6] Accordingly, a base sanction of eight years is appropriate under the Code.[7]

## VI. CONCLUSION

As explained above, USADA gave credit to Respondent for the nature of his first doping offense by agreeing to a maximum eight year period of ineligibility and tying that agreement specifically to the nature of Respondent's first anti-doping rule violation. There is no reason for the Panel to set aside the parties' stipulation and to consider the Respondent's degree of fault in relation to the first offense. However, should the Panel choose to do so—thereby potentially undermining the protection afforded to Respondent who is currently facing a maximum penalty of eight years in this proceeding—and conclude that exceptional circumstances (i.e., a lack of fault or a low degree of fault) may exist in relation to the first offense then this Panel must refer the question of the degree of fault to the IAAF Doping Review Board for consideration.

---

[6] This conclusion is confirmed by the proposed revisions to the Code. Under the proposed Code amendments version 2.0, the sanction imposed would be from 6 to 8 years.

[7] USADA acknowledges as set forth in paragraph 13 of the Stipulation that this base penalty does not take into account Mr. Gatlin's substantial assistance argument. If the Panel finds that Mr. Gatlin may have provided substantial assistance then this question should be referred to the IAAF Doping Review Board pursuant to IAAF ADR 38.16. In the event the IAAF Doping Review Board concurs and the matter is returned to this Panel for a final decision on the length of the reduction to his period of ineligibility then Mr. Gatlin would be entitled to a further reduction of not "less than half the minimum period of ineligibility otherwise applicable." IAAF ADR 40.4. Thus, Mr. Gatlin's maximum reduction could be four years, leaving him with a four period of ineligibility commencing on July 25, 2006.

14

Dated this 15th day of October, 2007.

United States Anti-Doping Agency

William Bock, III
General Counsel
1330 Quail Lake Loop, Suite 260
Colorado Springs, CO 80906
Telephone: 719.785.2061
Fax: 719.785.2028

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of October, 2007, a true and correct copy of the foregoing was served via electronic mail as follows:

Edward T. Colbert, Esq.
Kenyon & Kenyon
1500 K. Street, NW, Suite 700
Washington, DC 20005
ecolbert@kenyon.com

Samuel David Cheris, Esq.
11385 East Alabama Circle
Aurora, CO 80012
sam.cheris2@relera.com

Christopher L. Campbell, Esq.
Chapman & Intrieri, LLP
2236 Mariner Square Drive, Suite 300
Alameda, CA 94501
ccampbell@chapmanandintrieri.com

John P. Collins, Esq.
Collins & Collins
8 South Michigan Avenue, Suite 1414
Chicago, IL 60603
john.collins@collinsandcollins.com