BEFORE THE AMERICAN ARBITRATION ASSOCIATION

North American Court of Arbitration for Sport Panel

| | |
|---|---|
| United States Anti-Doping Agency, ) | |
| Claimant, ) | |
| v. ) | AAA No. 30 190 00170 07 |
| Justin Gatlin, ) | |
| Respondent. ) | |

## UNITED STATES ANTI-DOPING AGENCY'S REPLY BRIEF

The United States Anti-Doping Agency ("USADA"), by counsel, respectfully submits its Reply Brief on issues related to the Respondent's first doping offense.

I. **The Panel Should Reject Respondent's Invitation to Speculate About What the 2001 Arbitration Panel "Would Have" Decided.**

Respondent's *Memorandum Regarding the Issue of "Fault" in the 2001 Arbitration* submitted last week in this matter ("*Respondent's Memorandum*" or "*Memorandum*") well illustrates the reasons that the question of Respondent's fault for his first doping offense cannot be considered by this Panel in deciding whether Respondent has committed a second doping offense. At its core *Respondent's Memorandum* constitutes a seventeen (17) page effort to rewrite history. While admitting that the first panel had no occasion to consider the concepts of "No Fault" or "No Significant Fault or Negligance," (*Memorandum* at 3), Respondent nonetheless inconsistently argues later and throughout the remainder of his *Memorandum* that "the panel in the 2001 Arbitration *believed* that Justin's positive test result constituted 'No Fault or Negligence' as those terms are defined under the WADA Code." *Memorandum* at 6 (emphasis added). Of course, any conclusion that the first panel attributed a precise degree of fault in relation to Respondent's first doping offense is fiction.

GATLIN v. UNITED STATES ANTI-DOPING AGENCY INC    Doc. 29 Att. 6

Dockets.Justia.com

Lacking a clear determination from the first panel on the question of the degree of Respondent's fault, Respondent nonetheless seeks to pull together disparate quotes, arguments and theories, and to interject numerous alleged facts and allegations outside the record of the first hearing, in order to reach a conclusion about what the Panel *would have* (*in Respondent's opinion*) ruled on an issue that was never considered. Thus, throughout his Memorandum Respondent invites this Panel to consider what the first panel "would have," "could have" or "should" have considered or done. *Memorandum* at 2 ("would have"), 5 ("would have"), 11 ("could have"), 13 ("could have") ("should be"), 14 ("may have"), 16 ("would have"). This Panel should not embark upon a course of attempting to divine meaning from the first Panel's opinion on an issue that was not squarely before the Panel.

## II. The Idea that Respondent Could Be Assigned No Fault and No Penalty Enhancement for His First Doping Offense is Meritless.

No rational view of the first panel's decision can lead to the view that the Respondent's actions in 2001 were judged to be entirely without fault. First, both the Respondent and the 2001 panel clearly understood that a decision to impose a first doping offense upon Respondent would have the consequence under the rules that a second offense must subject Respondent to a potential lifetime ban. The IAAF rules at the time of the first offense plainly provided that the consequence of a second offense by Respondent would be a lifetime ban. *See* IAAF ADR 60.2(a)(ii). There was no exception in 2001 that permitted an athlete to reduce this penalty enhancement provision due to circumstances surrounding the first offense. Following his 2001 offense Respondent (and practically all the world) clearly understood that a further doping violation by Respondent would result in a lifetime ban.[1]

---

[1] *Gatlin going great guns in the fast lane; America's latest sprint sensation looks for gold in Birmingham*, London Daily Mail, March 14, 2002, ("But if he tests positive again he will face not a two-year ban but one for life.") USADA Exh. 25, USADA 0257; *Sprinter took early ban in stride*, London Daily Telegraph, July 31, 2006, ("The International Association of Athletics Federations took note of Gatlin's condition and reduced his ban, with the warning that another breach of the anti-doping rules would be punishable by a life ban.") USADA Exh. 25, USADA 0259; *Doping charge stuns Gatlin*, Raleigh News & Observer, July 30, 2006, ("'That experience made me even

2

Respondent, therefore, clearly knew and understood when he submitted his case to the AAA panel in 2001 that a consequence of his admission that he had committed a first anti-doping rule violation would be that a subsequent offense would subject him to a lifetime ban. Had the Respondent believed the penalty enhancement provision was unfair given the circumstances of his first offense he could have raised that argument in 2001. Yet, Respondent did not contend that the penalty enhancement provision was unfair or disproportionate. Therefore, Respondent waived any such argument regarding what was known in 2001 to be a consequence for his first doping offense.

Further, the 2001 panel evidently understood (it was clear on the face of the IAAF Rules) that even if Respondent was granted reinstatement for his first offense that a consequence that would necessarily follow from that first violation was lifetime ineligibility upon a second offense. Despite knowing that a consequence of Respondent's first offense was a penalty enhancement for a second offense the 2001 panel only retained jurisdiction over the case in the event that the IAAF failed to grant early reinstatement. Therefore, as a matter of law, it must be presumed that the 2001 panel considered that subjecting Respondent to a lifetime ban in the event of a second offense was not a disproportionate or unfair consequence of Respondent's first offense.

