BEFORE THE AMERICAN ARBITRATION ASSOCIATION
North American Court of Arbitration for Sport Panel

| | |
|---|---|
| Justin Gatlin ) | |
| ) | |
| Claimant, ) | |
| ) | |
| v. ) | AAA No. 30 190 00170 07 |
| ) | |
| United States Anti-Doping Agency ) | |
| ) | |
| Respondent. ) | |

## JUSTIN GATLIN'S REPLY TO USADA'S POST-HEARING BRIEF

Claimant, Justin Gatlin, by and through his attorneys, Collins & Collins, hereby submits his reply to the post-hearing brief filled by USADA in this matter and states as follows:

### I. SUMMARY

In its post-hearing brief, USADA makes a number of arguments that are simply not supported by the record or CAS precedent. Contrary to USADA's assertions in its Post-hearing brief, as more fully set forth below: (i) Justin Gatlin did *not* waive his rights with respect to 2001 Arbitration and this Panel may consider the facts and circumstances of that case; (ii) the IAAF has already determined that the 2001 Arbitration involved "exceptional circumstances" so this Panel may consider the import of that finding without re-submitting the matter to the IAAF; and (iii) an 8-year sanction against Justin would neither be just, nor fair, nor proportionate. In addition, pursuant to the doctrine of *lex mitor*, this Panel should apply those provisions of the WADA Code 3.0 that are more favorable to Justin.

GATLIN v. UNITED STATES ANTI-DOPING AGENCY INC    Doc. 29 Att. 7

Dockets.Justia.com

Thus for the reasons more fully set forth below and as set forth in Justin's Gatlin's Pre-Hearing Brief, Pre-Hearing Reply, and as set forth in hearing on this matter, Justin Gatlin respectfully requests that the Panel not consider the 2001 Arbitration as a "violation" for purposes of determining any period of ineligibility, if any, in this matter.

## II. JUSTIN GATLIN HAS NOT WAIVED RIGHTS WITH RESPECT TO ISSUES RELATED TO 2001 ARBITRATION; THIS PANEL MUST CONSIDER SPECIFIC FACTS AND CIRCUMSTANCES FROM 2001 ARBITRATION

As its primary argument in its post-hearing brief, USADA rehashes its pre-hearing attempts to parse the parties August 16, 2006 stipulation (the "August 16, 2006 Stipulation") to argue that Justin Gatlin stipulated away his rights with respect to his 2001 Arbitration. USADA's attempts to focus on certain isolated provisions of the August 16, 2006 Stipulation while ignoring others remain unpersuasive. As extensively noted in Section V, of Justin Gatlin's Reply to USADA's Pre-Hearing Brief (pp. 4-6), Justin Gatlin never waived his rights with respect to the 2001 Arbitration. In the August 16, 2006 Stipulation, Justin stipulated away only his rights to challenge the "science" and nothing more. That is why paragraph 15 of the August 16, 2006 Stipulation specifically noted Justin's right to raise science-related arguments on appeal. All of the provisions to which USADA refers, are unilateral statements by USADA that it (USADA) had considered the facts and circumstances of the 2001 Arbitration. There is no statement where Justin stated that he would not make such arguments. There are statements recognizing that USADA was not obligated to request a sanction of less than 8-years. Clearly, no one has caused USADA to violate that provision.

Ironically, in its post-hearing brief, USADA repeatedly asserts that considering Justin's 2001 Arbitration in this case would constitute "double" counting. It is ironic

2

because it is USADA that is attempting the "double" counting by claiming that Justin waived *both* his rights to challenge the science and his rights to raise any issues with respect to his 2001 Arbitration. Apparently, it is USADA position that Justin traded both of these rights for the "benefit" of having his maximum exposure altered from 'life" to "8-years" – functional equivalents as recognized by the *Puerta* CAS panel. In other words, it is apparently USADA's positions that Justin bargained away all of these rights for the proverbial trade of exchanging "6 for half-a-dozen." That simply is not the case. While Justin waived his right to challenge the science, he did not forego any of his rights related to the 2001 Arbitration. As a result, this Panel must consider the specific facts and circumstances of that case if it is to fulfill its obligations to provide for a fair, just and proportionate result in this matter.[1]

USADA's attempts to assert that this Panel's consideration of the facts and circumstances of the first offense are attempts to "retry" that matter are unwarranted. This Panel is doing nothing more than any other tribunal seeks to do when potentially instituting a sanction. This Panel is charged with insuring a just and proportionate result. To fulfill that mandate, this Panel must consider the facts and circumstances surrounding the 2001 Arbitration. Other CAS panels have done the same and the drafters of the new WADA Code have recognized the propriety of these CAS decisions by incorporating them into the new revised WADA Code 3.0.

