CAS 2008/A/1462

BEFORE THE COURT OF ARBITRATION FOR SPORT

BETWEEN:

INTERNATIONAL ASSOCIATION OF ATHLETICS FEDERATIONS ("IAAF")

Appellant

- and -

(1) USA TRACK AND FIELD ("USATF")

(2) MR JUSTIN GATLIN

Respondents

- and -

CAS 2008/A/1461

MR JUSTIN GATLIN

Appellant

-v-

UNITED STATES ANTI-DOPING AGENCY ("USADA")

Respondent

- and -
INTERNATIONAL ASSOCIATION OF ATHLETICS
FEDERATIONS ("IAAF")

Cross-Appellant

GATLIN v. UNITED STATES ANTI-DOPING AGENCY INC    Doc. 31 Att. 2

---

RESPONSE OF THE IAAF

AND SUPPORTING DOCUMENTS

---

Dockets.Justia.com

CAS 2008/A/1462

BEFORE THE COURT OF ARBITRATION FOR SPORT
BETWEEN:

  INTERNATIONAL ASSOCIATION OF ATHLETICS FEDERATIONS ("IAAF")

Appellant

- and -

  (1) USA TRACK AND FIELD ("USATF")
  (2) MR JUSTIN GATLIN

Respondents

- and -

CAS 2008/A/1461

  MR JUSTIN GATLIN

Appellant

-v-

  UNITED STATES ANTI-DOPING AGENCY ("USADA")

Respondent

-and-
INTERNATIONAL ASSOCIATION OF ATHLETICS
FEDERATIONS ("IAAF")

Cross-Appellant

---

## INDEX

---

## Pleadings

A. IAAF's Response Brief dated 16 May 2008

## Exhibits to the IAAF's Response Brief

1. Second Witness Statement of Mr Eugene Gulland dated 12 May 2008

2. *Aanes -v- FILA* CAS 2000/A/317

3. *C -v- FINA* CAS 95/141

4. 2006 USATF Governance Handbook

5. *ASADA -v- Marinov* CAS A1/2007

CAS 2008/A/1462

BEFORE THE COURT OF ARBITRATION FOR SPORT

BETWEEN:

INTERNATIONAL ASSOCIATION OF ATHLETICS FEDERATIONS ("IAAF")

Appellant

- and -

(1) USA TRACK AND FIELD ("USATF")

(2) MR JUSTIN GATLIN

Respondents

- and -

CAS 2008/A/1461

MR JUSTIN GATLIN

Appellant

-v-

UNITED STATES ANTI-DOPING AGENCY ("USADA")

Respondent

- and -

INTERNATIONAL ASSOCIATION OF ATHLETICS FEDERATIONS ("IAAF")

Cross-Appellant

---

RESPONSE OF THE IAAF TO THE REPLY BRIEF SUBMITTED
BY JUSTIN GATLIN ON 5 MAY 2008

---

## Introduction

1.  Under cover of letter from CAS dated 28 March 2008, the CAS Court Office gave the IAAF ten days to file a response to any Reply submitted by Mr Gatlin in the above reference. The IAAF would like to take the opportunity to reply to four issues raised in the Reply Brief of Mr Gatlin. These are:

    1.1  the 2001 positive result;

    1.2  the applicable rules;

1.3 proportionality;

1.4 the Americans with Disabilities Act.

2. The IAAF does not propose to deal line by line, contention by contention, with much of the unsupported argument submitted by Mr Gatlin in the Reply Brief. Where the IAAF does not deal with an issue in this response, the Panel can take it that the issue, unless expressly agreed, remains in dispute between the parties.

3. As much of the Reply Brief was taken up with further argument concerning Mr Gatlin's positive result in 2001, it is with this issue that the IAAF would propose to start.

**The 2001 Positive Result**

4. Much of Mr Gatlin's Reply Brief is concerned with an attempt to impugn the decision reached by the 2001 Panel, presumably having realised in the light of the IAAF's recital of the facts that it is hopeless to argue that it had not delivered any decision at all. However, before this Panel can even consider any questions going to the merits of that decision reached by the 2001 Panel, it would have to reject the IAAF's arguments:

    4.1 that the decision reached by the 2001 Panel in 2002 is a res judicata; and

    4.2 that Mr Gatlin had waived his right to review the decision reached by the 2001 Panel in 2002.

