

# CAS Hearing:
## In re Justin Gatlin

May 28–29, 2008

GATLIN v. UNITED STATES ANTI-DOPING AGENCY

Dockets.Justia.com

# Summary of Issues

1. The 2001 positive test should not be considered a first offense

   - No Sanction
   - ADA

2. Even if 2001 positive test is considered a first offense, a two year sanction for 2006 is still warranted

   - Proportionality
   - Substantial Assistance

3. Start Date

   - WADA Code Applies
   - Delay Not Attributable to Athlete

# 1. The 2001 positive test should not be considered a first offense

- No Sanction
- ADA

# 2001 Not A First Offense: No Sanction

The Panel's May 1, 2002 provisional suspension decision was issued without an evidentiary hearing on the merits by stipulation of the parties in order to facilitate Gatlin's request for early reinstatement. Since

- One Hour Telephone Conference
- No Evidentiary Hearing
- No Consideration of Fault

**AMERICAN ARBITRATION ASSOCIATION**
North American Court of Arbitration for Sport Panel

In the Matter of the Arbitration between

United States Anti-Doping Agency,

Claimant

and

Justin Gatlin,

Respondent

Re: AAA No. 30 190 00546 01

The Panel exercises its authority pursuant to Rule 8 of the Supplementary Procedures for the Arbitration of Olympic Sports Doping Disputes to determine its jurisdiction. The Panel's May 1, 2002 provisional suspension decision was issued without an evidentiary hearing on the merits by stipulation of the parties in order to facilitate Gatlin's request for early reinstatement. Since we are informed that Gatlin was expeditiously reinstated by the IAAF, our May 1, 2002 decision and provisional sanction no longer had effect, and hence our retention of jurisdiction pending a reinstatement decision by the IAAF was ipso facto terminated.

For a unanimous Panel

Walter G. Gans, Chair

February 12, 2008

# 2001 Not a First Offense: No Sanction

By stipulation of the parties in order to facilitate Gatlin's request for early reinstatement. Since we are informed that Gatlin was expeditiously reinstated by the IAAF, our May 1, 2002 decision and provisional sanction no longer had effect, and hence our retention of jurisdiction pending a reinstatement decision by the IAAF was ipso facto terminated.

- Provisional Sanction
- No Longer Has Any Effect

**AMERICAN ARBITRATION ASSOCIATION**
North American Court of Arbitration for Sport Panel

In the Matter of the Arbitration between

United States Anti-Doping Agency,

Claimant

and

Justin Gatlin,

Respondent

Re: AAA No. 30 190 00546 01

The Panel exercises its authority pursuant to Rule 8 of the Supplementary Procedures for the Arbitration of Olympic Sports Doping Disputes to determine its jurisdiction. The Panel's May 1, 2002 provisional suspension decision was issued without an evidentiary hearing on the merits by stipulation of the parties in order to facilitate Gatlin's request for early reinstatement. Since we are informed that Gatlin was expeditiously reinstated by the IAAF, our May 1, 2002 decision and provisional sanction no longer had effect, and hence our retention of jurisdiction pending a reinstatement decision by the IAAF was ipso facto terminated.

For a unanimous Panel

Walter G. Gans, Chair

February 12, 2005

# What more could they have said?

# 2001 Not A First Offense: No Sanction

11.  The IAAF rules provide that after a two year suspension is imposed the IAAF Council may consider an application from the athlete seeking early reinstatement, thus reducing or eliminating the two year suspension in appropriate circumstances. The IAAF Council will only consider an early reinstatement for athletes <u>after</u> the two year suspension is imposed.

---

BEFORE THE AMERICAN ARBITRATION ASSOCIATION
North American Court of Arbitration for Sport Panel

Justin Gatlin

       Claimant,

     v.             AAA No. 30 190 00546 01

United States Anti-Doping Agency
       Respondent.

### DECISION

**I. The Parties and Facts**

A one hour telephonic hearing in this matter took place on April 30, 2001, commencing at 2:30 pm eastern time ("hearing"). The Claimant, Mr. Justin Gatlin ("Mr. Gatlin"), was represented by his legal counsel, Mr. John Collins of Jenkins and Gilchrist.

# 2001 Not A First Offense: No Sanction

3.  Were this Panel to address the issue of culpability and sanctions in a full evidentiary hearing, this Panel clearly would not apply the full two-year suspension to Mr. Gatlin.

