UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Pensacola Division

JUSTIN GATLIN,

       Plaintiff,

v.                                                        CASE NO.   3:08-cv-241/LAC/EMT

UNITED STATES ANTI-
DOPING AGENCY, INC., et al.,

       Defendants.

_____

## PLAINTIFF'S EMERGENCY MOTION
## FOR INJUNCTION PENDING APPEAL

Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(C), The
Plaintiff Justin Gatlin moves for an emergency injunction pending appeal
directing the Defendants to allow him to participate in the United States
Olympic Track and Field Qualifications ("U.S. Olympic Trials") on June 27,
2008, and states:

1.     On June 24, 2008, this Court denied Mr. Gatlin's motion for
preliminary injunction on two alternative grounds:   (1) the Court lacks
jurisdiction because, under the Ted Stevens Olympic and Amateur Sports

Act (the "ASA"), 36 U.S.C. § 220503(3) (2008), the United States Olympic Committee ("USOC") has exclusive jurisdiction over matters concerning the nation's participation in the Olympic games, and (2) pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), the Court is bound by the arbitral decision of the Court for Arbitration for Sport ("CAS") upholding Mr. Gatlin's suspension.  (Doc. 36 at 2-4.)

2.     This morning (June 25, 2008), Mr. Gatlin appealed this order to the Eleventh Circuit.  (Doc. 39.)

3.     This Court has already held in its order granting a temporary restraining order (Doc. 12 at 3-5) and reiterated in its order denying the motion for preliminary injunction (Doc. 36 at 6-7) that all of the requirements for immediate injunctive relief are satisfied in this case, but for its determination that relief is precluded by the ASA and/or the New York Convention.  Thus, the only issue should be whether Mr. Gatlin has a sufficient case on the merits on these issues.  For the reasons expressed in the incorporated Memorandum of Law, he does.

WHEREFORE, the Court should enjoin the Defendants to allow the Plaintiff to participate in the Olympic Trials on June 27, 2008, pending the appeal.

**Memorandum of Law**

Mr. Gatlin has an absolute right to appeal this Court's denial of his motion for preliminary injunction. 28 U.S.C. § 1292(a)(1) (2008). Absent an injunction pending appeal, if Mr. Gatlin's appeal is not decided by June 27, 2008, the appeal will likely be moot with regard to his participation in the 2008 U.S. Olympics Trials

Pursuant to Federal Rule of Appellate Procedure 8, a party seeking relief pending appeal, including an injunction pending appeal, "must ordinarily move first in the district court." Fed. R. App. 8(a)(1)(C). This Court must examine four factors, which are similar to but not the same as the factors for granting a preliminary injunction:

> (1) whether Plaintiff is likely to succeed on the merits of his appeal; (2) whether Plaintiff will suffer irreparable injury if the injunction is not granted; (3) whether the injunction, if granted, would substantially harm other parties; and (4)

> whether the injunction, if granted, would harm the
> public interest.

*Gonzalez v. Reno*, No. 00-11424-D, 2000 U.S. App. LEXIS 7025, *4 (11th

Cir. Fla. Apr. 19, 2000) (citing *In re Federal Grand Jury Proceedings*, 975

F.2d 1488, 1492 (11th Cir. 1992)).  The second, third, and fourth elements

are identical to the elements for a preliminary injunction, and this Court

found that all three were met in yesterday's order.  (Doc. 36 at 7.)

Thus, the question now presented to the Court is whether Mr. Gatlin is

"likely to succeed on the merits of his appeal."  Mr. Gatlin's burden on this

element is substantially less strict than the "substantial likelihood of success

on the merits" element required to obtain a preliminary injunction.  As the

Eleventh Circuit made clear in the Elian Gonzalez case, "'where the balance

of the equities weighs heavily in favor of granting the [injunction],' the

movant need only show a 'substantial case on the merits.' "  *Id.* (quoting

*Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)).

The first requirement – that the "balance of the equities weighs

heavily in favor of granting the stay" – is clearly established here as

reflected in this Court's prior orders.  Where the failure to enter an

injunction would render the appeal moot, this test is generally met. *See id.* at *5 (finding balance of equities weighed heavily in favor of relief because case would be moot if Elian Gonzalez were allowed to be removed from the United States pending appeal).

