BEFORE THE AMERICAN ARBITRATION ASSOCIATION

## North American Court of Arbitration for Sport Panel

| | |
|---|---|
| United States Anti-Doping Agency, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| v. ) | AAA No. 30 190 01114 05 |
| ) | |
| Rickey Harris, ) | |
| ) | |
| Respondent. ) | |

### DECISION AND AWARD

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Protocol for Olympic Movement Testing, Effective as Revised August 13, 2004, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby Find and Award as follows:

### I. PARTIES and FACTUAL SUMMARY

1.1　An Arbitration Hearing took place in this matter on April 28, 2006, commencing at 9:00 a.m. Eastern time. The Claimant, the United States Anti-Doping Agency ("USADA"), was represented by its General Counsel, Travis T. Tygart. The Respondent, Mr. Rickey Harris ("Mr. Harris"), was represented by legal counsel, Mr. Howard Jacobs of Forgey and Hurrell, LLP. Also present were the athlete, Mr. Harris, and his mother, Pamela Harris. Prior to the date of the hearing, the parties had agreed upon a number of facts by written stipulation. At the Arbitration Hearing, the parties presented detailed Opening Statements, and the Panel heard the testimony of Mr. Harris. Mr. Harris was also cross-examined by USADA. Following the

-1-

testimony of Mr. Harris, the parties proposed an agreed resolution of this matter. This Panel agreed to the resolution on the basis of the Stipulated Facts, the testimony of Mr. Harris, the applicable rules, and the relevant case law. The Panel therefore adopts the proposed resolution of this matter by the Parties as its own Decision for the reasons set forth below.

## II. PROCEDURAL HISTORY

2.1  <u>May 22, 2005</u>: Mr. Harris provided urine sample at the Adidas Track Classic in Carson, California.

2.2  <u>July 6, 2005</u>: USADA notified Mr. Harris of positive "B" sample from May 22, 2005 Adidas Track Classic.

2.3  <u>August 16, 2005</u>: USADA notified Mr. Harris of recommendation of independent Anti-Doping Review Board ("ADRB").

2.4  <u>August 29, 2005</u>: Mr. Harris contested ADRB recommendation and requested arbitration under USADA Protocol for Olympic Movement Testing ("Protocol").

2.5  <u>August 31, 2005</u>: Mr. Harris submitted Standard Application Form for Therapeutic Use Exemption ("TUE") to the International Association of Athletics Federations ("IAAF") for the use of Dexedrine to treat Attention Deficit Disorder ("ADD").

2.6  <u>February 7, 2006</u>: This Panel entered its Preliminary Stipulated Order finding that exceptional circumstances may exist. The Panel invited the parties, if they desired, to make independent submissions to the IAAF Doping Review Board pursuant to IAAF Rule 38.16.

2.7  <u>February 15, 2006</u>: IAAF Responded to Preliminary Stipulated Order, stating that Mr. Harris is not an International-Level Athlete for the purposes of exceptional circumstances determination, and referring the matter back to this Panel for determination of exceptional

circumstances and applicable sanction.

2.8  <u>April 28, 2006</u>: Arbitration Hearing held in Orlando, Florida, at the offices of the American Arbitration Association.

## III. WRITTEN STIPULATION OF THE PARTIES

On or about November 28, 2005, the parties entered into the following written stipulations:

3.1  That the USADA Protocol governs the hearing for an alleged doping offense involving USADA specimen number 487559;

3.2  That the mandatory provisions of the World Anti-Doping Code ("WADA Code") including, but not limited to, the definitions of doping, burdens of proof, Classes of Prohibited Substances and Prohibited Methods, and sanctions, and contained in USADA Protocol at Annex A and the IAAF Anti-Doping Rules are applicable to this hearing for the doping offense involving USADA specimen number 487559;

3.3  That Mr. Harris gave the urine sample designated as USADA specimen number 487559 on May 22, 2005, at the Adidas Track Classic;

3.4  That each aspect of the sample collection and processing for the A and B bottles of USADA specimen number 487559 was conducted appropriately and without error;

3.5  That the chain of custody for USADA specimen number 487559 from the time of collection and processing at the collection site to the receipt of the sample by the World Anti-

-3-

Doping Agency accredited laboratory at the University of California in Los Angeles ("UCLA Laboratory") was conducted appropriately and without error;

3.6     That the UCLA Laboratory's chain of custody for USADA specimen number 487559 was conducted appropriately and without error;

