UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JUSTIN GATLIN,

    Plaintiff,

v.                                              Case No, 3:08cv241/LAC/EMT

UNITED STATES ANTI-DOPING
AGENCY, INC.; USA TRACK AND
FIELD, INC.; UNITED STATES
OLYMPIC COMMITTEE.; and
INTERNATIONAL ASSOCIATION
OF ATHLETICS FEDERATIONS,

    Defendants.

**UNITED STATES OLYMPIC COMMITTEE'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

Defendant United States Olympic Committee (USOC) files this response to Plaintiff's Emergency Motion for Injunction Pending Appeal Plaintiff's Motion). On June 24, 2008, this Court issued its order vacating its previously entered temporary restraining order and denying Mr. Gatlin's request for a preliminary injunction to require the USOC and other defendants to allow Mr. Gatlin, who has been disqualified from Olympic participation based on two violations of established anti-doping regulations, to participate in the United States Olympic Trials that are presently scheduled to commence on Friday, June 27, 2008.[1]

After seeking review of his disqualification from the Olympic trials based on a second violation of the anti-doping prohibitions adopted by the International Olympic

---

[1] Mr. Gatlin has simultaneously filed a stay motion before the U.S. Court of Appeals for the Eleventh Circuit.

Committee (IOC), which the USOC is obligated to enforce through the arbitration process mandated by the United States Congress and Olympic movement rules, Mr. Gatlin sued the USOC, the United States Anti-Doping Agency (USADA), USA Track and Field, Inc. (USATF) and the International Association of Athletics Federations (IAAF) in the Northern District of Florida, seeking injunctive relief that would require the defendants to allow him to participate in the forthcoming trials. The Court deferred ruling at the conclusion of its June 23, 2008 hearing on Mr. Gatlin's motion for preliminary injunction. On June 24, 2008, the Court issued the order Mr. Gatlin seeks to review, in which the Court vacated the TRO and denied Mr. Gatlin's request for a preliminary injunction, based on a ruling that – as USOC and other defendants had argued – the Court has no jurisdiction to review the arbitration rulings that disqualified Mr. Gatlin from participating in Olympic events.

Mr. Gatlin's motion cannot satisfy the most fundamental prerequisite for a stay pending his appeal because he cannot show the requisite substantial likelihood of success because – as this Court rightly held – the United States courts have no jurisdiction to address Mr. Gatlin's claim. Nor does the requisite balancing of the equities fall in Mr. Gatlin's favor. Mr. Gatlin essentially has argued that, if he indeed should be excluded from the Olympic trials, allowing him to race in the trials would be of no moment. That is most assuredly not so: forcing the USOC and the other defendants to allow Mr. Gatlin to race in the United States Olympic trials will destroy the carefully created international anti-doping protocol through which the USOC and other organizations have striven to rid amateur sports of performance-enhancing drugs; and, perhaps more to the point, the record before this Court reflects that the IOC will *not* allow Mr. Gatlin to compete in the summer Olympics, because the governing arbitral bodies have rejected his challenge and those rulings have not been contested before the Swiss Federal Supreme Court. It is

2

therefore wrong for Mr. Gatlin to argue that allowing him to race will have no negative impact on the trials.

This Court's jurisdictional ruling is correct: the federal courts have no power to address Mr. Gatlin's improperly brought claims. Both the merits and the equities plainly favor denying Mr. Gatlin's motion.

## STANDARD OF REVIEW

Four factors govern the decision to grant an injunction or stay pending appeal: (i) the likelihood of success on the merits; (ii) the prospect of irreparable injury if relief is withheld; (iii) the possibility of harm to the other parties if relief is granted; and (iv) the public interest. *E.g. Hilton v. Braunskill,* 481 U.S. 770, 776 (1987); *Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.,* 210 F.3d 1309, 1314-15 (2000); *Garcia-Mir v. Meese,* 781 F.2d 1450, 1452 (11th Cir. 1986); *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981); Fed. R. Civ. P. 62(d).

## ARGUMENT

**I.   MR. GATLIN CANNOT DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON APPEAL.**

**A.   This Court Correctly Ruled That It Has No Jurisdiction to Hear a Challenge to the Determination of Ineligibility Based on Mr. Gatlin's Anti-Doping Violations.**

This Court recognized that it was required to reject Mr. Gatlin's request for the Court to step into the arbitral tribunals' shoes and to try – for the *third* time – the question whether Mr. Gatlin's 2001 suspension should count as a first violation. Mr. Gatlin should not have been heard even to request such relief, and the Court was correct in ruling that it no power to grant it.

