UNITED STATES COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JUSTIN GATLIN,

    Plaintiff,

v.

UNITED STATES ANTI-DOPING
AGENCY, INC.;
USA TRACK AND
FIELD, INC.;
UNITED STATES OLYMPIC
COMMITTEE.; and
INTERNATIONAL ASSOCIATION
OF ATHLETICS FEDERATIONS,

    Defendants.

Case No. 3:08cv241/LAC/EMT
Florida Bar No. 0393517

---

## UNITED STATES OLYMPIC COMMITTEE'S
## MOTION TO DISMISS COMPLAINT

---

Defendant, United States Olympic Committee (USOC), by and through undersigned counsel, moves pursuant to Federal Rule of Civil Procedure 12(b) to dismiss the Complaint filed in this action by Plaintiff, Justin Gatlin (Gatlin), for lack of jurisdiction. In support of its Motion, USOC submits the following memorandum of law.

**PRELIMINARY STATEMENT**

Gatlin brings this action alleging violations of the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973 (RA) by the defendants, including USOC, seven years after testing positive for the use of Adderall at a track and field competition and after initiating, but not exhausting, required arbitral processes in which Gatlin raised ADA and RA claims. As this Court clearly recognized during the injunction proceedings, this Court lacks jurisdiction over

the subject matter of this Complaint. Accordingly, the Complaint should be dismissed as was Gatlin's Preliminary Injunction Motion. This Court does not have jurisdiction over the claims because the substance of Gatlin's claims were submitted to arbitration and Gatlin has not exhausted the arbitral remedies afforded to him.[1] Both the merits and the equities plainly favor dismissing Gatlin's claims.

## STATEMENT OF FACTS AS SET FORTH IN COMPLAINT

Gatlin was diagnosed with Attention Deficit Disorder (ADD) at age 9 following difficulty concentrating on school work and later was prescribed medication to address the ADD, including Adderall. Compl. at ¶15, 21. Gatlin alleges that Adderall has no athletic performance-enhancing benefits (and to the contrary states that it makes him "lethargic"), but provides Gatlin the ability to avoid diminishment of his "scholastic performance." Compl. at ¶¶22, 23, 32, 37 and 41.

Gatlin accepted an athletic scholarship for track and field at the University of Tennessee, Knoxville (UT). Compl. at ¶28. At UT, Gatlin continued to excel in track and field, but he struggled academically even though he continued to use Adderall. Compl. at ¶¶31, 33-35. Gatlin was placed in a special education program at UT to assist in his school work, continued to be monitored by doctors, was provided with more access to tutors than otherwise would be allowed by NCAA regulations and was given "extended time on his examinations." Compl. at ¶¶29-30. In particular, Gatlin had trouble with his afternoon classes because Gatlin would typically skip his afternoon dose of Adderall because it made him feel lethargic at track practice. Compl. at ¶32. Gatlin's complaint does not allege that he uses Adderall to participate in track

---

[1] USOC does not waive any right or defense that arguably may become relevant and material if this Court were to find that it does have jurisdiction over this matter, including, but not limited to, statute of limitations, act of state doctrine, disability unrelated to access, no entitlement to money damages under the ADA, no entitlement to money damages under the RA as pled, and failure to join indispensable parties.

2

and field competition and only alleges a need for the medication to assist in academic performance. Compl. at ¶41.

Due to poor academic performance, Gatlin enrolled in summer school courses between his freshman and sophomore years of college to remain eligible to compete in track and field for UT.[2] Compl. at ¶40. On June 13, 2001, Gatlin was scheduled to take a summer school examination and was using Adderall. Compl. at ¶42. Following the examination, Gatlin stopped the use of Adderall in order to not feel the side effects at an upcoming track and field competition. Compl. at ¶44. Gatlin alleges that he had been instructed that it was standard practice for athletes on Adderall to stop taking the medication two days prior to competition. Compl. at ¶47.

Three days later, on June 16, 2001, Gatlin competed in his first USA Track & Field sanctioned competition. Compl. at ¶44, 46. Gatlin received a "pledge sheet" referencing drug testing and prohibited substances, although it did not specifically list Adderall. Compl. at ¶48. Gatlin signed the pledge sheet. Compl. at ¶49. There was also a form available called a "therapeutic use exemption" through which Gatlin could have disclosed any medically necessary medication, including Adderall, and sought an exemption from the standard testing prohibitions for this medication. Compl. at ¶50. After wining the 100 and 200 meter events and the 300 meter hurdles at the competition, Gatlin was tested for prohibited substances on June 16 and June 17, 2001. Compl. at ¶51. Both samples tested positive for amphetamines. Compl. at ¶52.