Second, Respondent's concept that his first offense should be completely ignored in establishing the period of ineligibility for his second offense is inconsistent with the current IAAF Anti-Doping Rules which recognize that a primary reason that penalties should be enhanced for a second offense is that a first offense provides individualized notice of an athlete's obligations under the IAAF's Rules. Current IAAF ADR 40.6 provides that an athlete can only be charged with a second doping offense if the athlete has "received notice, or after the Member

---

more vigilant,' Gatlin said in his statement, 'to make certain that I not come into contact with any banned substance for any reason whatsoever, because any additional anti-doping rule offense could mean a lifetime ban from the sport that I love.'"), USADA Exh. 25, USADA 0267.

3

made a reasonable attempt to give notice, of the first or previous violation." Thus, it is evident that at least one of the IAAF's rationales for imposing an enhanced sanction for a second offense is that a repeat offender has received individualized notice of his responsibilities under the IAAF's Rules, thereby justifying a more significant sanction for a second offense.

As indicated in current IAAF ADR 40.6, penalty enhancement for a second offense is not conditioned solely upon consideration of the fault level of the two offenses. Rather, a second offense is sanctioned at a higher level than a first offense in part because the first offense is presumed to put the athlete on more notice of his duties to strictly adhere to the IAAF's Rules. There is no dispute that Respondent's first offense put him on notice that a second offense would result in an enhanced sanction, up to and including a lifetime ban. Consequently, it would be inconsistent with the IAAF Rules to disregard entirely the first offense in imposing a sanction upon Respondent for his second violation.

Third, Respondent has failed to cite any authority for his proposition that his first anti-doping rule violation can be entirely disregarded for purposes of determining his period of ineligibility. Respondent has cited no case voiding any liability for a doping offense on the ground that the athlete was insufficiently advised regarding his need to seek a therapeutic use exemption. Rather, every case submitted to the Panel suggests that at least some fault must be attributed to the athlete when the athlete has failed to submit a therapeutic use exemption due to the athlete's ignorance of sport anti-doping rules.[2] Indeed, in the *Puerta* case so heavily relied upon by the Respondent the panel did consider the first offense to enhance the penalty for the second violation. Moreover, as explained in USADA's prior briefs, the *Puerta* panel suggested that a penalty reduction based on the nature of the first offense would never be appropriate where, as here, the second offense involved the use of an anabolic steroid. The Respondent has

---

[2] *See also USADA and Hartman*, AAA 30 190 00900 05 (June 19, 2006) (refusing to reduce sanction based on alleged medical use of testosterone because despite what he may have been told by his physician the athlete was responsible for knowing what substances were banned).

4

also failed to identify any case in which a CAS panel has retroactively and collaterally invalidated a prior doping offense in a subsequent doping proceeding.

III. **Respondent Ignores that the IAAF Rules Require Questions of Exceptional Circumstances to be Resolved in the First Instance by the IAAF Anti-Doping Review Board.**

Finally, as explained in USADA's opening brief, under the IAAF Rules questions of exceptional circumstances are resolved by the IAAF's Doping Review Board. Respondent completely ignores this procedural requirement. This Panel simply may not, consistent with the rules, accept Respondent's invitation to assign the degree of fault relative to his first offense as that degree of fault was not previously established either by the first hearing panel or the IAAF in connection with the first case. Respondent's effort to try in this proceeding the issue of his degree of fault for his first offense is in essence an effort to set aside the parties' stipulation which reduced to eight (8) years the potential period of ineligibility faced by Respondent in consideration of the circumstances surrounding Respondent's first offense. The Panel should not allow Respondent to circumvent the stipulation. Alternatively, the Panel should refer this matter to the IAAF Doping Review Board if it considers that exceptional circumstances may exist.

Dated this 22nd day of October, 2007.

United States Anti-Doping Agency

William Bock, III
General Counsel
1330 Quail Lake Loop, Suite 260
Colorado Springs, CO 80906
Telephone: 719.785.2061
Fax: 719.785.2028

5

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of October, 2007, a true and correct copy of the foregoing was served via electronic mail as follows:

Edward T. Colbert, Esq.
Kenyon & Kenyon
1500 K. Street, NW, Suite 700
Washington, DC 20005
ecolbert@kenyon.com

Samuel David Cheris, Esq.
11385 East Alabama Circle
Aurora, CO 80012
sam.cheris2@relera.com

Christopher L. Campbell, Esq.
Chapman & Intrieri, LLP
2236 Mariner Square Drive, Suite 300
Alameda, CA 94501
ccampbell@chapmanandintrieri.com

John P. Collins, Esq.
Collins & Collins
8 South Michigan Avenue, Suite 1414
Chicago, IL 60603
john.collins@collinsandcollins.com