---

[1] Justin Gatlin finds USADA's efforts to remove all discretion from this Panel inappropriate. Numerous CAS cases have recognized hearing panels absolute right to promote natural justice. Under no circumstance is – nor should – an anti-doping agency permitted to be judge, jury and executioner. There would be no reason for hearings if that were the case.

## III. IAAF HAS ALREADY DETERMINED THAT 2001 ARBITRATION INVOLVED "EXCEPTIONAL CIRCUMSTANCES"

USADA further argues in its post-hearing brief that this Panel lacks authority to determine whether "exceptional circumstances" existed in the 2001 Arbitration. It argues that the IAAF and not this Panel should make that determination. USADA's argument, however, fails to recognize that the IAAF has already determined that "exceptional circumstances" existed in that case. The IAAF made that decision in 2002 when it "reinstated" Justin by essentially giving him a public warning – i.e., immediate reinstatement when Justin's only "penalty" had been his voluntary withdrawal.

Thus, there is no reason for this Panel to refer anything with respect to the 2001 Arbitration to the IAAF. All this Panel is being requested to do is determine the import of the IAAF's determination that "exceptional circumstances" existed in that case. In other words, this Panel is doing substantially the same as what happens when the IAAF finds exceptional circumstances for providing substantial assistance. When that happens, the IAAF notifies the relevant tribunal that it has found "exceptional circumstances" exist and then that tribunal determines the athlete's sanction, if any. IAAF Rule 38.19.

As set forth in Justin's post-hearing brief, the specific facts ("exceptional circumstances" as concluded by IAAF), including Justin's age, inexperience, lack of notice, attempts to comply with the inadequate notice he received, his discontinuing use of his prescription medicine 3 days before the event, and his use of his prescription medicine to treat his properly diagnosed disability[2], all support a finding of "no fault or negligence" on his part.

---

[2] Justin Gatlin disagrees with USADA's position in its post-hearing brief that ADA does not apply to this case. As set forth in his post-hearing brief, Justin Gatlin believes that it

4

## IV. EIGHT-YEAR BAN IS NEITHER JUST NOR PROPORTIONATE

Lastly, USADA argues that under *Puerta* an 8-year sanction is appropriate here. USADA misinterprets *Puetra*. USADA wants this Panel to focus on the substance the athlete ingested rather than the athlete's intent and culpability. Such a focus would be severely misguided. The current CAS decisions, like *Puerta*, appropriately recognize that athletes can only control their own actions and not those of others. USADA's substance-based (as opposed to intent-based) rule would produces irreconcilable results.

For example, under USADA's rule changing chemical make-up of <u>*Mrs*</u>. Puerta's prescription medicine would change <u>*Mr.*</u> Puerta's sanction. In other words, under USADA's rule, if all of the facts and circumstances of the *Puerta* case were exactly the same except for the fact that his wife had had a different prescription medicine, say one including DHEA, then Mr. Puerta would receive a life penalty. How or why it was inadvertently ingested would be immaterial, trumped by the substance consumed. Such a result is logically indefensible.

Similarly, USADA's rule would be inappropriate in that it would incentivize saboteurs to use steroids instead of other substances to insure that their victims were punished most severely. Clearly, the rule is and must be based on the athlete's intent and not on factors outside the athlete's control – like the substance they unwittingly ingest.

<u>Justin Less Culpable Than Puerta</u>

In its post-hearing brief, USADA also mischaracterizes the nature of Justin's two positive drug tests in an effort to make them somehow appear more serious than those of Mr. Puerta. In doing so, however, USADA fails to note that Justin's first positive test

---

is appropriate for this Panel to consider the implications of the ADA and Rehabilitation Act when determining what effect to give the decision in the 2001 Arbritraion.

should not be considered since it involved no fault or negligence. As set forth in Justin Gatlin's pre-hearing brief, it is clear that Justin did everything he could to avoid competing while on his prescription medicine. Justin only took his medication to treat his disability and study for his mid-term exams. USADA and others only told him to stop taking his medication before competing and he did – 3 days before competing. No one was willing or able to tell him when to stop using his medication. To claim under those facts that Justin – the 19-year old, student with ADD competing in his first IAAF/USATF event – should know better than the international federation, national governing body and national anti-doping body is beyond callous and certainly not just, fair or proportionate.