5. To this, the IAAF would propose to add a third threshold issue, which is that Mr Gatlin would have to establish that the common assumption of the parties as to the fact that he had been sanctioned did not amount to an estoppel by convention such as to debar him from arguing to the contrary in these proceedings. The IAAF will develop this argument on estoppel by convention below.

6. Unless these issues are decided in Mr Gatlin's favour, no question of the merits of the 2001 Panel's decision can arise. The simple position is that the 2001 Panel decided that Mr Gatlin had committed a first doping offence. It then imposed a two year period of ineligibility on Mr Gatlin[1], which the IAAF Council reduced to one as

---

[1] See paragraph 8 of the 2001 Panel's decision - at Gatlin Exhibit 3.

exceptional circumstances existed.[2] Therefore, in short, the first offence was established and a one year period of ineligibility was imposed. This is the outcome of the 2001 process.

7. As such, the decision of the 2001 Panel constitutes a properly binding legal decision and cannot be subject to any form of collateral attack. Equally, as Mr Gatlin took no steps to subject that decision to any form of appeal or review within any of the applicable time limits, he is deemed to have waived any rights he may have had to appeal or review the results of the decision.

8. It is equally true that this matter can be looked at, also, as constituting an estoppel by convention. As the Panel will be aware, an estoppel by convention arises when two parties act on the basis of a common belief, assumption or agreement and hence are bound by that particular belief, assumption or agreement. A common belief, assumption or agreement in this case is that:

   8.1 Mr Gatlin had committed a first doping offence;

   8.2 Mr Gatlin would be declared ineligible for a period of one year; and

   8.3 Any further offence would result in a life ban.

9. That this was Mr Gatlin's understanding is set out in paragraph 40 of the IAAF's Answer at page 14. That this was the IAAF's understanding is set out at paragraphs 34 to 38 of the IAAF's Answer at pages 12 and 13. That this was the 2001 Panel's understanding can be deduced from the fact that, having imposed the two year period of ineligibility, subject to a condition, it did not seek to reconsider the case in the light of the IAAF's decision on exceptional circumstances.

10. Consequently, as well as the original decision being a res judicata and Mr Gatlin having waived his right to contest the outcome of that case, Mr Gatlin is also estopped by convention from claiming that the outcome of the case was anything other than it was, i.e. a decision that he had committed a first doping offence, that he had served a period of ineligibility of one year for that offence (reduced from two by virtue of the existence of exceptional circumstances) and that he would be banned for life if he tested positive again.

---

[2] In doing so, the IAAF Council made it clear that Mr Gatlin was to be treated as having committed a first anti-doping rule violation and any future violation would lead to a life ban - see the witness statement of Professor Ljungqvist at IAAF Exhibit 1 to the IAAF's Answer.

11. Therefore, in the IAAF's respectful submission, questions relating to the merits of the 2001 decision simply do not arise for consideration by this Panel. The 2001 decision is final and binding upon Mr Gatlin (and indeed upon anybody else), he has waived any rights he may have had to review it and he is estopped from doing so in these proceedings.

12. The second point the IAAF would wish to make about Mr Gatlin's case on the 2001 Panel's decision is his suggestion that the IAAF recognises that the proceeding was "invalid". It does not and this is a childish attempt to misrepresent the IAAF's position. What the IAAF is critical of is the implicit suggestion by the 2001 Panel (based upon its "conditional" imposition of the sanction), that it could impose a lesser sanction were it not satisfied with the decision of the IAAF Council.

13. That situation, however, simply did not arise. The 2001 Panel imposed the required sanction of two years on Mr Gatlin (albeit conditionally). The IAAF Council considered the question of exceptional circumstances and they reduced that two year period of ineligibility to one year. At this point, all parties were satisfied. The IAAF Council had decided the issue of exceptional circumstances and was satisfied that the sanction was reasonable and in accordance with its Rules. The 2001 Panel had discharged its task and was satisfied that circumstances under which the matter might be returned to it had evaporated and their decision was, therefore, final.[3] Mr Gatlin was satisfied as his period of ineligibility was reduced from two years to one. There is no sense in which any party at the time considered the decision of the Panel, aligned to that of the IAAF Council, was "invalid". The IAAF still maintains this position today.