BEFORE THE AMERICAN ARBITRATION ASSOCIATION
North American Court of Arbitration for Sport Panel

```
--------------------------------x
Justin Gatlin                   :
                                :
          Claimant,             :
                                :
     v.                         :    AAA No. 30 190 00546 01
                                :
United States Anti-Doping Agency :
                                :
          Respondent.           :
--------------------------------x
```

## DECISION

### I. The Parties and Facts

A one hour telephonic hearing in this matter took place on April 30, 2001, commencing at 2:30 pm eastern time ("Hearing"). The Claimant, Mr. Justin Gatlin ("Mr. Gatlin"), was represented by his legal counsel, Mr. John Collins of Jenkens and Gilchrist.

# 2001 Not A First Offense: No Sanction

The Panel specifically notes that, in this case, Mr. Gatlin neither cheated nor did he intend to cheat. He did not intend to enhance his performance nor, given his medical condition, did his medication in fact enhance his performance.

2001 Decision, para. 11.

---

```
Justin Gatlin
                                    ----------------x
              Claimant,
                                    :
       v.                           :   AAA No. 30 190 00546 01
                                    :
United States Anti-Doping Agency    :
              Respondent.           :
                                    ----------------x

                        DECISION

              I.  The Parties and Facts

       A one hour telephonic hearing in this matter took place on April 30, 2001,
commencing at 2:30 pm eastern time ("hearing"). The Claimant, Mr. Justin Gatlin
("Mr. Gatlin"), was represented by his legal counsel, Mr. John Collins of Jenkens and Gilchrist.
```

# 2001 Not A First Offense: No Sanction

- There was no deal with respect to the 2001 positive test's effect on any other matter

- IAAF Council Notes

- Vote:
  - Reinstatement was approved
  - Reservation for repeated testing
  - <u>NO</u> other reservation

# 2001 Not A First Offense: No Sanction



Irrelevant

# 2001 Not A First Offense: ADA

- CAS cannot order the USATF or the IAAF to violate the ADA

- The ADA prohibits discrimination against disabled individuals in the areas of employment, public services, and public accommodations. 42 U.S.C. § 12182(a).

# 2001 Not A First Offense: ADA

- ADA Elements
  - Public Accommodation
  - Disability
  - Discrimination
  - Reasonable Accommodation

# 2001 Not A First Offense: ADA

## Public Accommodation

- "The Supreme Court and the Ninth Circuit have held explicitly that the ADA governs access to the playing field as well as the spectator areas of a sports arena. PGA Tour v. Martin II, 532 U.S. 661 (2001) . . . Martin I, 204 F.3d at 998. Although Defendant argues that other courts applying the ADA to the NCAA have incorrectly confused '"control" of eligibility with 'control' of the facilities" (Def.'s Opp'n to Summ. J. at 11), the Supreme Court in Martin II made clear that the ADA applies not only to entities governing spectators' access to a sports facility but also to those entities governing athletes' access to the competition itself." Matthews v. NCAA, 179 F. Supp. 2d 1209, 1222–23 (E.D. Wash. 2001).

# 2001 Not A First Offense: ADA

## Public Accommodation

- Track stadiums fit within the definition of other place of exercise or recreation

- USATF sanctions track races in the United States and is responsible for enforcing the sanction

- IAAF sanctions track races in the United States

# 2001 Not A First Offense: ADA

## Disability

- Disability is defined as a substantial impairment of a major life activity. 29 C.F.R. 1630.2(h)(2).

- Major life activities include learning. 29 C.F.R. 1630.2(i).

- "[T]he expansion of opportunities for meaningful participation by individuals with disabilities in programs of athletic competition for able-bodied individuals." ASA § 220524(7).

# 2001 Not A First Offense: ADA

## Disability

- Justin has been diagnosed with ADD from the age of 9

- <u>No</u> disagreement that Justin is diagnosed with ADD

# 2001 Not A First Offense: ADA

BEFORE THE AMERICAN ARBITRA
North American Court of Arbitr

Justin Gatlin

        Claimant,

    v.

United States Anti-Doping Agency

        Respondent.

DECISION

I. The Facts and E

A one hour telephonic hearing in this matte

commencing at 12:01 pm eastern time ("hearing"). The Claimant, Mr. Justin Gatlin

("Mr. Gatlin"), was represented by his legal counsel, Mr. John Collins of Jenkens and Gilchrist.

3.      There is no dispute that Mr. Gatlin suffers from ADD and that the medication taken by him was an appropriate treatment for his condition. When Mr. Gatlin was first diagnosed with ADD in 1991, after a thorough medical evaluation, it was determined that he could benefit from prescription medicine. Over the next ten years, Mr. Gatlin has continued to be regularly evaluated by his treating physician, and his prescriptions were adjusted as needed to treat his condition in light of side effects and efficacy. For the past five years, Mr. Gatlin's treating physician has prescribed Adderall to treat Mr. Gatlin. Adderall contains amphetamine asparate, amphetamine sulfate, dextroamphetamine saccharate and dextroamphetamine sulfate. An international panel of medical experts reviewed Mr. Gatlin's medical file and agreed with the diagnosis that Mr. Gatlin has ADD and the treatment prescribed for him.