Additionally, Mr. Gatlin points out that if he is allowed to participate but does not qualify due to his performance, then the issue of his participation in the 2008 Olympics becomes moot and nobody will have suffered any prejudice. On the other hand, if he does qualify but ultimately loses the appeal, the USOC will have the full authority under the ASA to determine his replacement at the Olympics, just as it would if a qualified athlete became injured between qualifying and the Olympics. Any inconvenience to the Defendants or potential unfairness to other athletes would be no different than in the injury scenario. At any rate, these risks are substantially outweighed by the potential harm to Mr. Gatlin if relief is denied, as this Court has repeatedly found.

Thus, the issue boils down to whether Mr. Gatlin's appeal raises a "substantial case on the merits when a serious legal question is involved."

Whether American sports organizations can deny an American citizen the right to participate in sporting events solely based on a protected disability is undeniably a "serious legal question."  In *Gonzalez*, the Eleventh Circuit found that the test for a "substantial case on the merits" was met where it had some "doubt, in the light of the record and Plaintiff's arguments on appeal, about the correctness of" the decision under review and was "unconvinced" at the preliminary stage that the decision below was correct.[1]

*Id.* at *9, 17.  Thus, Mr. Gatlin does not have to convince this Court that it is likely that the Eleventh Circuit will reverse, only that the Court's interpretations of the ASA and New York Convention are subject to reasonable debate.

I.  **MR. GATLIN HAS A SUBSTANTIAL CASE ON THE MERITS REGARDING WHETHER THE ASA PREEMPTS THE ADA AND REHABILITATION ACT.**

This Court clearly has subject matter jurisdiction over Mr. Gatlin's claims.   He states claims under the Americans with Disabilities Act

---

[1]   The court ultimately resolved these doubts on the merits and affirmed the decision on appeal.  *Gonzalez v. Reno*, 212 F.3d 1338 (11th Cir.), *cert. denied*, 530 U.S. 1270 (2000).

("ADA") and the Rehabilitation Act of 1973.  These are federal statutes, and federal district courts have original jurisdiction over all civil actions arising under federal law.  28 U.S.C. § 1331 (2008).

While the ASA provides that one of the purposes of the USOC is to "exercise exclusive jurisdiction ... over ... all matters pertaining to the United States participation in the Olympic Games ... including representation of the United States in the game," 36 U.S.C. § 220503(3)(A), nothing in the ASA purports to give the USOC, which of course is not an Article III court, jurisdiction to adjudicate ADA and Rehabilitation Act claims (or any other claims under federal statutes providing individual remedies).  Nor does the ASA provide the USOC or any other entity immunity from the ADA or the Rehabilitation Act.  To the contrary, the ASA expressly provides that USOC can be sued in federal district court.  36 U.S.C. § 220505(b)(9) (2008).

The issue, therefore, is not one of the court's jurisdiction to hear Mr. Gatlin's claims.  For example, there should be no doubt that this Court has jurisdiction to award monetary damages and to award declaratory relief declaring that the Defendants' actions violate these federal statutes.  The

question is whether the ASA's grant of exclusive authority to determine who represents the United States at the Olympics preempts or otherwise cabins this Court's ability to grant injunctive relief directing that Mr. Gatlin be allowed to represent the United States at the Olympics.

While there is legal authority for the proposition that a federal court cannot directly order the USOC to allow a particular person to represent the United States at the Olympics, that is not the relief being requested at present. Nor is he challenging the determinations that he violated the anti-doping regulations or, under the rules governing his sport, he is subject to suspension for those violations. His claim is that his suspension under these rules, no matter how valid under the USOC and related entities' rules, constitutes disability discrimination in violation of the ADA and Rehabilitation Act. All Mr. Gatlin is seeking is the opportunity to compete for a position without being subject to discrimination based on his disability. If he is not allowed to compete now, then any subsequent determination to lift or vacate his suspension (whether made by one of the Defendants, an

arbitral body, or a court), will be too late to afford him relief for the 2008 Olympics.