3.7     That the UCLA Laboratory, through accepted scientific procedures and without error, determined the sample positive for the finding of the substance Amphetamine in both the A and B bottles of USADA specimen number 487559 ("Positive Test");

3.8     That the Positive Test was apparently caused by Mr. Harris' use of Dexedrine to control ADD;

3.9     That Mr. Harris agreed that this Positive Test with a finding of the substance Amphetamine in both the A and B bottles of USADA specimen number 487559 is a first doping offense;

3.10    That the Parties agreed the period of ineligibility will be a maximum of two (2) years beginning on the date of the hearing panel's decision with credit being given for the time Mr. Harris has served a provisional suspension beginning on August 30, 2005, to a minimum of the time Mr. Harris has served a provisional suspension beginning on August 30, 2005 until the date of the hearing panel's decision;

3.11    That Mr. Harris reserved his right to argue exceptional circumstances under the applicable rules;

-4-

3.12    That Mr. Harris will be disqualified from and forfeits any and all competitive results, if any, received on May 22, 2005, the date that USADA specimen number 487559 was collected;

## IV.   TESTIMONY OF RICKEY HARRIS AT APRIL 28, 2006 ARBITRATION HEARING

At the Arbitration Hearing, Mr. Harris testified to the following facts:

4.1.    That he was first diagnosed with ADD in about 1992;

4.2.    That he was initially treated for his ADD with Ritalin, and was later switched to Dexedrine;

4.3.    That in addition to ADD, he has been diagnosed with various learning disabilities;

4.4.    That as a result of his ADD and his learning disabilities, he was provided with special accommodations for class work both in high school and in college, which included extra time on tests and having tutors read test materials to him; and that he received similar accommodations when he took the SAT® prior to college;

4.5.    That he enrolled at the University of Florida in the fall of 2000, where he was a member of the university's track team;

4.6.    That on his first day at the University of Florida, he was provided by the university's athletic department with a number of forms to fill out so that he could continue to use Dexedrine before and during track competitions;

4.7.    That the University of Florida did not provide copies of any of these forms to him, and has since been unable to locate the forms except for a letter written by Dr. Ann Grooms in April 2001;

4.8.    That the University of Florida told him that these forms that he filled out would

-5-

provide him with the necessary authorizations to use Dexedrine before and during track competitions;

4.9. That he believed, albeit mistakenly, that he had, in the fall of 2000, submitted all necessary paperwork to USADA and others to use Dexedrine before and during any track competitions, domestically or internationally;

4.10 That this fact was corroborated by the medical notes maintained and made available to the Panel by the University of Florida. One such note stated that "[h]e does have proper authorizations for the track organizations for use of this medication based on his diagnosis."[mfl]

4.11. That he declared the use of Dexedrine on his Doping Control Form on May 22, 2005, at the Adidas Track Classic;

4.12. That even after testing positive for Amphetamine from his urine sample provided on May 22, 2005, he believed, albeit mistakenly, that he had the necessary paperwork on file with USADA for the use of Dexedrine in competition;

4.13. That as a result of the provisional suspension that he accepted on August 30, 2005, he missed a number of track meets during the 2005 outdoor season, missed the entire 2006 indoor track season, and has already missed a number of track meets during the 2006 outdoor season.

## V. APPLICABLE RULES

The USADA Protocol and the IAAF Anti-Doping Rules, both of which incorporated the mandatory provisions of the WADA Code and were in effect at the time of the test, apply to this matter. The relevant WADA Code definition of doping set forth in Article 2.1 states:

*2.1    The presence of a Prohibited Substance or its Metabolites or*

*Markers in an Athlete's bodily Specimen.*

See Article 2.1 of the WADA Code at Annex A of the USADA Protocol.

Additionally, the period of ineligibility for a doping violation in accordance with Article 10 of the WADA Code is that found in Article 10.2 as follows:

> *10.2 Imposition of Ineligibility for Prohibited Substances and Prohibited Methods*
> Except for the specified substances identified in Article 10.3, the period of Ineligibility imposed for a violation of Articles 2.1 (presence of Prohibited Substances or its Metabolites or Markers), 2.2 (Use or Attempted Use of Prohibited Substance or Prohibited Method) and 2.6 (Possession of Prohibited Substances and Methods) shall be:
>
> - First violation: Two (2) years' Ineligibility.
>
> - Second violation: Lifetime Ineligibility.
>
> However, the Athlete or other Person shall have the opportunity in each case, before a period of ineligibility is imposed, to establish the basis for eliminating or reducing this sanction as provided in Article 10.5.