Mr. Gatlin raised all of his claims, including his ADA arguments, in his AAA hearing. He then again fully litigated all of his claims, including the ADA claim, in a *de*

*novo* appeal before the CAS. To address, yet again, Mr. Gatlin's claim that invalidating his 2001 violation through a retroactive therapeutic use exception (TUE) would be a "reasonable accommodation" under the ADA, this Court would have been required to determine, among other things, whether: (i) the 2001 violation can be used to enhance the sanction for the 2006 violation; (ii) Mr. Gatlin was at fault for the 2001 violation; and, most importantly (iii) *any* sanction for the 2001 positive test would violate the ADA. Those are precisely the questions that were expressly addressed before the CAS and decided against Mr. Gatlin.

The Court was correct in relying on the Seventh Circuit's decision in *Slaney v. IAAF & USOC*, 244 F.3d 580 (7th Cir. 2001), to reject Mr. Gatlin's claims. (DE:36:2-3). *Slaney* involved a similar attempt by an athlete to plead a challenge to a doping sanction as a violation of various state and federal laws (and made an allegation that the doping test involved systematically discriminated against women), which the court rejected because the disqualified athlete sought judicial review of "the identical issues" that had been adjudicated by the CAS. *Id.* at 590. As in *Slaney*, granting relief to Mr. Gatlin would necessarily undermine or, indeed, nullify the CAS's decision, and this Court correctly refused to do so.

The USOC is entitled (and, indeed, required) to enforce the CAS's decision under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York Convention, which entered into force in 1959, and was subsequently codified in 9 U.S.C. §§ 201-208, as the CAS itself has recognized. (DE:20). The New York Convention governs because the CAS is a foreign tribunal, and the proceedings were governed by Swiss law, as this Court recognized in *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434, 1440-41 (11th Cir. 1998) ("[w]e join the First, Second, Seventh, and Ninth Circuits in holding that arbitration

4

agreements and awards 'not considered as domestic' in the United States are those agreements and awards which are subject to the Convention," not necessarily for being "made abroad, but because [they were] made within the legal framework of another country, *e.g.* pronounced in accordance with foreign law *or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction*"; "broad construction … is more in line with the intended purpose of the treaty, which was entered into to encourage the recognition and enforcement of international arbitration awards") (original emphasis).

Although the statute codifying the convention sets forth grounds for evading enforcement, 9 U.S.C. § 207, Mr. Gatlin failed even to allege, much less establish, *any* basis for not enforcing the CAS's decision.[2] Indeed, he entirely has ignored the New York Convention, as he sought, and obtained, the equivalent of *de novo* review of a claim that he voluntarily submitted to arbitration, in compliance with procedures by which he is bound.[3]

In the end, this Court's lack of jurisdiction to grant Mr. Gatlin's requested relief is established by the overarching rule that parties are entitled to enforcement of binding

---

[2] At most, this Court has jurisdiction to refuse to enforce the award. It cannot have jurisdiction to vacate the award, as that power lies solely with the Swiss Federal Tribunal.

[3] This Court recognized that Mr. Gatlin had failed to plead or argue any of the exceptions to the New York Convention. (DE:36:3). The Court noted that "the only conceivable exception would be "public policy" exception (DE:36:3), 9 U.S.C. § 207, which exception is to be applied narrowly, and should only be invoked where enforcement would violate the forum's basic notions of morality and justice. *Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*, 161 F.3d 314 (5th Cir. 1998); *Indocomex Fibres Pte, Ltd. v. Cotton Co. Int'l, Inc.*, 916 F.Supp. 721 (W.D. Tenn. 1996). As this Court acknowledged, the exception is "a very slender exception reserved for decisions which violate the 'most basic notions of morality and justice,'" such that even "arbitrary and capricious" decisions "do not qualify under this exception." (DE:36:3-4). (citation omitted). No such argument could possibly be made here: enforcement of the CAS decision would further the well-established goals of the Olympic Movement in creating a unitary and highly expert panel for review of eligibility determinations, as well as the USOC's statutorily granted exclusive authority to determine Olympic eligibility. Even this Court, which frankly voiced its disapproval of the decisions that rendered Mr. Gatlin ineligible, declined to find that those decisions "rise to the level of moral repugnance as is required under the law for the Court to consider piercing the veil of the jurisdictional issue." (DE:36:4).