Gatlin presented his medical records to the United States Anti-Doping Agency (USADA) and requested that the positive result be waived. Compl. at ¶59-60. USADA denied the request and recommended that a two-year sanction be imposed. Compl. at ¶61. Gatlin was "advised"

---

[2] Due to academic difficulties, Gatlin decided to turn professional after his sophomore year of college. Compl. at ¶80.

by "the USOC Ombudsman to" seek and retain independent counsel to assist with the positive findings and the arbitration process." Compl. at ¶58. Pursuant to USADA Protocol, Gatlin contested the sanction before an American Arbitration Association (AAA) Panel raising his ADA and RA arguments. Compl. at ¶63; *see* Docket Entry 36 (hereinafter "Order") p.3 ("[i]t is beyond dispute that Plaintiff properly challenged his suspension on grounds that Defendants' actions violated his rights under the American with Disabilities Act and the Rehabilitation Act of 1973, the very grounds he raises ..."). Gatlin does not allege that he pursued his arbitrational remedies to exhaustion.

Before the AAA Panel, while he raised the ADA and RA arguments, Gatlin "stipulated" and "agreed" that "Justin's positive result was technically a doping violation" under the International Association of Athletics Federations (IAAF) rules. Compl. at ¶64. The AAA Panel imposed a 2-year sanction for Gatlin's offense, but the IAAF granted him early reinstatement based on the medical use of Adderall.[3] Compl. at ¶71, 74. Notwithstanding the early reinstatement, in a 2002 newsletter, the IAAF stated that Gatlin had committed a doping offense and stated any repetition of his positive result would result in a lifetime ban. Compl. at ¶74 n.7. The complaint does not allege that Gatlin contested this IAAF statement or any of the parameters of the IAAF reinstatement in a proceeding before the Court of Arbitration for Sport (CAS) as was his right as the Court noted. *See* Order at 3 ("[a]s these matters have been decided, Plaintiff is precluded from raising them here unless he can show that the CAS decision falls within one of the identified exceptions.").

---

[3] Gatlin participated in the 2004 Summer Olympics, winning numerous medals, and became the 2005 World and USA 100 meter and 200 meter champion. Compl. at ¶81-82.

4

In 2006, Gatlin competed in "the Kansas Relays" and was selected to be tested for use of prohibited substances. Compl. at ¶87. Gatlin tested positive for exogenous testosterone or its metabolites. Compl. at ¶88. Similar to the 2001 positive test, Gatlin "on advice of counsel entered into a stipulation wherein he admitted" that the 2006 test showed signs of a prohibited substance. Compl. at ¶92. Also similar to the 2001 positive test, Gatlin sought review raising the ADA and RA arguments before the AAA, which considered the 2006 violation to be Gatlin's second violation and imposed a four-year suspension.[4] Gatlin appealed the 2006 AAA decision to the Court of Arbitration for Sport (CAS), which considered Gatlin's ADA and RA arguments and affirmed the decision of the AAA panel with a slight date modification. Compl. at ¶109.

Gatlin filed a five-count complaint seeking monetary and injunctive relief for alleged violations of the ADA and RA. Injunctive relief was denied by this Court and the United States Court of Appeals for the Eleventh Circuit during the week of June 22, 2008 on the grounds that the Courts lacked jurisdiction to entertain Gatlin's complaint. *See* Order at 2, 4.

## ARGUMENT

### I. MOTION TO DISMISS STANDARD

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(1), subject matter jurisdiction must be affirmatively shown in the record before considering the merits of any case. *E.g., Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). Jurisdiction "must be

---

[4] The AAA's four-year suspension ran from May 26, 2006 to May 26, 2010. Compl. at ¶94.

demonstrated not supposed." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000). When a plaintiff's jurisdictional allegations are challenged, he bears the burden of supporting his "allegations by competent proof." *Id.*; *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (requiring proof by a preponderance of the evidence).

A party may bring either a facial or a factual challenge to a court's subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). In a factual challenge, a court must determine if it has power to hear the case. *Id.* A court is not required to assume that the plaintiff's allegations are true and is free to weigh the evidence and evaluate the merits of the jurisdictional claims. *Id.* at 1529. The presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach and, where the elements of the underlying cause of action are not implicated, the court is free to weigh the evidence. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999); *Goodman v. Sipos*, 259 F.3d 1327, 1331 n. 6 (11th Cir. 2001).