Also, USADA's implication that Justin's use of his prescription medicine is a "hard" offense is objectionable. As the international panel of doctors concluded in the 2001 Arbitration, Justin's prescription medicine was proper treatment for his properly diagnosed disability. Moreover, its active ingredient, amphetamine is not banned out-of-competition. Thus, there was nothing wrong or inappropriate about Justin taking his medicine to study for his midterm exams as he did.

USADA also fails to note the numerous mitigating factors in Justin's case as well. For example, USADA fails to note Justin's numerous negative CIR tests and the truly aberrational nature of the April 22, 2006 positive test. USADA also fails to note the "exceptional circumstances" of Justin's voluntary undercover calls or that he was the *only* athlete to make undercover calls in the Balco investigation – even though unlike the others, Justin faced no criminal charges. Tr. at 287. Further, USADA fails to note the independent corroboration from Agent Novitzky that Justin did not knowingly use any

6

banned substance. Tr. at p. 296. ("I [Agent Novitsky] have not obtained any evidence of [Justin's] knowing receipt and use of any banned substances.")

For these reasons, it is clear that an 8-year sanction as advocated by USADA would *not* be just, fair or proportionate under the circumstances.

## V. WADA CODE 3.0 SHOULD BE APPLIED UNDER *LEX MITOR*

On October 15, 2007, WADA published the new WADA Code version 3.0 on its website. See http://www.wada-ama.org/rtecontent/document/WADA_Code_2007_3.0.pdf. This new version of the WADA Code, which has been fully vetted within WADA and which is to be adopted by WADA in the next few weeks, contains provisions that are beneficial to Justin. For example, Article 10.5.3 now provides for athletes to have their periods of ineligibility reduced by up to three-quarters of the otherwise applicable period of ineligibility. In other words, an athlete that is otherwise subject to a 6-year period of ineligibility could have his sanction reduced to 18 months under the new WADA Code 3.0 for providing substantial assistance.

The new WADA Code 3.0 also includes a new provision, Article 10.7, which addresses the lacuna noted in the *Puerta* case; namely, how to address the relative fault in a first offense when determining the range of sanction in a subsequent offense. Under this new provision, the worst-case scenario for Justin would be a potential sanction of 6-8 years, and not 8-years as advocated by USADA.

Also, the new WADA Code 3.0 specifically notes that youth and lack of experience are factors that a panel should properly consider when determining fault or negligence.

7

To the extent that Justin may be subject to any sanction in this case and that the application of any of these new provisions to Justin would result in his receiving a less restrictive sanction, then under the doctrine of *lex mitior* those provisions should be applied to Justin at this time.

## VI. CONCLUSION

For the reasons set forth above and in Justin Gatlin's post-hearing brief, pre-hearing brief and pre-hearing reply brief, and as set forth at the hearing on this matter, Justin Gatlin respectfully that the Hearing Panel find that (i) Justin Gatlin's conduct with respect to the 2001 Arbitration constituted "No Fault or Negligence" as those terms are defined by the WADA Code; (ii) that, as a result, his 2001 positive tests should not be consider a first doping offense and not used to enhance any penalty that may be assessed in this matter; and (iii) such other relief as the Panel deems appropriate under the circumstances.

Respectfully submitted,
COLLINS & COLLINS

John P. Collins

Attorneys for Claimant Justin Gatlin

John P. Collins
COLLINS & COLLINS
8 S. Michigan Ave., Ste. 1414
Chicago, IL 60603
312-201-8700

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of October, 2007, a true and correct copy of the foregoing **JUSTIN GATLIN'S RESPONSE TO USADA'S POST-HEARING BRIEF** was served via electronic mail as follows:

Edward T. Colbert, Esq.
Kenyon & Kenyon
1500 K. Street, NW, Suite 700
Washington, DC 2005
ecolbert@kenyon.com

Samuel David Cheris, Esq.
11385 East Alabama Circle
Aurora, CO 80012
sam.cheris2@relera.com

Christopher L. Campbell, Esq.
Chapman & Intrieri, LLP
2236 Mariner Square Drive, Suite 300
Alameda, CA 94501
ccampbell@chapmanandintrieri.com

Travis T. Tygart, CEO
USADA
1330 Quail Lake Loop, Suite 260
Colorado Springs, CO 80906
ttygart@usantidoping.org

William Bock, III, General Counsel
USADA
111 Monument Circle, Suite 900
Indianapolis, IN 46204
WB@kgrlaw.com