14. The third issue the IAAF would wish to deal with in relation to the decision of the 2001 Panel is that of fault. In the Reply Brief, Mr Gatlin makes submissions as to the failure of the 2001 Panel to consider fault and as to whether the facts of the 2001 case, as the IAAF understood them, indicate the presence of fault. These matters are, of course, only relevant in circumstances where the merits of the 2001 case can be reopened, which the IAAF says they cannot. However, if fault is in issue, the IAAF would simply point out that fault _was_ considered in Mr Gatlin's case and indeed resulted in a reduction in the period of ineligibility of one year. The fact that issues

---

[3] This is confirmed by the 2001 Panel's further ruling on 12 February 2008 - Gatlin Exhibit 14. This states: *"Since we are informed that Gatlin was expeditiously reinstated by the IAAF, our May 1, 2002 decision and provisional sanction no longer had effect, and hence our retention of jurisdiction pending a reinstatement decision by the IAAF was ipso facto terminated.*

19263034-1    4

of fault fell to be decided under IAAF Rules by its Council, rather than the Panel, is irrelevant. Fault was considered and dealt with in this case.[4]

15. The only other observation under the heading of "fault" that the IAAF wishes to add concerns the two CAS authorities that were cited by Mr Gatlin in support of the proposition that a strict liability rule was unenforceable. In our Answer, the IAAF showed that the *Aanes* case did not assist Mr Gatlin, as the language of the rule in that case did not create a strict liability offence[5]. The IAAF has now had the opportunity to examine the second case cited by Mr Gatlin which is *C -v- FINA* - CAS 95/141 - Award of April 22 1996[6]. Mr Gatlin cites the following passage at paragraph 17 of the decision:

> *"Thus the Panel considers that, generally speaking, the principle of presumption of the athlete's guilt may remain but that, by way of compensation, the athlete must have the possibility of shifting the burden of proof by providing exculpatory evidence. The athlete will thus be allowed to demonstrate that he did not commit any fault intentionally or negligently."*

16. He does not cite the following paragraphs of the judgment, which state:

> *18. The CAS has already had occasion to recall the above mentioned principles when the application of the General Regulations (GR) of the International Equestrian Federation were at issue (see cases TAS 92/63 and TAS 92/86).*
>
> *19. However, the Panel observes that such a development is possible only if the <u>applicable rules</u> allow it [emphasis added.]"*

17. The key point here is that even this Panel recognised that, in all cases, the CAS Panel should be governed by the content of the applicable Rules. Therefore, properly understood, even the *C -v- FINA* Panel recognised the primacy of the rules, which in this case impose strict liability and a fixed sanction. In any event, the IAAF submits that this decision is an early and anomalous one and is swept away by the vast tide of subsequent, preferable CAS authority to the contrary, which upholds the strict liability regime, as does the World Anti-Doping Code.

---

[4] CAS has upheld IAAF Rules in this respect, see *IAAF -v- CBAt and dos Santos* (IAAF Exhibit 40 to the IAAF's Answer, and in particular paragraph 199), and *IAAF -v- MAR and Boulami* (IAAF Exhibit 41 to the IAAF's Answer, and in particular paragraph 5.57).

[5] At IAAF Response Exhibit 2.

[6] At IAAF Response Exhibit 3.

## Applicable Rules

18. The second issue the IAAF wish to address is the question of the applicable rules. It is important to realise in doing so the narrow scope of this point. In this case, the question of whether the World Anti-Doping Code prevails over IAAF Rules is relevant only to the issue of the start date of the sanction. This, too, is only of material importance in circumstances where Mr Gatlin is able to persuade the Panel that: (i) it should impose a two year period of ineligibility for a second offence; and (ii) that there was unfair and prejudicial delay in the conduct of his case such that it would be fair and equitable to relate the date of the sanction back to the date of the collection of the sample, rather than the date upon which this Panel imposes any period of ineligibility for the second offence.