# 2001 Not A First Offense: ADA

## Disability

- Justin's ADD substantially impaired his learning
- Justin received special accommodations from University of Tennessee

# 2001 Not A First Offense: ADA Discrimination

- Sanctioning Justin for taking his prescribed medication
- Enhancing sanction for taking his prescribed medication

# 2001 Not A First Offense: ADA

## Reasonable Accommodation

- Do not enhance the 2006 sanction with the 2001 case

**2.**

Even if the 2001 positive test is considered a first offense, a two-year sanction for 2006 is still warranted

# 2006 Sanction: Proportionality

- Any anti-doping sanction must be proportional

11.7.18. But the problem with any "one size fits all" solution is that there are inevitably going to be instances in which the one size does not fit all. The Panel makes no apology for repeating its view that the WADC works admirably in all but the very rare case. It is, however, in the very rare case that the imposition of the WADC sanction will produce a result that is neither just nor proportionate. It is argued by some that this is an inevitable result of the need to wage a remorseless war against doping in sport, and that in any war there will be the occasional innocent victim. There may be innocent victims in wars where bullets fly, but the Panel is not persuaded that the analogy is appropriate nor that it is necessary for there to be undeserving victims in the war against doping. It is a hard war, and to fight it requires eternal vigilance, but no matter how hard the war, it is incumbent on those who wage it to avoid, so far as is possible, exacting unjust and disproportionate retribution.

# 2006 Sanction: Proportionality

- The position that a lifetime ban is proportional in this case is nonsensical – IAAF treats the case as if it is *two intentional* doping violations

- This is a unique case: procedurally and factually

- The facts of 2001 and 2006 do not support an enhanced sanction

# 2006 Sanction: Proportionality

- 2006 Not Intentional Doping:

  - Justin made 11 consensually monitored phone calls to former coach Trevor Graham

  - In the 11 calls no incriminating statements or evidence came out

  - Such a result is only possible if Justin was not intentionally doping

  - To date in the Trevor Graham criminal proceedings no incriminating evidence has come out against Justin

  - The 2006 Panel recognized that substantial doubt existed as to Justin's intentional doping

# 2006 Sanction: Proportionality

- 2001 facts:

  - Justin was taking medication prescribed to him for his learning disability, not to enhance his performance

  - No final determination on fault was made in 2001

  - "[Justin] certainly is not a doper." USADA v. Gatlin, at II.2, pg. 7.

  - USADA did not give a TUE for Adderall

# 2006 Sanction: Proportionality

- Justin was not at fault because he was not negligent
  - Justin ceased usage of Adderall two to three days before NCAA events
    - No positive tests for NCAA testing
  - Justin ceased usage of Adderall three days before Junior Nationals
  - Same procedure used prior to Junior Nationals
  - No reasonable person would expect a different result

# 2006 Sanction: Proportionality

**Medications for ADD and ADHD**

Ritalin, Adderall, Pemoline, Wellbutrin and other medications prescribed for Attention Deficit Disorder and Attention Deficit Hyperactivity Disorder contain substances, which are prohibited in competition. Unless an athlete has obtained a prior medical authorization from his or her International Federation, the detection of these substances in an athlete's urine from an in-competition doping control is a doping offense. As a practical solution, many athletes with ADD or ADHD simply choose to discontinue their medication in advance of competitions.

- Justin did what he should have done with respect to USADA postings
- Justin's substantial assistance should weigh in his favor
- His participation in preventing future doping should also weigh in his favor

# Substantial Assistance

- Justin made 11 consensually monitored phone calls to his former coach, Trevor Graham

- Special Agent Novitzky can not comment extensively on Graham's ongoing litigation but gave Justin credit for helping to gather important evidence against him

# 3. Start Date

- IAAF adopts WADA Code

  - "At its meeting in Paris in August 2003, the IAAF Congress accepted the World Code as the basis for the fight against doping in Athletics and gave a mandate to the IAAF Council to amend the IAAF Doping Rules, where appropriate, to bring them into compliance with the Code." Ljungqvist Declaration, para. 16.



On March 1, 2004, The International Association of Athletics Federation (IAAF) adopted the newly created WADA Code. The information listed below outlines the new policies and procedures that will be adhered to by the IAAF and the U.S. Anti-Doping Agency (USADA) in order to mirror the WADA Program.