The key distinction between a judicial proceeding to enforce federal law (this case) and an administrative or arbitral proceeding to determine an athlete's qualifications (which is subject to the USOC's exclusive authority) is illustrated by the leading case of *Michels v. USOC*, 741 F.2d 155 (7th Cir. 1984). There, the court held that because the ASA gives the USOC the exclusive authority to determine who may represent the United States in the Olympics, there is no judicial remedy for an athlete claiming he was banned based on an invalid drug test. As Judge Posner noted in a concurring opinion, Congress's decision to put these decisions exclusively under the USOC's authority makes sense because "there can be few less suitable bodies than the federal courts for determining the eligibility, or the procedures for determining the eligibility, of athletes to participate in the Olympic Games." *Id.* at 159 (Posner, J., concurring). Citing legislative history, he noted that Congress had intentionally decided to remove regulations regarding athletes rights in the selection process from an earlier

draft of the ASA and instead put them in the USOC's constitution. *Id.* Of critical importance to this case, he commented that if the USOC's constitution "were deemed a federal law, alleged deprivations of any athletes' rights created by it could be litigated in federal court just as if the Senate had retained the provisions of the original bill." *Id.* Thus, because USOC's organic corporate documents, as opposed to federal law, govern athlete eligibility, the ultimate determination of who qualifies is for the USOC.

The ADA and Rehabilitation Act, of course, are federal laws, and under Judge Posner's reasoning, claims under these laws can be litigated in federal court. Indeed, other courts have recognized that the ASA does not preempt civil rights laws as applied to potential Olympic participants. For example, in *Lee v. U.S. Taekwondo Union*, 331 F. Supp. 2d 1252, 1260 (D. Haw. 2004), the court held that § 220503(3)(A) does not preempt a cause of action under 42 U.S.C. § 1981 where the plaintiff claimed that the USOC and the body governing Taekwondo removed him as the coach of the Olympic team based on his race.

Thus, a federal statute providing a substantive right of action is not preempted by the ASA, even if it relates to the USOC's core eligibility decisions.[2] *See also Slaney v. IAAF*, 244 F.3d 580, 595 (5th Cir.), *cert. denied*, 534 U.S. 828, 122 S. Ct. 69 (2001) (holding that the ASA preempted general state law tort claims directed toward an eligibility determination, but recognizing that "a very specific claim will avoid the impediment to subject matter jurisdiction that § 220503(3) poses" and then proceeding to consider (and deny on the merits) a federal RICO claim)*; Shepherd v. U.S.O.C.*, 464 F. Supp. 2d 1072, 1088 (D. Col. 2006) (declining to dismiss on preemption grounds claims under the ADA and Rehabilitation Act that the USOC discriminated against disabled athletes in its allocation of resources between Olympic and Paralympic athletes in light of "the predominate mandates of the ADA to call out and remedy disability-based discrimination"); *Akiyama*

---

[2] Additionally, it is widely recognized that despite the USOC's exclusive jurisdiction on eligibility, federal courts remain open for claims that the USOC denied eligibility in violation of its own internal rules. *See Slaney*, 244 F.3d at 595 (citing *Foschi v. U.S. Swimming, Inc.*, 916 F. Supp. 232, 237 (E.D.N.Y. 1996), and *Harding v. U.S. Figure Skating Ass'n.*, 851 F. Supp. 1476, 1479 (D. Or. 1994), *vacated on other grounds*, 879 F. Supp. 1053 (D. Or. 1995)).

*v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179 (W.D. Wash. 2002) (holding that Title II of the Civil Rights Act of 1964 applied to bar discrimination on basis of religion in judo competition); *Sternberg v. U.S.A. Nat'l Karate-Do Fed'n, Inc.*, 123 F. Supp. 2d 659 (E.D.N.Y. 2000) (proceeding on a Title IX claim against karate national governing body based on organization's decision to withdraw women's karate team from international competition).

Thus, there should be little doubt that this Court has the authority to adjudicate Mr. Gatlin's ADA and Rehabilitation Act claims regardless of § 220503. The rub is the remedy. Admittedly, it is far less clear the extent to which this Court can grant equitable relief that directly contravenes the USOC's eligibility decision. While there does not appear to be any decision clearly prohibiting such relief, the *Lee* court did question the extent to which it could grant injunctive relief. In dicta, the court stated that the ASA prohibited it from directly naming Mr. Lee the coach because it would "infringe on the USOC's exclusive jurisdiction regarding all matters pertaining to participation in the Olympic Games." 331 F. Supp. 2d at 1260 n.2. The court suggested, however, that it might have the authority to direct

the defendants "to select the coach without violating § 1981," but it did not have to reach this issue because it determined that Mr. Lee was not entitled to preliminary injunctive relief in any event because he had not shown a sufficient likelihood of success on the merits of his § 1981 claim. *Id.* at 1260 n.2, 1268-69.