See id. at Article 10.2 (emphasis added).

The IAAF adapted the mandatory provisions of the WADA Code into its rules effective March 1, 2004. These rules include the "exceptional circumstances" provisions of the WADA Code. See IAAF Anti-Doping Rules 40.2 and 40.3 and WADA Code Article 10.5. The relevant portion of Article 10.5 of the WADA Code, which can also be found in the IAAF Anti-Doping Rules at Rule 40.2 and 40.3 (respectively), states:

*10.5.1 No Fault or Negligence*

> If the Athlete establishes in an individual case involving an anti-doping rule violation ... that he or she bears No Fault or Negligence for the violation, the otherwise applicable period of Ineligibility shall be eliminated. When a Prohibited Substance or its Markers or Metabolites is detected in an Athlete's Specimen in

-7-

> violation of Article 2.1 (presence of Prohibited Substance), the Athlete must also establish how the Prohibited Substance entered his or her system in order to have the period of Ineligibility eliminated.
>
> *10.5.2 No Significant Fault or Negligence*
>
>> ... If an Athlete establishes in an individual case involving such violations that he or she bears No Significant Fault or Negligence, then the period of Ineligibility may be reduced, but the reduced period of Ineligibility may not be less than one-half of the minimum period of Ineligibility otherwise applicable. ... When a Prohibited Substance or its Markers or Metabolites is detected in an Athlete's Specimen in violation of Article 2.1 (presence of Prohibited Substance), the Athlete must also establish how the Prohibited Substance entered his or her system in order to have the period of Ineligibility reduced.
>
> See id. at Article 10.5 (emphasis added).

## VI. FACTUAL BASIS FOR FINDING OF EXCEPTIONAL CIRCUMSTANCES

6.1     The Panel finds that the written stipulations, documents and the testimony of Mr. Harris do support a finding of no significant fault or negligence for the reasons summarized above. It appears that Mr. Harris does suffer from ADD. Mr. Harris was at all relevant times under the mistaken belief that he had submitted all necessary paperwork to use Dexedrine before and during any track competition, domestic and international. This mistaken belief was formed based on representations from the University of Florida. Mr. Harris' mistaken belief in this regard is supported by the fact that he openly declared the use of Dexedrine on his May 22, 2005 Doping Control Form. The Panel agrees that given the unique circumstances presented in this case, and the evidence as summarized above, Mr. Harris has satisfied that he bears No Significant Fault or Negligence, and, therefore, reduces the period of ineligibility from two years to one year.

6.2     The Panel further finds based on WADA Code Article 10.8, that the period of ineligibility should start on May 22, 2005, the date of the test. This conclusion is allowed under 10.8 only when fairness dictates and is appropriate in this case under the CAS precedent established in WADA v. USADA and USBSF and Lund (CAS OG 06/001), and Hipperdinger v. ATP Tour (CAS 2004/A/690). As in Hipperdinger, Respondent Mr. Harris did not abuse his defense rights or otherwise intentionally delay the proceeding in order to gain any competitive advantage, nor did he use Dexedrine with the intent of enhancing his performance. The Panel believes, consistent with Lund and Hipperdinger, that for reasons of fairness, as outlined above, the period of ineligibility should commence on May 22, 2005, the date of sample collection.

## VII. OTHER MATTERS

7.1     The parties propose that all competitive results achieved by Mr. Harris between May 22, 2005 and August 31, 2005 be disqualified. The Panel agrees with this proposal pursuant to WADA Code Article 10.7 and IAAF Rule 39.

## VIII. DECISION

On the basis of the foregoing facts and legal aspects, this Panel renders the following decision:

1.      Mr. Harris' period of ineligibility is for one year commencing on May 22, 2005, and concluding on May 21, 2006.

2.      All competitive results achieved by Mr. Harris between May 22, 2005, and August 31, 2005, shall be disqualified.

3.      The administrative fees and expenses of the American Arbitration Association and the compensation and expenses of the arbitrators totaling $20,455.66, shall be borne by the

United States Olympic Committee.

4. The parties shall bear their own costs and attorney's fees.

This Decision and Award is in full settlement of all claims submitted to this arbitration.

DATED: May 22, 2006        *Carolyn Witherspoon*
                           Carolyn Witherspoon, Chair

DATED: May ___, 2006       _____
                           Christopher Campbell

DATED: May ___, 2006       _____
                           Robert Bennett

-10-