5

arbitration agreements. *E.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Volt Info Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Employers Ins. of Wausau v. Bright Metal Specialties,* 251 F.3d 1316, 1322 (11th Cir. 2001). The very essence of arbitration is that judicial review is all but eliminated, save for narrow grounds for vacatur, such as are set forth in New York Convention or under the Federal Arbitration Act. *E.g., Hall St. Assocs. v. Mattel, Inc.,* --- U.S. ---, 125 S.Ct. 1396, 1402 (2008); *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57 (1995); *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984). "Otherwise plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final." *Bianchi v. Roadway Exp.,* 441 F.3d 1278, 1284 (11th Cir. 2006) (citation omitted).

The courts are to "rigorously enforce" arbitration agreements. *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.,* 312 F.3d 1349, 1357-58 (11th Cir. 2002) (citation omitted). Here, enforcing the agreement by which all parties to this action are bound would require Mr. Gatlin, under controlling Swiss law, to seek such review of the CAS decision as may be available before the Swiss Federal Supreme Court, in accordance with the USADA Protocol and the CAS Code, as this Court recognized. (DE:36:4) (Swiss Federal Supreme Court is Mr. Gatlin's "remaining avenue for relief").

The Swiss Act on Private International Law (PILA) provides for the review contemplated under the CAS Code. (DE:16:Ex.1:¶18). Under the PILA, a CAS award may be challenged on certain specified grounds; and the Swiss tribunal would entertain an appeal by Mr. Gatlin. *Id.* at ¶60-62. Because the seat of the CAS arbitration was Switzerland (as agreed by the parties), and because the procedural law of the CAS

arbitration was Swiss law, Mr. Gatlin's claims must be presented to the Swiss Federal Supreme Court. *Int'l Std. Elec. Corp. v. Bridas Sociedad Anonima Petrolera*, 745 F. Supp. 172, 177-78 (S.D.N.Y. 1990) (citation omitted).

### B. Mr. Gatlin's ADA Claim Does Not Entitle Him to Bring an Original Action to Determine His Eligibility.

#### 1. The ADA cannot be invoked to trump the Amateur Sports Act.

The Amateur Sports Act does not create a private right of action, and the Congress's conferral of exclusive authority to determine eligibility on the USOC preempts claims that would "override legislative intent" underlying that conferral of authority. *Slaney,* 244 F.3d at 594-95. Here, Mr. Gatlin's purported ADA claim – even if it could be successfully brought before a district court – would trump the Amateur Sports Act by empowering a federal court to determine his eligibility to participate in the forthcoming trials.

This the courts cannot do: although a properly raised discrimination claim may, under certain circumstances, go forward against a sports organization governed by the Amateur Sports Act, such a claim cannot provide a springboard for injunctive relief that would contravene the act's conferral of exclusive jurisdiction to determine *eligibility* on the USOC. *Abdallah v. U.S. Ass'n of Taekwondo, Inc.,* 2007 U.S. Dist. LEXIS 68179 (S.D. Tex. Sept. 14, 2007). Indeed, a discrimination claim can go forward, if at all, *only* on monetary damages, as a federal court "is powerless to order" that an athlete be credentialed in Olympic competition because such relief "is precisely the kind of relief that is preempted by the Amateur Sports Act." *Lee v. U.S. Taekwondo Union,* 331 F. Supp. 2d 1251, 1269 (D. Hawai'i 2004). And it is particularly inappropriate to use a stay motion to accomplish that result, which is exactly what Mr. Gatlin is doing. If a stay is granted pending his appeal, the full relief that Mr. Gatlin seeks in his action will be

7

granted by this coming weekend. Stays of injunctive relief are generally "preventive or protective," *i.e.,* they are granted "to maintain the status quo pending a final determination of the merits of the suit." *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981). Here, Mr. Gatlin is seeking to use a stay effectively to determine the merits of the action by granting relief that the trial court has correctly foreclosed.

### 2. Mr. Gatlin has failed to set forth a substantial likelihood of success on his ADA claim.

Even if the ADA claim could have been considered, the relief that this Court suggested it might have granted – if it had jurisdiction to do so – is simply unavailable, at least in the context of a hastily convened preliminary injunction hearing. The essence of Mr. Gatlin's claim is that he cannot be punished for taking his ADD medication, even when the IOC, USADA and the USOC unequivocally have banned the medication under the anti-doping regime. An ADA claim cannot be manufactured from such poor materials.