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION TO ADJUDICATE THE CLAIMS.

### A. This Court Does Not Have Jurisdiction Because the Substance of Each Count Has Been Submitted to Arbitration.

The United States courts, including this Court, have no jurisdiction to review the arbitral rulings that disqualified Gatlin from participating in Olympic events. As this Court specifically found in its June 24, 2008 ruling, "[i]t is beyond dispute that Plaintiff properly challenged his suspension on grounds that Defendants' actions violated his rights under the American with Disabilities Act and the Rehabilitation Act of 1973, the very grounds he raises" in his Preliminary Injunction motion, as well as his Complaint. Gatlin raised all of his claims,

6

including his ADA and RA arguments, in the AAA hearings on both the 2001 and the 2006 violation. He then again fully litigated all of his claims, including the ADA and RA claims, in a *de novo* appeal before the CAS. To address, yet again, Gatlin's claim that invalidating his 2001 violation through a retroactive therapeutic use exemption (TUE) would be a "reasonable accommodation" under the ADA and RA, this Court would have been required to determine, among other things, whether: (i) the 2001 violation can be used to enhance the sanction for the 2006 violation; (ii) Gatlin was at fault for the 2001 violation; and, most importantly (iii) *any* sanction for the 2001 positive test would violate the ADA and RA. Those are precisely the questions that were expressly addressed before the CAS and decided against Gatlin. Indeed, this Court specifically so noted when it indicated in its Order that "[a]s these matters have been decided [before the AAA and CAS], Plaintiff is precluded from raising them here... ."[5]

In its decision to deny the requested injunction, this Court was correct in relying on the Seventh Circuit's decision in *Slaney v. IAAF & USOC*, 244 F.3d 580 (7th Cir. 2001), to reject Gatlin's claims. *See* Order at 2-3. *Slaney* involved a similar attempt by an athlete to plead a challenge to a doping sanction as a violation of various state and federal laws (and made an allegation that the doping test involved systematically discriminated against women), which the court rejected because the disqualified athlete sought judicial review of "the identical issues" that had been adjudicated by the CAS. *Id.* at 590. As in *Slaney*, granting relief to Gatlin would

---

[5] The Court did point out that there was certain mechanisms under the New York Convention by which an international arbitration could be challenged in a United States Federal Court, but it is important to note for this motion that such an action would be a complaint to set aside an arbitration, *not* as Gatlin seeks here, an attempt to re-litigate the substantive claims from the arbitration under a different federal statute. Such a complaint cannot be filed due to the Plaintiff's failure to exhaust remedies and the public policy favoring arbitration and the language used by this Court in its Order (and the Eleventh Circuit's denial of Plaintiffs' emergency motion).

necessarily undermine or, indeed, nullify the CAS's decision, and this Court correctly refused to do so.

The USOC is entitled (and, indeed, required) to enforce the CAS's decision under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York Convention, which entered into force in 1959, and was subsequently codified in 9 U.S.C. §§ 201-208, as the CAS itself has recognized. The New York Convention governs because the CAS is a foreign tribunal, and the proceedings were governed by Swiss law, as the Eleventh Circuit recognized in *Industrial Risk Insurers v. M.A.N. Gutehoffenungshutte GmbH*, 141 F.3d 1434, 1440-41 (11th Cir. 1998) ("[w]e join the First, Second, Seventh, and Ninth Circuits in holding that arbitration agreements and awards 'not considered as domestic' in the United States are those agreements and awards which are subject to the Convention," not necessarily for being "made abroad, but because [they were] made within the legal framework of another country, *e.g.,* pronounced in accordance with foreign law *or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction*"; "broad construction ... is more in line with the intended purpose of the treaty, which was entered into to encourage the recognition and enforcement of international arbitration awards") (original emphasis).

The Swiss Federal Supreme Court has recognized the CAS as "a real arbitral tribunal offering sufficient guarantees of independence and objectivity for its awards to be final and enforceable." Jan Paulsson, *The Swiss Federal Tribunal Recognises the Finality of Arbitral Awards Relating to Sports Disciplinary Sanctions Rendered by the IOC's Court of Arbitration for Sports*, 8 *International Arbitration Reports* 12, 15 (Oct. 1993) (citing *Grundel v. Int'l Equestrian Federation*, Judgment of Mar. 15, 1993). The Swiss Federal Supreme Court has

more recently reaffirmed that the CAS is an independent and fair international arbitral body. *See, e.g., A & B v. IOC & Int'l Ski Federation*, (May 27, 2003 decision of 1st Civil Division of the Swiss Federal Supreme Court) ("[t]he Federal Supreme Court has accepted that the CAS may be considered a true arbitral tribunal"); CAS Code at ¶¶3.3.3.3 – 3.3.4 ("having gradually built up the trust of the sporting world, this institution ... remains one of the principle mainstays of organized sport and is sufficiently independent vis-à-vis the IOC, as well as all other parties that call upon its services, for its decisions in cases involving the IOC to be considered true awards, equivalent to the judgments of State courts").