19. The IAAF's interest in this is that, while this may appear to be a minor point in the context of this case, if the athlete does prevail on the two year sanction point, and if he is also successful on the delay point, he will be eligible to compete in the Olympic Games in Beijing. In the IAAF's view, this would be intolerable and would send entirely the wrong message about its efforts to eradicate the scourge of doping in track and field athletics. This, therefore, explains the IAAF's interest in engaging in argument on what appears to be a relatively minor issue in the proceedings.

20. The IAAF's position on the applicable rules has been set out fully in its Answer. In his Reply, Mr Gatlin makes a number of assertions about what it is he says USATF Bylaws and Regulations state.

21. In the context of discerning whether the World Anti-Doping Code applies in Mr Gatlin's case, it is instructive to examine the terms of the USATF Bylaws and Operating Regulations in force in 2006, which have not been previously subject to detailed examination in either party's Brief[7]. Mr Gatlin is a member of USATF and is thus bound contractually to it. As will be seen, and entirely consistently with IAAF Rules, at no point do the USATF Bylaws or Operating Regulations incorporate the World Anti-Doping Code.

22. Article 3 of the Bylaws sets out the purposes and duties of USATF[8]. It states:

---

[7] At IAAF Response Exhibit 4.

[8] At page 21 of IAAF Response Exhibit 4.

> *"This non-profit corporation shall act as the national governing body (as defined by the Ted Stevens Olympic and Amateur Sports Act of 1998 set forth in the exhibits section of this handbook) for Athletics in the United States, as authorized by the USOC, and act as the IAAF member organization in the United States."*

23. Article 4 deals with the authority of USATF[9]. It states:

   > *"This corporation shall be the national governing body for Athletics in the United States and shall exercise the following powers:*
   >
   > *A. IAAF representation: Representing the United States in the IAAF, <u>meeting the obligations of such membership</u> and having criteria relating to eligibility for competitions or to participation in the Olympic, Pan American, or Paralympic Games that are not more restrictive than those of the IAAF."* [emphasis added]

   Consequently, the purpose of USATF is to be the relevant IAAF Member organisation in the United States. Its authority includes authority to enforce the obligations of IAAF membership. One of the obligations of membership of the IAAF is to comply with the IAAF's Anti-Doping Rules (by virtue of IAAF Rule 30.2) and to incorporate into the member's rules the IAAF's Anti-Doping Rules. IAAF Rule 30.2 also requires Member's Rules to provide that all athletes under that Member's jurisdiction shall be bound by the IAAF Anti-Doping Rules.

24. The question of athlete eligibility is dealt with under the USATF Operating Regulations. Regulation 2 deals with athlete eligibility[10]. For the present purposes, only that for international competitions is relevant. Regulation 2 section A2 provides:

   > *"International eligibility: To represent the United States in international events, an athlete shall be a member of USATF and otherwise eligible to compete pursuant to USATF and IAAF Rules. See Regulation 9 and applicable IAAF Rules in the exhibits section of this handbook."*

   Therefore, not only are IAAF Rules explicitly referred to, but are explicitly incorporated by reference and exhibited to USATF Rules.

25. Regulation 9 deals with eligibility[11]. It states:

   > *"The eligibility of an athlete shall be governed by the applicable IAAF and IOC rules, except when such rules are inconsistent with United States Law. USATF shall not impose criteria for eligibility to compete in Athletics or to*

---

[9] At page 22 of IAAF Response Exhibit 4.

[10] At page 77 of IAAF Response Exhibit 4.

[11] At page 89 of IAAF Response Exhibit 4.

*participate in the Olympic, Pan American or Paralympic Games that are more restrictive than those of the IAAF."*

*Note: Select IAAF Rules are stated in the exhibits section of this handbook.*

26. Doping control is dealt with specifically in Regulation 10[12]. What is notable about Regulation 10 is what is not present. At no point is it said that the World Anti-Doping Code is incorporated either expressly or impliedly into USATF Regulations.