# Start Date

## INTRODUCTION

Part One of the *Code* sets forth specific anti-doping rules and principles that are to be followed by organizations responsible for adopting, implementing or enforcing anti-doping rules within their authority – – e.g., the International Olympic Committee, International Paralympic Committee, International Federations, *Major Event Organizations*, and *National Anti-Doping Organizations*. All of these organizations are collectively referred to as *Anti-Doping Organizations*.

Part One of the *Code* does not replace, or eliminate the need for, comprehensive anti-doping rules adopted by each of these *Anti-Doping Organizations*. While some provisions of Part One of the *Code* must be incorporated essentially verbatim by each *Anti-Doping Organization* in its own anti-doping rules, other provisions of Part One establish mandatory guiding principles that allow flexibility in the formulation of rules by each *Anti-Doping Organization* or establish requirements that must be followed by each *Anti-Doping Organization* but need not be repeated in its own anti-doping rules. The following Articles, as applicable to the scope of anti-doping activity which the *Anti-Doping Organization* performs, must be incorporated into the rules of each *Anti-Doping Organization* without any substantive changes (allowing for necessary non-substantive editing

changes to the language in order to refer to the organization's name, sport, section numbers, etc.): Articles 1 (Definition of Doping), 2 (Anti-Doping Rule Violations), 3 (Proof of Doping), 9 (Automatic *Disqualification* of Individual Results), 10 (Sanctions on Individuals), 11 (*Consequences* to Teams), 13 (Appeals) with the exception of 13.2.2, 17 (Statute of Limitations) and Definitions.

Anti-doping rules, like competition rules, are sport rules governing the conditions under which sport is played. *Athletes* accept these rules as a condition of participation. Anti-doping rules are not intended to be subject to or limited by the requirements and legal standards applicable to criminal proceedings or employment matters. The policies and minimum standards set forth in the *Code* represent the consensus of a broad spectrum of stakeholders with an interest in fair sport and should be respected by all courts and adjudicating bodies.

*Participants* shall be bound to comply with the anti-doping rules adopted in conformance with the *Code* by the relevant *Anti-Doping Organizations*. Each *Signatory* shall establish rules and procedures to ensure that all *Participants* under the authority of the *Signatory* and its member organizations are informed of and agree to be bound by anti-doping rules in force of the relevant *Anti-Doping Organizations*.

# Start Date

- Sanction should be pursuant to WADA Code 10.8 "Commencement of Ineligibility Period"

  **10.8   Commencement of *Ineligibility* Period**

  | World Anti-Doping Code | 2003 |
  |---|---|

  Where required by fairness, such as delays in the hearing process or other aspects of *Doping Control* not attributable to the *Athlete*, the body imposing the sanction may start the period of *Ineligibility* at an earlier date commencing as early as the date of *Sample* collection.

- Justin was not responsible for the delay

- Fairness requires an earlier start date

# Start Date

- AAA Panel used 30 days after collection of sample
  - "30 days following the date from which his urine sample was taken"

# Start Date: *Hellebuyck* is wrong

- "In the present case the Appellant deliberately did not adopt the exact same wording of the provision in Art. 10.8 WADC in their Rules. Whether the Appellant thereby breached an obligation in relation to WADA can be left unanswered in this case. Even if this were the case, the Panel cannot override the expressed will of the Appellant. Instead the Panel is bound by the content of the properly established IAAF Rules." *Hellebuyck* para. 7.3.4.3.

# Start Date: *Hellebuyck is wrong*

- "The '*applicable regulation*' in this case is the ITF Tennis Anti-Doping Programme 2005 which provides in Article S.3 that '*Subject to Article S.1, this Programme is governed by and shall be construed in accordance with English law.*'" *Puerta*, para. 10.3.

# Start Date: *Hellebuyck* is wrong

- "The Panel accepts that the ITF Programme provides that it is to be governed by and construed in accordance with English law, but that provision in the ITF Programme is expressly stated to be subject to the requirement to interpret the Programme '*in a manner that is consistent with the applicable provisions of the Code [WADC]*'. The Panel interprets those provisions (Paragraphs S.1 and S.3 of the ITF Programme) as requiring it to construe the WADC in a manner which is consistent with Swiss law, as the law with which the WADC must comply. Construing the WADC in that way means that the WADC is not subject to the vagaries of myriad systems of law throughout the world, but is capable of a uniform and consistent construction wherever it is applied. Any other construction would negate, or, at the very least, seriously weaken, the purpose and objective of the WADA and its signatories." *Puerta*, para. 10.8.

# Summary of Issues

- The 2001 positive test should not be considered a first offense
  - No Sanction
  - ADA
- Even if 2001 positive test is considered a first offense, a two year sanction for 2006 is still warranted
  - Proportionality
  - Substantial Assistance
- Start Date
  - WADA Code Applies
  - Delay Not Attributable to Athlete