Fortunately, this case does not present this question as of yet. Gatlin is not asking this Court to put him on the United States Olympic team. He is simply seeking to preserve his ability to have the USOC place him on the team if prevails during the qualification trials this weekend. There has not been a determination by any tribunal – judicial or arbitral – as to whether Mr. Gatlin's suspension violates the ADA (although both this Court and the only arbitrator to consider the issue have made clear that it likely does). The Defendants deny that it does and until there is a final determination to the contrary, it is clear they will prohibit him from participating in the Olympics or this weekend's qualification meet.

If and when they lose on this issue, however, the Court should presume that they will comply with federal law and allow him to participate,

even if their exclusive authority to determine representatives could be read to allow them to disregard federal law. After all, the USOC's statutory missions under the ASA include the duties to "protect the opportunity for any amateur athlete ... to participate in amateur athletic competition" and to "provide assistance to ... competition for amateur athletes with disabilities, including where feasible, the expansion of opportunities for meaningful participation by such amateur athletes in programs of athletic competition for able-bodied amateur athletes." 36 U.S.C. § 220503(8), (13).

The analysis would be no different if the USOC were barring Mr. Gatlin from participating in the qualifying meet based on his race or religion. Like an at-will employer, the USOC has the exclusive authority to decide who can compete in the Olympics, but that does not mean it can exercise that authority in violation of the nation's anti-discrimination laws.

In the end, all that Mr. Gatlin is asking is for this Court to order the USOC not to discriminate against him on account of his disability. The key point for present purposes is that there is at least a substantial issue as to whether a federal court has the authority to order these Defendants to

comply with the ADA and Rehabilitation Act. That is all that is necessary for an injunction pending appeal.

## II. MR. GATLIN HAS A SUBSTANTIAL CASE ON THE MERITS REGARDING WHETHER THE CAS ARBITRAL AWARD IS AGAINST UNITED STATES' PUBLIC POLICY.

Defendants have argued that this Court may not act on Mr. Gatlin's ADA claim because the CAS has already decided this matter, and that decision is immune from scrutiny by the federal judiciary of the United States because of the New York Convention. (Doc. 15, at 9-13; Doc. 17, at 18-24) Before the arbitral panels, however, Defendants argued that the American Disabilities Act did not govern at all (Doc. 31-2, at 15; Doc. 30-7), although Defendants' alleged discrimination is directed at an activity taking place on American soil – that is, Mr. Gatlin's participation in a track meet in Oregon. The arbitration panels never disagreed with the assertion that the ADA did not apply in this case. (Doc. 29-9, at 19; Doc. 31-7.)

As the Court noted in its Order of June 24th, recognition and enforcement of arbitral awards under the New York Convention may be refused if it "would be contrary to the public policy" of the country where

enforcement and recognition is sought. Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. 5, § 2(b), opened for signature June 10, 1958, 21 U.S.T. 2517, 2520, 330 U.N.T.S. 3, reprinted in 9 U.S.C.A. § 201 note; *see also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1442 n. 8 (11th Cir. Fla. 1998) (quoting Article V)  This "public policy" exception under the New York Convention requires the party opposing the arbitral award to show: (1) a violation of (2) a well-defined, explicit, and dominant public policy. *See Indus. Risk Insurers*, 141 F.3d at 1445. Mr. Gatlin has a substantial case on the merits for both of these prongs.

Working in reverse order, the United States' public policy is to root out any and all discrimination against persons with disabilities. The policy is well-defined, explicit, and dominant. The Congress has expressly set forth this policy in the Americans with Disabilities Act ("ADA") 42 U.S.C. §12101 *et seq.*, and The Rehabilitation Act of 1973, 29 U.S.C. § 794 *et. seq.* Congress found that discrimination against individuals with disabilities was "a serious and pervasive social problem" that persisted in all areas of

American life. 42 U.S.C. § 12101(a)(2)&(3). This discrimination, Congress found, was "unfair and unnecessary," and it "denies people with disabilities the opportunity to ***compete on an equal basis*** and to pursue those opportunities for which our free society is justifiably famous." *Id.* § 12101(a)(9) (emphasis added). Thus, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."[3] *Id.* § 12101(b)(1).