First, it is not a "reasonable accommodation," within the meaning of the ADA fundamentally to change a sporting activities' eligibility requirements. *Cole v. N.C.A.A.,* 120 F.Supp.2d 1060, 1070-71 (N.D. Ga. 2000); *Ganden v. N.C.A.A.,* 1996 WL 680000, *15-16 (N.D. Ill. Nov. 21, 1996). "Eligibility requirements are deemed 'essential' or 'necessary' when such requirements are reasonably necessary to accomplish the purposes of a particular program." *Cole,* 120 F.Supp.2d at 1070-71. Mr. Gatlin, who knowingly ingested a banned substance, never told responsible personnel that he was doing so at a time when a less-draconian accommodation could have been made, is in a particularly poor position to demand a fundamental rule change. *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999) (defendant's "duty to provide a

reasonable accommodation is not triggered unless a specific demand for an accommodation has been made").

The ADA specifically prohibits accommodations that would "fundamentally alter" the goods or services at issue 42 U.S.C. § 12182(b)(2)(A)(ii). *See PGA Tour, Inc. v. Martin,* 532 U.S. 661, 682 (2001). If the trials were to proceed with Mr. Gatlin's participation, this Court's order would thus fundamentally alter the nature of an event the purpose of which is to select runners to *compete in the Olympics*. (DE:16:Ex.2:¶¶10-12). *McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 561 (6th Cir. 1997) (district court abused its discretion in entering TRO for fifth-year high school senior with ADA claims in face of athletic association's longstanding eight-semester eligibility rule, because the only possible accommodation would have been complete waiver of regulation). "Waiver of a necessary requirement would be a substantial rather than merely a reasonable accommodation." *Id.* at 461.

Even if that were not so, forcing the USOC and other defendants to allow Mr. Gatlin to participate in the Olympic trials, when he *cannot* participate in the Olympics, would fundamentally alter the trials. The IOC is bound by the rules that Mr. Gatlin has flouted and *will not allow* Mr. Gatlin to run in the Olympics, regardless of the Court's ruling or Mr. Gatlin's performance in trials. (DE:19). *See Reynolds v. Int'l Amateur Athletic Fed.,* 23 F.3d 1110, 1113 (6th Cir. 1994).

That is, if Mr. Gatlin were to qualify, to the exclusion of other athletes, when he cannot compete in the Olympics, the trials would be converted from the Olympic design, which is the integral nature of the USOC's selection process, into a type of a "hometown" remedy and would eliminate the international competition. The ADA precludes such fundamental change. *Ass'n for Disabled Americans, Inc. v. Concordegaming Corp.,* 158 F. Supp. 2d 1353, 1367 (S.D. Fla. 2001).

9

Moreover, here, the legal requirements of the "game" are not only those set by the defendants but those imposed on the defendants by law. Because Mr. Gatlin has proceeded before an arbitral tribunal, raising the ADA and the Rehabilitation Act claims, he accepted the fundamental rules and requirements of the law and should not now be able to ignore them.

The ADA prohibits the fundamental alteration that Mr. Gatlin seeks here. No matter how much sympathy one might have for Mr. Gatlin, he cannot destroy the sport or the rights of others to participate, and ignore the jurisdictional prohibitions created by binding arbitration and a system of justice that enables international competition. "Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Schiavo,* 403 F.3d at 1226 (citations omitted).

## II. THE BALANCING OF THE EQUITIES SUPPORTS DENYING A STAY OF THIS COURT'S ORDER.

For a preliminary injunction, Mr. Gatlin must show – in addition to "a substantial likelihood of success on the merits," which, as set forth in Point I, *supra,* he cannot satisfy – that he has "a substantial threat of irreparable injury," that his injury "outweighs the potential harm to the defendant," and that injunctive relief will not disserve the public interest. *Palmer v. Braun,* 287 F.3d 1325, 1329 (11th Cir. 2002) (citation omitted). In addition to his inability to show any likelihood of success, Mr. Gatlin cannot show that his potential injury outweighs the potential harm to USOC and the other defendants and, moreover, the public interest would truly be disserved by injunctive relief.