Although the statute codifying the New York Convention sets forth grounds for evading enforcement, 9 U.S.C. § 207, Gatlin failed to allege *any* basis for not enforcing the CAS's decision. Indeed, he has entirely ignored the New York Convention, as he sought, and obtained, the equivalent of *de novo* review of a claim that he voluntarily submitted to arbitration including whether he should be accommodated under the ADA and RA, in compliance with procedures by which he is bound. Compl. at ¶¶60, 1001, 104, 109. In its order vacating the injunction, this Court recognized that Mr. Gatlin had failed to plead or argue any of the exceptions to the New York Convention. *See* Order at 3. The Court noted that "the only conceivable exception would be the "public policy" exception, *see* Order at 3, 9 U.S.C. § 207, which exception is to be applied very narrowly. *See Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*, 161 F.3d 314 (5th Cir. 1998); *Indocomex Fibres Pte, Ltd. v. Cotton Co. Int'l, Inc.*, 916 F.Supp. 721 (W.D. Tenn. 1996). As this Court acknowledged, the exception is "a very slender exception reserved for decisions which violate the 'most basic notions of morality and justice,'" such that even "arbitrary and capricious" decisions "do not qualify under this exception." *See* Order at 3-4 (citation omitted). No such argument could possibly be made here: enforcement of the CAS

decision would further the well-established goals of the Olympic Movement in creating a unitary and highly expert panel for review of eligibility determinations, as well as the USOC's statutorily granted exclusive authority to determine Olympic eligibility.

In addition, under the pertinent legislation and law, this matter must proceed pursuant to arbitration. Under the Amateur Sports Act, in accordance with its Congressionally mandated mission "to provide swift resolution of conflicts and disputes involving amateur athletes," 36 U.S.C. § 220503(8), the USOC provides for arbitration by the AAA for disputes involving doping charges, 36 U.S.C. § 220529(a). Further, discrimination claims, including ADA claims, are properly resolved in arbitration to which the parties have agreed.[6] *E.g, Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 110, 123-24 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (age-discrimination claim); *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998) (ADA claim); *Miller v. Public Storage Mgmt., Inc.*, 121 F.3d 215, 218 (5th Cir. 1997) (ADA claim). In fact, the Congress amended the ADA in 1991 expressly to *encourage* alternative dispute resolution of ADA claims. 42 U.S.C. § 12212 ("the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under this chapter").[7] Finally, "Congress demonstrated a liberal federal policy favoring arbitration agreements," *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (quoting

---

[6] RA claims are also arbitrable. *See* 28 C.F.R. 36.103 (defining relationship of ADA Title III to the RHA.

[7] Regulations promulgated under the ADA also provide for arbitration. 28 C.F.R. § 36.506. Courts may consider such regulations, "as Congress specifically directed the Attorney General to "issue regulations in an accessible format to carry out the provisions of [the ADA] ... that include standards applicable to facilities ... and vehicles covered under" the ADA. *Access Now, Inc. v. S.W. Airlines, Co.*, 227 F. Supp. 2d 1312, 1317 n.5 (S.D. Fla. 2002) (quoting 42 U.S.C. § 12186(b)).

*Gilmer*, 500 U.S. at 25, when it enacted the AAA, which mandates that courts "rigorously enforce arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

In the end, this Court's lack of jurisdiction is established by the overarching rule that parties are entitled to enforcement of binding arbitration agreements. *E.g., Gilmer*, 500 U.S. at 25; *Volt Info Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Employers Ins. of Wausau v. Bright Metal Specialties*, 251 F.3d 1316, 1322 (11th Cir. 2001). The very essence of arbitration is that judicial review is all but eliminated, save for narrow grounds for vacatur, such as are set forth in the New York Convention or under the Federal Arbitration Act. *E.g., Hall St. Assocs. v. Mattel, Inc.*, --- U.S. ---, 125 S.Ct. 1396, 1402 (2008); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). "Otherwise plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final." *Bianchi v. Roadway Exp.*, 441 F.3d 1278, 1284 (11th Cir. 2006) (citation omitted).