27. The issue of eligibility in the context of a doping case, and the start date for the sanction, is dealt expressly with in Regulation 10 sections D(1) and (2). These provide:

> "1. *Ineligibility: If an athlete is found to have committed a doping offense or the individual waives the right to a hearing, the individual shall be declared ineligible to participate in Athletics competition, as provided below. In addition, if testing was conducted in competition, the athlete shall be disqualified from that competition and all competitions s/he competed in prior to the final decision of the hearing or appeals panel, and the result(s) amended accordingly. Ineligibility shall begin:*
>
>> a. *from the date the period of ineligibility was imposed by an arbitration panel; or*
>>
>> b. *as otherwise determined by the IAAF.*
>
> 2. *Period of ineligibility: For doping offenses in events conducted under the jurisdiction of the IOC, the penalties provided by the World Anti-Doping Code shall apply. In all other situations, an athlete or other person who commits a doping offense will be ineligible for the periods set forth below:*
>
>> a. *Steroids: For a steroid offense under IAAF Competition Rule 32.2(a) involving substance listed in S4-1(a) and (b) of the World Anti-Doping Code, the suspension shall be for life, provided that such lifetime suspension does not violate any provision of the Sports Act, including the provision that requires the USATF may "not have eligibility criteria related to amateur status or to participation in the Olympic Games, the Paralympic Games, or the Pan American Games that are more restrictive than those of the appropriate international sports federation;"*
>>
>> b. *Other substances: For offenses involving all other substances or activities prohibited by IAAF Competition Rule 32.2, the penalties provided in IAAF Competition Rules 39 and 40 shall apply."*

---

[12] At pages 90-91 of IAAF Response Exhibit 4.

28. As can be seen, the start date of the period of ineligibility is from the date that it was imposed by the arbitration panel, or as otherwise determined by the IAAF. It is not, as the World Anti-Doping Code states, some earlier date based upon issues of fairness. Therefore, this indicates not only that the start date that the IAAF seeks is appropriate, but also evidences clearly that the World Anti-Doping Code is not incorporated expressly or impliedly into USATF Rules.

29. Thus, as can be seen, the USATF Bylaws and Operating Regulations simply do not incorporate the World Anti-Doping Code. On the contrary, IAAF Rules are expressly referred to and incorporated, as the purpose of USATF is to act as the Member of the IAAF for the United States and to uphold its Rules.

30. More importantly, in its confused attempt to assert that the World Anti-Doping Code applies to these proceedings by virtue of the USADA Protocol, Mr Gatlin's Brief concedes one very significant point. At page 6 it states:

> *"As set forth in the IAAF Brief, the IAAF Rules do not incorporate the WADA Code."*

This would seem to set the matter clear beyond any shadow of a doubt.

31. Therefore, the simple position seems to be the following:

    31.1 Mr Gatlin is a member of USATF and participates in USATF and IAAF competitions;

    31.2 IAAF Rules do not incorporate the World Anti-Doping Code;

    31.3 USATF Rules do not incorporate the World Anti-Doping Code.

Therefore, the World Anti-Doping Code has nothing to do with any testing conducted upon Mr Gatlin. Consequently, the start date of the sanction must be that mandated under IAAF Rules.

## Proportionality

32. The third issue upon which the IAAF would wish to address this Panel is the issue of proportionality. This is dealt with at pages 15 to 19 of Mr Gatlin's Brief, the objective being to criticise the 2001 Panel for not considering in 2002 whether the sanction was proportionate to his culpability. Of course, the IAAF submits that the 2001 Panel's decision is a res judicata, that Mr Gatlin has waived his right to appeal

his review and is now estopped from doing so. Consequently, no issue of the merits of the 2001 Panel's decisions (including proportionality) arises in relation to this Panel's decision.

33. However, the issue of proportionality does arise in the context of the overall sanction that is to be imposed upon the athlete in this case. The issue this Panel must face is whether the imposition of a life ban from competition for Mr Gatlin (which the IAAF is content to say means an eight year period of ineligibility in this case) is proportionate in the circumstances. The IAAF submits that it is.

34. First, this is the sanction provided for in IAAF Rules[13]. By virtue of repeated breaches of IAAF Rules, athletes have in the past found themselves subject to a life ban, notably Mr Ben Johnson. This is a valid sanction. There is no CAS or other authority (of which the IAAF is aware) to the contrary.