Defendants' position is essentially that no federal court may enjoin them from discriminating on the basis of a disability provided that their discrimination pertains to eligibility for an Olympic team. (Doc. 15, at 13.) Taking Defendants' position to its illogical extreme, Defendants and their arbitral forums, including the CAS, are entitled to discriminate against athletes on any basis (race, sex, age, disability), and the Defendants and the arbitrators are immune from a federal court interfering with such discrimination. This is not and should not be the law. The public policy

---

[3] Similarly, it enacted The Rehabilitation Act to ban discrimination by reason of disability under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

exception to the New York Convention (though limited) must, at the very least, preclude Defendants and their arbitrators from having the authority to violate the United States' well-defined, explicit, and dominant laws on discrimination, such as the ADA and Title VII. *See Stawski Distrib. Co. v. Browary Zywiec, S.A.*, 2005 U.S. App. LEXIS 4143 (7th Cir. March 4, 2005) (unpublished) (noting in dicta that public policy exception to New York Convention would apply if arbitrators authorized practice of racial discrimination); *Stroehmann Bakeries, Inc. v. Local 776, Int'l Brotherhood of Teamsters*, 969 F.2d 1436 (3d Cir. 1992) (holding that Title VII of the Civil Rights Act of 1964 was such a well-defined and dominant public policy that court could vacate arbitration award that allowed sexual harasser to return to the workplace).[4]

Turning to whether Defendants and the arbitrators have violated the public policy of the ADA, this prong of the public policy exception merits little discussion. In their papers, Defendants by their silence have virtually

---

[4] Though *Stroehman* involved a domestic arbitral award, the Eleventh Circuit has noted that the public policy exception to domestic arbitral awards is largely the same as the public policy exception to international arbitral awards. *Indus. Risk*, 141 F.3d at 1445.

conceded that Mr. Gatlin's rights under the ADA have been violated. This Court already has found that Mr. Gatlin showed a substantial likelihood of success on his ADA claim when it issued a TRO.[5] (Doc. 12, at 3-5.) In addition, this Court already noted the well-reasoned dissenting opinion of one of the arbitrators (Mr. Campbell) (Doc. 36, at 5; Doc.30-1.) Mr. Campbell correctly noted that Defendants are "willfully violating the law – behaving as if they are above the law." (Doc. 36, at 5.) The other arbitrators have never refuted Mr. Campbell's reasoning, but instead have acted as though neither they nor the Defendants must follow the ADA when eligibility for an Olympic team is at issue.

Finally, this Court stated that the public policy exception did not apply merely because the CAS's decision is arbitrary or capricious. (Doc. 36, at 3 (citing *Indus. Risk*, 141 F.3d at 1443)). Mr. Gatlin agrees. However, the "public policy" exception argued here, as well as in *Industrial Risk*, is not an argument premised on the arbitrariness of the CAS's decision. It is premised on the public policy of the ADA and the violation of that public policy by

---

[5] Though the TRO has been vacated (Doc. 36), it was not vacated because Mr. Gatlin's ADA claim lacked merit.

the arbitrators and the Defendants. *See Indus. Risk*, 141 F.3d at 1445-46 (examining the "arbitrary and capricious" argument separately from the public policy argument)

In summary, Mr. Gatlin has made a substantial case on the merits whether the CAS's arbitral award may not be enforced or recognized in the United States because it is against our country's public policy, as determined by Congress when it enacted the ADA. Thus, Mr. Gatlin is entitled to an injunction pending appeal.

## Conclusion

For the foregoing reasons, Mr. Gatlin has a substantial case on the merits and all of the other requirements for an injunction pending appeal are met. This Court should immediately grant the injunction to allow the Eleventh Circuit to complete its review.

Respectfully submitted,

ZARZAUR LAW, P.A.                    MILLS & CREED, P.A.

                                     /s/ John S. Mills
Joseph A. Zarzaur, Jr.               John S. Mills
Florida Bar No. 96806                Florida Bar No. 0107719
Email: joe@zarzaurlaw.com            Email: jmills@appellate-firm.com

Post Office Box 12305
Pensacola, Florida 32302
(850)444-9299
(866)588-1493 facsimile

/s/ Bryan S. Gowdy
Bryan S. Gowdy
Florida Bar No. 0975109
Email: bgowdy@appellate-firm.com
865 May Street
Jacksonville, Florida 32204
(904) 350-0075
(904) 350-0086 facsimile

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by Notice of Electronic Filing per Federal Rule of Civil Procedure 5(b)(2)(E) and Northern District of Florida Local Rule 5.1(A)(6) this 25th day of June 2008, to Robert Conrad Palmer, III, counsel for United States Anti-Doping Agency, Inc., and USA Track and Field, Inc., and John K. Londot and Lorence Jon Bielby, counsel for United States Olympic Committee.

/s/ Bryan S. Gowdy
Attorney