First, as set forth in Point I, *supra,* the IOC *will not allow* Mr. Gatlin to compete in the Olympics, even if he were to participate and qualify in trials, because the IOC is bound by its own rules. And the courts cannot shield Mr. Gatlin "from the decisions of

international bodies" even to craft injunctive relief that would force United States entities to allow him to compete. *Gahan v. U.S. Amateur Confederation of Roller Skating,* 382 F. Supp. 2d 1127, 1129-30 & n.4 (D. Neb. 2005). Thus, the consequences addressed in Point I, *i.e.*, forcing the defendants to allow Mr. Gatlin to race, take on most serious dimensions:

> 9. In order to compete at the Olympic trials, an athlete must be eligible to compete within the definition of the selection process.
>
> 10. Many of the events at the USATF Olympic Trials, specifically 100 dash competitions, are run in heats with the fastest times advancing to a single elimination tournament with the top four finishers from each race advancing to the next round of races.
>
> 11. Allowing an ineligible athlete would harm the rest of the eligible field because the athlete selection system bases an athlete's final rank order of finish on "the highest round completed by an athlete."
>
> 12. Should an ineligible athlete compete in the USATF Olympic Trials, he could damage the chances of an eligible competitor by knocking that competitor out of a spot in the quarterfinal round, the semifinal or the final round of an event.
>
> 13. It is for this reason that in any arbitration brought pursuant to Article IX of the USOC bylaws involving the selection of an athlete to participate in a protected competition, all athletes may be adversely affected by the outcome of the arbitration must be notified.

(DE:16:Ex.2:¶¶9-13).

Injunctive relief would thus accomplish only an unwarranted disruption of a finely tuned competition to determine who will represent the United States in this track event at the Olympics, and likely deny a deserving athlete the opportunity to do so. *Rhodes v. Ohio High Sch. Athletic Ass'n*, 939 F. Supp. 584, 593 (N.D.Ohio 1996) (declining to enter TRO for learning disabled high school student to participate in football program for 9th and 10th semester of high school because students were eligible for eight high school semesters only and, although student showed irreparable harm due

to inability to play and be scouted by college scouts, student was likely unable to demonstrate "that his disability was the sole cause of his ineligibility"; also, injunction would displace another athlete); *see also, Lee,* 331 F. Supp. 2d at 1269 (refusing, despite claims of national origin discrimination, to enter temporary restraining order requiring USOC to credential coach because the requested relief would cause harm to the other candidates for the coaching position).

It is even more inappropriate, however, to grant relief, as set forth in Point I, *supra,* because Mr. Gatlin has refused to exercise his available remedy to challenge the CAS ruling, and has made no showing whatsoever that the Swiss Federal Supreme Court cannot address his claim before the trials commence. *Gahan,* 382 F. Supp. 2d 1129-30 & n5 (denying TRO for skater excluded from international competition because administrative remedies remained available, association had "follow[ed] the rules to the letter of them," procedures existed for "the speedy resolution" of the dispute and, although plaintiff would be in China at time of United States arbitration, technology would likely be available to allow plaintiff to participate). Where administrative remedies are available, it cannot be said with the requisite certainty that an ineligible athlete will suffer irreparable injury absent an injunction. *Ohio Taekwondo Ass'n v. U.S. Olympic Comm.,* 2005 WL 11988561, *8 (S.D. Ohio Apr. 20, 2005).

The harm to others and the public interest clearly outweigh any injury that Mr. Gatlin might argue – particularly when there is nothing that a United States court can, or should, do to force the IOC to allow Mr. Gatlin to participate in the Olympics.

## CONCLUSION

Based upon the foregoing, the USOC requests the Court to deny Plaintiff's Motion.

Dated this 25th day of June, 2008.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
101 East College Avenue
Post Office Drawer 1838
Tallahassee, Florida 32302
Phone: (850) 222-6891
Fax: (850) 681-0207


      /s/ Lorence Jon Bielby
**LORENCE JON BIELBY**
**Florida Bar No. 0393517**
**JOHN K. LONDOT**
**Florida Bar No. 0579521**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served per Federal Rule of Civil Procedure 5(b)(2)(E) and Northern District of Florida Local Rule 5.1(A)(6) this 25th day of June 2008, to the following:

Joseph A. Zarzaur, Jr.
Zarzaur Law, P.A.
Post Office Box 12305
Pensacola, Florida  32591
*Counsel for Justin Gatlin*

John S. Mills
Bryan S. Gowdy
Mills & Creed, P.A.
865 May Street
Jacksonville, Florida  32204
*Counsel for Justin Gatlin*

Robert C. Palmer, III
Wade, Palmer & Shoemaker, P.A.
25 West Cedar Street, Suite 450
Pensacola, Florida  32502
*Counsel for United States Anti-Doping Agency, Inc and U.S. Track & Field, Inc.*


                                           /s/ Lorence Jon Bielby
                                           LORENCE JON BIELBY