### B. Gatlin Has Failed to Exhaust the Required Arbitral Remedies Afforded to Him.

Gatlin is not without a remedy if he is dissatisfied with the current status of his case. Under the agreement by which all parties to this action are bound, Gatlin, under controlling Swiss law, could seek review of the CAS decision, as may be available before the Swiss Federal Supreme Court, in accordance with the USADA Protocol and the CAS Code, as this Court recognized. *See* Order at 4 (Swiss Federal Supreme Court is Gatlin's "remaining avenue for relief").

11

The Swiss Act on Private International Law (PILA) provides for the review contemplated under the CAS Code. Under the PILA, a CAS award may be challenged on certain specified grounds to the Swiss Federal Supreme Court. Until Gatlin presents his case to the Swiss Federal Supreme Court, he has not exhausted his remedies. *Int'l Std. Elec. Corp. v. Bridas Sociedad Anonima Petrolera*, 745 F. Supp. 172, 177-78 (S.D.N.Y. 1990) (citation omitted).

In *Lee v. U.S. Taekwondo Union*, 331 F.Supp.2d 1252, 1258-59 (D.Hawai'i 2004), the court found that even if the USOC breached its bylaws when it removed a former coach of the United States Olympic Taekwondo Team, because the coach failed to exhaust his internal remedy of arbitration for the alleged breach, and thus, the district court lacked subject matter jurisdiction over the coach's claim alleging discrimination on the basis of race. *See also Devereaux v. Amateur Softball Ass'n of America*, 768 F.Supp. 618, 624 (S.D.Ohio 1991) ("The Court hereby finds that the plaintiffs' failure to exhaust the administrative remedies provided for under the Amateur Sports Act of 1978, the arbitration procedures provided for under the Act, and the administrative remedies set forth in the official rules of the ASA, creates a situation whereby the Court's involvement is premature.").

### C.  The ADA and RA Cannot be Invoked to Trump International Law.

Disability claims are subject to overarching principles of international law.

> If, moreover, Title III's "readily achievable" exemption were not to take conflicts with international law into account, it would lead to the anomalous result that American cruise ships are obligated to comply with Title III even if doing so brings them into noncompliance with [international law], whereas foreign ships – which unlike American ships have the benefit of the internal affairs clear statement rule – would not be so obligated. Congress could not have intended this result.

*Spector v. Norwegian Cruise Line, Ltd.*, 545 U.S. 119, 136 (2005).

Here, Mr. Gatlin's attempted use of the ADA and RA would trump the carefully created internationally applicable protections for Olympic eligibility determinations. Every federal judge faced with a disability claim could impose "reasonable accommodations" that violate the international conventions under which Olympic competitions are held, and by which the USOC is indisputably bound.

Since arbitral remedies are provided for and Gatlin did not exhaust those remedies before filing suit, Gatlin must exhaust such remedies and the failure to do so prior to filing suit in this Court requires dismissal of the action due to the lack of jurisdiction.

## CONCLUSION

Ultimately, this Court's denial of preliminary injunctive relief for lack of jurisdiction is dispositive. The rectitude of that ruling has been recognized by the Eleventh Circuit in that court's denial of Gatlin's request for injunctive relief pending his attempted appeal from this Court's decision. This Court has no jurisdiction to grant *any* relief on Gatlin's claims.

WHEREFORE, USOC requests that this Court enter an order granting USOC's Motion to Dismiss in its entirety and with prejudice.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
101 East College Avenue
Post Office Drawer 1838
Tallahassee, Florida 32302
Phone: (850) 222-6891
Fax: (850) 681-0207

_____
**LORENCE JON BIELBY**
**Florida Bar No. 0393517**
**JOHN K. LONDOT**
**Florida Bar No. 0579521**
*Counsel for United States Olympic Committee*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served per Federal Rule of Civil Procedure 5(b)(2)(E) and Northern District of Florida Local Rule 5.1(A)(6) this 8th day of July 2008, to the following:

Joseph A. Zarzaur, Jr.
Zarzaur Law, P.A.
Post Office Box 12305
Pensacola, Florida 32591
*Counsel for Justin Gatlin*

Robert C. Palmer, III
Wade, Palmer & Shoemaker, P.A.
25 West Cedar Street, Suite 450
Pensacola, Florida 32502
*Counsel for United States Anti-Doping Agency, Inc. and U.S. Track & Field, Inc.*

_____
LORENCE JON BIELBY