35. In the case of Ben Johnson, the Ontario Court of Justice held that a life ban was proportionate because it was necessary *"to protect [the athlete] for the sake of his own health from the effects of consistently using prohibited substances"* and to discourage *"young people (... from doing) the same"*, as well as *"to protect the right of [every] athlete to fair competition"* and the *"integrity of the sport"*, which is also in the interests of the public. The court considered that these various interests would not be effectively protected while the rewards for a cheater, even when caught, are greater than for *"obeying the rules"* and accordingly upheld the life ban imposed by the IAAF on Ben Johnson[14].

36. In the case of *IAAF -v- CBAt and Dos Santos*, CAS 2002/A/383[15], the question of the reasonableness and proportionality of a life ban for a second offence was explicitly considered by the CAS Panel. After a full review of the arguments, the athlete in question was banned for life. Similarly, in CAS A1/2007, being the *Australian Sports Anti-Doping Authority -v- Marinov*[16], a life ban was imposed for a second offence by the CAS Panel in that case. Consequently, the CAS authorities and the

---

[13] IAAF Rule 40.1(a)(ii).

[14] See the description of the case in *IAAF -v- CBAt and Dos Santos* CAS 2002/A/383 (IAAF Exhibit 40) at paragraph 198, pages 59 and 60.

[15] At IAAF Exhibit 40.

[16] At IAAF Response Exhibit 5.

judicial authorities of which the IAAF are aware support the proportionality of a life ban.

37. Secondly, USATF Regulations also support the proportionality of the imposition of a life ban. Indeed, Regulation 10 of the 2006 Operating Regulations of USATF (quoted above) expressly provides for the imposition of such a sanction for a <u>first</u> offence. In these circumstances, it can scarcely be argued that as a matter of US law a life ban for a second offence is disproportionate.

38. Thirdly, the World Anti-Doping Code also provides for such a sanction. Article 10.2 of the World Anti-Doping Code provides that for a second violation involving a prohibited substance the sanction should be "lifetime ineligibility"[17]. Of course, the World Anti-Doping Code is quoted not on the basis that it is of direct relevance to this case, but only as an indicator of what is a reasonable sanction in the sporting domaine.

39. CAS has been called upon to consider the proportionality of sanctions to be imposed upon athletes in line with the World Anti-Doping Code. The leading decision in this area is *Puerta -v- International Tennis Federation* CAS 2006/A/1025[18]. The key paragraphs are paragraphs 11.7.17 and 11.7.26. 11.7.17 provides:

> *"11.7.17 It is undoubtedly, and commendably, the aim of WADA and of the signatories to the WADC to ensure that the WADC established a coherent and reasonable policy for sanctioning athletes who were found to have broken anti-doping regulations, and thereby cheated both their fellow athletes and the sporting public at large. <u>The Panel has no doubt that the WADC has achieved that aim admirably, and is an invaluable tool in the fight against doping. Indeed, in all but the very rare case, the WADC imposes a regime that, in the Panel's view, provides a just and proportionate sanction,</u> and one in which, by giving the athlete the opportunity to prove either "No Fault or Negligence" or "No Significant Fault or Negligence", the particular circumstances of an individual case can be properly taken into account."* [emphasis added]

Therefore, the CAS jurisprudence establishes that the World Anti-Doping Code sets out just and proportionate sanctions. The IAAF's lifetime sanction for a second offence clearly falls within this.

---

[17] At Gatlin Exhibit 18.

[18] At Gatlin Exhibit 17.

40. At page 18 of the Reply Brief, Mr Gatlin seeks to argue that there is some form of gap or "lacuna" in his case. Mr Gatlin states that IAAF Rules do not contemplate a situation where an athlete has received no permanent sanction and where he did not have the opportunity to present a proportionality defence in the first case. However, the premise behind this argument is untrue. A final sanction was imposed upon Mr Gatlin for a first offence in this case and the question of proportionality of the sanction was dealt with by the early reinstatement of Mr Gatlin by the IAAF Council. Therefore, there is no lacuna in this case. It is a simple case of an athlete having accepted that he has committed a first serious doping infraction, and then going on to commit a second. In these circumstances, the Rules clearly establish that the only conceivable sanction is a lifetime ineligibility.

41. Moreover, although reference is made by Mr Gatlin in this part of the Brief to the *Puerta* decision, it does not assist Mr Gatlin to any material degree. In fact, its tenor is entirely unhelpful to him. In the second significant paragraph of the judgment to which we referred above, paragraph 11.7.26, the Panel directed its mind to the circumstances in which a gap or lacuna might exist, which might justify considering whether the mandatory sanction was disproportionate. To remind this Panel, in the *Puerta* case, what the Panel was concerned with was deciding the appropriate sanction in circumstances where there had been two doping violations, but in each, the Panel had reached a conclusion that there was no significant fault.

42. The Rules on their plain construction seemed to mandate a minimum sanction of 8 years; the Panel, however, considered that the Rules had not contemplated circumstances such as these, in which case a more just and proportionate sanction should be imposed. It is clear from the terms of the judgment, however, that the Panel was not prepared to hold that a gap or lacuna existed outside of the circumstances of this case which was one where each violation was the product of inadvertence. At paragraph 11.7.26, the Panel stated:

> *"The circumstances in which a tribunal might find that a gap or lacuna exists in the WADC in relation to sanctions for breach of its provisions will arise only very rarely. Possibly, those circumstances might never arise again, if WADA revises the WADC to deal with the issue which arises in the present case. But even if the WADC is not revised to deal with this issue, <u>the Panel would suggest that it would not be found to exist if, in respect of one of the breaches, an athlete had been found to have committed a serious drug offence, for example, by the use of anabolic steroids</u>, EPO, THG, HGH or the like, or by the use of a prohibited method. <u>Nor would it be found to exist if, in respect of one of the breaches, there was any suggestion of a performance enhancing effect</u>: in the present case no such suggestion has been made in*

*respect of either breach. Conversely, it might be found to exist in a case in which, in relation to one of the breaches, a discretion had been permitted, such as in relation to TUEs, and the second breach attracted a reduced sanction on the basis of No Significant Fault or Negligence."* [emphasis added]

43. Consequently, the *Puerta* decision is strong authority for the proposition that no lacuna exists and therefore it is perfectly permissible to impose a life ban, in circumstances where first offence was mitigated by exceptional circumstances but is followed by a second offence which is not. On the contrary, the CAS Panel in *Puerta* seem to be strongly of the view that no such issues of proportionately arise and therefore it would be perfectly proper to impose a lifetime ban in such circumstances.

44. Consequently, the IAAF submits that the terms of IAAF Rules, USATF Bylaws and Operating Regulations and the World Anti-Doping Code all indicate that a lifetime period of ineligibility for two serious doping offences, as is the case here, is a proportionate sanction to impose in a case such as this. In these circumstances, the IAAF submits that such a ban should be imposed, subject only to this Panel's consideration of whether exceptional circumstances in this case exist i.e. whether Mr Gatlin has afforded substantial assistance in this case. As the IAAF's Answer demonstrates, there is little evidence of "assistance" and none at all of that assistance being "substantial".

**The Americans with Disabilities Act**

45. Finally, the IAAF would wish to address the issues raised in Mr Gatlin's Reply Brief concerning the Americans with Disabilities Act. It does so in the second witness statement of Mr Gulland, which is attached to this Response.

46. The IAAF would wish to emphasise, however, that it does not see the relevance of the Americans with Disabilities Act to this case. The IAAF is based in Monaco and is subject to Monegasque law. This arbitration is subject to the supervision of the Swiss courts, applying Swiss Law. In neither case is Mr Gatlin able to establish any applicable provision granting him the rights he claims.

**Conclusion**

47. The IAAF reiterates that there is only one issue in this case, being the period of ineligibility Mr Gatlin must serve for a second serious doping offence. The IAAF submits that the evidence clearly shows that Mr Gatlin accepted a sanction for a first offence in 2002, based upon a positive finding for a serious anti-doping substance.

The uncontroverted evidence is that in 2006 Mr Gatlin subsequently tested positive for a second serious anti-doping offence, in that exogenous testosterone was found in his sample. As such, this is a second serious anti-doping offence for which the stipulated sanction is life. This is a sanction that the IAAF submits that the Panel must impose in this case.

Mark Gay  
Huw Roberts  
Sally Barnes  
DLA Piper UK LLP

**16 May 2008**